THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMED ASHOUR, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC, <br><br> Defendants. | Civil Action No. 1:19-CV-07081-AT-OTW <br><br><br> (ORAL ARGUMENT REQUESTED) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(b)(6) AND 9(B) AND TO DISMISS OR STRIKE THE NATIONWIDE CLASS ACTION CLAIM**

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
570 Broad Street, Suite 1500
Newark, New Jersey 07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
*rdonovan@mdmc-law.com*
*Attorneys for Defendants, Arizona Beverages USA LLC, Hornell Brewing Co., Inc., Beverage Marketing USA, Inc., Arizona Beverages Holdings LLC, and Arizona Beverages Holdings 2 LLC*

Robert P. Donovan, Esq.,
Of Counsel
Melissa Reilly, Esq.
On the Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ...........................................................................1

PROCEDURAL HISTORY AND STATEMENT OF FACTS.....................................3

I.     Procedural History ......................................................................................3

II.    Allegations Germane to Motion.....................................................................3

      A.    Plaintiffs' Allegations Concerning Purchases of Product............................3

      B.    Relevant Allegations Regarding Citric Acid...........................................3

      C.    Plaintiff's Assertions Regarding Future Conduct .....................................5

      D.    Causes of Action .............................................................................5

      E.    Class Definitions .............................................................................6

III.    Plaintiff's Allegations of Compliance With the Pre-Suit Notice...........................6

LEGAL ARGUMENT .......................................................................................6

I.     Applicable Standard ....................................................................................6

II.    The Express Preemption Provisions of the FDCA Apply to Plaintiff's Claims.................7

      A.    The FDA Regulates Preservatives .........................................................8

      B.    Because Plaintiff Fails to Allege Any FDCA Violation With Regard
           To Defendants' Labeling, Plaintiff's Claims Are Expressly Preempted ................8

III.    Plaintiff's Claims Are Also Barred Under Implied Preemption.........................11

IV.    Plaintiff Failed to Plead Facts Sufficient to Demonstrate Article III Standing
       To Seek Injunctive Relief .................................................................12

V.     Plaintiff's Fraud Claims Lack the Specificity Required Under Rule 9(b) of
       the Federal Rules of Civil Procedure ...................................................15

VI.    Plaintiff's Claim for Monetary Damages Under the CLRA is Barred
       Because Plaintiff Failed to Furnish Notice as Mandated by Section 1782(a) ...................17

A.     Plaintiff's Notice was Late .................................................................................17

B.     Restitution is a Claim for Damages Under the CLRA ............................................18

C.     Plaintiff's Failure to Furnish Pre-Suit Notice Requires Dismissal of the CLRA Damage Claims With Prejudice ........................................................19

VII.  Just Grounds Exist to Dismiss or Otherwise to Strike Plaintiff's Nationwide Class Claims for Unjust Enrichment ...............................................................20

A.     Based Upon a Conflict-of-Law Analysis, Whether Under the California or New York Tests, Each State's Unjust Enrichment Law Applies   ....................................................................................................23

1.     Material Conflicts Exist Between the Unjust Enrichment Laws of the Fifty States ...........................................................................24

2.     The Interests of Foreign Jurisdiction is Compelling.................................28

3.     The State That Does Not Have Its Own Laws Applied is Most Impaired .............................................................................................28

CONCLUSION...................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Albert v. Blue Diamond Growers,*
    151 F. Supp. 3d 412 (S.D.N.Y. 2015) ................................................................14

*Angelini v. Delaney,*
    156 Or. App. 293 (Ct. App. 1998) ...................................................................28

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
    493 F.3d 87 (2d Cir. 2007)................................................................................15

*Baker v. Nestle S.A.,*
    2:18-cv-03097-VAP-PJWx, 2019 WL 960204 (C.D. Cal., Jan. 3, 2019) .............10

*Bates v. Dow Agrosciences LLC,*
    544 U.S. 431 (2005) ...........................................................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................7

*Bennett v. Visa U.S.A. Inc.,*
    198 S.W.3d 747 (Tenn. Ct. App. 2006) .............................................................27

*Bimont v. Unilever U.S., Inc.,*
    No. 14-CV-7749 (JPO), 2015 WL 5256988 (S.D.N.Y Sept. 9, 2015) .....................9

*Bourbonnais v. Ameriprise Fin. Servs., Inc.,*
    14-c-966, 2015 WL 12991000 (E.D. Wis. 2015) ...............................................22

*Brakke v. Hilgers,*
    374 N.W.2d 553 (Minn. Ct. App. 1985)............................................................25

*Buonsera v. Honest Tea Co., Inc.,*
    208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) .................................................14

*California v. United States,*
    104 F.3d 1086 (9th Cir. 1997) .........................................................................18

*Casey v. Odwalla,*
    338 F. Supp. 3d 284, 300 (S.D.N.Y. 2018)......................................................14

*Cattie v. Wal-Mart Stores, Inc.,*
    504 F. Supp. 2d 939 (S.D. Cal. 2007)...................................................17, 19, 20

*Cavaness v. State Dep't of Transp. & Dev.,*
    846 So.2d 866 (La. Ct. App. 2003)...................................................................27

*Cecio Bros. v. Town of Greenwich*,
    156 Conn. 561 (1968) ......................................................................................26

*Chang v. Fage USA Dairy Industries, Inc.*,
    14–CV–3826-MKB, 2016 WL 5415678 (E.D.N.Y. Sept. 28, 2016) .......................................18

*City of Log Angeles v. Lyons*,
    461 U.S. 95 (1983).........................................................................................12, 13

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).........................................................................................13

*Cortland Street Recovery Corp. v. Hellas Telecommunications*,
    790 F.3d 411 (2d Cir. 2015).................................................................................13

*Cuevas v. United Brands Co.*,
    No. 11-cv-991, 2012 WL 760403 (S.D. Cal. Mar. 8, 2012)....................................................18

*Custom Design Studio v. Chloe, Inc.*,
    584 N.W.2d 430 (Minn. Ct. App. 1998)........................................................................25

*Darisse v. Nest Labs, Inc.*,
    No. 5:14-cv-01363, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ...........................................2, 21, 29

*Davis v. Hain Celestial Grp., Inc.*,
    297 F.Supp.3d 327 (E.D.N.Y. 2018) ........................................................................12

*Davis v. Navient Corp.*,
    No. 17-cv-00992, 2018 WL 1603871 (W.D.N.Y. 2018)........................................................22

*Desiano v. Warner-Lambert & Co.*,
    467 F.3d 85 (2d Cir. 2006)...................................................................................8

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*,
    No. 12 Civ. 4025, 2013 WL 6667601 (S.D.NY Dec. 17, 2013)...............................................15

*Dolezal v. City of Cedar Rapids*,
    326 N.W.2d 355 (Iowa 1982) ...............................................................................27

*Dufresne v. Veneman*,
    114 F.3d 952 (9th Cir. 1997) ..............................................................................18

*E.I. Dupont de Nemours & Co. v. Invista B.V.*,
    473 F.3d 44 (2d Cir. 2006)..................................................................................13

*Elledge v. Friberg-Cooper Water Supply Corp.*,
    240 S.W.3d 869 (Tex. 2007).................................................................................27

*Engram v. Engram*,
    265 Ga. 804 (1995) ..................................................................................................27

*Feinstein v. Firestone Tire & Rubber Co.*,
    535 F. Supp. 595 (S.D.N.Y. 1982) ...........................................................................22

*Franklin Bank v. Zero Plus Advantage*,
    No. 212712, 2001 WL 682228 (Mich. Ct. App. Apr. 20, 2001) .............................27

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982) ................................................................................................21

*Gitson v. Trader Joe's Co.*,
    No. 13-CV-01333, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)...........................15

*Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 97 Civ. 8779, 1998 WL 321446 (S.D.N.Y. June 18, 1998)..............................21

*Gutteridge v. J3 Energy Grp., Inc.*,
    165 A.3d 908 (2017) ................................................................................................27

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
    330 F.R.D. 374 (S.D.N.Y. 2019) ......................................................2, 21, 24, 25, 26

*Harris v. comScore, Inc.*,
    292 F.R.D. 579 (N.D. Ill.2013)................................................................................24

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)........................................................................................7

*Hendricks v. StarKist*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ...............................................................11, 12

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    298 F.R.D. 116 (S.D.N.Y. 2014) ..............................................................................7

*Hunt v. Superior Court*,
    21 Cal. 4th 984 (Cal. 1999)......................................................................................19

*In re Aqua Dots Prods. Liab. Litig.*,
    270 F.R.D. 377 (N.D. Ill. 2010)...............................................................................24

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
    No. 13-cv-150 (JPO), 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015), *appeal
    withdrawn* (Nov. 10, 2015)......................................................................................14

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .................................................................................22

*In re Cablevision Consumer Litig.*,
    864 F. Supp. 2d 258 (E.D.N.Y. 2012) ...................................................................7

*In re Conagra Peanut Butter Prods. Liab. Litig.*,
    251 F.R.D. 689 (N.D. Ga. 2008)...........................................................................24

*In re Ditropan XL Antitrust Litig.*,
    529 F. Supp. 2d 1098 (N.D. Cal. 2007) ...............................................................29

*In re Farr*,
    407 B.R. 343 (B.A.P. 8th Cir. 2009).....................................................................25

*In Re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D.N.Y. 2008) ...................................................20, 21, 23, 28

*In re Mattel, Inc.*,
    588 F. Supp. 2d 1111 (C.D. Cal. 2008) ..............................................................18

*In re PepsiCo, Inc., Bottled Water Mktg. and Sales Practices Litig.*,
    588 F. Supp. 2d 527 (S.D.N.Y. 2008)......................................................7, 9, 10

*In re Trader Joe's Tuna Litig.*,
    No. 2:16-cv-01371-ODW(AJWx) 2017 WL 2408117 (C.D. Cal. June 2, 2017)..............11, 12

*Jerry Harmon Motors, Inc. v. Heth*,
    316 N.W.2d 324 (N.D. 1982) .........................................................................25, 26

*Kassman v. KPMG LLP*,
    925 F. Supp. 2d 453 (S.D.N.Y. 2013)..................................................................22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................16

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014)....................................................................9

*Kommer v. Bayer Consumer Health*,
    710 Fed. Appx. 43 (2d Cir. 2018)....................................................................2, 14

*Lam v. General Mills, Inc.*,
    859 F. Supp. 2d 1097 (N.D. Cal 2012) ...............................................................10

*Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahearn Rentals, Inc.*,
    182 P.3d 764 (Nev. 2008)....................................................................................27

*Laster v. T-Mobile USA, Inc.*,
   No. 05-cv-1167 DMS (AJB), 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *aff'd sub
   nom.*, *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd on other
   grounds*, 563 U.S. 333 (2011)] ...............................................................................18, 19, 20

*Lewis Tree Serv., Inc. v. Lucent Tech., Inc.*,
   211 F.R.D. 228 (S.D.N.Y. 2002) .........................................................................................22

*Martinelli v. Johnson & Johnson*,
   2:15-cv-01733-MCE-DB, 2017 WL 2257171 (E.D. Cal. May 22, 2017) ...........................2, 21

*Mattero v. Costco Wholesale Corp.*,
   336 F. Supp. 3d 1109 (N.D. Cal. 2018) ...............................................................................15

*Mazza v Am. Honda Motor Co, Inc.*,
   666 F3d 581 (9th Cir. 2012) .................................................................2, 20, 21, 23, 24, 28, 29

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (Cal. 2010)...............................................................................................23, 28, 29

*McCray v. Fidelity Nat. Title Ins. Co.*,
   82 F.3d 229 (3d Cir. 2012)...................................................................................................13

*Menowitz v. Brown*,
   991 F.2d 36 (2d Cir. 1993)................................................................................................9, 13

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (Cal. Ct. App. 2009) ......................................................................19

*Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc.*,
   145 N.H. 158 (N.H. 2000) ...................................................................................................25

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)...............................................................................................2, 13

*Outboard Marine Corp. v. Superior Ct. of Sacramento Cty.*,
   52 Cal.App.3d 30 (Cal. Ct. App. 1975) ...............................................................................19

*Pearsall v. Medtronics, Inc.*,
   147 F. Supp. 3d 188, 194 (E.D.N.Y. 2015) ........................................................................12

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) ....................................................................................1, 11, 12

*PFT of Am., Inc. v. Tradewell, Inc.*,
   No. 98 Civ. 6413, 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999) ..........................................22

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)............................................................................................7

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
507 F.3d 117 (2d Cir. 2007)..............................................................................7

*Raines v. Byrd*,
521 U.S. 811 (1997)..........................................................................................12

*Rapp v. Green Tree Servicing, LLC*,
302 F.R.D. 505 (D. Minn. 2014)..................................................................24, 25

*Reed v. Dynamic Pet Prods.*,
No. 15-cv-0987-WQH-DHB, 2015 WL 4742202 (S.D. Cal. July 30, 2015) ...................18, 19

*Retail Developers of Ala. LLC v. E. Gadsden Golf Club, Inc.*,
985 So. 2d 924 (Ala. 2007)................................................................................27

*Robinson v. Hornell Brewing Co.*,
Civil No. 11-2183, 2012 WL 6213777 (D.N.J. Dec. 13, 2012)..............................13

*Ross v. Bank of Am. N.A.*,
524 F.3d 217 (2d Cir. 2008)..............................................................................13

*Samet v. Proctor & Gamble Co.*,
No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal., June 18, 2013) .......................11, 12

*Schwartz v. Lights of Am.*,
2012 WL 4497398 (C.D. Cal. Aug. 31, 2012)....................................................29

*Shaulis v. Nordstrom, Inc.*,
865 F.3d 1 (1st Cir. 2017)..................................................................................27

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
538 U.S. 408 (2003)..........................................................................................28

*Television Events & Mkg., Inc. v. Amcon Distr. Co.*,
488 F. Supp. 2d 1071 (D. Haw. 2006)................................................................25

*Thompson v. Jiffy Lube Int'l, Inc.*,
250 F.R.D. 607 (D. Kan. 2008)..........................................................................24

*Todd v. Tempur-Sealy Int'l, Inc.*,
No. 13-cv-04984-JST, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016) ........................21

*Trabakoolas v. Watts Water Tech., Inc.*,
No. 12-cv-01172-YGR, 2012 WL 2792441 (N.D. Cal., July 9, 2012)....................20

*United States v. Bame*,
  721 F.3d 1025 (8th Cir. 2013) ...........................................................................27

*Vacic v. PatentHealth, L.L.C.*,
  171 F. Supp. 3d 1034 (S.D. Cal. 2016)..............................................................18

*Vertex, Inc. v. City of Waterbury*,
  278 Conn. 557 (2006) ........................................................................................26

*Vess v. Ciba-Geigy Corp. U.S.A.*,
  317 F.3d 1097 (9th Cir. 2003) ...........................................................................16

*Von Grabe v. Sprint PCS*,
  312 F. Supp. 2d 1285 (S.D. Cal. 2003).........................................................19, 20

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  860 A.2d 312 (Del. Sup. 2004) ..........................................................................27

*Waller v. Hewlett-Packard Co.*,
  No. 11-cv-0454, 2011 WL 6325972 (S.D. Cal. Dec. 16, 2011) .....................19, 20

*Walters v Vitamin Shoppe Industries, Inc.*,
  No. 3:14-cv-1173-PK, 2018 WL 2424132 (D. Or. May 8, 2018) .......................22

*Wash. Mut. Bank v. Superior Court*,
  24 Cal.4th 906 (Cal. 2001).................................................................................23

*White v. Microsoft Corp.*,
  454 F.Supp.2d 1118 (S.D. Ala. 2006).................................................................24

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)...........................................................................................13

*Wright v. Family Dollar, Inc.*,
  No. 10-c-4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) .............................23

*Yarger v. ING Bank, FSB*,
  285 F.R.D. 308 (D. Del. 2012) ..........................................................................24

STATUTES

21 U.S.C. § 343-1(a)(3) ......................................................................... *passim*

Class Action Fairness Act.........................................................................28

Cal. Civ. Code §§ 1750, *et seq.* ...................................................................2

Cal. Civ. Code § 1782(a) ........................................................................ *passim*

Cal. Civ. Code § 1782(b) .................................................................................................20

Cal. Civ. Code. § 1782(d) .........................................................................................17, 19

California Business & Professions Code §§ 17200, *et seq.* ("UCL")................................. *passim*

California Business & Professions Code §§ 17500, *et seq.* ("FAL") .................................. *passim*

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, *et seq.* ("FDCA")....................... *passim*

21 U.S.C. § 343(k) ...........................................................................................................8

## RULES

Fed. R. Civ. P. 23(b)(2).....................................................................................................6

Fed. R. Civ. P. 23(b)(3)...................................................................................2, 6, 21, 30

Fed. R. Civ. P. 23(c)(1)(A) ............................................................................................21

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6).......................................................................................... *passim*

Rule 12(f).......................................................................................................................22

## REGULATIONS

21 C.F.R. § 101.22(a)(5) ..................................................................................................8

21 C.F.R § 100.1(c)(4) ....................................................................................................8

21 C.F.R. § 101.22(a)(5) ..................................................................................................1

21 CFR § 101.22(j) ..........................................................................................................8

## CONSTITUTIONAL PROVISIONS

United States Constitution ..............................................................................................13

## PRELIMINARY STATEMENT

Defendants, Arizona Beverages USA LLC (individually, "ABU"), Hornell Brewing Co., Inc. (individually, "Hornell"), Beverage Marketing USA, Inc. (individually, "BMU"), Arizona Beverages Holdings LLC (individually "ABH"), and Arizona Beverages Holdings 2 LLC (individually, "ABH2") (collectively, "Defendants"), submit this memorandum of law in support of their motion to: (1) dismiss the first amended complaint ("Complaint") filed by plaintiff, Ahmed Ashour ("Plaintiff"), for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b); and (2) to dismiss or otherwise to strike the nationwide class action claim for unjust enrichment.

The Complaint fails to state a claim because:

- The claims about citric acid being a preservative are expressly preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343, *et seq.* ("FDCA"), as amended by the Nutrition Labeling and Education Act (Public Law 101-535, 104 Stat. 2352, Nov. 8, 1990) (the "NLEA"), specifically under 21 U.S.C. §343-1(a)(3), which governs the labeling of chemical preservatives. Pursuant to the FDCA, the United States Food and Drug Administration ("FDA") defines what constitutes a "chemical preservative." 21 C.F.R. § 101.22(a)(5). However, nowhere in the Complaint does Plaintiff allege that Defendants violate that regulation or any other provision of the FDCA. Plaintiff's claims improperly seek to impose a state law obligation that differs from, and/or that is not identical to, the requirements of the FDCA, contrary to the express preemption provisions of 21 U.S.C. § 343-1(a)(3).

- Because Plaintiff has not alleged that Defendants have violated any state labeling law that parallels the FDCA, his claims are also barred by the doctrine of implied preemption. *See Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1119-20 (9th Cir. 2013).

- Plaintiff lacks Article III standing to seek injunctive relief (in Counts I, II, and III) because no reasonable likelihood of future injury has been alleged. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Kommer v. Bayer Consumer Health*, 710 Fed. Appx. 43, 44 (2d Cir. 2018).

- Plaintiff's causes of action alleging fraud (in Counts I, II, and III) lack the requisite specificity under Federal Rule of Civil Procedure 9(b). There are no allegations about when the products were allegedly bought, the price paid for the products, or the specific stores at which the products were purchased. The locations of purchases are also extremely generalized. There are no allegations particularized about the who, what, where, and when with regard to alleged deceptive advertisements.

- Plaintiff's monetary damage claim for restitution under the California Consumer Legal Remedies Act ("CLRA") (Count II) pursuant to Cal. Civ. Code §§ 1750, *et seq.* fails because he did not furnish the required written pre-suit notice to Defendants.

- With regard to the class allegations, at Count V, the nationwide class claim of unjust enrichment ought to be dismissed or stricken because Plaintiff cannot satisfy the predominance requirement of Rule 23(b)(3). The Ninth Circuit has ruled that the elements necessary to establish a claim for unjust enrichment vary materially from state to state. *Mazza v Am. Honda Motor Co, Inc.*, 666 F3d 581, 594 (9th Cir. 2012). In cases where the laws of fifty states are applied to nationwide claims for unjust enrichment, the predominance requirement of Rule 23(b) cannot be met as a matter of law. *See Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 386-87 (S.D.N.Y. 2019); *Martinelli v. Johnson & Johnson*, 2:15-cv-01733-MCE-DB, 2017 WL 2257171, at *5 (E.D. Cal. May 22, 2017); *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363, 2016 WL 4385849, at *15 (N.D. Cal. Aug. 15, 2016). Because certification of a

nationwide class necessarily requires the application of the laws of fifty different states to the claim of unjust enrichment, the individual questions of fact and law that predominate over alleged common issues are insuperable.

## PROCEDURAL HISTORY AND STATEMENT OF FACTS

### I.    Procedural History

This action was filed in the United States District Court for the Central District of California on May 14, 2019.  (ECF 1).  By stipulation of the parties (ECF 23), the action was transferred to this Court by Order entered on July 25, 2019.  (ECF 25).  Plaintiff filed a First Amended Complaint on September 24, 2019.  (ECF 42).

### II.    Allegations Germane to Motion

#### A.    Plaintiffs' Allegations Concerning Purchases of Product

Plaintiff Ashour purchased the Products, specifically AriZona Rx Energy Herbal Tonic and AriZona Green Tea with Ginseng and Honey, on several occasions, roughly two to three times per week at various drug stores and convenience stores including CVS Pharmacy and 7-Eleven in Los Angeles, California.  (ECF 42, ¶41).

#### B.    Relevant Allegations Regarding Citric Acid

- Defendants seek to take advantage of the premium placed on products without preservatives by specifically labeling and packaging their Products as containing no preservatives. (*Id.*, ¶7).

- To the detriment of consumers, the Products do, in fact, contain preservatives as they contain citric acid, a known preservative. (*Id.*, ¶8).

- Citric acid is a commonly used and recognized preservative in food and beverage products. (*Id.*, ¶20).

- Although citric acid is a natural acid found in citrus fruits, approximately 99% of today's citric acid is manufactured by using the fungus *Aspergillus niger*. Generally, the process involves growing the fungus in a mixture of sugar and salt which causes the fungus to excrete a large amount of citric acid. (*Id.*, ¶21, footnotes omitted).

- This process is far more cost effective than extracting citric acid from fruits and allows for production of citric acid on an industrial scale. It is estimated that 70% of citric acid manufactured today is used in food and beverages. (*Id.*, ¶22, fn. omitted).

- According to the FDA, a chemical preservative is "any chemical that, when added to food, tends to prevent or retard deterioration thereof." (*Id.*, ¶23, fn. omitted).

- More specifically, a preservative "prevent[s] food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow[s] or prevent[s] changes in color, flavor, or texture and delay[s] rancidity (antioxidants); [and] maintain[s] freshness." (*Id.*, ¶24, fn. omitted).

- Citric acid acts as a preservative by increasing "the acidity of a microbe's environment, making it harder for bacteria and mold to survive and reproduce." (*Id.*, ¶25, fn. omitted).

- The FDA mentions citric acid as a preservative in its *Overview of Food Ingredients, Additive, and Colors* on its website. (*Id.*, ¶26, fn. omitted).

- In 2010, the FDA sent a warning letter to Chiquita Brands International, Inc. advising that Chiquita's "Pineapple Bites" products are misbranded within the meaning of Section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions." (*Id.*, ¶27, fn. omitted).

- Despite Defendants' affirmative representations that the Products contain "No Preservatives," the Products contain citric acid, a known and common preservative. (*Id.*, ¶33, fn. omitted).

**C.      Plaintiff's Assertions Regarding Future Conduct**

- Plaintiff and the Classes have been, and will continue to be, deceived and misled by Defendants' false and deceptive labeling and representations on the Products' packaging. (*Id.*, ¶36).

- . . . If Plaintiff Ashour could rely upon the truthfulness of Defendants' labeling, he would continue to purchase the Products in the future. (*Id.*, ¶43).

**D.      Causes of Action**

The Complaint contains the following claims:

(1)      Count I - Plaintiff asserts violations of the California Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"), and seeks restitution and an injunction (*Id.*, ¶¶59-71);

(2)      Count II - Plaintiff claims violations of the CLRA based upon, *inter alia*, alleged deceptive labeling and seeks damages and injunctive relief. (*Id.*, ¶¶72-85);

(3)      Count III - Plaintiff asserts violations of the California False Advertising Law, California Business & Professions Code §§ 17500, *et seq.* ("FAL"), and seeks damages and injunctive relief (*Id.*, ¶¶86-94);

(4)      Count IV - Plaintiff claims that Defendants are liable for breach of an express warranty, claiming damages in the form of an alleged premium price. (*Id.*, ¶¶95-102); and

(5)      Count V - Plaintiff sues Defendants for unjust enrichment and seeks a nationwide class certified with regard to said claims. (*Id.*, ¶¶103-107).

E.    **Class Definitions**

Plaintiff, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), brings this action on behalf

of:

> (a)    Nationwide Class:  All persons who purchased Defendants'
> Products within the United States and within the applicable
> statute of limitation period.

> (b)    California Class:  All persons who purchased Defendants'
> Products within the State of California and within the
> applicable statute of limitation period (collectively, the
> "Classes").

[*Id.*, ¶51].

Plaintiff seeks a California Class, with regard to all the claims, but also alleges a

nationwide class with regard to the unjust enrichment claim.

III.   **Plaintiff's Allegations of Compliance With the Pre-Suit Notice**

On September 24, 2019, Plaintiff amended the Complaint, alleging:

> Pursuant to Cal. Civ. Code § 1782(a), Plaintiff's counsel notified Defendants in
> writing by certified mail, return receipt requested, of Defendants' particular
> violations of § 1770 of the CLRA and demanded that Defendants rectify their
> violations.  Plaintiff sent those letters on May 15, 2019, and Defendants received
> them on May 20, 2019.  However, Defendants did not respond to those letters or
> agree to rectify its violations of the CLRA.  Accordingly, Plaintiff has amended
> this claim to seek damages on behalf of himself and the California Class.  (ECF
> 42, ¶85).

No letters are attached to the Complaint.

## LEGAL ARGUMENT

I.    **Applicable Standard**

In deciding a motion to dismiss, while courts accept as true all well-pleaded

factual allegations in the complaint, they give "no effect to legal conclusions couched as

factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 121 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, state a clam to relief that is plausible on its face." *Homeward Residential, Inc. v. Sand Canyon Corp.,* 298 F.R.D. 116, 122 (S.D.N.Y. 2014) (internal quotations and citations omitted). Finally, "[d]etermining whether a plaintiff has met his [pleading] burden is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *In re Cablevision Consumer Litig.,* 864 F. Supp. 2d 258, 263 (E.D.N.Y. 2012) (quoting *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009)).

## II.  The Express Preemption Provisions of the FDCA Apply to Plaintiff's Claims

The FDCA, as amended by the NLEA, "forecloses a 'State or political subdivision of a State' from establishing requirements that are of the type but 'not identical to' the requirements in some of the misbranding provisions of the FDCA." *POM Wonderful LLC v. Coca-Cola Co.,* 573 U.S. 102, 109 (2014) (quoting 21 U.S.C. § 343-1(a)). "In the context of express preemption provisions, the term 'requirements'. . . reaches beyond positive enactments, such as statutes and regulations, to embrace common law duties." *In re PepsiCo, Inc., Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443 (2005)).

The FDCA has express preemption provisions that govern the labeling of a chemical preservative. *See* 21 U.S.C. § 343-1(a)(3). That law states, in pertinent part, as follows:

> "no State . . . may directly or indirectly establish . . . any requirement for the labeling of food of the type required by section . . . 343(k) of this title that is not identical to the requirement of such section . . . .

Title 21, Section 343(k) of the United States Code governs the labeling of, *inter alia*, a chemical preservative.

The regulations, in turn, define the phrase "not identical" in the following manner:

"Not identical to" does not refer to the specific words in the requirement but instead means that the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that:

(i)     Are not imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act; or

(ii)    Differ from those specifically imposed by or contained in the applicable provision (including any implementing regulation) of section 401 or 403 of the act.

21 C.F.R § 100.1(c)(4).

## A.     **The FDA Regulates Preservatives**

The FDA's regulations govern what a label must state if there is a preservative in the product.  In that regard, 21 C.F.R. § 101.22(a)(5) states:

The term chemical preservative means any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties.

When preservatives are present in a product, 21 CFR § 101.22(j) provides:

A food to which a chemical preservative(s) is added shall, except when exempt pursuant § 101.100 bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative", "to retard spoilage", "a mold inhibitor", "to help protect flavor" or "to promote color retention."

## B.     **Because Plaintiff Fails to Allege Any FDCA Violation With Regard to Defendants' Labeling, Plaintiff's Claims Are Expressly Preempted**

Generally, a circuit court is "required" to apply its own law with regard to questions of federal law. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 90-91 (2d Cir. 2006) (holding

that, although the court must defer to another circuit's interpretation of questions of state law from a state within that circuit, the court is obligated to reach its own conclusion on questions of federal law).  This obligation does not change in the context of transferred cases.  *Id*. at 91.  S*ee Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993).  However, the question of what law governs is immaterial because both circuits address preemption in a substantially similar manner.

In *PepsiCo*, plaintiffs alleged that Aquafina water used a deceptive label design to create the impression that the water came from a mountain source rather than the true source, public drinking water.  588 F. Supp. 2d at 529.  After engaging in a detailed analysis of FDA regulations concerning the standard of identity for bottled water, *id.* at 532-534, the court ruled that the plaintiffs' claims were expressly preempted because the claims were "premised on requirements that are not parallel to those imposed by federal law."  *Id.* at 537.

The rationale in *PepsiCo* has been applied in other cases in this District when considering whether labeling claims based on state law are expressly preempted.  *See Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 283 (S.D.N.Y. 2014) (stating that the FDCA's express preemption clause "bars the states from imposing affirmatively different requirements that are not equivalent to, or fully consistent with, the labeling and packaging provisions of the FDCA specifically identified in the preemption clause").  *See also Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 WL 5256988, at *2 (S.D.N.Y Sept. 9, 2015) (citing to *Pepsico,* when addressing preemption concerning the label of over the counter drugs, and noting that "there are two ways plaintiffs may escape the FDCA's preemptive force: (1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to the claims of the sort described in the Act."). (quotations and citations omitted).

Federal courts in California have adopted a similar preemption analysis when no violation of the FDCA is claimed. *See Baker v. Nestle S.A.*, 2:18-cv-03097-VAP-PJWx, 2019 WL 960204, at *2 (C.D. Cal. Jan. 3, 2019) (agreeing with *PepsiCo* and ruling that plaintiff's claims were expressly preempted by the FDCA because the claims were premised "not on [d]efendant's failure to comply with FDA standards, but instead on [d]efendant's use of FDA-permissible labeling").

In *Lam v. General Mills, Inc.*, 859 F. Supp. 2d 1097, 1100-01 (N.D. Cal 2012), plaintiff sued for breach of warranty and unjust enrichment, alleging that the defendant misrepresented the nutritional qualities of its fruit snacks, in violation of the CLRA and UCL. Because the plaintiff, in the complaint, did not allege that the fruit snacks violated FDA regulations concerning artificial flavors, the court ruled that the claims concerning the misrepresentation of flavor labels were preempted by the FDCA. *Id.* at 1102-03.

Plaintiff's claims are expressly preempted precisely because he does not allege that Defendants violated the FDCA by including "No Preservatives" on their product labels. Plaintiff refers to a portion of the FDA's definition of "chemical preservative" in the Complaint but does not allege that Defendants violated that regulation. (ECF 42, ¶23). He also cites to the FDA website that "mentions citric acid as a preservative" and to a 2010 warning letter that the FDA sent to Chiquita Brands because its product contained citric acid. (*Id.*, ¶¶26, 27). However, Plaintiff does not allege the citric acid in Defendants' beverages functions in a manner that falls within the definition of "chemical preservative" under the FDA's regulations.

Plaintiff also does not allege that the citric acid in Defendants' products is composed in a manner that constitutes a chemical preservative as defined under the FDA. Instead, Plaintiff refers to another company's products and to practices "in the industry." (ECF 42, ¶¶27, 28). He

also does not allege that the FDCA prohibits Defendants from labeling their beverages as having "no preservatives." There is no such restriction under the FDCA. Plaintiff nevertheless seeks to impose such a prohibition here without alleging any violation of FDA law.

Because of these material pleading failures, Plaintiff's claims seek to impose labeling requirements, with regard to alleged preservatives, that are expressly preempted by 21 U.S.C. § 343-1(a)(3).

## III.   **Plaintiff's Claims Are Also Barred Under Implied Preemption**

According to federal courts in California, the FDCA does not preempt a state-law claim for violating a state-law duty that parallels a federal-law obligation under the FDCA. *Hendricks v. StarKist*, 30 F. Supp. 3d 917, 927-28 (N.D. Cal. 2014). *See also Samet v. Proctor & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *5 (N.D. Cal. June 18, 2013) ("The rule that emerges from [Supreme Court and Ninth Circuit] cases is that "the plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by [Section] 360(k)) but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted. . .")); *In re Trader Joe's Tuna Litig.*, No. 2:16-cv-01371-ODW (AJWx) 2017 WL 2408117, at *2 (C.D. Cal. June 2, 2017) ("In simpler terms, a plaintiff must state a claim based on a violation of some other law – such as state tort law – that also happens to violate the FDCA.").

The Ninth Circuit has also referred to the narrow gap through which a state-law claim must fit in order to escape preemption by the FDCA. *Perez*, *supra*, 711 F.3d at 1119-20 (finding that plaintiff's claim was impliedly preempted because it conflicted with the FDCA's enforcement scheme with regard to medical devices).

New York courts have likewise held that a plaintiff's claim can fit through the "narrow gap" if it is based on conduct that violates the FDCA but not because the conduct violates the FDCA. *See Pearsall v. Medtronics, Inc.*, 147 F. Supp. 3d 188, 194 (E.D.N.Y. 2015). "In other words, a claim is permissible if it is based on conduct that violates the federal requirements and state law for the same conduct." *Id.* at 194-95.

Plaintiff does not claim a violation of any state labeling law that parallels the FDCA. His claims are for violations of the UCL, the CLRA, the FAL, the California Commercial Code for breach of warranty, and for unjust enrichment. (ECF 42, ¶¶59-107). By way of example, in Plaintiff's UCL claim for unlawful conduct, he asserts a violation of the CLRA and FAL only. (ECF 42, ¶63). None of the state law claims that Plaintiff alleges Defendants violated incorporate the labeling laws of the FDCA.

Because the Complaint fails to allege violations of state labeling laws that are identical or parallel to the FDCA, Plaintiff's claims about the presence of preservatives in Defendants' beverages fail to fit through the narrow gap to avoid preemption as outlined in *Perez, Hendricks, Samet, In re Trader Joe's Tuna Litigation,* and *Pearsall,* and are barred under the doctrine of implied preemption.

## IV.    Plaintiff Failed to Plead Facts Sufficient to Demonstrate Article III Standing to Seek Injunctive Relief

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018). This limitation is effectuated through the requirement of standing, which is a threshold question in every federal case and determines the power of the court to entertain suit. *See id.* As observed in *Raines v. Byrd*, 521 U.S. 811, 819 (1997), the Supreme Court of the United States has "always insisted on strict compliance with this jurisdictional standing requirement." To

obtain injunctive relief, the constitution requires that a plaintiff allege a risk of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983). "Past exposure to illegal conduct is insufficient to show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 102.

"A lack of standing is a defect of subject matter jurisdiction." *Robinson v. Hornell Brewing Co.*, Civil No. 11-2183 (JBS-JS), 2012 WL 6213777 at *8 (D.N.J. Dec. 13, 2012) (citing *McCray v. Fidelity Nat. Title Ins. Co.*, 82 F.3d 229, 243 (3d Cir. 2012)). *See Cortland Street Recovery Corp. v. Hellas Telecommunications*, 790 F.3d 411, 416-17 (2d Cir. 2015) (observing that when a plaintiff lacks constitutional standing to bring an action, the court lacks the statutory or constitutional power to adjudicate the matter).

The question of Article III standing requires adjudication of questions of federal law, including jurisdiction over the subject matter, conferred under the United States Constitution, and that issue is to be decided based upon the law of the Second Circuit. *See Menowitz*, 991 F.2d at 40 (observing that the transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit).

The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Accordingly, "federal courts are without jurisdiction to decide abstract or hypothetical questions [of] law." *Ross v. Bank of Am. N.A.*, 524 F.3d 217, 222 (2d Cir. 2008) (quoting *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006)).

In the consumer context, courts have dismissed claims for injunctive relief due to lack of Article III standing.   In *Nicosia v. Amazon.com, Inc.*, *supra*, 834 F.3d at 239, the Court affirmed the trial court's dismissal of plaintiffs' claim for an injunction for lack of standing, reasoning that, "[e]ven assuming his past purchases of *1 Day Diet* resulted in injury and that he may continue to suffer consequences as a result, he has not shown that he is likely to be subjected to further sales by Amazon of products containing sibutramine." *Id.* at 239.  *See also Kommer*, *supra*, 710 Fed. Appx. at 44 (affirming the district court's dismissal of plaintiff's claim for an injunction because plaintiff failed to allege that he intended to purchase the offending product in the future and conceded that he was no longer likely to purchase the product again).

Other decisions in this District have followed this constitutional mandate.  *See Casey v. Odwalla*, 338 F. Supp. 3d 284, 300 (S.D.N.Y. 2018) (dismissing claim for injunction where plaintiff failed "to allege that she will purchase Odwalla products in the future at all, let alone the Juices"); *Buonsera v. Honest Tea Co., Inc.*, 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (dismissing claim for injunctive relief for lack of Article III standing because plaintiff "has not alleged that he will purchase Honest's products in the future"); *Albert v. Blue Diamond Growers*, 151 F. Supp. 3d 412, 418 (S.D.N.Y. 2015) (holding that the plaintiffs, who did not allege they would purchase the deceptive product in the future, did not have standing to seek injunctive relief); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, No. 13-cv-150 (JPO), 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015) (finding that, because plaintiffs failed to allege a risk of future harm, "they lack[ed] standing to seek a forward-looking injunction"), *appeal withdrawn* (Nov. 10, 2015).

Plaintiff does not plead that he will purchase the Defendants' products again.  He does not allege any irreparable harm or a threat of future injury.  Instead, he alleges only that "if [he] could rely upon the truthfulness of Defendants' labeling, he would continue to purchase the Products in the future."  (ECF 42, ¶43).  Plaintiff's assertion is entirely hypothetical and fails to constitute a claim a likelihood of future injury.

Plaintiff also alleges that he will continue to be deceived.   (ECF 42, ¶36).   That allegation, however, is implausible because Plaintiff asserts that an ingredient in the beverage, citric acid, is a preservative and that, had he "known the truth," he would not have made the purchase.  (ECF 42, ¶39).  Because Plaintiff now alleges awareness that the products contain a preservative, his allegation that he will be deceived again by the labeling defies common sense. In any event, taken at face value, the allegation of future deception does not amount to a claim of irreparable injury.

Because Plaintiff has not and cannot plausibly allege any real or immediate threat of injury, or the likelihood of future or continuing harm, Plaintiff lacks Article III standing to seek injunctive relief.

**V.**     **Plaintiff's Fraud Claims Lack the Specificity Required Under Rule 9(b) of the Federal Rules of Civil Procedure**

In order for fraud claims "to survive a motion to dismiss, 'a party must state with particularity the circumstances constituting fraud or mistake.'"     *Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12 Civ. 4025, 2013 WL 6667601 *5 (S.D.NY Dec. 17, 2013) (quoting *Fed R. Civ. P.* 9(b)).  Fraud claims must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI*

*Communications, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007); see also *Mattero v.*
*Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1116 (N.D. Cal. 2018).

"The purpose of Rule 9(b) is to give defendants sufficient notice of the alleged fraudulent
conduct so that defendants can adequately defend against the allegations." *Gitson v. Trader*
*Joe's Co.*, No. 13-CV-01333, 2014 WL 1048640 at *3 (N.D. Cal. Mar. 14, 2014).  While fraud
may not be a necessary element of a CLRA or UCL claim, the allegation that a defendant
engaged in a unified course of fraudulent conduct is "grounded in fraud" and the complaint "as a
whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.,* 567
F.3d 1120, 1124-25 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. U.S.A.,* 317 F.3d 1097, 1104-05
(9th Cir. 2003).

Plaintiff alleges fraud and/or deceptive conduct in Counts I through III of the Complaint.
However, he has not alleged, with any degree of particularity, the what, where, and when with
regard to his purchases.  He has not stated the date of the purchases, the prices, the container
sizes bought and/or the quantities purchased.  He mentions two products and stores by name but
alleges that he bought the beverage "on several occasions" "roughly two to three times per
week."  (ECF 42, ¶41).  As to location, he alleges that the two stores identified are in Los
Angeles but does not state their street addresses.  (ECF 42, ¶41).

Plaintiff also makes generalized allegations about "deceptive advertising," (ECF 42, ¶10),
and sues for material misrepresentation under the California False Advertising Law in Count III.
(ECF 42, ¶94).  However, he does not allege what the advertisements stated, who made the
statements, when or where he saw the advertisements, in what form the advertisements were
furnished (*i.e.*, print, radio and/or website), and how the advertisements damaged him.

All of these facts are uniquely within Plaintiff's knowledge and, consistent with Rule 9(b), must be pled with more particularity to apprise Defendants of the factual basis underlying the fraud claims. That failure provides just grounds to dismiss the fraud claims in Counts I, II and III.

**VI.    Plaintiff's Claim for Monetary Damages Under the CLRA is Barred Because Plaintiff Failed to Furnish Notice as Mandated by Section 1782(a)**

To assert a damage claim under the CLRA, a plaintiff must comply with the prerequisites set forth in California Civil Code § 1782(a). Section 1782 provides:

(a)    **Thirty days or more prior to the commencement of an action for damages** pursuant to this title, the consumer **shall** do the following:

    (1)    Notify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 of the **particular alleged violations of Section 1770**.

    (2)    Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

    The notice **shall** be in writing, and **shall** be sent by certified or registered mail, return receipt requested, to the place where the transaction occurred or to the person's principal place of business within California.

(b)    . . . [n]o action for damages may be maintained under Section 1781 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice.

[Cal. Civ. Code § 1782(a) (emphasis added)]

**A.    Plaintiff's Notice was Late**

No pre-suit notice is required if a claimant is seeking only injunctive relief under the CLRA. Cal. Civ. Code. § 1782(d); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). To state a damage claim under the CLRA, Plaintiff must demonstrate that he furnished the required notice.

Plaintiff alleges that he provided pre-suit notice to Defendants by letters dated May 15, 2019, which were received on May 20, 2019. (ECF 42, ¶85). No letters were annexed to the Complaint. Since Plaintiff initiated this action on May 14, 2019, the May 15, 2019 letters did not provide the mandatory pre-suit notice to Defendants.

### B.    Restitution is a Claim for Damages Under the CLRA

Plaintiff's initial complaint included a CLRA claim seeking restitution. (ECF 1, ¶80). A claim for restitution is but one version of a claim for damages. *Dufresne v. Veneman*, 114 F.3d 952, 954 fn.2 (9th Cir. 1997); *California v. United States*, 104 F.3d 1086, 1095 (9th Cir. 1997).

Federal courts in California have held that pre-suit notice is required even where the only monetary relief sought is restitution. For example, in *Laster v. T-Mobile USA, Inc.*, No. 05-cv-1167 DMS (AJB), 2008 WL 5216255, at *17 (S.D. Cal. Aug. 11, 2008), *aff'd sub nom.*, *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 333 (2011), the court dismissed the plaintiff's restitution claim, under the CLRA, for lack of notice. In *Laster*, plaintiff unsuccessfully argued that restitution was like injunctive relief and not subject to the notice requirement. *Ibid.* The court rejected that argument, finding that restitution is a claim for damages under the CLRA, and dismissed that claim for lack of the required notice under the CLRA. *Id.* at *23. Other federal courts in California agree that restitution is a claim for damages under the CLRA, requiring pre-suit notice. *See Reed v. Dynamic Pet Prods.*, No. 15-cv-0987-WQH-DHB, 2015 WL 4742202, at *7 (S.D. Cal. July 30, 2015) (stating that the pre-filing notice requirement applies to requests for restitution and/or disgorgement). *See also Cuevas v. United Brands Co.*, No. 11-cv-991, 2012 WL 760403, at *4 (S.D. Cal. Mar. 8, 2012) (finding that a "claim for the equitable relief of disgorgement or restitution was still a claim for damages").

There have been decisions in district courts in California and New York that have ruled that restitution does not constitute a damage claim under the CLRA. See *Vacic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d 1034, 1041 (S.D. Cal. 2016); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008). A decision in the Eastern District of New York, *Chang v. Fage USA Dairy Industries, Inc.*, 14–CV–3826-MKB, 2016 WL 5415678, at *11 (E.D.N.Y. Sept. 28, 2016) also ruled that restitution is not damages under the CLRA.

Defendants respectfully submit that the decisions holding that restitution is a damage claim under the CLRA, and requires pre-suit notice, are more persuasive authority on this question. These cases are based upon a rigorous statutory analysis concerning the CLRA and have addressed that the CLRA exempts the notice requirement for claims seeking an injunction only. Cal Civ. Code § 1782(d). *See Reed*, 2015 WL 4742202 at *7 (citing to *Laster's* rationale that the statute only exempts injunctive relief from the notice requirement). To read a further exception into the statute and allow restitution claims to be filed without pre-suit notice cannot be supported by the text of the statute. As a generally well-accepted rule of statutory construction, the plain meaning of a statute governs absent any ambiguity. *See Hunt v. Superior Court*, 21 Cal. 4th 984, 1000 (Cal. 1999).

C.     **Plaintiff's Failure to Furnish Pre-Suit Notice Requires Dismissal of the CLRA Damage Claims With Prejudice**

The CLRA notice requirements must be strictly adhered to under the holding in *Outboard Marine Corp. v. Superior Ct. of Sacramento Cty.*, 52 Cal. App. 3d 30, 40-41 (Cal. Ct. App. 1975). Failure to comply with the notice requirements set forth in Section 1782(a) requires dismissal of the CLRA damage claims with prejudice. *Cattie*, 504 F. Supp. 2d at 950; *Laster*, 407 F. Supp. 2d at 1196; *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003);

*Waller v. Hewlett-Packard Co.,* No. 11-cv-0454, 2011 WL 6325972, at *6 (S.D. Cal. Dec. 16, 2011).

There is authority that permits a court to dismiss the complaint without prejudice but, generally, those decisions relate to circumstances not present here including when the complaint alludes to damages prematurely. *See, e.g., Morgan v. AT&T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235, 1261 (Cal. Ct. App. 2009) (addressing circumstances where a dismissal with prejudice is not required). *See also Trabakoolas v. Watts Water Tech., Inc.,* No. 12-cv-01172-YGR, 2012 WL 2792441, at * 6-7 (N.D. Cal., July 9, 2012) (finding that a claim for damages was asserted where plaintiffs sought an order requiring defendant to replace defective plumbing equipment, rendering that claim subject to pre-suit notice requirements, but dismissing claims without prejudice).

If Plaintiff's pre-suit notice was merely deficient—instead of non-existent—he may have a basis to argue that his complaint should be dismissed without prejudice. Instead, Plaintiff sued, in his individual capacity and in a putative class action, for monetary damages, without furnishing Defendants with any pre-suit notice required by Cal. Civ. Code § 1782(a). Under such circumstances, consistent with Cal. Civ. Code §1782(b) and the holdings in *Cattie, Laster, Von Grabe,* and *Waller,* Plaintiffs' claims for restitution damages under the CLRA should be dismissed with prejudice.

## VII.   Just Grounds Exist to Dismiss or Otherwise to Strike Plaintiff's Nationwide Class Claims For Unjust Enrichment

Plaintiff's claims include a count to certify a nationwide class for unjust enrichment. (ECF 42, ¶51(a); Count V). "In analyzing putative, nationwide, consumer-protection class actions, several courts have determined that the law of the state where each plaintiff resides and

purchased the relevant product should apply." *In Re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 146 (S.D.N.Y. 2008) (citations omitted).

In *Mazza*, the Ninth Circuit addressed an appeal where the district court had granted nationwide class certification of a consumer class applying California consumer protection laws. *Mazza, supra*, 666 F.3d at 587-88. The Ninth Circuit reversed and, in the decision, stated there were material differences in the consumer protection statutes and in the laws regarding unjust enrichment. *Id.* at 591. Likewise, in *Grand Theft Auto,* the court was persuaded by decisions in other cases on this issue and found "there are relevant conflicts in the states' unjust enrichment laws." *Grand Theft Auto*, 251 F.R.D. at 147.

Under such circumstances, the nationwide class claims here ought to be dismissed for failure to state a claim. S*ee Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2016 WL 344479, at *7 (N.D. Cal. Jan. 28, 2016) (granting defendants' motion to dismiss nationwide unjust enrichment claims based on the holding in *Mazza* and due to material differences between unjust enrichment laws in all fifty states). *See also Goldberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 97 Civ. 8779, 1998 WL 321446, at *9 (S.D.N.Y. June 18, 1998).

Other federal courts in California have applied *Mazza* to rule that when the laws of fifty states are to be applied to nationwide claims of the case, including unjust enrichment, Rule 23(b)(3)'s predominance requirement cannot be met. *See Martinelli, supra,* 2017 WL 2257171, at *5; *Darisse, supra*, 2016 WL 4385849, at *15. A court in this District also denied class certification on multi-state unjust enrichment claims based on the significance of state law variations that defeated the predominance of common issues and the superiority of trying the case as a class action. *See Hanks, supra*, 330 F.R.D. at 387.

Rule 23 provides that the court, "[a]t any early practicable time . . . , must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A).  The Supreme Court of the United States has recognized that "[s]ometimes the issues are plain enough from the pleadings to determine whether" class certification is appropriate in a given case. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

Rule 23 requires not only the existence of common questions of fact or law among class members but that those common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The predominance requirement of Rule 23 cannot be met where fifty laws govern the class's claims. *Lewis Tree Serv., Inc. v. Lucent Tech., Inc.*, 211 F.R.D. 228, 236 (S.D.N.Y. 2002) (citing *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1019 (7th Cir. 2002)). S*ee also Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 605-06 (S.D.N.Y. 1982) (finding that the commonality requirement of Rule 23 was not met where forty-nine states interpreted differently the same text of the Uniform Commercial Code).

Therefore, in addition to providing grounds for dismissal, the nationwide class claims for unjust enrichment may be stricken under Rule 12(f).  That rule permits a court to "strike from a pleading an insufficient defense, or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f).  *See Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 469-70 (S.D.N.Y. 2013); *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1-2 (S.D.N.Y. Mar. 31, 1999). *See also Walters v Vitamin Shoppe Industries, Inc.*, No. 3:14-cv-1173-PK, 2018 WL 2424132, at *4 (D. Or. May 8, 2018) (allowing defendant to move to strike class allegations under Rule 12(f)).

Although motions to strike class allegations at the pleading stage are disfavored, "plaintiff's allegations must be 'sufficient to show that it is plausible that plaintiffs will be able to

satisfy Rule 23 requirements after conducting discovery.'" *Davis v. Navient Corp.*, No. 17-cv-00992, 2018 WL 1603871, at *5 (W.D.N.Y. 2018) (quoting *Bourbonnais v. Ameriprise Fin. Servs., Inc.*, 14-c-966, 2015 WL 12991000, at *7 (E.D. Wis. 2015)).   A motion to strike class allegations on the pleadings is appropriate where discovery is not necessary for a court to evaluate whether a class action may be maintained.   *Wright v. Family Dollar, Inc.*, No. 10-c-4410, 2010 WL 4962838 at *1 (N.D. Ill. Nov. 30, 2010).   Similarly, here, no discovery can alter the legal obstacle to nationwide class certification because the individual questions that predominate over alleged common issues are insuperable.

### A.    Based Upon A Conflict-of-Law Analysis, Whether Under the California or New York Tests, Each State's Unjust Enrichment Law Applies

"California law may only be used on a classwide basis if 'the interests of other states are not found to outweigh California's interests in having its law apply.'" *Mazza*, 666 F.3d at 590 (quoting *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 921 (Cal. 2001).   California courts apply the following "three-step governmental interest test":

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.
>
> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza*, 666 F.3d at 590 (quoting and adopting the test from *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (Cal. 2010)).

The conflict of law test under New York law is similar to California. *Grand Theft Auto*, 251 F.R.D. at 150. That standard requires the Court to determine whether there is an actual conflict between the laws of the jurisdictions. *Id.* at 147. In the event a conflict exists, the court is to "determine which jurisdiction has the greatest interest in [the] litigation." *Id.* at 148. Under either the California or New York test, material conflicts exist and each individual state's interest in applying their own law, for causes of action that occur within their borders, overrides any other state's interest.

1.   **Material Conflicts Exist Between the Unjust Enrichment Laws of the Fifty States**

A conflict of laws "only arises if differences in state law are material, that is, if they make a difference in this litigation." *Mazza*, 666 F.3d at 590. In addition to *Mazza*, other courts have found that the fifty states' unjust enrichment laws are significantly different and inherently impact litigation. *See Hanks*, 330 F.R.D. at 386-87; *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 513-14 (D. Minn. 2014); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 583–84 (N.D. Ill.2013); *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 323–25 (D. Del. 2012); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 696–98 (N.D. Ga. 2008); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008). The Alabama Supreme Court has spoken out emphatically against certification of a class in the unjust enrichment context. *White v. Microsoft Corp.*, 454 F.Supp.2d 1118, 1134 n. 25 (S.D. Ala. 2006).

In the within case, the differences among the states with respect to their unjust enrichment laws, are material because they concern varied elements of proof and the availability of defenses that are outcome determinative. As observed in *Hanks*, variations "between how 'unjust' conduct must be to satisfy a claim of unjust enrichment, even if the underlying conduct

at issue is the same across states, is a material difference.'" *Hanks*, 330 F.R.D. at 386.  To that end, courts have found that "state laws vary widely regarding how 'unjust' a defendant's conduct must be to give rise to a recovery on an unjust-enrichment claim." *Rapp*, 302 F.R.D. at 514 (highlighting the different requirements of asserting unjust enrichment in Alabama, Montana, and Arkansas).

Some states require the recipient of the benefit to have engaged in some unconscionable conduct, such as fraud or coercion (New Hampshire), while other states require no misconduct at all by the recipient of the benefit (Hawaii). *Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc.*, 145 N.H. 158, 163 (N.H. 2000) (stating that New Hampshire requires defendant to have acted "wrongfully"); *Television Events & Mkg., Inc. v. Amcon Distr. Co.*, 488 F. Supp. 2d 1071, 1078 (D. Haw. 2006) (acknowledging that Hawaii does not require a showing of misconduct).

Even between states requiring proof of misconduct, there are variations in proof of the quantum of misconduct required.  In Minnesota, for example, a plaintiff must prove fraudulent or illegal acts. *In re Farr*, 407 B.R. 343, 351 n.23 (B.A.P. 8th Cir. 2009) (collecting cases).  It was on that basis that in *Brakke v. Hilgers*, a Minnesota court denied the plaintiffs' claim of unjust enrichment because there was no proof of a plot for "unfair advantage." *Brakke v. Hilgers*, 374 N.W.2d 553, 556 (Minn. Ct. App. 1985).  S*ee Custom Design Studio v. Chloe, Inc.*, 584 N.W.2d 430, 433 (Minn. Ct. App. 1998).

North Dakota, however, is not as stringent and requires "an element of misconduct or fault or undue advantage taken by one party of another." *Jerry Harmon Motors, Inc. v. Heth*, 316 N.W.2d 324, 328 (N.D. 1982).  In *Jerry Harmon Motors*, the parties agreed to a retail installment contract for the purchase of a four-wheel-drive van, but after signing the contract, the purchaser was informed that the installation of a four-wheel drive converter kit was accidentally

omitted from the invoice as a separate item with additional costs. *Id.* at 325. The kit was then quoted to be between $1,000 to $2,000, but an exact amount could not be determined. *Ibid.* Later, the cost of the kit was determined to be over $3,100. *Ibid.* The court found that the seller did not "employ[] deception, but rather that [seller] through its representatives initially made a mistake by not including the price of the 4-wheel drive conversion kit in the price originally quoted to" the purchaser, and nonetheless held that the purchaser was unjustly enriched by $2,000, the maximum amount he could have anticipated as the cost for installation. *Id.* at 330.

Connecticut, on the other hand, has few guiding principles to determine whether a given enrichment is considered unjust and requires a case-specific analysis. *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006) ("With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard."). Thus, under Connecticut law, minute differences in the facts are outcome determinative. For example, in *Vertex*, when a company provided computer services to a municipality under contract and then provided supplemental services, but there was a dispute over the need for, and existence of, a supplemental contract, the court held that unjust enrichment was a viable claim. *Id.* at 573-78. Conversely, when a company provided "borrow fill" to a municipality, but did so over and above the contracted amount, and did not timely notify the municipality of the surplus, the plaintiff could not recover for unjust enrichment. *Cecio Bros. v. Town of Greenwich*, 156 Conn. 561, 568-69 (1968).

Moreover, some states such as Texas and Alabama require a finding of intentional conduct. *Hanks*, 330 F.R.D. at 386. In contrast, other states, like Pennsylvania, do not have

intentionality as an element of proof. *See, e.g.*, *Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 917 (2017). Other states bar unjust enrichment claims when there is an adequate legal remedy. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) (discussing Massachusetts law); *United States v. Bame*, 721 F.3d 1025, 1030 (8th Cir. 2013) (discussing Minnesota law).

Some states require that the recipient of the enrichment have knowledge of or appreciation of the enrichment. *See, e.g.*, *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006). Other states such as Michigan, do not have such a requirement. *Franklin Bank v. Zero Plus Advantage*, No. 212712, 2001 WL 682228, at *3 (Mich. Ct. App. Apr. 20, 2001).

In terms of defenses, additional material conflicts exist. For instance, with respect to unclean hands in Alabama, the defendant has to prove "morally reprehensible, willful misconduct" by the claimant. *Retail Developers of Ala. LLC v. E. Gadsden Golf Club, Inc.*, 985 So. 2d 924, 931 (Ala. 2007). Nevada, however, requires a two-part balancing inquiry into egregiousness, analyzing misconduct and the seriousness of harm caused. *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahearn Rentals, Inc.*, 182 P.3d 764, 767 (Nev. 2008).

The statutes of limitations vary substantially for unjust enrichment claims, ranging from two to ten years. *Compare Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (observing Texas's two-year statute of limitations), *with Caveness v. State Dep't of Transp. & Dev.*, 846 So.2d 866, 870 (La. Ct. App. 2003) (stating that Louisiana has a ten-year limitation). The statutes of limitations in the remaining states vary. Some states like Delaware have a three-year statute of limitations. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. Sup. 2004). Georgia, among others, has a four-year limitations period, *see Engram v. Engram*, 265 Ga. 804, 806 (1995), others have a five-year period, *see Dolezal v. City*

*of Cedar Rapids*, 326 N.W.2d 355, 360 (Iowa 1982), while others have a six-year period, *see Angelini v. Delaney*, 156 Or. App. 293, 305 (Ct. App. 1998).

### 2.      The Interests of Foreign Jurisdictions is Compelling

Principles of federalism imbued in our federal constitution underscore each state's interest in "mak[ing] its own reasoned judgment about what conduct is permitted or proscribed within its borders."   *Mazza*, 666 F.3d at 591 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003)).   California recognizes that "a jurisdiction ordinarily has 'the predominant interest' in regulating conduct that occurs within its borders."  *McCann*, 48 Cal. 4th at 97-98 (citations omitted).   Every state "has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them."  *Mazza*, 666 F.3d at 592.  States also have an interest in "being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and business in the event they are faced with litigation in the future."  *McCann*, 48 Cal. 4th at 98.

Plaintiff purports to represent customers who purchased the Products in all fifty states. However, as the Ninth Circuit recognized in *Mazza*, 666 F.3d at 592, and as reiterated in *Grand Theft Auto*, 251 F.R.D. at 149, each state has an overriding interest in protecting its own citizens and having its laws applied to transactions consummated within its borders.

### 3.      The State That Does Not Have Its Own Laws Applied is Most Impaired

As observed in *Mazza*, "the importance of federalism when applying choice of law principles to class action certification is reinforced by the Class Action Fairness Act of 2005" ("CAFA").  *Mazza*, 666 F3d at 593.  Based upon the underlying purpose of CAFA, *Mazza* cited

to its legislative history noting "courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions." *Ibid.* (citations omitted).

Each state's individual interest in protecting its residents would be substantially impaired if its policies were subordinated to the laws of a state other than the state where the transaction occurred. In that regard, California recognizes that, with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest. *Mazza,* 666 F.3d at 593 (citations omitted). California considers the "place of the wrong" to be the state where the last event necessary to make the actor liable occurred. *See McCann*, 48 Cal. 4th at 94 n. 12. In the consumer fraud context, "California considers the geographic location of the omission or where the misrepresentations were communicated to the consumer as the place of the wrong." *Darisse*, 2016 WL 4385849, at *15. *See also Mazza*, 666 F.3d at 594 (noting that the location of the "communication of the advertisements to the claimants and their reliance thereon in purchasing" the product).

Under California conflicts of law principles, the place of the wrong would be the state in which each plaintiff purchased Defendants' beverage. Those states would be most impaired if their laws were not applied to transactions occurring within their borders. *Darisse*, 2016 WL 4385849, at *14. *See also Mazza*, 666 F.3d at 593 ("[I]f California law were applied to [foreign transactions], foreign states would be impaired in their ability to calibrate liability to foster commerce"); *Schwartz v. Lights of Am.*, 2012 WL 4497398, at *6-9 (C.D. Cal. Aug. 31, 2012) (concluding that the interests of forty-nine foreign states would be impaired if California consumer protection laws were applied to the claims of a nationwide class); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing purchaser's state

claims "because none of the named plaintiffs reside in or are alleged to have personally purchased [the product] in any of these twenty-four states").

Further, California has little interest in applying its own laws to non-residents based on transactions occurring in other states. Here, any minimal interest California has in applying its laws to non-resident class members is substantially outweighed by the interests of the consumers' home states. The events necessary to establish liability for non-resident class members – viewing a "No Preservatives" label on the can or bottle and relying on that claim, resulting in purchases – took place outside of California. California's interest in applying its laws is even more attenuated because Defendants' principal place of business and headquarters are alleged to be in New York. (ECF 42, ¶¶15-19).

Under California or New York conflicts of law tests, each putative class members' claims are governed by the laws of the state where they saw the "No Preservatives" label, relied on it, and purchased the product. Because of the materially conflicting laws in the fifty states, Plaintiff cannot satisfy the requirements of Rule 23(b)(3) for the nationwide class he seeks to represent, and just grounds exist to dismiss or otherwise strike the nationwide class certification claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to dismiss Plaintiff's Complaint and/or dismiss or otherwise strike the nationwide class claim for unjust enrichment.

Dated:  October 14, 2019              Respectfully submitted,

                                      /s/ Robert P. Donovan
                                      Robert P. Donovan

McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP
570 Broad Street, Suite 1500
Newark, New Jersey 07102
Telephone:  (973) 622-7711
Facsimile:    (973) 622-5314
*rdonovan@mdmc-law.com*
Attorneys for Defendants, Arizona Beverages USA
LLC, Hornell Brewing Co., Inc., Beverage
Marketing USA, Inc., Arizona Beverages Holdings
LLC and Arizona Beverages Holdings 2 LLC