K8q3ashc

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -------------------------------x

3    AHMED ASHOUR,

4                    Plaintiff,              New York, N.Y.

5              v.                            19 CV 7081 (AT)(OTW)

6    ARIZONA BEVERAGES USA, LLC, et
     al.,
7
                    Defendants.
8
     -------------------------------x       Teleconference
9
                                            August 26, 2020
10                                          11:00 a.m.

11   Before:

12                        HON. ONA T. WANG,

13                                          Magistrate Judge

14

15                        APPEARANCES

16

17
     REESE, LLP
18        Attorneys for Plaintiff
     BY:  CARLOS F. RAMIREZ
19             -AND-
     PEARSON, SIMON & WARSHAW, LLP
20        Attorneys for Plaintiff
     BY:  JOSEPH C. BOURNE
21

22   McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
          Attorneys for Defendants
23   BY:  ROBERT P. DONOVAN
             KATHLEEN N. FENNELLY
24

25
```

K8q3ashc

1          THE DEPUTY CLERK:  19 CV 7081, Ashour v. Arizona

2    Beverages, et al.  The Honorable Ona T. Wang presiding.

3          Counsel, can you please state your appearances.

4          MR. RAMIREZ:  Carlos Ramirez for plaintiff Ahmed

5    Ashour.

6          MR. BOURNE:  Joseph Bourne for the plaintiff Ahmed

7    Ashour.

8          MR. DONOVAN:  Good morning, your Honor.  Robert

9    Donovan on behalf of the defendants.

10         MS. FENNELLY:  Good morning.  Kathleen Fennelly on

11   behalf of defendants.

12         THE COURT:  All right.  Good morning, everyone.  This

13   is Judge Wang.  We are here for a discovery conference, and I

14   just have a few warnings and preparatory remarks.

15         We do have a court reporter on the line, so you should

16   treat this almost as if you are at an audio-only deposition.

17   In other words, say your name before you speak.  I think

18   Ms. Fennelly and I may be the only ones who might be able to

19   get away with not having to say our names before we speak.

20         Do your best not to interrupt each other.  I assure

21   you, you will all get a chance to be heard.  Try to mute your

22   line if you're not speaking.  I will do the same when somebody

23   else is speaking.  That just cuts down on the external noise

24   and makes it easier for everyone to hear.

25         There may be members of the public and press listening

K8q3ashc

1    in on this public line.  If members of the press and public are

2    listening, they are to remain on mute.  And there is to be no

3    other recording or transmission of this conference.

4            Then lastly, although I never run into a problem with

5    this doing the audio conferences, of course, comport yourselves

6    as you would in my courtroom.  The only reason why we are doing

7    this on the phone and not in person is of course because of the

8    pandemic.

9            So, with that started, I'm going to ask defendants to

10   talk to me about their discovery requests and responses

11   shortly, and I'd like to take the requests for production

12   first, then talk about the requests for admissions, and then

13   talk about the interrogatories.

14           But right before I do that, I did want to tell you

15   both, I'm not to rule out of the gate that the requests

16   themselves are objectionable due to their sheer number, but I

17   do have some concerns that for a case involving these facts and

18   these claims that there may have been, in an effort to dot

19   every i and cross every t, there may have been more drafting

20   than was necessary.

21           The other concern I have is whether -- I understand

22   that the parties have gone through the meet and confer process.

23   I'm a little concerned that it might not have been as robust as

24   I would have liked.  Because I think there are some of these

25   where the parties could have reached an agreement on what to do

K8q3ashc

1    about them before having to have a conference.

2              That said, I'm here.  I'm prepared to rule on the

3    record, which is why we have a court reporter here.

4              But I'd like to hear your arguments briefly, and hear

5    your positions.  And so first I guess let's hear from defense

6    counsel about requests for production first.  And then I'll

7    hear from the plaintiffs on the requests for production, and

8    then we'll take each category of document requests in turn.

9    Now I'm going to put myself on mute.  All right.  Go ahead.

10             MR. DONOVAN:  Thank you, your Honor.  This is Robert

11   Donovan.  As we set forth in our letters to the Court, this is

12   a complex action.  A putative nationwide class certification.

13   And the complaint has multiple complex scientific allegations.

14   And we detailed that in our letter over 130 allegations, five

15   counts, five defendants, naming 16 beverages, 23 photographs,

16   and that the nature of the claims, the complex allegations, the

17   scope of them, impacted the number of requests.

18             Having said that, I understand the Court's view that

19   perhaps some of the requests were duplicative, but as we

20   pointed out, that could also be because of the number of

21   allegations.  And a vast number of the requests relate directly

22   to allegations, your Honor.  And we detailed them in our letter

23   to the Court on August 21.

24             I don't want to belabor, you know, the point on that

25   score.  We've addressed the requests, we've summarized them,

K8q3ashc

1   and so, with respect to the document requests, we've set forth

2   why they're relevant, and the reasons for propounding them.

3           We've also agreed to withdraw without prejudice much

4   of the -- well, some of the main focal points of our

5   discussions with opposing counsel, if your Honor recalls, back

6   in June when they wrote their letter, plaintiff took umbrage at

7   making requests about seeking information regarding whether

8   plaintiff's counsel firm filed bankruptcy.  We, you know, had

9   withdrawn that request.  But by the same token have addressed

10  why those requests or that request could be relevant.  And we

11  offered to withdraw it early on.  The plaintiff's position as I

12  understood it --

13          THE COURT:  Okay.  So request number 71 and 80 are

14  withdrawn.  I don't need to rule on that then, right?

15          MR. DONOVAN:  71 -- well, not 80, your Honor.  71.  In

16  retrospect I guess 80.

17          THE COURT:  Talk to me about 80 then.

18          MR. DONOVAN:  Okay.  So, I think as long as we

19  received the retainer agreement, your Honor, the retainer

20  agreement would bear upon whether and what assets the plaintiff

21  and counsel have with regard to providing or paying for

22  expenses relative to the lawsuit.  So if the retainer

23  agreement's provided, I think 80 can be withdrawn.

24          THE COURT:  All right.

25          MR. DONOVAN:  Without prejudice.

K8q3ashc

1          THE COURT:  First ruling of the morning.  Plaintiffs

2     are directed to provide the retainer agreement to defendants

3     and then request 71 and 80, document requests 71 and 80 are

4     withdrawn.  Okay.

5          Next?

6          MR. DONOVAN:  And the same is true with regard, and

7     again, your Honor, during the meet and confer, the meet and

8     confer back and June and then the meet and confer after you

9     received the response to discovery.  And the other issue that

10    was principally raised by plaintiff dealt or concerned the

11    requests for the passport.  And as we've addressed in our

12    letter, your Honor, the issue of the location of the plaintiff

13    is relevant to the claims.  The plaintiff has alleged --

14         THE COURT:  Let me stop you right there.  So,

15    plaintiff's passport will tell you whether he was in California

16    or not?

17         MR. DONOVAN:  Your Honor, I'm just explaining why we

18    propounded it.  And what we --

19         THE COURT:  I don't need to hear why if you are going

20    to withdraw it.

21         MR. DONOVAN:  We're agreeing to withdraw it as long as

22    the responses to requests 17, which deal with -- the plaintiff

23    alleged, your Honor, that he resides in Los Angeles,

24    California, through all relevant periods in this case.  So --

25         THE COURT:  You don't hold copies of a passport

K8q3ashc

1    hostage for getting responses to a different request.  That

2    request either is relevant and proportional or it's not.  It

3    stands on its own, okay.  I'm not hearing anything about the

4    passport that would be probative as to whether the plaintiff

5    spent the last seven years in California or how much time he

6    spent in California as opposed to, say, another state.  So --

7             MR. DONOVAN:  Your Honor, if I may.

8             THE COURT:  If you are not going to withdraw it, I am

9    going to strike that one as well.

10            MR. DONOVAN:  We'll withdraw it, your Honor.  But if I

11   could explain why that request was made.

12            THE COURT:  No.  It's withdrawn, so you don't need to.

13            What about request number 17?

14            MR. DONOVAN:  Your Honor, they've alleged, plaintiff

15   alleged that they reside in Los Angeles County during all

16   periods relevant to their purchases.  And we've cited to case

17   law that states that the location of the plaintiff is relevant

18   for purposes of determining standing and for purposes of

19   determining whether a cause of action is cognizable.

20            THE COURT:  Why do you need releases?  Why do you need

21   releases?  Why can't you ask this question in a deposition?

22            MR. DONOVAN:  Your Honor, because --

23            THE COURT:  Ask for all the last known addresses in

24   the last seven years.

25            MR. DONOVAN:  Your Honor, that's true, we can ask at

K8q3ashc

deposition, but the documents would be confirmatory evidence of

that.  Asking someone where they lived and then not having

documents, if the question is relevant, then documents

confirming or evidencing that are likewise relevant.

THE COURT:  You get the answer under oath in

deposition.  It will take far less time than we've already

spent in this conference to get that information.  Or, you can

work with plaintiff, plaintiff's counsel, and get a list of the

addresses and ask for something, public records or something

else.

MR. RAMIREZ:  We have provided that already.  Verified

by the plaintiff in our interrogatory under penalty of perjury.

THE COURT:  Who is speaking now?

MR. RAMIREZ:  I'm sorry.  This is Carlos Ramirez for

plaintiff.  I just wanted to indicate that we have already

provided that information to counsel for the required period,

and it has been done by verification of the plaintiff.

THE COURT:  Okay.  Why is that not enough,

Mr. Donovan?

MR. DONOVAN:  Your Honor, again, they've stated where

they live, but I'll pull the answer, your Honor.  Again, your

Honor, there is a portion of the response by the plaintiff

which is marked "confidential."  Without divulging the

confidential nature, which deals with where the plaintiff was

originally from and where he graduated high school from, which

K8q3ashc

1    is overseas.  So, suffice it to say, Judge, I'm back to the --

2    if the plaintiff alleges that he resides in California through

3    the scope of relevant purchases, his location -- for want of a

4    better term, you know, we're entitled to look at documents that

5    would corroborate or confirm that statement.

6         Just because the plaintiff testifies to it, doesn't

7    make it so.  So, documents that would prove, whether it be a

8    driver's license, whether it be a lease that shows that he was

9    living somewhere.  It could be redacted.  We have a protective

10   order.  Some confirmatory document that proves that he was in

11   California during the period that -- the four-year period that

12   he says he purchased product.  He says he purchased product

13   from 2014 to 2018.

14        He's originally from overseas, and, frankly, I know

15   we've withdrawn the request, but I'll put on the record why the

16   passport may be relevant, because he may go back overseas

17   during that 2014-2018 period, which would be probative of

18   whether his interrogatories that he bought a product two or

19   three times a week for four years at a particular store.

20        A party is not obliged to just accept someone's

21   statement, whether it's under oath or not.  We are entitled to

22   see if there is documents that are probative or prove that or

23   don't prove that.

24        MR. RAMIREZ:  Your Honor, this is Carlos Ramirez.  I

25   feel that defendants are injecting a standard here that is not

K8q3ashc

1    recognized under the law.  The fact is that it would appear to

2    me that defendants would expect for the plaintiff to never,

3    ever leave the state of California for four years, and if he

4    does, he no longer has standing.

5         I believe that deposition testimony under oath, the

6    verification he already provided to counsel with his addresses

7    is enough under the law.  And just because he's not a U.S.

8    citizen doesn't mean we somehow apply a different and

9    heightened standard.  That simply is not required, and,

10   frankly, sounds discriminatory.

11        MR. DONOVAN:  Judge, I object to that.  This is Robert

12   Donovan.  It's not discriminatory.  They allege --

13        THE COURT:  I am concerned that you are suggesting

14   that a response in an interrogatory is not sufficient at this

15   point in time.  Mr. Ashour hasn't even been deposed yet.  I am

16   not going to require that he -- I find this is also not

17   proportional to get him to get his residential leases over the

18   past seven years.

19        All right.  So, that's my ruling on request for

20   production number 17 as well.  It's been satisfied by the

21   interrogatory responses.

22        What about plaintiff's communications with FBC

23   Industries?  How is that relevant and probative to this case

24   and the claim that Mr. Ashour would have to prove?

25        MR. DONOVAN:  That's an allegation in the complaint,

K8q3ashc

1    your Honor.  They allege that -- not that they had

2    communications, but they allege a statement from FBC Industries

3    in the complaint.  So, I'd like to know whether he had any

4    communications with FBC Industries.

5           THE COURT:  Mr. Ramirez or Mr. Bourne, can you address

6    this one?

7           MR. RAMIREZ:  Absolutely, your Honor.  Again, these

8    are not proportional.  They are irrelevant.  The simple --

9           THE COURT:  No.  I just want to understand, tell me

10   about the statement made by FBC in the complaint or the

11   allegation that FBC made a statement.  Is that a public

12   statement that you can point defendants to?  Tell me how it

13   might or might not relate to the elements of the claims that

14   Mr. Ashour needs to prove.

15          MR. RAMIREZ:  Your Honor, because I don't have that

16   specific paragraph in front of me, I do have the complaint, if

17   counsel for the defendants can please point me to the paragraph

18   so I can look at that.

19          MR. DONOVAN:  It's paragraph 28, your Honor.  And if I

20   may, your Honor, while opposing counsel looks at that, it

21   talks, it refers to in a footnote, I guess it's quoting FBC

22   Industries' website.  And it quotes:  Citric acid is the most

23   commonly used acidulent in the industry.  It states that as a

24   food-grade product, citric acid is used as a flavoring and

25   preservative.  If the --

K8q3ashc

1          MR. RAMIREZ:  Can I answer the question?

2          MR. DONOVAN:  Your Honor, if I may.  If the

3    communication with regard to FBC Industries, if there was

4    communications between the plaintiff and FBC Industries

5    regarding that, that's relevant.  Because --

6          THE COURT:  Wait.  Wait.  Mr. Donovan, you just said

7    yourself that it appears to be a statement on FBC's website.

8    So why on earth would you be looking for any communications

9    between plaintiff and FBC?

10         MR. DONOVAN:  Because if there were communications

11   between -- if FBC is taking the position that it's a

12   preservative and advised the plaintiff of that, the issue of

13   when and how and why they found that out would be relevant.

14   What if they found out about it before they purchased the

15   product?  What if they found out about it after they purchased

16   the product?

17         THE COURT:  Why don't you ask Mr. Ashour about that in

18   a deposition.  This is a request for documents.

19         MR. DONOVAN:  I understand, your Honor.  But if,

20   again, we're back to if the request -- this is an allegation

21   made in the complaint.  And the documents that I'm seeking

22   would be relevant and important, rather, to the deposition.

23   Because if there were communications, I could ask them about

24   them.  If there weren't, there aren't.

25         MR. RAMIREZ:  Your Honor, if I may.

K8q3ashc

1          THE COURT:  Mr. Ramirez, you're winning this argument

2    without even having --

3          MR. RAMIREZ:  I apologize.  I know.  Don't strike oil

4    when you're getting gold, or whatever it is.  I hear you.

5          THE COURT:  Anyway, I mean, this seems to be an

6    assertion that is an issue of fact, whether citric acid is a

7    preservative for the purposes of this case, that if it is not

8    something that a Court could take judicial notice of, it is

9    something that would be argued by the expert.  So I'm not sure

10   how whether plaintiff has had any communications with FBC

11   potentially relates or is proportional to the needs of this

12   case.

13         You can ask that question in the deposition.  If

14   something pops out that is unexpected, you're talking about a

15   footnote in the complaint that talks about the nature of citric

16   acid.  You can ask your own experts, you can defend this case

17   by asserting that citric acid is or is not a preservative.  But

18   I still am not sure how whether plaintiff has had any

19   communications with FBC is --

20         MR. DONOVAN:  Your Honor, I understand.

21         THE COURT:  -- proportional.

22         MR. DONOVAN:  I understand your Honor's rule.  And we

23   can obviously move on.  But again, if there were

24   communications, this is -- there is a quote of the website on

25   paragraph 28 alleging that citric acid is a preservative

K8q3ashc

1    commonly used.  If plaintiff had communications or became aware

2    of that website or had communications with FBC about that

3    statement, e-mail or otherwise, prior to making any of his

4    purchases, that goes to the issue claimed that he was deceived,

5    because he would have allegedly known of this website.

6         THE COURT:  But you can ask the broader issue, as you

7    just put it, Mr. Donovan, is, was there any point in time

8    before Mr. Ashour brought this lawsuit that he came to

9    understand that citric acid was used as a preservative or where

10   he did any research on what citric acid is or whether he asked

11   anybody or he came into this knowledge.

12        The fact that you are trying to develop in defending

13   your case is at what point in time did Mr. Ashour come to know

14   that citric acid was used as a preservative or was commonly

15   used as a preservative, because it's getting to whether

16   labeling on the Arizona iced tea was fraudulent as to him.

17        Asking for communications with one entity that may

18   have made this statement on their website is not proportional.

19   It is not going to get you that ultimate fact, one way or the

20   other.  Okay.  And that's why I said you ask that question at

21   deposition.

22        MR. DONOVAN:  Understood, your Honor.

23        THE COURT:  What about 68, 69 and 79, which my law

24   clerk tells me are agreements concerning this action and

25   others.  Are those still active?

K8q3ashc

1          MR. DONOVAN:  68, your Honor, I thought your Honor

2     ruled on the retainer.

3          THE COURT:  Right.  But you said you only were

4     withdrawing 71 and 80.  Do you agree to withdraw those as well?

5          MR. DONOVAN:  I thought you mentioned 68.  68 was the

6     retainer agreement.  I thought your Honor said that was

7     discoverable.

8          THE COURT:  What about 69 and 79?

9          MR. DONOVAN:  If there are agreements to share fee

10    with others and contracts with others to prosecute the lawsuit,

11    that's relevant to adequacy of representation.  If there are

12    others that are sharing in the fees.  I can agree to withdraw

13    it for now without prejudice, your Honor, because it deals with

14    class issues.  If your Honor so inclined.

15         THE COURT:  Why don't we do that.  Is that the same as

16    for 79?

17         MR. DONOVAN:  I think 69 and 79 are what -- I

18    apologize, your Honor.  I didn't hear you.  You said 68's been

19    ruled upon in defendants' favor, but 69 is withdrawn without

20    prejudice, and 79 is withdrawn without prejudice.  There is

21    another one your Honor mentioned?  I'm sorry.

22         THE COURT:  Sorry.  69 and 79 are withdrawn without

23    prejudice.  68, which pertained to the retainer agreement,

24    plaintiff will produce the retainer agreement.

25         What about number 70?  Is that also still at issue?

K8q3ashc

1          MR. DONOVAN:  Your Honor, it is a relevant request if

2     the plaintiff, if plaintiff's -- again, we'll withdraw it based

3     on the production of 68 without prejudice, Judge.

4          THE COURT:  Thank you.  We dealt with 76.  There is a

5     whole group of requests where the requests are for information

6     concerning the defendants, and Mr. Ramirez's argument is that

7     the defendants are better able to get that information and they

8     have it all.

9          MR. DONOVAN:  Judge, I don't know what requests those

10    are referring to.  I apologize.  I don't.

11         THE COURT:  Let me see.  Mr. Ramirez, can you help me

12    out here?

13         MR. RAMIREZ:  88 are requests for production of

14    documents that systematically track allegations that putting

15    aside the fact that has been ruled in the past by other courts

16    as unduly burdensome, they are within defendants' exclusive

17    knowledge.  For example, request for production number 10, that

18    defendants manufacture, market, label and distribute beverage

19    products.  Requests for production of documents 21 and 22 and

20    60, how citric acid is manufactured.

21         Page two of plaintiff's June 17, 2020, submission, and

22    it is the fourth paragraph on page two.

23         THE COURT:  I said I'm not going to rule based on

24    number.  But this grouping was another grouping that was a

25    little bit concerning to me.

K8q3ashc

1          MR. DONOVAN:  Judge, we're dealing with, so I know,

2     10, 21 and 60?

3          MR. RAMIREZ:  21, 22, 60, 35 --

4          MR. DONOVAN:  Hold on.  Please do that again.

5          MR. RAMIREZ:  Sure.  I will.  21, 22, 60, 35, 57, and

6     120.

7          MR. DONOVAN:  Your Honor, whether or not these

8     documents are -- some of the documents or none of the documents

9     relating to the allegations are in defendants' possession,

10    that's not a valid basis to not respond.  Defendants are making

11    allegations about how our products are manufactured, marketed

12    and sold.  If they have documents that are responsive to that,

13    that's a valid request and they're obliged to produce them.  I

14    don't know what document they are relying on, your Honor.

15    Defendants don't know.  It is up to the plaintiffs to say these

16    are the documents that we have that relate to those

17    allegations.  These requests are not made out of whole cloth.

18    They relate to allegations in the complaint.  If they have

19    documents germane to that allegation, that's why the requests

20    are being made.  They are not made to harass, your Honor.

21         It is just a 130 class allegation complaint, and we're

22    entitled to ask for documents relating to those allegations.

23    So, it's not any different, it's not any different.  If the

24    plaintiff asked the defendants for a document, and our response

25    would be you have the document, that's not a valid objection.

K8q3ashc

1          MR. RAMIREZ:  May I, your Honor?  This is Carlos

2     Ramirez.

3          THE COURT:  Go ahead.

4          MR. RAMIREZ:  Thank you, your Honor.  Your Honor, Rule

5     26(b)(1)'s proportionality requirements state that to the

6     extent that a party's relevant information is different for one

7     side versus the other, that is something the Court can

8     consider.  Here, the access to this relevant information is

9     exclusively in the defendants' possession.  So under Rule

10    26(b)(1), the defendants' request is improper.

11         And I just want to highlight something very quickly

12    here.  You know, instead of focusing on individual issues, I

13    would love for the Court to look at the theme here.  These

14    defendants are asking my clients for credit card statements,

15    bank statements, canceled checks.  When has the purchase of a

16    beverage of 99 cents ever come up on any of these documents?

17    These are private, personal financial documents.  Everyone,

18    including my 10 year old, knows that a beverage purchase would

19    not appear on a canceled check, yet defendants have propounded

20    these absolutely ludicrous documents.

21         In the decades and decades of combined class action

22    experience with the attorneys at my firm and co-counsel, we

23    have never seen anything like this.  These 136 requests, the

24    140 requests for admissions, are clearly intended to do one

25    thing:  That is to intimidate and to harass our client, your

K8q3ashc

1   Honor.  And please, we ask that the Court keep that in mind as

2   we go through these document requests.  The manufacturing of

3   the production of citric acid, how is that relevant to

4   anybody's claim?

5        This is a very simple straightforward false labeling

6   case.  Defendants mislabeled their products.  Full stop.

7        MR. DONOVAN:  Judge, this is Robert Donovan.  We take

8   issue and object to that characterization.  We're on request

9   10, 21, 22, 60, 35, 57 and 120, and we stated our position as

10  to why these requests were being made.  They are in response to

11  allegations made in the complaint.  If the plaintiff doesn't

12  have documents relating to that allegation, they can say that.

13       THE COURT:  Those facts actually could be admitted.  I

14  mean, defendants are the ones who have the documents that

15  relate to, for example, which markings on which labels were in

16  fact used in California, for example.  Okay.  And I expressed

17  my concern at the beginning of this conference that there were

18  a number of these requests that attorneys meeting and

19  conferring in good faith would have resolved on their own, and

20  I'm really having a hard time here.  I'd like to rule on these

21  on the record and if -- do not interrupt me again, please.

22       MR. DONOVAN:  Sorry, your Honor.

23       THE COURT:  And I am still not hearing how these

24  requests are proportional, or how this is information that

25  defendants do not have better access to, and how this

K8q3ashc

1    information is relevant to plaintiff's claims.

2              Go ahead, Mr. Donovan.

3              MR. DONOVAN:  Your Honor, I apologize for

4    interrupting.  One of the realities of what happened here,

5    Judge, is that during the -- I think your Honor was accurate in

6    stating what occurred.  During our meet and confer, we did not

7    go item by item through these requests in large part because

8    we're up against the -- we didn't because the plaintiff's

9    position has been that all the requests, the sheer volume is

10   too much, withdraw your request, re-propound them, and then

11   we'll see which ones we're going to respond to and reserve all

12   our rights to object.

13             So we've never gone through -- your Honor, we've never

14   gone through the process of why item 10 is not discoverable,

15   why item 21 if it could be changed.  We haven't gone through

16   that process.

17             So, your Honor, I understand what you're observing.

18   I'm willing to meet and confer about those requests.  So,

19   suffice it to say that based upon what I'm understanding your

20   Honor's inclination is, that 10, 21, 22, 35, 67 and 120, you

21   know, we would like to meet and confer again with the

22   plaintiff, which I think they've offered to do in their most

23   recent letter, and see if we get a resolution to those.  And if

24   not, then we don't and then defendants will have to make a

25   decision there.

K8q3ashc

1          MR. RAMIREZ:  Your Honor, if I may.

2          THE COURT:  No.  At the outset of this conference, I

3    had told you both that I was a little bit concerned that the

4    meet and confer process was not that robust, because counsel

5    working in good faith should have been able to resolve all of

6    these.

7          We are past the point of making you go back and have a

8    more robust meet and confer on 10, 21, 22, 60, 35, 57 and 120.

9    I'm granting a protective order that plaintiffs do not need to

10   further respond to those requests.

11         What I'm going to do now, as far as the requests for

12   production, however, is I am going to direct you to go back and

13   have a meet and confer that addresses any of the remaining

14   requests for production that are still at issue.  Any ones that

15   have not been ruled on today that either the defendants think

16   that the plaintiff's responses and objections are not valid or

17   insufficient, as well as any requests that plaintiffs believe

18   are either overbroad or not proportional or seek irrelevant

19   information or not reasonably calculated, etc., etc., etc., you

20   are going to have a robust meet and confer on anything

21   remaining on which you have a dispute.  Because what I'm

22   hearing from Mr. Ramirez is that there are others that were not

23   specifically identified in the letters, and I'm not going to go

24   through them now.  Okay.  But I will rule on what I can rule

25   on, because we've been here on the phone or I've been here on

K8q3ashc

1    the phone for about 45 minutes now, and we are not going to

2    make this time go to waste and have you go back and meet and

3    confer on things I can rule on.

4            So now let's go to the request for admissions.

5            MR. DONOVAN:  Your Honor, this is Robert Donovan.

6    There are 16 beverages identified in the complaint.  A large

7    number of the requests seek information about those beverages

8    identified in the complaint whether plaintiff ever purchased

9    the products.  And if not, and because the plaintiff, because

10   the party is not bound by denial, it is only bound by

11   admission, the requests would then ask whether the plaintiff

12   did not purchase.  And again, your Honor, we're back to the

13   scope of these claims, nationwide, 16 beverages, over a

14   six-year period.  And that is the issue with respect to the

15   quantum of them.

16           These requests seek facts uniquely within the

17   plaintiff's knowledge.  The plaintiff has alleged that, for

18   instance, that the labeling of no preservatives was material to

19   his purchase and he relied on it.  Has he purchased other

20   products like that?  That would be probative of his claim of

21   materiality in this case.  If he's never purchased any other

22   product that was labeled no preservative or had citric acid,

23   that's an important fact to know.  Because if he's making a

24   claim individually, your Honor, this is, you know, we are

25   dealing about the individual that this was important to him.

K8q3ashc

1   We would like to know his purchasing history about similar

2   products.  That's another portion of these requests.

3           And during our meet and confer, I know your Honor

4   wanted us to address that.  We were, again, didn't go at

5   seriatim through each request.  The requests were deemed not --

6   they were objected to on sheer volume and because of the

7   improper form.  But none of the requests were responded to.

8   Just like none of the documents were responded to, your Honor.

9   So, the defendants were left in a position to have to file this

10  letter request, because we didn't receive any discovery and

11  haven't on document requests for admissions.

12          So but with respect to the requests for admissions,

13  we've addressed why they're relevant, why they're proportional

14  in our letter at page three, your Honor.

15          THE COURT:  All right.  I want to try to make --

16          MR. RAMIREZ:  May I, your Honor?

17          THE COURT:  No, you may not.

18          MR. RAMIREZ:  Okay.

19          THE COURT:  I'm trying to make this a little faster.

20          MR. RAMIREZ:  Just trying to correct the record, your

21  Honor.  That's it, I apologize.

22          THE COURT:  I'm not the judge who is going to be

23  trying this case.  So it's all right.  The record is what it

24  is.  I understand your views on both the interpretation of the

25  federal rules of civil procedure, the aims of discovery, and

K8q3ashc

1   your views on whether these are appropriate or not.

2           MR. RAMIREZ:  Okay.

3           THE COURT:  Generally, back when I was in practice,

4   the effect of using requests for admission was to authenticate

5   documents, not to get admissions for denial of the ultimate

6   allegations in the complaint.  It just does not seem like a

7   good use of anybody's time or effort to be doing that.  And

8   again, I go back to my initial concern that I expressed at the

9   beginning of this conference, which is a more robust meet and

10  confer process, where the counsel are speaking in good faith

11  about what the actual information is, what the actual facts and

12  information are that are sought to be elicited.

13          So, I'll give you a choice.  Because Mr. Donovan,

14  plaintiff's counsel have an obligation under Rule 11 when

15  drafting and filing of the complaint.  These almost seem to be

16  trying to do discovery on plaintiff's Rule 11 obligations,

17  which I'm not sure is a good use of your time or resources.

18  Again, some of this I think is better addressed in a

19  deposition.

20          But, I'll give you two options, and you can decide

21  among yourselves how you want to do this, okay.

22          Option one is that the defendants can withdraw them

23  now and really work in good faith to reduce the number and

24  think about what you're trying to do with requests for

25  admissions and then have your meet and confer.  So, in other

K8q3ashc

1    words, defendants, you can withdraw them now, and then go

2    through them, have a meet and confer about what plaintiffs

3    thought were problematic in this round, and then you can

4    propound new ones.  Or, because it's not really a heavy lift to

5    cut and paste or object, that plaintiff can just respond to

6    them, click with the mouse once you get your objections and

7    your responses in, and provide your response.

8            I don't think either option is going to really advance

9    the case either way.  It's not really going to help the

10   defenses, it's not going to really help plaintiff's claims

11   either.  So, it is really up to you.

12           MR. DONOVAN:  This is Robert Donovan, your Honor.

13   With regard to option one, I guess that would be most efficient

14   except may I ask your Honor if we can tweak option one?

15   Instead of withdrawing, surely there is going to be some of the

16   requests that are proper.  It was across the board none of them

17   were answered mainly, you know, because of sheer number and --

18           MR. RAMIREZ:  Not true.  Not true.

19           MR. DONOVAN:  Your Honor, based on that, based upon

20   what your Honor said, I'll withdraw the -- I choose option one

21   I guess in the interests of moving matters along.  I don't want

22   to belabor the point.

23           But your Honor, the other reason why these requests

24   are being made is to make the deposition move smoother.  To

25   have to go into deposition without knowing that certain

1   beverages are off, they were never purchased at all, they are

2   not part of the claim, and with a binding admission, you go

3   into a deposition.  So much could change in their answer to

4   interrogatories, and I made a mistake.  That's the reason why.

5   Because we get a seven-hour limit.  If these requests, that's

6   one of the main purposes of them, is to focus on the particular

7   products at issue in the case, a large part of them.

8           I understand your Honor's rule.  Defendants are

9   inclined to do option one.

10          THE COURT:  Why don't you do that.  And before you do,

11  or before we move on to the interrogatories, I'm going to

12  caution Mr. Ramirez.

13          Mr. Ramirez, Mr. Donovan has taken most of the heat in

14  this conference because these were their requests, and I put it

15  upon them to defend them.  However, that also doesn't mean, you

16  know, a robust meet and confer means that you are also speaking

17  with Mr. Donovan more clearly about what the ultimate facts and

18  the elements of claims are intended to be and why you think the

19  requests are objectionable.  Okay?  In your future meet and

20  confer process.

21          I hear your frustration.  You don't even need to be in

22  front of me in the courtroom for me to hear and understand your

23  frustration.  However, often times responding with frustration

24  doesn't help narrow things down.  I think chipping away at

25  particular requests might be more productive here.  But, let's

K8q3ashc

1    see what Mr. Donovan comes back with in terms of requests for

2    admission.

3          I mean, I do want you to take back, Mr. Donovan, that

4    if have two requests for admission for every factual allegation

5    in the complaint, I'm not sure what your ultimate aim is

6    because it is essentially suggesting that plaintiff and counsel

7    didn't follow and abide by their Rule 11 obligations when they

8    filed the complaint, which you didn't serve a Rule 11 notice

9    when the complaint was initially filed.

10         So maybe it's time to move on from that and look at

11    the elements and the facts that you want to elicit that would

12    help you in your defense.

13         MR. DONOVAN:  I understand, your Honor.  This is

14    Robert Donovan.  And the purpose of the requests are nothing to

15    do with Rule 11.  Again, we've explained why we wanted.  16

16    beverages, Judge, and our approach was to get a binding

17    admission whether or not this defendant purchased a product.

18    And if the defendant were to deny a request, that's not a

19    binding admission.  So, that was the approach.

20         I understand your Honor's ruled or rather we're now

21    going to withdraw them and see if we can narrow them down and

22    we will do so, your Honor.

23         THE COURT:  When do you think you can propound your

24    revised requests for admission?

25         MR. DONOVAN:  Two weeks, your Honor.

K8q3ashc

1          THE COURT:  So that puts us at the Wednesday after

2     Labor Day.  Would you like the 11th or the 18th?

3          MR. DONOVAN:  I'll take more time.  The 18th is fine,

4     your Honor.

5          THE COURT:  So new request for admission by

6     September 18.

7          MR. RAMIREZ:  If I can just make a request of the

8     Court that I think might help with the meet and confer process.

9          THE COURT:  Hmm-hmm.

10          MR. RAMIREZ:  This is Carlos Ramirez.  Your Honor, I

11     think the frustration that I think the Court may have

12     experienced today is Mr. Donovan, who we have tried to meet and

13     confer with, we didn't just say sheer volume we are not talking

14     to you.  We did try and meet and confer with him.  He never

15     understood our position.  The thing where he wouldn't give in

16     to anything with the Court, that was the same tone he took with

17     us, including when he was trying to defend the passport.

18          I have traveled all over the world.  Some countries

19     stamp them, some countries don't.  Some countries don't even

20     require them.

21          I would ask the Court to please instruct both of us

22     that we do need to give in a little bit.  Not everyone is right

23     all the time.  And I think with that instruction, I think we

24     might be able to have a more fruitful meet and confer.

25          THE COURT:  Thank you, Mr. Ramirez.

K8q3ashc

1         MR. RAMIREZ:  Thank you, Judge.

2         THE COURT:  I won't do that because I think that's

3    explicit and implicit in my individual practices.  I'm a little

4    disappointed that it seems like the letter of the rule and

5    practices might have been observed, but the spirit might not

6    have been.

7         So, I am going to give you a little bit of light

8    homework in the spirit of theoretical back-to-school time.

9    Why don't you each take a look at Rule 1 of the Federal Rules

10    of Civil Procedure and potentially some of the case law that

11    interprets it.  And really try to internalize that and use that

12    in your meet and confer processes in the future.

13         Let's move on to interrogatories.  Let's see.  I have

14    notes here.  My concern is that some of these are better

15    answered or addressed through expert discovery.  There is also

16    an obligation to supplement discovery as you come to learn

17    things.

18         I guess now that you have heard where I am going or

19    where I was going with the requests for production and the

20    requests for admission, I was wondering if you might want to

21    try to have a more robust meet and confer on those, or whether

22    you want to try to narrow them or maybe just withdraw them

23    without prejudice and wait until expert discovery or other

24    discovery is done.

25         One of the things that caught my eye was

K8q3ashc

interrogatories 9 and 10, which certainly seem to be not

proportional and aren't going to get you the admissible

evidence or the facts and underlying information you are trying

to get where you ask for an identification of all products

consumed in the last seven years containing citric acid.  Or

identification of all products purchased in the past seven

years that had a no preservatives label.

        I can't remember what I bought at the grocery store a

week or two ago.  I can't remember, other than in general

terms, what I ate a week or two ago, unless it was

spectacularly memorable, and most of my cooking is not.

        I guess I'm trying to understand, part of this problem

is that, at least with those interrogatories, is that you're

asking for perfect recall of something that no reasonable human

being would have either perfect recall or records of.  And so I

guess I'd like to hear your reaction or your thoughts,

Mr. Donovan, on that.

        MR. DONOVAN:  Your Honor, based upon the tenor or the

approach, we can withdraw those.  But I'm willing to address

why it's relevant whether the plaintiff can recall or can't

recall a response to a question.  I understand the reality of

past purchases.  But, the plaintiff's claim in this case is

that this label and the contents -- certainly the label -- were

material to his -- the no preservatives was material to his

purchase.  If the plaintiff never purchased any prior product

K8q3ashc

1    that had that label, or if they did, that would bear upon the

2    allegations of materiality.

3           They also claim, your Honor, that there was a premium

4    paid for the product.  Well, if same product, similar product

5    with the same ingredients, with the same label, was purchased

6    by him, we'd like to know what the price was.  That could bear

7    upon the issue of any alleged premium.

8           The plaintiff has stated in their opposition that

9    reliance is not an element of their claims.  It is an element

10   of the plaintiff's individual claim.  So if he never relied

11   upon the label ever before, and only did it with respect to

12   this product, or perhaps relied on the label after he purchased

13   this product with respect to other products, that's why these

14   requests were propounded.

15          The amount of time, your Honor, the six years, it's

16   May 13 or May 14, 2013, that's a function of the statute of

17   limitations.  They've sued nationwide class for unjust

18   enrichment which in certain states is six years.

19          The defendants are not looking to harass.  They are

20   making a request germane.

21          Having said all that, your Honor, and based upon what

22   we've discussed about having a meet and confer, we can withdraw

23   those without prejudice, your Honor, and we'll leave that to a

24   deposition or perhaps we can reach -- we can amend those two

25   interrogatory questions.

K8q3ashc

1          THE COURT:  All right.  Thank you, Mr. Donovan.  I

2     will consider that the interrogatories as a whole have been

3     withdrawn.  Those two, again, when I was in private practice,

4     and I was prepping witnesses for deposition, particularly

5     people who had really not encountered litigation before, one of

6     the things I always told them was this is not a memory test.

7     You just answer to the best of your ability.  And the problem

8     with interrogatories is that they ask for very specific

9     identification, which is a little bit concerning.  So that's

10    for interrogatories 9 and 10.

11         For the others that relate to, say, you know, the

12    unjust enrichment, that there was a premium paid or you're

13    getting to whether -- I mean, some of this does start to sound

14    more like expert discovery.  And that's really probably going

15    to be up to the plaintiff.  Do defendants have their own

16    documents that relate to market research on how much, how we

17    should price different products in different areas.

18         I'm not suggesting, by the way, Mr. Ramirez, that you

19    propound these discovery requests.  But some of this

20    information is only going to be obtainable by having experts

21    reviewing other data that is not in plaintiff's possession,

22    custody, or control or certainly not now.  Okay?

23         MR. DONOVAN:  Judge, this is Robert Donovan, if I may.

24    It's eight and nine that's being withdrawn.  Not all the

25    interrogatories, your Honor, right?

K8q3ashc

1          THE COURT:  Nine and 10.

2          MR. DONOVAN:  Nine and 10, excuse me.  Nine and 10 are

3    being withdrawn.

4          THE COURT:  Well, number two, number two relates to

5    the damages computation.

6          MR. DONOVAN:  Can I address that, your Honor?

7          THE COURT:  No.  Because I'm going to give you the

8    same option I gave you with the request for admission.  You can

9    withdraw those and then work in good faith, to meet and confer

10   on the other ones, if there is any dispute about any of the

11   other ones.  Or I'll rule on these, and then I'll ask

12   plaintiff, I mean, I guess here's the thing.

13         Two, 9 and 10 ought to be withdrawn.  If you decide

14   that you're not going to withdraw them, I will rule on them and

15   say that these are premature and that plaintiff need not

16   respond to them.  However, I think that still leaves about 18

17   interrogatories that may or may not be problematic.  I can't

18   tell because Mr. Ramirez didn't also address each one

19   specifically.  So then I would then require you to meet and

20   confer and see if there's still an outstanding issue after your

21   meet and confer.

22         MR. DONOVAN:  Your Honor, this is Robert Donovan.

23   Based on that, we'll withdraw interrogatory number two.  Those

24   were the only ones that were raised in dispute, your Honor.

25         THE COURT:  Okay.  What's your discovery end date

K8q3ashc

1   right now?

2          MR. DONOVAN:  March 1, 2021, your Honor.

3          THE COURT:  I don't need to extend that.  So

4   Mr. Donovan, you're providing revised requests for admission

5   September 18.  Parties are to meet and confer on any

6   outstanding requests for production that were not ruled on

7   today and on which there may still be a dispute.  So then, and

8   same goes for any interrogatories that were not ruled on today.

9   And then I am going to put you on for a joint status letter to

10  be filed on October 16.

11         MR. DONOVAN:  October 15, your Honor?

12         THE COURT:  One-six.  That's a Friday.  I try to set

13  deadlines on Fridays so junior attorneys in your respective law

14  firms hopefully won't have to work over the weekend.

15         So joint status letter on October 16.  Let me know out

16  of these requests for production, requests for admission and

17  interrogatories whether you were able to resolve any of your

18  remaining differences, and if not, give me an overview of what

19  the issues are.  And then also let me know where you are with

20  the rest of discovery and how you anticipate spending the next

21  couple of months.  All right?

22         MR. RAMIREZ:  Thank you, your Honor.

23         THE COURT:  Anything else, Mr. Donovan?

24         MR. DONOVAN:  Your Honor, as part of the meet and

25  confer process, I wanted to let the Court know that there is

K8q3ashc

another issue, and the only reason I'm mentioning it is because

it's percolating now.  And it deals with a non-party subpoena

that was served by the plaintiff on defendants' citric acid

supplier.  We've objected to that subpoena.  We had an initial

meet and confer and we were planning to have another one.

        The only reason I mention it is because in the event

that our next meet and confer doesn't resolve it, that issue

may be on the radar.  In the joint case management submission

to your Honor, ECF 71, the parties agreed that with respect to

depositions, that non-party depositions would follow initial

party depositions.  The subpoena served is not a deposition

subpoena.  It's seeking documents.  But nevertheless, in that

spirit, and because we've already objected to some of these

documents and document requests, we were asking for some type

of agreement on sequencing that let's just proceed, given the

breadth and scope of the parties' disputes about discovery,

that we devote our attention to resolving those rather than now

a new skirmish about non-party discovery.

        But hopefully during the meet and confer that we'll

have about the party discovery, we can address this non-party

subpoena.  But I only advise the Court so the Court is aware of

that.

        THE COURT:  Thank you.  So, here's what I suggest with

this.  It's not an order, so you can feel free to use it or

ignore it.  But in your meet and confers, for something like

K8q3ashc

1    this, why don't you talk about what information plaintiff is

2    trying to get from your citric acid supplier, and see whether

3    that's something you're able to provide that information and

4    then you don't have to bother the non-party.  So, I mean, this

5    has to be a give and take.  Right.  You have to work together

6    in good faith.  I'm not suggesting anybody hasn't been.  I'm

7    just saying that try to take it back to what is the information

8    that you're really trying to get, and is this the most

9    expedient, cost and time effective way to get it, or is there

10   maybe -- and is this the right time to be getting it.  All of

11   those are at play here.  Okay?

12           MR. DONOVAN:  Thank you, your Honor.

13           THE COURT:  All right.

14           MR. RAMIREZ:  Thank you, Judge.

15           THE COURT:  So raise that in your October 16 letter as

16   well if it remains an issue.  If it's not, just please at least

17   let me know that it's been resolved.  And then from that

18   letter, we'll see if you can move to periodic status letters or

19   whether we need to have periodic conferences.  Okay?

20           MR. DONOVAN:  Thank you, your Honor.

21           MR. RAMIREZ:  Thank you.

22           THE COURT:  My last directive here is that the parties

23   are to order the transcript from the court reporter.  So stay

24   on the line with them and make sure you figure out how to do

25   that and then to share the cost.  Okay.

K8q3ashc

1          MR. DONOVAN:  Thank you, your Honor.

2          MR. RAMIREZ:  Thank you, your Honor.

3          THE COURT:  Thank you very much.  We are adjourned.

4          (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25