THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMED ASHOUR, JOY BROWN and CRYSTAL TOWNES, individually and on behalf of all others similarly situated, | Civil Action No. 1:19-CV-07081-AT-OTW |
| Plaintiffs, | |
| v. | (ORAL ARGUMENT REQUESTED) |
| ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC, | |
| Defendants. | |

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION: (1) TO AMEND SCHEDULING ORDER TO BIFURCATE DISCOVERY ON LIABILITY AND DAMAGES; (2) FOR A PROTECTIVE ORDER WITH REGARD TO PLAINTIFFS' RULE 30(B)(6) DEPOSITION NOTICE; AND (3) TO COMPEL DISCOVERY FROM PLAINTIFF AHMED ASHOUR**

---

STEVENS & LEE
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone:  (201) 857-6778
Facsimile: (201) 857-6761
*Robert.Donovan@StevensLee.com*
*Attorneys for Defendants, Arizona Beverages*
*USA LLC, Hornell Brewing Co., Inc., Beverage*
*Marketing USA, Inc., Arizona Beverages Holdings*
*LLC, and Arizona Beverages Holdings 2 LLC*

Robert P. Donovan, Esq.,
Of Counsel and on the Brief

John N. Visconi, Esq.
On the Brief

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

PROCEDURAL HISTORY AND FACTS PERTINENT TO MOTION ................... 1

I.     Procedural History     ........................................................................... 1

LEGAL ARGUMENT  ..................................................................................... 4

I.     BIFURCATION OF DISCOVERY ON LIABILITY AND
       DAMAGES IS WARRANTED IN THE INTERESTS OF
       EFFICIENCY AND PROPORTIONALITY .................................................. 4

       A.     Applicable Standard ................................................................. 4

       B.     The Principle of Proportionality and Efficiency Strongly
              Militates in Favor of Bifurcation of Discovery ........................... 5

       C.     Pursuant to the Court's Directive, Defendants Hereby
              Propose a Scheduling Order ..................................................... 9

II.    GOOD CAUSE EXISTS TO ENTER A PROTECTIVE ORDER
       CONCERNING RULE 30(b)(6) TOPICS 10, 18-22, 24 AND 25 ................ 9

       A.     Summary of Claims in SAC ..................................................... 12

       B.     Disputes Regarding Plaintiffs' Rule 30(b)(6) Deposition Notice ........ 13

III.   PLAINTIFF ASHOUR WAS IMPROPERLY DIRECTED NOT TO
       ANSWER QUESTIONS ABOUT HIS EMPLOYMENT RELATED
       DISPUTE ......................................................................................... 16

       A.     Plaintiff Ashour's Refusal to Answer Deposition Questions
              About Employment Dispute ................................................... 17

       B.     Plaintiff Ashour's Delays Between Retaining Counsel and
              Filing Suit Coincided With the Employment Dispute ................... 20

CONCLUSION ............................................................................................ 21

05/24/2021 SL1 1695973v1 115260.00002

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Albino v. Glob. Equip. USA, Ltd., No. 6:14 Civ. 6519 (MAT)*,
    *2017 WL 3130380 (W.D.N.Y. July 24, 2017)*...........................................................11

*Amato v. Saratoga Springs*,
    *170 F.3d 311 (2d Cir. 1999)* ...........................................................................4

*Ambac Assurance Corp. v. Adelanto Pub. Util. Auth., No. 09 Civ. 5087 (JFK)*,
    *2012 WL 1589597 (S.D.N.Y. May 7, 2012)* ................................................ 10-11

*Blackrock Allocation Target Shares v. Wells Fargo, 14-cv-09371*,
    *2017 WL 9400671 (S.D.N.Y., April 27, 2017)* .........................................12

*City of N.Y. v. Fedex Ground Package Sys., Inc., No. 13 Civ. 9173 (ER)*,
    *2016 WL 1718261 (S.D.N.Y. Apr. 27, 2016)* .........................................11

*Collins v. JC Penney Life Insurance Co., No. 02-cv-0674*,
    *2003 WL 25945842 (S.D. Cal. May 6, 2003)* .........................................14

*Edie v. Portland Orthopaedics Ltd., 14 CIV. 7350 (NRB)*,
    *2017 WL 4082479 (S.D.N.Y. Aug. 29, 2017)* .........................................5

*Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350 (BSJ) (KNF)*,
    *2008 WL 4104015 (S.D.N.Y. Aug. 28, 2008)* .........................................12

*Enzo Biochem, Inc. v. Affymetrix, Inc., 03 CIV. 8907 (RJS)*,
    *2014 WL 12639081 (S.D.N.Y. Feb. 25, 2014)* .........................................5

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
    *189 F.R.D. 269 (S.D.N.Y. 1999)* .........................................11

*Fort Worth Emps.'Ret. Fund v. J.P. Morgan Chase & Co.*,
    *297 F.R.D. 99 (S.D.N.Y. 2013)* .........................................11

*FragranceNet.com, Inc. v. FragranceX.com, Inc., No. CV 06-2225 (JFB) (AKT)*
    *2007 WL 9710244 (E.D.N.Y. Aug. 28, 2007)*.........................................4

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
    *404 F. Supp. 2d 548 (S.D.N.Y. 2005)*.........................................5

*Helena Associates, LLC v. EFCO Corp., 06 CIV. 0861(PKL)*,
    *2008 WL 2117621 (S.D.N.Y. May 14, 2008)("EFCO filed its expert reports by*
    *November 15, 2006, the date required under the Court's Scheduling Order.")* ......................9

*Izquierdo v. Panera Bread Co.*,
  450 F. Supp. 3d 453 (S.D.N.Y. 2020) ...................................................................... 13

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
  897 F.3d 88 (2d Cir. 2018) .................................................................................... 8

*Mariac Ship. Co., Ltd. v. Meta Corp. N.V.*, 05 CIV 2224 LAK GWG,
  2007 WL 1662067 (S.D.N.Y. June 11, 2007) ............................................................ 5

*Natural-Immunogenics Corp. v. Newport Trial Group*, Case No. SACV 15-02034,
  2019 WL 11742967 (C.D. Cal. June 27, 2019) ...................................................... 20

*Orlander v. Staples, Inc.*,
  802 F.3d 289 Cir. 2015 ......................................................................................... 13

*Ramgoolie v. Ramgoolie*, 16-CV-3345 (VEC)(SN),
  2018 WL 5619959 (S.D.N.Y. Aug. 3, 2018), *report and recommendation
  adopted as modified*, 16-CV-3345 (VEC)(SN), 2018 WL 4266015 (S.D.N.Y.
  Sept. 6, 2018) .......................................................................................................... 5

*Regalado v. Ecolab Inc.*, 14 CIV. 6020 (LGS),
  2016 WL 94139 (S.D.N.Y. Jan. 7, 2016) .................................................................. 9

*In re Rezulin Products Liab. Litig.*, 00 CIV. 2843 (LAK),
  2005 WL 1105067 (S.D.N.Y. May 9, 2005) ............................................................ 9

*U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*,
  593 Fed.Appx. 32 (2d Cir. 2014) .......................................................................... 10

*In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF),
  2013 WL 2355451 (S.D.N.Y. May 28, 2013) ........................................................ 11

**State Cases**

*Colgan v. Leatherman Tool Group, Inc.*,
  38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006) .............................................................. 14

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................................... 14

**State Statutes**

California Commercial Code § 2313 ............................................................................ 12

New York General Business Law § 349 ...................................................................... 12

New York General Business Law § 350 ...................................................................... 12

05/24/2021 SL1 1695973v1 115260.00002

**Rules**

Fed. R. Civ. P. 16(b)(4)..................................................................................4

Fed. R. Civ. P. 30 ............................................................................... *passim*

Fed. R. Civ. P. 37(c)(1)..................................................................................9

Fed. R. Civ. P. 42(b) .....................................................................................4

Fed. R. Civ. P. 26 ............................................................................... *passim*

Local Civil Rule 26(a)(2)(B) ........................................................................16

05/24/2021 SL1 1695973v1 115260.00002

## PRELIMINARY STATEMENT

Defendants, Arizona Beverages USA LLC (individually, "ABU"), Hornell Brewing Co., Inc. (individually, "Hornell"), Beverage Marketing USA, Inc. (individually, "BMU"), Arizona Beverages Holdings LLC (individually ("ABH"), and Arizona Beverages Holdings 2 LLC (individually, "ABH2") (collectively, "Defendants"), submit this memorandum of law in support of Defendants' motion: (1) to amend the Scheduling Order to bifurcate discovery with regard to liability and damages; (2) for a protective order concerning Plaintiffs' 30(b)(6) deposition notice; and (3) to compel plaintiff, Ahmed Ashour ("Plaintiff Ashour"), to answer deposition questions.

## PROCEDURAL HISTORY AND FACTS PERTINENT TO MOTION

### I.    Procedural History

Plaintiff Ashour commenced this action by filing a complaint in the United States District Court for the Central District of California on May 14, 2019.  (ECF 1).  By stipulation of the parties (ECF 23), the matter was transferred to this Court by Order entered on July 25, 2019.  (ECF 25). Plaintiff filed a first amended complaint on September 24, 2019 ("FAC").  (ECF 42).  By order entered May 7, 2020, the Honorable Ona T. Wang, U.S.M.J., entered a scheduling order providing that fact discovery expired on March 1, 2021 and expert discovery expired on August 2, 2021. (*Id.*).

On February 3, 2021, Plaintiff filed a pre-motion letter seeking leave to amend the scheduling order.  (ECF 103).  Defendants opposed that motion and made an alternative request for an extended schedule given the prospect of the filing of a second amended complaint, adding two additional plaintiffs and more claims ("SAC").  (ECF 109).

On March 5, 2021, Plaintiff Ashour also filed a pre-motion conference letter to compel responses to document requests and concerning a Rule 30(b)(6) deposition notice served upon

Defendants.  (ECF 112).  Defendants opposed that pre-motion letter.  (ECF 114).  The Court

conducted a hearing on March 17, 2021.  (ECF 115).  During that hearing, this Court observed:

> THE COURT:  So with that in mind, now we get to the discovery.
>
> I'm not going to tie the discovery deadline to any briefing on a conditional cert. motion – or a class cert. motion, I mean.
>
> The other – I mean, here is my general idea.  As a normal practice, discovery is not stayed during the pendency of a motion to dismiss.  That said, I think plaintiffs still need to establish relevance and proportionality, and I'm certainly not inclined to just sort of make it wide open.
>
> I offer a couple of thoughts:
>
> One possibility, if the parties agree – and you certainly can have time to think about this.  We don't need to decide any of this today.  I can also ask you to meet and confer and see if there is something you come up with that addresses your needs.  One possibility is to bifurcate liability and damages.
>
> Another possibility, which is not exclusive to bifurcation is coming up with a – coming up with a way to stage discovery.  Even if you are not clearly staging discovery, it is possible, and I would tend to be inclined to stage discovery to be primarily addressed to the case as filed, again, keeping in mind proportionality concerns.
>
> * * *
>
> [Declaration of Robert P. Donovan, "Donovan Dec.", Ex. 1, T. 8:17-9:13].
>
> * * *
>
> **… I do think that you should meet and confer, and then what I would like is a joint status letter with the results of your meet-and-confer due in a week, so March 24.  Specific issues to consider are whether you think bifurcation or staging of discovery – bifurcation and/or staging of discovery would be helpful, and also some discussion about the scope of discovery and a potential schedule.**
>
> Now, I am not inclined to enter immediately a 12-month extension because that seems to be putting the cart before the horse, because

2

that seems to be assuming that you are going to file a motion for class certification and it's going to be granted, and I am not – you know right now, I want you to look at this case – until a motion for class cert. has been filed, I want you to look at this case as a case with three plaintiffs and their claims, okay?   This is without prejudice to later expanding or extending discovery should a motion for class cert. be filed.

But right now, let's take the easy stuff first.   And the reason why I say that it, I just, in the prior conference, said that I have this theory about discovery, which is similar to I think it's Boyle's law, which is – it's Boyle's law?   That – maybe not.   But gases tend to expand to fill all available volume.   Discovery kind of takes that same approach.   So if I give you a deadline that's twelve months out, not a whole lot is going to happen right now, because everybody will think about, you know, either – think about that you have a year to get everything done.   And there also won't be a huge incentive to – a huge incentive to prioritize or stage discovery, because you have the luxury of all this time.   I think it also sends this message that – correctly or incorrectly – assumes that a motion for class cert. will be granted, and we haven't even gotten to a filing of a motion for class cert.

So that's what I would like to see in the March 24 letter, okay, is something more moderate in terms of a discovery schedule with the understanding that if a motion for class cert. is filed and granted, that there may be modifications to that schedule.   And even if not, there may be modifications to that schedule.

[*Id.*, T. 11:5-12:20; emphasis added].

Defendants' counsel stated that bifurcation made sense.   (*Id.* T 10:9-19).   The parties met and conferred on March 23, 2021 and Defendants reiterated their position to have discovery bifurcated on liability and damages.   Plaintiffs rejected that proposal.   Defendants thereafter made a written proposal to have discovery focus on liability issues regarding the claim that the citric acid in Defendants' beverages is a preservative.   (*Id.*, Ex 2).   Plaintiff rejected that proposal as well. Defendants also suggested that Plaintiffs disclose liability experts by a date certain.   (*Id.*).   That proposal was also not accepted.   The parties filed a joint status letter on April 7, 2021 addressing these matters.   (ECF 128).

The SAC was filed on March 21, 2021 adding two new plaintiffs (Joy Brown, "Plaintiff Brown," and Crystal Townes, "Plaintiff Townes") and new claims.  (ECF 118).  Defendants filed a motion to dismiss the SAC on April 23, 2021 and that motion is pending.  (ECF 132).

## LEGAL ARGUMENT

I.   **BIFURCATION OF DISCOVERY ON LIABILITY AND DAMAGES IS WARRANTED IN THE INTERESTS OF EFFICIENCY AND PROPORTIONALITY**

A.   **Applicable Standard**

Fed. R. Civ. P. 16(b)(4) allows for the court to modify a scheduling order based upon good cause and with the judge's consent.  In this case, good cause manifestly exists based upon the complexities of this case, the matters presented during the hearing on March 17, 2021 and the Court's instruction that the parties submit other scheduling proposals.

With respect to bifurcation, Fed. R. Civ. P. 42(b) provides:

> [t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

"Bifurcation rests 'firmly within the discretion of the trial court,' and 'is the exception; not the rule.'" *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, No. CV 06-2225 (JFB) (AKT) 2007 WL 9710244, at *2 (E.D.N.Y. Aug. 28, 2007) (collecting cases). In determining whether to bifurcate liability from damages, courts consider whether it "will further convenience, avoid prejudice, or promote efficiency." *Amato v. Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (citing Fed. R. Civ. P. 42(b)).

Discovery may be bifurcated between liability and damages. *Enzo Biochem, Inc. v. Affymetrix, Inc.*, 03 CIV. 8907 (RJS), 2014 WL 12639081, at *1 (S.D.N.Y. Feb. 25, 2014). *See also Freeplay Music, Inc. v. Cox Radio, Inc.*, 404 F. Supp. 2d 548, 555 n. 7 (S.D.N.Y. 2005) (Court's case management order bifurcated discovery with respect to liability and damages; "the first order of business is to determine whether plaintiff can establish any violation of its rights at all, before undertaking an inquiry into damages."); *Ramgoolie v. Ramgoolie*, 16-CV-3345 (VEC)(SN), 2018 WL 5619959, at *12 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted as modified,* 16-CV-3345 (VEC)(SN), 2018 WL 4266015 (S.D.N.Y. Sept. 6, 2018)("the Court bifurcated discovery on liability and damages, and the parties have not yet conducted discovery regarding damages. … Therefore, Defendant's assertion that Plaintiff has failed to prove damages is premature."); s*ee also Edie v. Portland Orthopaedics Ltd.,* 14 CIV. 7350 (NRB), 2017 WL 4082479, at *2 (S.D.N.Y. Aug. 29, 2017) ("the Court ordered limited discovery into the issue of successor liability to prioritize this potentially dispositive issue."); *Mariac Ship. Co., Ltd. v. Meta Corp. N.V.,* 05 CIV 2224 LAK GWG, 2007 WL 1662067, at *2 (S.D.N.Y. June 11, 2007)("To streamline the  discovery process, the Court directed plaintiff to provide to defendants any documents it intended to offer to show standing.").

**B.**   **The Principle of Proportionality and Efficiency Strongly Militates in Favor of Bifurcation of Discovery**

The parties have presented this Court with a dispute concerning the discoverability of Defendants' revenues, profits and costs.  Plaintiffs assert that such information is relevant for a potential expert report as concerning class certification.  (ECF 112).  Defendants maintain that such information is not relevant to Plaintiffs' claims for damages.  (ECF 114).  In the March 17, 2021 hearing, Plaintiffs' counsel stated:

We will most likely have anywhere between one to two experts that will opine on the damages in this case, and those experts will require several pieces of information. One would be margin costs or costs of goods sold, and the other one would be the price or the profit. And those are needed because that is the only way we can prove damages. And what they will do is they will take that information from the sale price, they will back out the price of goods sold, and then, from their analysis, they will be able to determine whether that profit, or a portion of that, is attributable to the misleading statements and, accordingly, that would be the damages to the class.

Now, if we get that information for California and New York only, anyone who purchased any Arizona beverages outside of those two states, we will not be able to prove damages for those individuals.

[Donovan Dec., Ex. 1, T. 16:15-17:5].

Plaintiffs also argue, alternatively, that a class action damages model may be relied upon which would not require an analysis of profits or costs. In that regard, Plaintiffs' counsel also maintained:

It is the plaintiffs' burden at class certification that I think we are operating on under that basic premise. And at this stage in the litigation, we are in the process of making important strategic decisions in terms of how we will present our case at class certification to the Court. And in order to do that and to prepare our experts and prepare our case, we need certain information.

Now, this can come to the Court in several fashions at class certification, either as a complete and final package that says this is what we, in dollars and sense, allege the premium price to be, and here is what we allege the aggregate damage on behalf of the class, or we can proffer a model for calculating damages on a classwide basis.

Now, if we propose a model and, again, we have nationwide claims, so we will be moving for both state and nationwide certification of these claims, there is always the "and we can get this data later" if the Court thinks that it is relevant and important for the calculation of damages.

I think what we feel nervous in not obtaining the information now is that we will somehow be prejudiced in two ways, either in response to class certification by saying we didn't uphold our

obligation to provide the Court with a feasible method of calculating damages. If we don't have the benefit of the information, we just won't ever know exactly the questions that your Honor posed. Do we know that they calculate price differently? Is it all uniform? Those are the sorts of questions that we would ask in a 30(b)(6) deposition just to ensure that we can say this is all uniform nationwide. Without the benefit of either the actual numbers and the availability of the information as to the nationwide claims, we just simply can't say with testimony under oath one way or the other.

Now, if what we are required to do is proceed without that information, then we would simply ask that it not be used against us if it is being held in, perhaps, abeyance for later request, depending on the Court's ultimate determination of class cert.

So I think if the Court isn't inclined to provide it—and I echo my colleague's—you know, I have experience in class certification and have been appointed to lead many consumer cases across the country, where I have never had nationwide claims at issue and not been provided nationwide data, if we are going to proceed in that way, that we simply not be prejudiced in response because we don't have it.

[*Id.,* T. 18:7-19:25].

There can be little genuine dispute that this matter presents a highly complex lawsuit concerning the alleged functionality of citric acid in Defendants' beverages. Plaintiffs' claims include the assertion that Plaintiffs' citric acid functions as a preservative and hence the labeling is deceptive. (ECF 118, ¶ 32). In response to document requests and interrogatories, Defendants have produced documents about the citric acid in Defendants' beverages including product formulas and information about how the beverages are made. Defendants have also identified witnesses with knowledge of the citric acid supplied. Discovery regarding alleged liability is indeed proceeding.

Plaintiffs nevertheless seek other massive amounts of information about Defendants' revenues, costs and profits, for more than six years, on a nationwide basis, pertaining to 48 states that are untethered to any claim made by the Plaintiffs in this case. The issue of Article III standing

is a matter to be considered by the Court in connection with a class certification motion.  *See Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 96 (2d Cir. 2018)(wherein the Second Circuit held "that whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III").  Nevertheless, Plaintiffs are seeking information about Defendants' operations, in 48 other states where Plaintiffs have no connection whatsoever.  This discovery is sought prior to any ruling by the Court that they can bring such claims on behalf of unidentified alleged consumers in states where Plaintiffs never made a purchase.  The enormity of the revenue, profit and cost discovery sought, compared with the remote likelihood that nationwide certification would be granted in any event, is another factor weighing in favor of granting bifurcation.

Plaintiffs have already, in effect, advocated for such a deferral of damage discovery in responses to interrogatories.  Plaintiff Ashour was asked to state the monetary damages he claimed to have suffered including the method of computation.  (Donovan Dec., Ex. 3).  In response, Plaintiff Ashour answers:

> Plaintiff objects on the grounds that interrogatory number 2 is premature.  Subject to the above interrogatory-specific objection, Plaintiff states that he has sustained economic damages in that he would not have purchased the Products, or would have paid less for them, but for Defendants' false, deceptive, and misleading labeling and marketing of the Products.  Furthermore, without first having reviewed a substantial amount of the discovery to be produced in this matter from Defendants and non-parties (if any), and without first having discussed such discovery with experts on matters related to determining damages in consumer fraud class actions, Plaintiff is incapable of providing an answer to this Interrogatory at this time either for himself or for members of the Class.  Plaintiff will provide Defendants with answers to this Interrogatory once he is able, and/or legally required, to do so.  [Donovan Dec., Ex. 3].

Now that two new plaintiffs have been brought in the action with new claims under New York law, that response means that the parties will now have to await months before any such

damage discovery is furnished by Plaintiffs.  In the meantime, enormous costs concerning alleged damage discovery, relating to a theory of class-wide damages, which may or may not be pursued, will be incurred by Defendants.

### C.     Pursuant to the Court's Directive, Defendants Hereby Propose a Scheduling Order

During the March 17, 2021 hearing, the Court instructed the parties to provide a proposed schedule concerning discovery.  (Donovan Dec., Ex. 1, T. 11:5-12:20).  In that regard, courts frequently order that a party's liability/expert report be provided/served by a date certain.  *See, e.g, In re Rezulin Products Liab. Litig.*, 00 CIV. 2843 (LAK), 2005 WL 1105067, at *2 (S.D.N.Y. May 9, 2005); *Helena Associates, LLC v. EFCO Corp.*, 06 CIV. 0861(PKL), 2008 WL 2117621, at *5 n. 5 (S.D.N.Y. May 14, 2008)("EFCO filed its expert reports by November 15, 2006, the date required under the Court's Scheduling Order.").  Indeed, Federal Rule of Civil Procedure 26(a)(2)(D) provides that "A party must make these [expert testimony] disclosures at the times and in the sequence that the court orders."  In *Regalado v. Ecolab Inc.*, 14 CIV. 6020 (LGS), 2016 WL 94139, at *3 (S.D.N.Y. Jan. 7, 2016), the court cited this rule and noted, "[i]f a party fails to make these disclosures or fails to make these disclosures at the times or in the sequence ordered by the court, 'the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.' Fed. R. Civ. P. 37(c)(1)."

Based upon the Court's directive and the aforementioned principles regarding expert reports, Defendants respectfully propose the following amendment to the scheduling order in the event that discovery is bifurcated as to liability and damages:

Liability discovery to expire: October 31, 2021;

9

Due date for Plaintiffs to identify all liability experts and general subject matters of liability opinions:  October 31, 2021;
Due date for Plaintiffs to serve all liability expert reports and disclosures under Rule 26:  November 30, 2021;

Due date for Defendants to serve expert reports in reply to Plaintiffs' liability expert reports:  January 31, 2022;

Plaintiffs' rebuttal reports, if any, due:  February 15, 2022;

All expert discovery concerning liability expert reports to be completed by: March 1, 2022.

Based upon such staging in discovery, the Court would be in a better position to evaluate, or adjudicate if necessary, what next stage of discovery will be needed, if any.

For the foregoing reasons, in the interest of proportionality and efficiency, just grounds exist to bifurcate discovery on liability and damage issues.

## II.   GOOD CAUSE EXISTS TO ENTER A PROTECTIVE ORDER CONCERNING RULE 30(b)(6) TOPICS 10, 18-22, 24 AND 25

Rule 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  "This rule 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'"*U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 Fed.Appx. 32, 36 (2d Cir. 2014) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "Rule 26(c) allows for the crafting of appropriate relief, including that the disclosure or discovery may be had only on specified terms and conditions."  *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, No. 09 Civ. 5087 (JFK), 2012 WL 1589597 at *3 (S.D.N.Y. May 7, 2012) (internal quotations omitted).

"The party seeking a protective order bears the burden of establishing that good cause for the order exists." *Id.* at *13 (citing *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004)).  It must demonstrate a "particular need for protection," showing "specifically how, despite

10

the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Id.* at \*5. (citation omitted).

Rule 26(b)(1) provides, in part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Although "[t]he discovery rules are to be given a broad and liberal construction ... they do not permit discovery of matters that are neither relevant to issues in the case nor calculated to lead to relevant and admissible evidence." *Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999). "The burden of demonstrating relevance is on the party seeking discovery." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102 (S.D.N.Y. 2013).

"A Rule 30(b)(6) deposition notice, like other forms of discovery, is subject to the limitations under Rule 26 of the Federal Rules of Civil Procedure." *City of N.Y. v. Fedex Ground Package Sys., Inc.*, No. 13 Civ. 9173 (ER), 2016 WL 1718261, at \*5 (S.D.N.Y. Apr. 27, 2016) (citing *Dealer Comp. Servs. v. Curry*, No. 12 Civ. 3457 (JMF) (JLC), 2013 WL 499520, at \*1 (S.D.N.Y. Feb. 7, 2013)); *see also* Fed. R. Civ. P. 30 Advisory Committee's Note to 2015 Amendment ("Rule 30 is amended in parallel with Rules 31 and 33 to reflect the recognition of proportionality in Rule 26(b)(1)."); *In re Weatherford Int'l Sec. Litig.*, No. 11 Civ. 1646 (LAK) (JCF), 2013 WL 2355451, at \*5 (S.D.N.Y. May 28, 2013) (utilizing proportionality analysis to determine that defendants must produce Rule 30(b)(6) witness). "When a party subpoenas a corporation pursuant to F.R.C.P. 30(b)(6), ... '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *Albino v. Glob. Equip. USA, Ltd.*, No. 6:14 Civ. 6519 (MAT), 2017 WL 3130380,

11

at *1 (W.D.N.Y. July 24, 2017) (quoting *Night Hawk Ltd.* v. *Briarpatch Ltd.*, *LP*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).  "[A]n overly broad [Rule] 30(b)(6) 'notice subjects the noticed party to an impossible task,' because, where it is not possible to 'identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible.'" *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ) (KNF), 2008 WL 4104015, at *4 (S.D.N.Y. Aug. 28, 2008) (quoting *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000)).  Rule 30(b)(6) depositions should not be a "memory" contest of "topics better suited to a written response or supplemental document production."  *See Blackrock Allocation Target Shares v. Wells Fargo*, 14-cv-09371, 2017 WL 9400671, at *2 (S.D.N.Y., April 27, 2017).

## A.   <u>Summary of Claims in SAC</u>

Plaintiffs Ashour and Brown, alleged citizens of California, claim to have made purchases in that state only.  (ECF 118, ¶¶ 43 and 45).  They sue for fraudulent, unfair and/or deceptive conduct under the following California statutes: the Unfair Competition Law ("UCL"), the Consumer Legal Remedies Act ("CLRA") and the False Advertising Law ("FAL").  (*Id.*, ¶¶ 65-97). They also claim breach of express warranty under California Commercial Code Section 2313 and sue for unjust enrichment.  (*Id.*, ¶¶ 98-129).

Plaintiff Townes sues based upon New York law alleging: (a) violation of New York General Business Law Section 349; (b) violation of New York General Business Law Section 350; (c) breach of express warranty; and (d) unjust enrichment.  (*Id.*, ¶¶ 16, 47, 106-129).

**B.     Disputes Regarding Plaintiffs' Rule 30(b)(6) Deposition Notice**

Plaintiffs' amended deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6) contains 21 topics.  (*Id.*, Ex. 4).  Many of the topics were objectionable.  Several of the objections were resolved by the parties during the meet and confer process.[1]  (*Id.*, Ex. 5).

However, disputes remain with respect to the demand that Defendants produce a witness on following topics:

- Topic 10 - The costs and/or impact on profits that would be associated with the elimination of citric acid or other preservatives from the Products, and any efforts by Defendants to assess such costs and/or impact on profits. (Donovan Dec., Ex. 4).

- Topic 24 – Revenues, profits, number of units sold and all information considered in determining pricing (including marginal costs) concerning sales of the Products in California and the United States between May 14, 2013, and August 31, 2020.  (*Id.*)

Aside from the overbroad nature of the requests, Defendants' profits and/or costs are not relevant to the measure of damages for Plaintiffs' individual claims.  *See Izquierdo v. Panera Bread Co.,* 450 F. Supp. 3d 453, 464 (S.D.N.Y. 2020) (stating that a plaintiff may "allege that, on account of a materially misleading practice, []he purchased a product and did not receive the full value of h[is] purchase."  (quoting and citing to *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 2d Cir. 2015).  In *Orlander*, the Second Circuit observed that a "price premium" requires a plaintiff to allege that he or she paid more than they would have but for the deceptive practice.  *Orlander*, 802 F.3d at 302.  In other words, the focus of the damage claim under a price premium theory is

---

[1] As of the filing of the instant motion, subject to confirmation and re-serving of an amended deposition notice, the parties agreed in principle to resolve disputed topics 4, 5, 9, 12 and 15 in the amended notice.  Many other topics were withdrawn or modified based upon prior meet and confer sessions.

the supposed difference between what was paid and the value of what was received.  Costs, profits and overall sales revenues of the seller bear no logical relation to that damage question.

Likewise, in California, the claim under the UCL is equitable in nature and prevailing plaintiffs are limited to injunctive relief and restitution.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (citations and quotations omitted).  Restitution is a limited remedy designed to return "measurable amounts which are wrongfully taken by means of an unfair business practice."  *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 61 (Cal. Ct. App. 2006) (other citations omitted); *see also Collins v. JC Penney Life Insurance Co.*, No. 02-cv-0674, 2003 WL 25945842 (S.D. Cal. May 6, 2003)(sustaining defendant's objection to plaintiff's request for discovery of defendant's general sales and financial information to support plaintiff's punitive damages claim and to take 30(b)(6) testimony of a representative knowledgeable on corporate finance information on the grounds that plaintiff had not demonstrated relevance).

On the issue of costs, Plaintiffs' position is that production costs are needed for purposes of a damages expert in connection with a class certification motion.  (Donovan Dec., Ex. 1, T. 18:7-19:25).  In other words, the asserted relevancy is based upon class certification damage models, not based upon any relevance to Plaintiffs' individual claims of liability.  Putting aside the issue of relevancy, which is disputed for reasons set forth herein, Plaintiffs are indeed placing the cart before the horse by seeking wide-ranging, nation-wide cost and profit discovery that they contend may be relevant because of expert opinions bearing upon class certification damage issues, not on questions of liability.

- Topic 18 – The identities and market share of volume of sales of all of your competitors that market and sell products similar to your Products.  Defendants agreed in principle to produce a witness on the identity of competitors but not on market share or volume of sales of same.  (*Id.*,

Ex. 5).   Such remaining topics about third-party market share or volume of sales for an undetermined period, are overbroad, call for expert opinion and/or a memory test.  (*Id.*)

•        Topic 19 – Any research, studies, surveys, testing, market analysis, or polls concerning your competitors' marketing or labeling their products with the term "No Preservatives" or any other variant of the term "Preservatives," and consumers' reactions to such marketing and labeling. (*Id.*)  This topic seeks information that is equally overbroad, duplicative of Topics 4-5 as resolved based upon the parties' meet and confer, and call for a memory test.

•        Topic 20 – Any evidence, including studies or research, supporting or refuting our contention that the use of citric acid in the Products is consistent with the use of the representation "No Preservatives."  (*Id.*, Ex. 4).  This topic is also overbroad, cumulative, argumentative, calls for a memory test, and premature to the extent it seeks expert opinion.

•        Topic 21 – The identities of all businesses and persons in the products' chain of distribution in the United States and California, including their roles, between May 14, 2013, and August 31, 2020.  (*Id.*)  The topic calls for irrelevant information, is overbroad, and calls for a memory test. Asking to provide a witness to testify as to the names of all persons in the United States involved in the distributing and selling of beverages is manifestly unreasonable.

•        Topic 22 – The identities of all retailers of the products between May 14, 2013 and August 31, 2020.  (*Id.*)  During a meet and confer, the parties discussed withdrawing this topic with prejudice.  (*Id.*, Ex. 5).  No formal agreement was reached, however.  The topic calls for irrelevant information, is overbroad, and calls for a memory test.

•        Topic 25 – Total third-party retailer sales figures for Product sales in California and the United States between May 14, 2013, and August 31, 2020.  (*Id.*, Ex. 4).  This topic is overbroad, cumulative, argumentative, calls for a memory test, and premature to the extent it seeks expert

opinion.  During a meet and confer, the parties discussed deferring this dispute until production of

documents regarding sales.  No agreement was reached.

## III.   PLAINTIFF ASHOUR WAS IMPROPERLY DIRECTED NOT TO ANSWER QUESTIONS ABOUT HIS EMPLOYMENT RELATED DISPUTE

An attorney cannot instruct a deposition witness not to answer on the basis that the

information sought is not relevant.  This Court has explained,

> Rule 30(c)(2) expressly limits the instances in which a deponent can be instructed not to answer a question: "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)[4]." Absent those situations, "the examination still proceeds; the testimony is taken subject to the objection." Fed. Rule Civ. Proc. 30(c)(2); *see also* 8A C. Wright, A. Miller, & A. Marcus, Federal Practice and Procedure § 2113, p. 556 (3d ed. 2010) (noting limitation on instructions to not answer because of potential disruptiveness); *Nat'l Microsales Corp. v. Chase Manhattan Bank, N.A.*, 761 F. Supp. 304, 307 (S.D.N.Y. 1991) (noting the proper procedure for non-privilege objections "is for the attorney who raises the objection to note his objection but to allow the question to be answered."). *Colon v. New York City Hous. Auth.*, 16-CV-4540(VSB)(OTW), 2019 WL 4291667, at *2 (S.D.N.Y. Sept. 11, 2019) (footnote omitted).

Local Civil Rule 26.2(a)(2)(B) provides:

> (a)  Unless otherwise agreed by the parties or directed by the Court, where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion,

> (1)  The person asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

> (2)  The following information shall be provided in the objection, or (in the case of a deposition) in response to questions by the questioner, unless divulgence of such information would cause disclosure of the allegedly privileged information:

> (B)  For oral communications:  (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship

16

of the persons present to the person making the communication; (i) the date and place of communication; and (iii) the general subject matter of the communication.

A.    **Plaintiff Ashour's Refusal to Answer Deposition Questions About Employment Dispute**

Plaintiff Ashour testified that he previously signed a retainer agreement with an attorney concerning an employment matter.  (Donovan Dec., Ex. 6, T. 40:39:40:7).  He did not recall whether or not that matter concerned a legal proceeding or threatened legal proceeding.  (*Id*., T. 40:13-15).  He did not recall the name of the attorney.  (*Id*., T. 40:18-20).

On redirect, when questioned by his own attorney, Plaintiff Ashour testified as follows:

> Q.    Just a couple of – two to three areas that I want to touch upon, Mr. Ashour.
> You testified earlier that aside from this action, you had not been involved in any legal proceedings.,
> Do you recall that testimony?
>
> A.    Yes.
>
> Q.    And you consequently testified that you had hired an attorney for purposes of an employment matter.
> Was that your testimony, as well?
>
> A.    Correct, yes.
>
> Q.    So can you provide us some guidance about what that attorney did for you without revealing the substance of the communications to shed light on the fact of whether or not you had been involved in any other legal proceedings?
>
> A.    Sure.  The attorney reached out to the former employer's attorney and there were discussions that concluded with a settlement.  But there were no cases filed in court and there was not an arbitration or deposition taken of any sort.
>
> Q.    So in your –
>
> MR. RAMIREZ:  Withdrawn.

Q.      Based on your understanding because this matter did not
        proceed to court, there was no legal proceeding in
        connection with that employment matter?

A.      Correct, that's my understanding.

MR. DONOVAN:  Objection to form.

Q.      Other than that incident, were you involved in –

MR. RAMIREZ:  Withdrawn.

Q.      Other than that attorney representing you on that matter was
        there any other attorney that you may have hired to represent
        you on any other legal proceedings?

A.      No.

(T. 162:24-164:21).

    After conclusion of Plaintiffs' counsel questioning of Plaintiff Ashour, Defendants'

counsel then questioned Plaintiff Ashour as follows:

Q.      My question is to follow up on the attorney.
        What's his name?  The attorney who represented you in the
        employment matter?

MR. RAMIREZ:  Objection.  I don't know what you are
going to do with this Bob.  Are you going to call him up and
ask him what he told him?  I mean –

MR. DONOVAN:  No.

MR. RAMIREZ:  This is privileged information.

MR. DONOVAN:  Who his attorney is?

MR. RAMIREZ:  What does it have to do with anything, an
employment matter that never went to Court?    An
employment matter that never went to Court?  Do you want
to take that up with the judge?

MR. DONOVAN:   Carlos, are you directing him not to
answer?

MR. RAMIREZ:  Yes, I am directing him not to answer.

T. 168:23-170:7.

* * *

Q.    Did you settle this dispute that you had with your employer, sir?

A.    Yes.

Q.    When?

A.    Early two thousand—let me—let me think.  Hold on, I'm sorry. 2019, early 2019.

Q.    So it would have been the first four, five months of 2019 that you resolved—

A.    Probably, probably, yes.

Q.    And how long was the dispute going on from its inception to its conclusion.

MR. RAMIREZ:  Objection.  This has nothing to do with class adequacy as a representative.  I am going to instruct you not to answer.

(*Id*., T. 170:11-171:5)

Plaintiff Ashour testified that he became familiar with citric acid during his work as a bartender.  (*Id*., T. 165:4-20).  He has thereby placed his employment background in issue in this case.  Information about who may or may not have knowledge about Plaintiff Ashour's alleged training and familiarity with citric acid is relevant.  However, he stated that he had an employment related dispute but was directed not to answer questions about the identity of the attorney representing him in that dispute and the length of the dispute.  (*Id*., T. 168:23 – T. 169:23).  It is not known whether or not that former employer is the entity at which Plaintiff Ashour allegedly became familiar with citric acid.

19

The questions relating to the employment matter are not privileged and no grounds existed to instruct Plaintiff Ashour not to answer. *See Natural-Immunogenics Corp. v. Newport Trial Group*, Case No. SACV 15-02034, 2019 WL 11742967, at *2 (C.D. Cal. June 27, 2019) (citing to cases for authority that underlying facts of an attorney-client relationship, such as whether a communication took place, the identity of parties who were present and the date of communication, are not privileged). Plaintiff Ashour certainly did not comply with Local Civil Rule 26(a)(2)(B) concerning the information required to be furnished when the privilege is invoked.

During a subsequent meet and confer conference, Plaintiff Ashour stood by his refusal to answer questions about the employment related dispute.

### B.       Plaintiff Ashour's Delay Between Retaining Counsel and Filing Suit Coincided With the Employment Dispute

Plaintiff Ashour testified that he accessed an online website, "Class Action Lawsuits", and contacted Mr. Reese by phone "sometime between late November and late December, if I have to guess." (Donovan Dec., Ex. 6, T.  42:18-22; T. 43:16-44:10).  At that time, he believed that Defendants' labels were false because of the "No Preservative" label given the presence of citric acid. (*Id.*, T. 48:19-49:3).

A signed retainer agreement from the Reese firm, produced in discovery, is dated January 9, 2019 ("January 9 Agreement"). (See Exhibit A filed under seal). Plaintiff stated that he received the January 9 Agreement by email but does not recall exactly when he received same. (Donovan Dec., Ex. 6, T.37:23-T. 38:2). He further stated that he deleted that email but does not know when that deletion occurred. (*Id.*, T. 38:3-15). He also does not know when he returned that agreement by email to counsel. (*Id.*, T. 41:17-42:2). When asked for the reasons for the period between retaining counsel and filing the complaint (*i.e.,* May 14, 2019), Plaintiff Ashour had no explanation. (*Id.*, T.91:17-92:2).

In the course of follow-up discovery, Defendants sought a privilege log of all communications between Plaintiff and counsel about the draft complaint referenced in the deposition and in the January 9 Agreement.  Plaintiff Ashour's counsel wrote to Defendants' attorneys stating that, due to a typographical error, Mr. Ashour did not receive a draft complaint in the manner referenced in the January 9 Agreement (*i.e.,* prior to receiving the January 9 Agreement).  (*Id.*, Ex. 7).  Counsel furnished a log of communications about the draft complaint that do not include any communications with Plaintiff Ashour about any draft complaint prior to May 3, 2019.  (*Id.*, Ex. 8).  Therefore, any reason for the delay during the 5-month period remains a further mystery as such a delay would be unrelated to reviewing and revising the complaint up to May 3, 2021.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion: (1) to amend the Scheduling Order bifurcating discovery with regard to liability and damages; (2) for a protective order as concerning Plaintiffs' 30(b)(6) deposition notice striking Topics 10, 18-22, 24 and 25; and (3) to compel Plaintiff Ashour to answer deposition questions about the employment related dispute referred to in his deposition.

Dated:  May 24, 2021                          Respectfully submitted,

*/s/ Robert P. Donovan*
Robert P. Donovan

STEVENS & LEE
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone:  (201) 857-6760
Facsimile: (201) 857-6761
*Robert.Donovan@StevensLee.com*
*Attorneys for Defendants, Arizona Beverages*
*USA LLC, Hornell Brewing Co., Inc., Beverage*
*Marketing USA, Inc., Arizona Beverages Holdings*
*LLC, and Arizona Beverages Holdings 2 LLC*

21