**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AHMED ASHOUR, JOY BROWN and CRYSTAL TOWNES, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC,<br><br>    Defendants. | CASE NO. 1:19-cv-07081-(AT) (OTW)<br><br>**CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION
TO DEFENDANTS' MOTION (1) TO BIFURCATE DISCOVERY ON LIABILITY AND
DAMAGES, (2) FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' RULE
30(B)(6) DEPOSITION NOTICE AND (3) TO COMPEL DISCOVERY FROM
PLAINTIFF AHMED ASHOUR**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ........................................................................................................1

II.    DEFENDANTS' MOTION TO BIFURCATE DISCOVERY SHOULD BE
DENIED......................................................................................................................3

      A.    Defendants Do Not Come Close to Satisfying Their Difficult-to-Meet Burden
of Showing that Bifurcating Discovery of Liability from Damages Is
Warranted ........................................................................................................3

      B.    Defendants' Proposed Piecemeal Schedule Is Inappropriate........................7

III.   SUPPLY-SIDE FACTORS RELATING TO DEFENDANTS' PRICING
ARE RELEVANT TO PLAINTIFFS' CLAIMS...........................................8

      A.    Profits and Costs Information Are Relevant to Plaintiffs' Damages............8

      B.    Profits and Costs are Also Relevant to Plaintiffs' Restitution Claim .........12

IV.   DEFENDANTS CANNOT SUSTAIN THEIR BURDEN FOR
COMPELLING DISCOVERY ..............................................................................13

      A.    Defendants Seek Information That Is Either Privileged or Subject to a
Confidentiality Agreement............................................................................13

      B.    Information Relating to a Gap in Time Between When Plaintiffs' Counsel
Was Retained and the Complaint Was Filed Is Not Relevant......................17

V.    CONCLUSION ........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*257 Franklin Ave. Residents' Ass'n v. Meisels*,
No. 11 Civ. 976 (KAM) (JO), 2013 WL 12403049 (E.D.N.Y. Nov. 5, 2013) .........................17

*Aberin v. Am. Honda Motor Co., Inc.*,
No. 16-CV-04384-JST, 2021 WL 1320773 (N.D. Cal. Mar. 23, 2021)...................................10

*Alvarado v. GC Dealer Servs. Inc.*,
No. 18-cv-2915 (SJF)(SIL), 2018 WL 6322188 (E.D.N.Y. Dec. 3, 2018) ..............................16

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11-CV-0184 (LHK), 2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ....................................10

*Bailey v. Rite Aid Corporation*,
No. 4:18-CV-06926 YGR, 2021 WL 1668003 (N.D. Cal. Apr. 28, 2021) ..............................10

*Banks v. Gen. Motors, LLC*,
No. 14CV970S, 2017 WL 3172552 (W.D.N.Y. July 26, 2017) ..............................................16

*Barbara v. MarineMax, Inc.*,
No. 12-CV-368 ARR RER, 2013 WL 1952308 (E.D.N.Y. May 10, 2013)..............................14

*Brazil v. Dole Packaged Foods, LLC*,
660 F. App'x 531 (9th Cir. 2016) ..........................................................................................12

*Bridges v. Corr. Servs.*,
No. 17-CV-2220(NSR), 2020 WL 6899695 (S.D.N.Y. Nov. 24, 2020)..................................14

*Charvat v. Plymouth Rock Energy, LLC*,
No. 15CV4106JMASIL, 2016 WL 207677 (E.D.N.Y. Jan. 12, 2016) ......................................3

*Coggins v. Cnty. of Nassau*,
No. 07 Civ. 3624, 2014 WL 495646 (E.D.N.Y. Feb. 6, 2014) ...............................................13

*Colgan v. Leatherman Tool Group, Inc.*,
38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006)................................................................................12

*Collens v. City of New York*,
222 F.R.D. 249 (S.D.N.Y. 2004)........................................................................................13, 14

*Collins v. JC Penney Life Insurance Co.*,
No. 02-cv-0674, 2004 WL 25945842 (S.D. Cal. May 6, 2003)...............................................12

*Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc.*,
  No. 14-CV-3673 (KAM)(JO), 2017 WL 10088567 (E.D.N.Y. Sept. 4, 2017) ..........................4

*FragranceNet.com, Inc. v. FragranceX.com, Inc.*,
  No. CV062225JFBAKT, 2007 WL 9710244 (E.D.N.Y. Aug. 28, 2007) ..............................3, 7

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018).......................................................................................9

*In re Bloomfield Inv. Res. Corp.*,
  315 F.R.D. 165 (S.D.N.Y. 2016).................................................................................................5

*In re Gen. Motors LLC Ignition Switch Litig.*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019) ........................................................................................9

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009)...............................................................................................................12

*In re: Coca-cola Products Marketing and Sales Practices Litig.* (No. II),
  Case No. 14-md-02555-JSW-MEJ, 2016 WL 6245899 (N.D.Ca. Oct. 26, 2016) .....................9

*In re: MacBook Keyboard Litig.*,
  No. 5:18-CV-02813-EJD, 2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) ...................................10

*Izquierdo v. Panera Bread Co.*,
  450 F. Supp. 3d 453 (S.D.N.Y. 2020) ......................................................................................11

*Jernow v. Wendy's Int'l, Inc.*,
  No. 07 CIV. 3971(LTS)(THK), 2007 WL 4116241 (S.D.N.Y. Nov. 15, 2007) .....................12

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
  No. 18CIV4476LJLSLC, 2020 WL 1166047 (S.D.N.Y. Mar. 11, 2020) ..........................3, 4, 5

*Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
  No. 15 Civ. 0293(LTS)(JCF), 2017 WL 2305398 (S.D.N.Y. May 18, 2017) ..........................15

*New Falls Corp. v. Soni*,
  No. CV 16-6805 (ADS)(AKT), 2020 WL 2836787 (E.D.N.Y. May 29, 2020) ......................17

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) .....................................................................................................11

*Price v. L'Oreal*,
  No. 17 Civ. 614 (LGS), 2020 WL 4937464 (S.D.N.Y. Aug. 24, 2020).....................................9

*Ruderman v. L. Off. of Yuriy Prakhin, P.C.*, No. 19-CV-2987 (RJD), 2021 WL 1108661
(E.D.N.Y. Mar. 22, 2021) .................................................................................................15

*Sasmor v. Meisels,*
708 F. App'x 728 (2d Cir. 2017) .......................................................................................17

*Thayer v. Dial Indus. Sales,*
85 F. Supp. 2d 263, 274 (S.D.N.Y. 2000) .......................................................................12

*Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452 (S.D.N.Y. Aug.
5, 2010) .............................................................................................................................12

**STATUTES**

New York General Business Law § 349 ........................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1) .........................................................................................................13, 14

Fed. R. Civ. P. 26(c) ................................................................................................................3, 13

Fed. R. Civ. P. 42(b) .....................................................................................................................3

Local Rule 26.2(a)(2)(B) ..............................................................................................................14

## I.   INTRODUCTION

Defendants[1] move to bifurcate discovery.  Their motion, which effectively acts as a motion to improperly stay discovery, seeks to upend the standard discovery process.  Moreover, before a court may grant that request, Defendants must meet a heavy burden, which they have failed to establish here.  In fact, the only reason they give for bifurcation is that it is warranted due to "The Principle of Proportionality and Efficiency," however Defendants fail to explain what they mean by that.

Defendants also propose a schedule for moving forward that is unacceptable for several reasons.  First, Defendants never met and conferred with Plaintiffs[2] regarding their proposed schedule.  Second, without explanation, Defendants' propose a schedule that differs from the schedule Defendants previously proposed to Plaintiffs, which seeks to inconvenience Plaintiffs by requiring them to serve their opening liability expert reports after Thanksgiving weekend.  Finally, Defendants' proposal to cure their unspecified concerns about "efficiency" is belied by the fact that the most efficient course would be to conduct parallel liability and damages discovery, which is how discovery is conducted in practically all litigations throughout the country.

Moreover, Defendants continue to resist producing profits and costs information relating to their beverage products.  Unfortunately for Defendants, courts in this District and throughout the country have held that such information is relevant to the issue of damages in cases like the present one.  In fact, at a hearing held in this matter on March 17, 2021, this Court agreed with Plaintiffs that pricing information is relevant to calculating damages.  Also at that hearing, in connection with discussing Plaintiffs' request for pricing information in Defendants' possession,

---

[1] Arizona Beverages USA LLC, Hornell Brewing Co., Inc., Beverage Marketing USA, Inc., Arizona Beverages Holdings LLC and Arizona Beverages Holdings 2 LLC ("Defendants").

[2] Ahmed Ashour, Joy Brown and Crystal Townes (each a "Plaintiff" and, collectively, "Plaintiffs")

the Court advised the parties to meet and confer on the issue and specifically warned Defendants to not claim that they do not know what the term "marginal costs" means. Remarkably, Defendants continue to fight a losing battle without ever providing any legal support for their position that pricing information, including profits and costs, is not relevant in cases like the present one, and the court cases Defendants do cite, do not stand for the propositions they are cited for.

Defendants also improperly seek to compel information that is either privileged and confidential, or not relevant to any party's claim or defense. For example, Defendants are wrong when they argue that Plaintiff Ashour was improperly instructed to not answer questions at his deposition. The two areas of questioning that Mr. Ashour was instructed not to answer included (i) a legal matter he was involved in relating to an employment dispute, including the name of his attorney, which is protected from disclosure by the attorney-client privilege and (ii) the settlement of that employment dispute, which is subject to a non-disclosure agreement. Defendants' desire to delve into these topics, which are wholly-irrelevant to the parties' claims and defenses, appear more akin to a fishing expedition than a legitimate effort to obtain relevant information.

Finally, Defendants seek to compel information relating to a gap in time between when Mr. Ashour retained Plaintiffs' counsel and the filing of the Class Action Complaint (the "Complaint"). Except for arguing that they are curious about this purported "mystery," Defendants fail to provide a single, valid reason for why this information is relevant to the issue of Plaintiffs' adequacy or claims, or any of Defendants' potential defenses to their unlawful conduct. Defendants' other argument in this regard, that Mr. Ashour's employment dispute may have caused the delay, defies common sense and should be rejected. In fact, because these discovery requests bear no logical connection to any of the parties' claims or defenses, they appear to be designed to harass, intimidate and/or embarrass Mr. Ashour.

## II.   DEFENDANTS' MOTION TO BIFURCATE DISCOVERY SHOULD BE DENIED

### A.   Defendants Do Not Come Close to Satisfying Their Difficult-to-Meet Burden of Showing that Bifurcating Discovery of Liability from Damages Is Warranted

A motion to bifurcate discovery topics is generally governed by the same standards that apply to  motions to bifurcate trials under Federal Rule of Civil Procedure 42(b).  *See Charvat v. Plymouth Rock Energy, LLC*, No. 15CV4106JMASIL, 2016 WL 207677 (E.D.N.Y. Jan. 12, 2016) ("The standards applicable to motions to bifurcate discovery appear to be the same as those addressed under Fed.R.Civ.P. 42(b) governing separate trials . . . .").  "In deciding whether to bifurcate, courts analyze the following factors: (1) convenience; (2) judicial economy; (4)(sic) expedience; and (5) prejudice." *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, No. CV062225JFBAKT, 2007 WL 9710244, at *2 (E.D.N.Y. Aug. 28, 2007) (alterations omitted).

Similarly, because Defendants' request to sever off discovery on damages is effectively a request to stay discovery into damages, Defendants' request should also be analyzed under the "good cause" standard.  *FragranceNet.com,* 2007 WL 9710244  at *2 ("Since Defendant's motion also seeks relief which would be tantamount to a stay of discovery on damages pending the issue of liability, I am also analyzing the motion under the good cause standard used to stay discovery . . . ."); *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18CIV4476LJLSLC, 2020 WL 1166047, at *5 (S.D.N.Y. Mar. 11, 2020) ("On 'a showing of good cause[,] a district court has considerable discretion to stay discovery pursuant to Federal Rule of Civil Procedure 26(c).'").  Similar to the above-referenced factors relevant to a motion to bifurcate, a motion to stay discovery requires an evaluation of "(1) the breadth of the discovery sought; (2) the burden of responding to it; and (3) the prejudice that would be suffered by the party opposing the stay." *FragranceNet.com,* 2007 WL 9710244 at *2.

Regardless of whether Defendants' request is considered a motion to bifurcate discovery or a motion to stay damages discovery, **Defendants bear a heavy burden** in upending standard discovery procedure. *See Equal Emp. Opportunity Comm'n v. United Health Programs of Am., Inc.*, No. 14-CV-3673 (KAM)(JO), 2017 WL 10088567, at *14 (E.D.N.Y. Sept. 4, 2017) ("'Bifurcation is the exception, not the rule, and the **party seeking bifurcation shoulders the heavy burden** of establishing that bifurcation is warranted.'") (citation omitted) (emphasis added); *Loc. 3621*, 2020 WL 1166047 at *5 (explaining on a request to bifurcate discovery that "Defendants bear the burden of demonstrating good cause under Rule 26(c)").

Defendant do not come anywhere close to satisfying their burden. Although they offer the conclusory assertion that bifurcation is warranted due to "The Principle of Proportionality and Efficiency" (Defendants' Omnibus Discovery Motion "Def. Mot." 5), Defendants never articulate what they mean by that. Instead, they take several detours.

*First*, Defendants oddly emphasize Plaintiffs' previous explanation that the requested financial information is important to Plaintiffs' pursuit of nationwide class certification. *See* Def. Mot. 5-7. It is unclear why Defendants would choose to focus on this. After all, the fact that this information could be critical to Plaintiffs' ability to certify a nationwide class only bolsters Plaintiffs' entitlement to this information. *Second*, Defendants emphasize that they— the defendants in a nationwide class action—have provided some basic discovery information on liability. *See* Def. Mot. 7. Again, it is not clear why the fact that some liability discovery "is indeed proceeding" (*id.*) would somehow immunize Defendants from needing to supply financial information that is clearly relevant to this case.

*Third*, Defendants complain that Plaintiffs "seek other massive amounts of information about Defendants' revenues, costs and profits." Def. Mot. 7.  But, that is just hyperbole.[3]  As discussed in further detail below, and as Plaintiffs' counsel has already explained, the financial information that Plaintiffs have requested is presumably accessible by "pressing a button on a computer." *See* Tr. Mar. 17, 2021 Hr'g 15:9; 23:13-15 (Declaration of Carlos F. Ramirez "Ramirez Decl." Ex. A)("We are not asking for thousands of pages of internal records showing every carton or every sale made.").  Defendants have made ***zero effort*** to articulate that they would actually be burdened by having to produce the requested information now.  *See Loc. 3621*, 2020 WL 1166047 at *4 ("To the extent that Defendants resist this discovery on grounds of burden, they must show the nature and extent of the burden. Defendants have not made any specific showing of how search and production of the requested documents would be burdensome.") (citations omitted); *see also In re Bloomfield Inv. Res. Corp.*, 315 F.R.D. 165, 168 (S.D.N.Y. 2016) (overruling burden objection where objecting party did not "present particularized evidence in their briefing that production of the . . . records would be unduly burdensome or costly, such as an affidavit of a person with knowledge of the record keeping system explaining in detail the basis of the objection").  Defendants tellingly present no affidavit from any employee explaining why it would be unduly burdensome to turn over the requested information.

*Fourth,* Defendants embark on a tangent about class certification.  *See* Def. Mot. 7-8.  Specifically, Defendants claim that they should not be required to turn over the requested discovery now prior to the Court certifying a nationwide class.  Def Mot. 8 ("This discovery is sought prior to any ruling by the Court that they can bring such claims on behalf of unidentified

---

[3] So too is Defendants' unsupported, sweeping reference to "[t]he enormity of the revenue, profit and cost discovery sought." *See* Def. Mot. 8.

alleged consumers in states where Plaintiffs never made a purchase."). But, as discussed at the prior conference before the Court, Plaintiffs are concerned that if they do not obtain this nationwide financial information before filing their motion for class certification, that the absence of this information will be invoked by Defendants as a purported reason why the Court should deny Plaintiffs' motion to certify a nationwide class. Plaintiffs have on multiple occasions given Defendants the opportunity to stipulate that in exchange for Plaintiffs agreeing to stand down on their request for nationwide financial information now, Defendants would agree not to use the absence of that information against Plaintiff on class certification. Defendants have yet to take Plaintiffs up on that offer.

*Fifth*, Defendants brazenly suggest that "Plaintiffs have already, in effect, advocated for such a deferral of damage discovery in responses to interrogatories." Def. Mot. 8. This, of course, is not true. As shown in his response to Defendants' interrogatory about the monetary damages he suffered, Plaintiff Ashour specifically articulated that "he has sustained economic damages in that he would not have purchased the Products, or would have paid less for them, but for Defendants' false, deceptive, and misleading labeling and marketing of the Products." *See* Donovan Dec. Ex. 3. However, Plaintiff Ashour also explained that the interrogatory clearly prematurely called for expert discovery and, given that minimal documents had been produced to date, he would not be able to provide a more complete damages estimate until later in the case. *See id.*

In short, Defendants have not met their burden of specifying why "proportionality" and "efficiency" would be best served by staying damages discovery until later in the case. The Court should not just take Defendants' word for it.

**B.      Defendants' Proposed Piecemeal Schedule Is Inappropriate**

Plaintiffs are amenable to the Court entering a schedule that governs the remainder of the case, including the timing of Plaintiffs' motion for class certification.  Defendants' schedule, however, is unacceptable for several reasons.  For one, Defendants ***never even bothered meeting and conferring*** with Plaintiffs on Defendants' proposed schedule to see whether certain common ground could be reached.  This is illustrated by the fact that this schedule differs from the schedule that Defendants previously proposed to Plaintiffs.  *Compare* Donovan Ex. 2 (requesting, for example, that Plaintiffs disclose identities of their liability experts on August 5, 2021) *with* Def. Mot. 9-10 (requesting, for example, that Plaintiffs disclose identities of their liability experts nearly three months later—on October 31, 2021).  Furthermore, Defendants have conveniently proposed that Plaintiffs' opening liability expert reports are due on November 30, 2021—right after the Thanksgiving holiday weekend (November 30, 2021). *See* Def. Mot. 10.

Despite Defendants' unspecified concerns about "efficiency," the most efficient course would be to finish liability and damages discovery in one fell swoop.  *See FragranceNet.com*, 2007 WL 9710244 at *3 ("Further, the goals of judicial economy and expediency would best be served by conducting discovery on liability and damages at the same time. Engaging in discovery on both the liability and damages issue on a consolidated basis will allow the parties as well as the Court to avoid duplication.") (citation omitted).  Then, after receiving a ruling from the Court confirming whether this is or is not a nationwide class action, the parties could serve merits expert reports on liability and damages at the same time.

Accordingly, Plaintiffs propose the following schedule for the remainder of the case:

| Event | Deadline |
|---|---|
| Completion of fact discovery | October 22, 2021 |

| | |
|---|---|
| Plaintiffs' motion for class certification and service of expert reports related to class certification | November 5, 2021 |
| Defendants' opposition to motion for class certification and service of expert reports in response to Plaintiffs' expert reports related to class certification | December 22, 2021 |
| Plaintiffs' reply in support of motion for class certification and Plaintiffs' service of rebuttal expert reports related to class certification | January 28, 2022 |
| *Daubert* motions on expert reports related to class certification | February 18, 2022 |
| Oppositions to *Daubert* motions on expert reports related to class certification | April 1, 2022 |
| Replies to *Daubert* motions on expert reports related to class certification | April 29, 2022 |
| Plaintiffs' opening merits expert reports due | 6 weeks after Court's ruling on Plaintiffs' motion for class certification |
| Defendants' merits expert reports due | 6 weeks after Plaintiffs' opening merits expert reports due |
| Plaintiffs' rebuttal merits expert reports due | 4 weeks after Defendants' merits expert reports due |

## III.   SUPPLY-SIDE FACTORS RELATING TO DEFENDANTS' PRICING ARE RELEVANT TO PLAINTIFFS' CLAIMS

### A.   Profits and Costs Information Are Relevant to Plaintiffs' Damages

In seeking a protective order in connection with Plaintiffs' 30(b)(6) Topics 10 and 24,[4] Defendants argue that profits and costs are not relevant to measure Plaintiffs' damages. Def. Mem. 13-14.  And even though this case was filed as a putative class action, Defendants continue to argue that Plaintiffs are not entitled to cost and profits information because this is an individual action since a class has yet to be certified. Def. Mem. 13-14.  Unfortunately for Defendants, profits and costs information is relevant to damages in both individual and class action cases that allege

---

[4] Defendants also appear to object to Topics 18-22 and 25, (Def. Mem. 14-16), however, they fail to provide any reasoning or arguments in support of their purported objection.

payment of a price premium due to Defendants' unlawful conduct.  Accordingly, Defendants are not entitled to the protective order they seek.

First, a damages calculation in a case alleging payment of a price premium requires certain information regarding the supply-side factors, such as profits and costs, affecting the pricing of the offending product.  *See Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1106 (N.D. Cal. 2018)(Koh, J.)(stating "these measures adequately account for supply-side market factors because 'all the factors that affected Kellogg's willingness to sell'—*i.e., supply—'during the class period, like cost of goods, are reflected in the sales [quantity] and prices* that were actually extant in the market during that time.'"); *In re: Coca-cola Products Marketing and Sales Practices Litig.* (No. II), Case No. 14-md-02555-JSW-MEJ, 2016 WL 6245899, at *8 (N.D.Ca. Oct. 26, 2016)(emphasis added)(find that data relating to "*sales, revenues, profits and prices are generally discoverable*" in labeling cases).  Any distinction that Defendants make about the relevance of this information to damages in class cases versus individual cases is illusory and not supported by any caselaw.  Moreover, damages models that have failed to consider the supply-side factors of the offending product's pricing have been rejected.  *See Price v. L'Oreal*, No. 17 Civ. 614 (LGS), 2020 WL 4937464, at *6-9 (S.D.N.Y. Aug. 24, 2020)(granting defendant's *Daubert* motion because plaintiff's aggregate damages model was unreliable in that it failed to consider defendant's actual pricing and unit sales data); *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 236-39 (S.D.N.Y. 2019)(rejecting plaintiff's damages model due to its failure to consider "actual" (versus "assumed") supply-side factors, including marginal costs and willingness to sell); *Zakaria v. Gerber Prod. Co.*, 755 F. App'x 623, 624-25 (9th Cir. 2018)(decertifying a case whose damages model failed to consider supply-side factors).

Second, the failure to consider supply-side factors in Plaintiffs' damages analysis could result in an overvaluation of Defendants' "No Preservatives" misrepresentations, which Defendants can then use as a defense to Plaintiffs' damages calculations.  This is exactly what happened in *Apple Inc. v. Samsung Elecs. Co*., No. 11-CV-0184 (LHK), 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014).  There, an economic study seeking to determine damages attributed to six different features of a smart phone led to a determination that a consumer would be willing to pay at least $422 for a smartphone that retailed for only $199.  *See id*.  In other words, considering the consumers' willingness to pay for a product's features in a vacuum could result in a substantial overvaluation of damages.  Should Plaintiffs' damages model suffer a fate similar to the one in *Apple*, Defendants will undoubtedly use that opportunity to object to the use by Plaintiffs of a calculation that overestimates the alleged price premium paid for its products.  Thus, by purposely failing to comply with the discovery rules, Defendants could be laying the groundwork for moving to strike Plaintiffs' damages analysis as countless other defendants have done.  *See, e.g., Bailey v. Rite Aid Corporation*, No. 4:18-CV-06926 YGR, 2021 WL 1668003, at *16-17 (N.D. Cal. Apr. 28, 2021)(rejecting defendant's attempt to strike plaintiff's expert's damages analysis on supply-side factor grounds because the court found that the expert had, in fact, considered supply-side factors in his damages model); *In re: MacBook Keyboard Litig*., No. 5:18-CV-02813-EJD, 2021 WL 1250378, at *6 (N.D. Cal. Apr. 5, 2021)(rejecting Apple's attempt to strike plaintiff's expert's damages analysis on supply-side factor grounds because the court found that the expert had, in fact, considered "Apple's cost and price-cost margin data" in his damages analysis); *Aberin v. Am. Honda Motor Co., Inc.*, No. 16-CV-04384-JST, 2021 WL 1320773, at *13 (N.D. Cal. Mar. 23, 2021)(same).

Moreover, at the March 17, 2021 hearing in this matter, this Court effectively ruled that pricing information relating to the offending beverage products is relevant to Plaintiffs' damages calculation and that Defendants must produce it, including providing that information on a nationwide basis. Tr. Mar. 17, 2021 Hr'g 32:21-33:23 (Ramirez Decl. Ex. A). The Court also accepted Plaintiffs' Counsels' representation that the cost of goods sold is relevant to a price premium calculation. *Id*. at 33:24-35:17. Finally, the Court noted that "cost of goods sold" is a pricing factor that most companies "estimate" or "collect" and, thus, Defendants should not claim that they have "no idea what [that] term means . . . ." *Id*. at 36:10-19.

Defendants cite *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453 (S.D.N.Y. 2020) for the proposition that profits and costs are not relevant to a damages calculation. However, *Izquierdo* did not address whether profits and costs were relevant to a determination of damages in a price premium case. In fact, *Izquierdo* only addressed whether, ***in connection with a motion to dismiss***, the plaintiff had adequately pled injury in connection with his New York GBL § 349 claims. *Id*. at 464-66. Defendants also cite, *Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015), for the proposition that "[c]osts, profits and overall sales revenues of the seller bear no logical relation to the damage question." *See* Def. Mem. 13. However, a reading of *Orlander* shows that it stands for the proposition that "a plaintiff must allege [at the pleading stage] that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. Interestingly, Defendants even agree that is the holding in *Orlander*. *See* Def. Mem 13-14 (interpreting *Orlander* to mean that "the focus of a damage claim under a price premium theory is the supposed difference between what was paid and the value of what was received."). Thus, Plaintiffs are left wondering why Defendants cited *Orlander* in the first place. For those reasons, Defendants' reliance on *Izquierdo* and *Orlander* is misplaced.

11

**B.      Profits and Costs are Also Relevant to Plaintiffs' Restitution Claim**

Defendants argue that profits and costs are not relevant for purposes of calculating restitution.   Again, Defendants misstate well-settled law.   In fact, the proper measurement of restitution in consumer class actions is the "price premium" paid by Plaintiffs because of Defendants' unlawful conduct.   *Weiner v. Snapple Beverage Corp.*, No. 07 CIV. 8742 DLC, 2010 WL 3119452, at \*10-11 (S.D.N.Y. Aug. 5, 2010); *Jernow v. Wendy's Int'l, Inc.*, No. 07 CIV. 3971(LTS)(THK), 2007 WL 4116241, at \*5 (S.D.N.Y. Nov. 15, 2007); *Thayer v. Dial Indus. Sales,* 85 F. Supp. 2d 263, 274 (S.D.N.Y. 2000)*; Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534-35 (9th Cir. 2016).   As demonstrated above, in order to properly determine the amount of that price premium, Plaintiffs' damages experts must consider supply-side factors, including profits and costs.   *See* II.A, supra.

Defendants' rely on *Collins v. JC Penney Life Insurance Co.*, No. 02-cv-0674, 2004 WL 25945842 (S.D. Cal. May 6, 2003) in support of their argument that profits and costs are not relevant for calculating restitution.  However, *Collins* did not consider profits and cost information in the context of restitution, it did so in the context of calculating punitive damages.   Moreover, the court did not reject the plaintiff's discovery request on substantive grounds.   To the contrary, the court rejected it as premature and gave the plaintiff leave to re-apply to compel that information at a later stage.   The two other cases that Defendants cite, *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) and *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 61 (Cal. Ct. App. 2006), discuss the availability of restitution in cases alleging claims under the California Unfair Competition Law and the definition of restitution, respectively, and neither supports Defendants' argument that profits and cost are irrelevant to a restitution calculation.

## IV.   DEFENDANTS CANNOT SUSTAIN THEIR BURDEN FOR COMPELLING DISCOVERY

### A.   Defendants Seek Information That Is Either Privileged or Subject to a Confidentiality Agreement

Defendants' motion to compel seeks information related to a legal matter involving Plaintiff Ashour, as well as the name of the attorney that represented him.  *See* Def. Mem. 17-19. Because this information is legally protected from disclosure for several reasons, Defendants' motion must be denied.

According to Rule 26(b), "[e]ven where information may be relevant, discovery should not be compelled if the information is privileged or if there is good cause for a protective order." *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004)(citing Fed. R. Civ. P. 26(b)(1), Fed. R. Civ. P. 26(c)).  Moreover, district courts have "broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be privileged or confidential." *Coggins v. Cnty. of Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y. Feb. 6, 2014).

Despite being informed on more than one occasion that information relating to Mr. Ashour's legal representation in an employment matter is protected by the attorney-client privilege (*see* Def. Mem. 18, 20), Defendants continue to insist that they are entitled to such discovery. Defendants' other request, for Mr. Ashour's attorney's name, is particularly perplexing.  Surely, Defendants must know that Mr. Ashour's attorney is legally bound to keep confidential any communications with his client regarding the legal representation.  Thus, Defendant' request for his attorney's name appear to be designed to harass Mr. Ashour.  Moreover, regarding Defendants' request for information relating Mr. Ashour's employment dispute, that matter was settled and is subject to a confidentiality agreement.  Thus, because the information Defendants seek concern a

legal representation in an employment matter, and the settlement of an employment dispute, are privileged and confidential, Defendants' motion must be denied.

Defendants also argue that Plaintiff Ashour did not comply with "Local Rule 26(a)(2)(B)(sic) concerning the information required to be furnished when the privilege [was] invoked." Def. Mem. 20. Defendants misread the Local Rule. Local Rule 26.2 only applies to a party's assertion of privilege over information that is relevant to the pending litigation. Thus, because Rule 26 only applies to information "that is relevant to a party's claim or defense," and as discussed below, Mr. Ashour's dispute with a past employer is not relevant to this action, Plaintiff was not required to comply with the Local Rule. In fact, that is the reason why a privilege log is only required to be produced regarding privileged matters relevant to the pending litigation versus every legal matter that a producing party may have ever been involved in.

Nevertheless, should there be any question about whether or not Plaintiff Ashour's employment dispute and the name of his attorney, are relevant to this case, Plaintiffs will now address that argument. First, Rule 26(b)(1) "does not allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Barbara v. MarineMax, Inc*., No. 12-CV-368 ARR RER, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013)(citation and internal quotation marks omitted). Moreover, while the Rule does provide for broad discovery, "courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." *Bridges v. Corr. Servs*., No. 17-CV-2220(NSR), 2020 WL 6899695, at * 4 (S.D.N.Y. Nov. 24, 2020) citing *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004). Here, except for conclusory statements that the name of Mr. Ashour's attorney and/or his employment dispute are "relevant" (Def. Mem. 19),

Defendants have failed to articulate any facts that support how an unrelated, employment dispute, which occurred in February 2018 (over a year before the filing of the Complaint), is relevant in a consumer fraud class action involving misleading labeling.  Defendants cannot.

Defendants' other arguments for why they are entitled to this information, that "Mr. Ashour places his employment background in issue in this case," and because "Plaintiff Ashour's alleged training and familiarity with citric acid is relevant," are also flawed.  First, Mr. Ashour's prior employment at a restaurant, and the circumstances involving a dispute with his employer, is a past action that is wholly irrelevant to this case.  In fact, unless Mr. Ashour affirmatively places his prior job performance at issue for purposes of establishing a party's claim or defense, which he has not done here, any privileged information related to his prior employment is not discoverable.  *Ruderman v. L. Off. of Yuriy Prakhin, P.C.*, No. 19-CV-2987 (RJD), 2021 WL 1108661, at *4 (E.D.N.Y. Mar. 22, 2021)(discussing the "at-issue" waiver of the attorney-client privilege).  And while there may come a time when the underlying facts of a legal representation may be subject to disclosure, they are only required to be disclosed if they are relevant to the claims at issue in the litigation.  *Mortg. Resol. Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293(LTS)(JCF), 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017)(compelling production of documents concerning underlying facts of representation, but only "insofar as those documents are relevant to the . . . claims at issue here.").

Second, Mr. Ashour's training and/or familiarity with citric acid is not relevant either.  For example, this fact will not be used by Plaintiffs to establish any claims.  If called as a witness at trial, Mr. Ashour will not be required to provide any testimony regarding his training and familiarity with citric acid to establish claims of unjust enrichment or those arising under California's consumer protection laws.  Moreover, based on Mr. Ashour's testimony during his

deposition, wherein he testified that at some point during late 2018 he happened to look at Defendants' ingredients list and finally realized that it contained something he had learned from bartending was a preservative (i.e. citric acid)(Ramirez Decl. Ex. B, Tr. 168:3-18), it is hard to imagine how Defendants will use Mr. Ashour's training or familiarity with citric acid as a defense to the fact that they have sold billions of beverage products labeled "No Preservatives," even though they contained citric acid.  Perhaps, and this would be a stretch at best, Defendants may try to argue that this information may somehow constitute impeachment material.   However, compelling a party to produce information based on the speculation that it may impeach a party's credibility is tantamount to an improper fishing expedition.  *Alvarado v. GC Dealer Servs. Inc.*, No. 18-cv-2915 (SJF)(SIL), 2018 WL 6322188, at *4 (E.D.N.Y. Dec. 3, 2018)(denying defendant's motion to compel production of impeachment evidence because whether it even existed was speculative amounted to nothing more than a fishing expedition).  In addition, it would be improper to allow Mr. Ashour's deposition to be re-opened to address an issue that can be dealt with at trial.  *See Banks v. Gen. Motors, LLC*, No. 14CV970S, 2017 WL 3172552, at *6 (W.D.N.Y. July 26, 2017)(holding that a party should not be allowed to resume a deposition if its purpose is to attempt to undermine a witnesses credibility versus seeking discovery relevant to an opposing party's claims).   Thus, Defendants' motion to compel irrelevant information concerning Mr. Ashour's employment, as well as his familiarity with  citric acid, should be denied.  Importantly, neither are important to Mr. Ashour's ability to represent the classes, or relevant to any party's claim or defense in this matter.

**B.      Information Relating to a Gap in Time Between When Plaintiffs' Counsel Was Retained and the Complaint Was Filed Is Not Relevant**

Defendants also seek to obtain information relating to a delay between the time that Mr. Ashour retained Class Counsel and the filing of the Complaint.  However, they fail to provide any reasonable basis for why this information is relevant.  Moreover, the arguments they make are illogical and based on pure speculation.  Accordingly, Plaintiffs should not be compelled to provide the requested information.

Parties seeking "discovery must make a prima facie showing, that the discovery sought is more than merely a fishing expedition." *257 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11 Civ. 976 (KAM) (JO), 2013 WL 12403049, at *2 (E.D.N.Y. Nov. 5, 2013) (internal citation and quotation removed), aff'd sub nom. *Sasmor v. Meisels*, 708 F. App'x 728 (2d Cir. 2017).  In addition, a party seeking to compel discovery must show how they are relevant to the action.  *New Falls Corp. v. Soni*, No. CV 16-6805 (ADS)(AKT), 2020 WL 2836787, at *7 (E.D.N.Y. May 29, 2020)("Aside from the conclusory assertion that the tax returns "will likely contain relevant information," Plaintiff has not provided any explanation as to how the requested tax returns are in fact relevant to this action and proportional to the needs of the case.").

In arguing that this information is relevant, Defendants speculate that the delay "coincided with Mr. Ashour's employment dispute."  Def. Mem. 20.  Defendants also speculate that "any reason for the delay during the 5-month period remains a further mystery as such a delay would be unrelated to reviewing and revising the complaint up to May 3, 2021."  *Id*. at 21.  However, these speculations are not logically connected to the need for the requested information, nor do they establish how the purported delay complained of here is relevant to any of the parties' claims or defenses.  This is yet one more example of how Defendants continue to try to obtain wholly-irrelevant information for the purpose of, what appears to be, harassing Plaintiff Ashour.  Since

Defendants have failed to make a prima facie showing that the discovery sought is not an improper fishing expedition, Defendants' motion to compel this information should be denied.

## V.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny (i) Defendants' Motion to Bifurcate Liability and Damages, (ii) Defendants' Motion for a Protective Order Concerning 30(b)(6) Topics 10, 18-22 and 24-25, (iii) Defendants' Motion to Compel Privileged and Confidential Information and (iv) Defendants' Motion to Compel Information Regarding a Gap Between the Retention of Counsel and Filing of the Class Action Complaint.

DATED: June 9, 2021                    **Respectfully submitted,**

                                       **REESE LLP**


                                       By:   /s/ *Carlos F. Ramirez*
                                                     CARLOS F. RAMIREZ

                                       MICHAEL R. REESE
                                        mreese@reesellp.com
                                       CARLOS F. RAMIREZ
                                        cramirez@reesellp.com
                                       **REESE LLP**
                                       100 West 93rd Street, 16th Floor
                                       New York, New York 10025
                                       Telephone: (212) 643-0500
                                       Facsimile: (212) 253-4272

                                       MELISSA S. WEINER (admitted *pro hac vice*)
                                        mweiner@pswlaw.com
                                       **PEARSON, SIMON & WARSHAW, LLP**
                                       800 LaSalle Avenue, Suite 2150
                                       Minneapolis, Minnesota 55402
                                       Telephone: (612) 389 0600
                                       Facsimile: (612) 389 0610

BENJAMIN E. SHIFTAN (admitted *pro hac vice*)
 bshiftan@pswlaw.com
**PEARSON, SIMON & WARSHAW, LLP**
350 Sansome Street, Suite 680
San Francisco, California 94104
Telephone: (415) 433-9000
Facsimile: (415) 433-9008

*Attorneys for Plaintiffs and the Proposed Classes*