# Exhibit A

```
   L3h2AshC

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  AHMED ASHOUR, individually and
    on behalf of all others
 4  similarly situated,

 5                  Plaintiff,            New York, N.Y.

 6            v.                          19 Civ. 7081 (AT)(OTW)

 7  ARIZONA BEVERAGES USA, LLC, et
    al.,
 8
                    Defendants.
 9
    ------------------------------x       Remote Conference
10
                                          March 17, 2021
11                                        12:00 p.m.

12  Before:

13                         HON. ONA T. WANG,

14                                        District Judge

15

16
                              APPEARANCES
17

18  REESE, LLP
         Attorneys for Plaintiff
19  BY:  CARLOS F. RAMIREZ

20

    PEARSON SIMON & WARSHAW, LLP
21       Attorneys for Plaintiff
    BY:  MELISSA S. WEINER
22

23  STEVENS & LEE, P.C.
         Attorneys for Defendants
24  BY:  ROBERT P. DONOVAN

25
```

offered California sales invoices for further inspection. New York invoices can also be furnished, your Honor. As a matter of common sense and proportionality, defendants feel that that's sufficient and proportional for the needs of this case.

MR. RAMIREZ: Your Honor, this is Carlos Ramirez.

Regarding proportionality, based on my decades of experience litigating these types of cases, the information is as easy as pressing a button on a computer, and we routinely have other defendants in cases where we have alleged nationwide claims produce us that information. It is exclusively in their possession.

Like I said, this is information that is readily available by any defendant, especially one as sophisticated as Arizona. And, again, it's really just a matter of pressing a button and downloading it on to an Excel spreadsheet. For that reason, I doubt that the proportionality arguments that defendants raise here are with any merit.

MR. DONOVAN: Your Honor, Robert Donovan.

I do not want to belabor the point. This is not about pressing a button. This is seeking sales information for over six years in 49 other states. It would be immensely disruptive to defendants' business. The document request requires production of business records. It doesn't require the defendants to create any documentation for the plaintiff.

1   These are sales invoices.  The plaintiff is aware of them.  The
2   plaintiff has received sales invoices, volumes of them, and has
3   been offered others for inspection, and it is widely
4   disproportionate based on one plaintiff and three beverages in
5   one state.
6          THE COURT:  Okay.  I think I am trying to understand
7   why and how you get to nationwide sales data and what
8   specifically is the data that you need.  I don't think anybody
9   is arguing that Arizona iced tea is only sold in New York and
10  California.  So I guess what I am trying to understand what it
11  is that -- why you need nationwide data now and whether the
12  nationwide data that you are seeking is still at this point in
13  time overbroad.
14         MR. RAMIREZ:  Your Honor, this is Carlos Ramirez.
15         We will most likely have anywhere between one to two
16  experts that will opine on the damages in this case, and those
17  experts will require several pieces of information.  One would
18  be margin costs or costs of goods sold, and the other one would
19  be the price or the profit.  And those are needed because that
20  is the only way we can prove damages.  And what they will do is
21  they will take that information from the sale price, they will
22  back out the price of goods sold, and then, from their
23  analysis, they will be able to determine whether that profit,
24  or a portion of that, is attributable to the misleading
25  statements and, accordingly, that would be the damages to the

1   class.

2   Now, if we get that information for California and
3   New York only, anyone who purchased any Arizona beverages
4   outside of those two states, we will not be able to prove
5   damages for those individuals.

6   THE COURT: Why not? Why not? I mean, are we saying
7   that Arizona iced tea -- that the defendants use a completely
8   different model for making money on these beverages in the
9   other states? I'm trying to understand --

10   MR. RAMIREZ: Well, no. Sure, your Honor. The
11   problem will be that -- so we take that premium and we times it
12   by the number of units sold. So if we don't have the number of
13   units sold for those other states, we will never be able to
14   prove damages. So the damages formula is premium times units
15   sold.

16   If we limit it to California and New York, we will
17   only have units sold information for those two states, leaving
18   the other 48 states out of the computation, and thereby
19   effectively dismissing those claims as to damages for all of
20   those non-New York and California states.

21   And, again, your Honor, this is very, very easily
22   obtained information that every single corporation keeps and
23   they use it in their modeling and in their forecast, and it's
24   really just a matter of pressing a button. It's really as
25   simple as that. It's proportional, and that's the only way we

1  can get that information from defendants. And under Rule 26,
2  the defendant does have a duty to provide any evidence that
3  may help us establish our claims, and that is clearly one of
4  them.
5      MS. WEINER: Judge, this is Melissa Weiner, if I may
6  just add one point on behalf of plaintiffs.
7      It is the plaintiffs' burden at class certification
8  that I think we are operating on under that basic premise. And
9  at this stage in the litigation, we are in the process of
10 making important strategic decisions in terms of how we will
11 present our case at class certification to the Court. And in
12 order to do that and to prepare our experts and prepare our
13 case, we need certain information.
14     Now, this can come to the Court in several fashions at
15 class certification, either as a complete and final package
16 that says this is what we, in dollars and sense, allege the
17 premium price to be, and here is what we allege the aggregate
18 damage on behalf of the class, or we can proffer a model for
19 calculating damages on a classwide basis.
20     Now, if we propose a model and, again, we have
21 nationwide claims, so we will be moving for both state and
22 nationwide certification of these claims, there is always the
23 "and we can get this data later" if the Court thinks that it is
24 relevant and important for the calculation of damages.
25     I think what we feel nervous in not obtaining the

information now is that we will somehow be prejudiced in two ways, either in response to class certification by saying we didn't uphold our obligation to provide the Court with a feasible method of calculating damages.  If we don't have the benefit of the information, we just won't ever know exactly the questions that your Honor posed.  Do we know that they calculate price differently?  Is it all uniform?  Those are the sorts of questions that we would ask in a 30(b)(6) deposition just to ensure that we can say this is all uniform nationwide.  Without the benefit of either the actual numbers and the availability of the information as to the nationwide claims, we just simply can't say with testimony under oath one way or the other.

        Now, if what we are required to do is proceed without that information, then we would simply ask that it not be used against us if it is being held in, perhaps, abeyance for later request, depending on the Court's ultimate determination of class cert.

        So I think if the Court isn't inclined to provide it -- and I echo my colleague's -- you know, I have experience in class certification and have been appointed to lead many consumer cases across the country, where I have never had nationwide claims at issue and not been provided nationwide data, if we are going to proceed in that way, that we simply not be prejudiced in response because we don't have it.

1     MR. DONOVAN:  Your Honor, this is --

2     MR. RAMIREZ:  Your Honor --

3     THE COURT:  No, stop.  Stop.  Stop.  Now it's my turn
4  to talk.

5     All right.  Thank you, Ms. Weiner that clears it up a
6  lot.

7     I am assuming that the motion for class cert. is going
8  to be before me.  So, by all means, you should remind me of
9  this, because I would not intend to prejudice you in that way.

10    My question now is for Mr. Donovan.

11    Is there some high-level information, whether it is
12 nationwide or broken up by state or geographic region, that
13 is -- that gives pricing information and the number of units
14 sold?  Because I think, from there, plaintiffs can certainly
15 show not only the model but can make perhaps strategic
16 determinations on whether they want a nationwide class, whether
17 they want a New York and California class, or just a California
18 class.

19    The reason why I say this is I am not pushing
20 plaintiffs to limit their class in any way, but I had seen a
21 case where there were nationwide class claims, but I think the
22 plaintiffs ultimately decided that New York and California were
23 the largest states, with the most numerous plaintiffs, and that
24 trying to include, for example, some states with lower
25 population and the like was not going to be worth the effort

1     after they made a cost-benefit analysis.

2              So I am wondering if defendant has this information
3     fairly readily available, broken out by some either geographic
4     region or state or however you normally keep it, that you could
5     present the pricing information and the number of units sold.
6     Because then I think that would give the plaintiffs at least
7     some handle on whether they want to pursue a nationwide class
8     or whether it just doesn't -- whether it might not make sense
9     to do that.  Okay?

10             MR. DONOVAN:  Yes, your Honor.  This is Robert
11    Donovan.

12             Before I answer your Honor's question or give a
13    response, in our letter, there is reference to the fact that
14    the plaintiffs' claims are for restitution.  The request for,
15    quote, profit information and cost information is not relevant
16    to that, and we have also addressed the fact that none of the
17    document requests that are at issue here.  None of them have
18    sought cost information.  And we have responded to request
19    number 23.

20             But to respond to your Honor's question, I do think it
21    is going to be a laborious task to go through 50 states and
22    have to do a sales by unit summary, and the best evidence of
23    what the prices are of what defendants sell their products are
24    the invoices.  But I do think that a summary -- and, again, it
25    would be a summary based on the business records -- of the

1  sales by unit or by container or by case for California and for
2  New York could be organized, but the other 48 states, to have
3  to do that is just burdensome and, again, disruptive because it
4  will have to go through the records of the business to make
5  sure there is going -- there is going to be a representation,
6  you know, in these records that they are accurate and, again,
7  they are going to be a summary of business records.  And I
8  presume there will be discovery about that, who created the
9  summary?  How was it created?
10           So I don't know whether I answered your question or
11 not, your Honor, but I do think, with regard to California and
12 New York, there could be a sales by unit summary by container
13 or by case, and the invoices would show what the prices are
14 that they sell to their various customers.
15           MS. WEINER:  Your Honor, if I may?  This is Melissa
16 Weiner, if I might respond to Mr. Donovan.
17           A couple of issues:
18           The first is, Mr. Donovan is speaking in terms of
19 Arizona's records and its sale of cartons, and we are talking
20 in wholesale prices.  And he has raised restitution and, again,
21 I highlight, this is plaintiffs' burden at class certification
22 to demonstrate to the Court that there has been a premium price
23 charged or a willingness to pay a certain price that they
24 wouldn't otherwise have paid had they known the deception, very
25 simple consumer class-action allegations here.

And Mr. Donovan, respectfully, is telling us what we need and don't need in order to do that, and I have personally spoken with our expert, because we are trying to front -- we are trying to give as much information, which, by the way, is, I think, a little bit challenging for the plaintiff to disclose some of our strategies and why we think we need what is otherwise in our experience very, very typical information that is produced, we have explained why we need these things.

Now if we don't get them, we do have alternative ways that we can, you know, proceed with a damages calculation. But what Mr. Donovan is talking about is information that in 99 percent of the cases that I prosecute is provided in a chart simply in a rog response. We are not asking for thousands of pages of internal records showing every carton or every sale made.

But, regardless, the information Mr. Donovan is talking about is with regard to wholesale Arizona sales of the products to third-party distributors who then put it on the shelf, right? So we have two different buckets. We have that information, and then we have end user data, and we haven't right on this conference today talked about the end user. The consumer buys the product off the shelf, and there are third party aggregators of all of this data, IRI, Nielsen, the Court is probably familiar with these either from prior cases or just, you know, from the news, where they go out and they

Case 1:19-cv-07081-AT-OTW   Document 159-2   Filed 06/09/21   Page 12 of 18   24
L3h2AshC

take -- you know, they calculate -- they are counting all the transactions, and they essentially average across all of the nation the average sales price. There is all sorts of information that exists out there by third-party aggregator sales data.

And I think the Court can appreciate, we are really trying to come up with ways that are less burdensome. We don't agree with the -- we think that proportionality is being overly used here. This is, without question, relevant information at the core of this case.

But again, even taking that to heart, we are trying to pivot here and find different avenues. Okay, fine, don't give us every internal business document. Let's get a summary. We really are trying to be reasonable. Third-party aggregator data was just produced to me in a very similar case literally by one-page attachment with a chart.

So I want to highlight for the Court that this case is not different than all of the consumer cases where this information is very easily and readily available, and I have just never seen this become such a huge issue, again, to a core component of our burden at class certification. And I don't want to belabor it, Judge, but this is why we are not just giving in. If Mr. Donovan is going to tell us that costs of goods sold are not relevant to our damages calculation, then, you know, just to forewarn the Court that you will be hearing

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  from us if there are any arguments that undercut our damages
2  expert analysis because we weren't given that information and
3  here we are, you know, crying for help, if you will.
4          THE COURT:  Okay.
5          MR. DONOVAN:  Judge, this is  -- your Honor?  Your
6  Honor?
7          THE COURT:  No, no.
8          MR. RAMIREZ:  Your Honor --
9          MR. DONOVAN:  Your Honor --
10         (Indiscernible crosstalk)
11         MR. RAMIREZ:  Your Honor --
12         THE COURT:  No.
13         MR. RAMIREZ:  Can I please -- I'm --
14         THE COURT:  No.
15         MR. RAMIREZ:  Okay.  I just wanted to clarify
16  something for the record.
17         THE COURT:  No.  No.  Should I mute you?  I can mute
18  you right now if you'd like.
19         MR. RAMIREZ:  No.  No, your Honor.
20         THE COURT:  All right.
21         I want to follow up on something that Ms. Weiner just
22  said about cost of goods sold.  Why is the cost of goods sold
23  not the same across states?
24         MS. WEINER:  Judge, are you asking me?
25         MR. DONOVAN:  Your Honor, this is Robert Donovan.  Is

1  factors, *i.e.*, cost of goods sold, profits, was a problem, and
2  they decertified a class based on the fact that they didn't
3  consider supply side factors, which is effectively what
4  defendants will probably argue if we get to that stage.
5       So for that reason, we do -- we do need -- we also do
6  need the marginal costs or whatever it is it costs them to make
7  the product, so we can back that out of the damages
8  calculation.
9       THE COURT: All right. And so the cost of goods
10 sold -- this is for Mr. Donovan. The cost of goods sold has
11 already been provided for California, no?
12      MR. DONOVAN: Your Honor, it was never even requested
13 and, no, it hasn't been provided. It is not relevant to the
14 plaintiffs' damage claims.
15      THE COURT: All right.
16      MR. DONOVAN: There is --
17      (Indiscernible crosstalk)
18      MR. RAMIREZ: Your Honor, it was requested --
19      THE COURT: Stop it. I'm muting all of you if you
20 don't stop it right now.
21      So, defendants, here is how I am going to rule, all
22 right? You are going to provide the California and New York
23 data and nationwide as a whole. How you get that information
24 doesn't really matter to me. Okay? It sounds like you might
25 be able to get that information through a third-party

1    aggregator if you don't already subscribe to that information.
2    And if you are going to continue to fight about this, I will
3    allow -- I encourage you not to continue to fight about this,
4    but I have already told plaintiffs that I will consider a
5    model.  It seems to me that if you have essentially the same
6    types of numbers for California, New York, and nationwide, you
7    can put together something pretty robust.
8            To the extent that there -- that what you get you feel
9    is insufficient for you to make your -- to show how you would
10   prove damages, I would like to defer that.  That's a fancy
11   court term for kick the can down the road.  And I would like to
12   see a motion if you need more granular data than that, but then
13   a motion will have to explain to me why the data that you have
14   is insufficient.  Okay?  But I also encourage you to try to
15   work together on this.
16           One final question for Ms. Weiner, since you were the
17   one who brought up and explained to me how the third-party
18   aggregators work in terms of providing data, is if there is --
19   if there are -- I understand this is a very broad ruling.  If
20   there are details that you cannot work out among each other, I
21   would like a joint letter explaining to me what the problem is,
22   okay?  But let's see what you get from California, New York,
23   and nationwide on this fairly high-level data.
24           Mr. Donovan, I don't care how your client gets it,
25   whether they do it themselves or whether they, in fact,

1    subscribe to a third-party aggregator, in which case it should
2    actually be fairly simple, because it sounds like the cost of
3    goods sold is probably something that wouldn't be available
4    from a third-party aggregator and would only be available
5    through your client, and it sounds like the cost of goods sold
6    is necessary for calculating the premiums.  Is that right?
7             MS. WEINER:  So, Judge --
8             MR. RAMIREZ:  Yes, your Honor.  This is Carlos
9    Ramirez.
10            MS. WEINER:  Well, so I guess I -- at class
11   certification, what we are required to do is show the Court
12   that there is a feasible model for calculating damages
13   classwide.  Now, if I don't know the exact number for cost of
14   goods sold, we will make, again, certain assumptions regarding
15   maximization of profit, things that are just obvious in a CPG
16   world.
17            So I don't want to represent to the Court that without
18   it we are just hamstrung, because I think we make assumptions
19   all the time.  There are plenty of cases where I am told "we
20   don't know," which, of course, to our economic expert seems
21   crazy, but if it is what it is, then there are things that we
22   do in economics to make assumptions based upon maximization of
23   profit.
24            So I guess, and I agree with the Court that a joint
25   letter, you know, explaining if we have any remaining issues on

1  especially this issue on sales data, which is pretty cut and
2  dry, you either have it or you don't, you are willing to
3  produce it or you are not. Request 23 is really simple, it is
4  just average wholesale prices and average retail prices.
5           Again, the two buckets.  The wholesale prices are what
6  did Arizona sell it to third-party distributors?  How many of
7  those did you sell?  And then the retail is how many of those
8  were sold off the shelf.  The third-party aggregator comes in
9  in bucket B.
10          So I think that at least if we can get to or have
11 commitment leaving here today, Judge, because we have,
12 admittedly, have had some struggles in meet-and-confers, that
13 we can at least get to the bottom of do you have it and are you
14 willing to produce it, then we can come back to the Court --
15 hopefully not, but if need be -- with an understanding like we
16 just don't have it or here are the three reasons why we just
17 don't think you get it.
18          MR. DONOVAN:  Your Honor, if I may?  This is Robert
19 Donovan.
20          I understand your Honor's ruling to be that the
21 California, New York, and nationwide aggregate data, which I
22 understand to be the IRI and/or Nielsen data, to the extent
23 that it is responsive to request number 23, would be produced.
24 Am I correct that that's what the information means, your
25 Honor?

|   |   |
|---|---|
| 1 | THE COURT:  Yes. |
| 2 | MR. DONOVAN:  And with respect to cost of goods sold, |
| 3 | I do not understand the Court ruling on that.  That is -- there |
| 4 | hasn't been any -- respectfully, your Honor, just argument of |
| 5 | counsel as to what cost of goods sold, how it was relevant, |
| 6 | what it means. |
| 7 | THE COURT:  Okay. |
| 8 | MR. DONOVAN:  It's not in request 23, but I don't |
| 9 | understand the Court's ruling to -- |
| 10 | THE COURT:  My ruling on that is that you are going to |
| 11 | meet and confer and decide whether you need this now or |
| 12 | whether, as Ms. Weiner said, it is possible to show a feasible |
| 13 | model for calculating nationwide damages without it, or if you |
| 14 | don't actually have it -- and, by the way, cost of goods sold |
| 15 | is something that most companies do estimate in some way or |
| 16 | they collect some data that makes it possible to estimate it, |
| 17 | okay?  So I also don't want to hear from defendants' side that |
| 18 | you are completely hamstrung and you have no idea what this |
| 19 | term means, okay? |
| 20 | But on the cost of goods sold issue, I want you to |
| 21 | meet and confer and see if you can resolve it among yourselves. |
| 22 | All right.  I have another thing at 1:00, so I am |
| 23 | really trying to get through this quickly. |
| 24 | I think -- I definitely encourage you to review the |
| 25 | transcript and review what we have talked about and process it |