LCFBASHC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    AHMED ASHOUR, et al,

4                      Plaintiffs,

5              v.                              19 Civ. 7081  (OTW)

6    ARIZONA BEVERAGES, USA, LLC,
     et al,
7
                     Defendants.
8                                             Conference
     ------------------------------x
9                                             New York, N.Y.
                                              December 15, 2021
10                                            3:00 p.m.

11   Before:

12                         HON. ONA T. WANG,

13                                            U.S. Magistrate Judge

14                            APPEARANCES

15   REESE, LLP
          Attorneys for Plaintiffs
16   BY:  CARLOS F. RAMIREZ

17   STEVENS & LEE, PC
          Attorneys for Defendants
18   BY:  ROBERT P. DONOVAN
          JOHN VISCONI, II
19

20

21

22

23

24

25

LCFBASHC

1          (Case called)

2          MR. RAMIREZ:  Carlos Ramirez for the plaintiffs.

3          Good afternoon, Judge.

4          MR. DONOVAN:  Good afternoon, your Honor.

5          Robert Donovan on behalf of the defendants.

6          MR. VISCONI:  Good afternoon, your Honor.

7          John Visconi for the defendant.

8          THE COURT:  Good afternoon.  Same as the last, except

9     this time we have a court reporter.  We're not going to have

10    the tech issues we had last time.  Please keep your mask on

11    over your nose and mouth.  You may remain seated when you're

12    speaking.

13         Mr. Ramirez, you may, since you're the only one at

14    plaintiff's table, just pull the microphone really close and

15    speak into it.

16         THE COURT:  For Mr. Donovan and Mr. Visconi, just

17    point it when you're going to talk, take a moment to pull it

18    closer so that we can all hear you, and most importantly so our

19    court reporter can hear you.

20         All right.  Let's see.  Let's start with old business.

21    Is there anything outstanding in terms of issues that were

22    supposed to have been resolved after the last conference that

23    are still outstanding and where there's still a dispute?

24         MR. RAMIREZ:  I'm not aware of any.

25         THE COURT:  What about you with the defendant's?

LCFBASHC

1          MR. DONOVAN:  I don't believe so, your Honor.

2          THE COURT:  Great.  I was looking at your status

3     letter.  I'm going to ask Mr. Ramirez to talk about your

4     plaintiff's agenda items first, not because of any issue other

5     than I think that the defendant's issues might take a little

6     bit longer, so let's see what we can do here.

7          MR. RAMIREZ:  Sure, Judge.  As we noted here, we

8     simply received about 10,000 pages of what is electronically

9     stored information, emails, attachments to the emails.  And

10    having gone through it now initially, we are concerned that

11    most certainly upwards of 90 percent or so are not only not

12    relevant to the claims or the defenses, but frankly they're

13    just completely non-responsive.

14          And we did have a meet and confer today with defense

15    counsel and we brought some of our issues with the production

16    to light, and we will be meeting again next Monday to continue

17    the conversation.  I mean to the extent, the Court wants me to

18    elaborate more on what we mean, I'm happy to do that.  We're

19    just hoping that we can work this out and hopefully the next

20    round will be more to I think what we were expecting to get.

21          THE COURT:  Okay.  All right.  So the ESI

22    non-responsive documents is not necessarily ripe yet because

23    you're working through the meet and confer process?

24          MR. RAMIREZ:  Yes, Judge.  I guess the only thing that

25    we would note is actually two things.  We're really trying very

LCFBASHC

1    hard to move this matter forward.  With respect to the ESI

2    protocol, one was served up over a year ago.  It still hasn't

3    been executed by defendants.

4         And then on the other issue regarding the ESI, we did

5    work for months with defense counsel to come up with terms.

6    Obviously they're in a better position than we are to know what

7    terms will pull up the types of information that are RFP have

8    requested.

9         And despite that, we did not get the types of things

10   that we thought we would be getting.  So to the extent that

11   months and months have gone by and to the extent that we end up

12   spending another couple of months going through this and we're

13   in the same situation, we would respectfully seek for the Court

14   to order some type of ESI deposition where we can have someone

15   that actually knows where stuff is stored, what things are

16   called what, so that we can finally get down to the bottom line

17   and get the discovery that we need to prosecute this case.

18        THE COURT:  That's sort of the extent of the ESI

19   issues?

20        MR. RAMIREZ:  Yes, Judge.

21        THE COURT:  Okay.  I will encourage you to meet and

22   confer.  Before we leave today, we're going to set a date for

23   another status conference where I'll expect to hear a little

24   bit more about how those discussions went, so that will

25   definitely be on the agenda for the next conference.

LCFBASHC

| | |
|---|---|
| 1 | I do want to encourage counsel, the parties to work |
| 2 | through this.  I prefer not to be ordering discovery about |
| 3 | discovery, but I've done it before in other cases.  I will do |
| 4 | it again here if it seems warranted, and that usually ends up |
| 5 | taking a lot more time and expense than a meet and confer and |
| 6 | providing the information requested. |
| 7 | MR. DONOVAN:  Judge, may I just address that? |
| 8 | THE COURT:  Yes.  We're not orally arguing this, |
| 9 | right? |
| 10 | MR. DONOVAN:  We're not, but frankly there are |
| 11 | statements made that I would like the Court to be aware of. |
| 12 | THE COURT:  Okay. |
| 13 | MR. DONOVAN:  Number one, I was not aware of their |
| 14 | position until last week, and then this morning we spoke and we |
| 15 | identified particular emails.  There's a lot of them, Judge.  I |
| 16 | don't want to go into the details that deal with the cost |
| 17 | information, that deal with supplier information, that deal |
| 18 | with ingredients and such. |
| 19 | And because of the nature of the fact that the parties |
| 20 | agreed on the search terms, and out of an abundance of caution, |
| 21 | some other emails which were really marketing research emails |
| 22 | that -- remember, custodians were agreed upon, your Honor.  Out |
| 23 | of an abundance of caution, we included those. |
| 24 | And again, I'm happy to go to the meet and confer and |
| 25 | explain to plaintiffs' counsel why I think it's within the |

LCFBASHC

1    scope of a document request.  There was no intention at all to

2    belabor the process.  That's all, your Honor.  Thank you.

3              THE COURT:  I tend to agree I think with where you're

4    going, Mr. Donovan, is that if one is arguing that there was a

5    document dump and there is significant amounts of material that

6    are not relevant and weren't asked for in any of the discovery

7    requests, that's one issue.

8              And those I tend to take a more lenient view on

9    because I believe that when you're working with search terms

10   that are agreed upon custodians, sometimes you don't know

11   what's going to turn up until you actually do the search.  And

12   it may be more cost effective to provide that information

13   rather than to pull things and guess at whether they're

14   potentially they're going to face a motion to compel later.

15             That's different from there are gaps in the production

16   where particular search terms or custodians you would expect to

17   see, a whole category of documents or certain types of

18   documents are completely missing.  That to me is a much more

19   serious issue, because it involves a gap in discovery rather

20   than too much extraneous stuff that you don't care about.  I

21   will engage and listen to both parts of that discovery issue.

22             And if necessary, will order discovery into the

23   discovery, although that's really not my preference, because I

24   do believe that when parties are working together to try to get

25   the information as efficiently as possible, that's always going

LCFBASHC

1    to be more efficient than something that the Court orders

2    without having full visibility into the documents.  Okay.  All

3    right.

4            So I understand that's likely, potentially going to be

5    an issue going forward.  And then I see in ECF 175, plaintiffs

6    you also have schedule for the remainder of the case.

7            MR. RAMIREZ:  Yes, your Honor.  It's pretty straight

8    forward.  I think that once we have substantial -- there's a

9    substantial completion of the defendants with respect to the

10   request of discovery, we would need about three months to

11   sought of wrap things up.

12           Obviously, barring any major issues, we think three

13   months is more than enough time, but we need the discovery

14   obviously.

15           THE COURT:  We'll extend dates out if necessary after

16   we talk about the defendant's agenda item.  Now I think these

17   all relate to defendants's discovery request; is that right?

18           MR. DONOVAN:  Yes, your Honor.

19           THE COURT:  And that I would find in the unredacted

20   version of ECF 173-3?

21           MR. DONOVAN:  Correct, your Honor.

22           THE COURT:  Okay.  Is it fair to say that all of these

23   relate to retainer agreements for certain of the plaintiffs, or

24   is there another category that we need to address also?

25           MR. DONOVAN:  I think that it's a fair

LCFBASHC

1    characterization, it's more than just retainer agreements.  It

2    deals with the issue of agreement sharing obligations and such,

3    and documents requested from the three plaintiffs.

4         THE COURT:  All right.  Have you met and conferred

5    about this?  What is plaintiff's position?

6         MR. DONOVAN:  We have met and conferred.

7         THE COURT:  Have or have not?

8         MR. DONOVAN:  Have.

9         THE COURT:  Mr. Ramirez, what's the plaintiff's

10   position.

11        MR. RAMIREZ:  Your Honor, with respect to any type of

12   joint prosecution agreement or any fee sharing agreement, we

13   think it's wholly irrelevant to the issue of class counsel's

14   adequacy.  It is something that we've never been asked for

15   before.  I've been doing this since 2000 on and off.  My

16   partner's been doing it for the same time continuously.

17        The cases that counsel cites are not cases for the

18   proposition, that they're entitled to, are not cases that dealt

19   with class certification.  They were not cases where the

20   plaintiffs were being accused of being incompetent to represent

21   the class.

22        In fact, the lawyers for the defendants weren't asking

23   for it.  It was the judge in connection with the settlement --

24   because the judge thought that there was a little bit of a

25   shenanigans with the fee sharing that was going on between

LCFBASHC

1   counsel as part of a settlement which she had to approve -- the

2   court *sua sponte* requested this for purposes of making sure

3   that the settlement could be approved.

4          In fact, your Honor, I've applied for class counsel

5   for two decades, not only has my firm never not been appointed,

6   but defendants routinely, if not every single time, concede

7   that we can competently represent the class.

8          THE COURT:  As I understand it, and it's not a knock

9   on your firm, Mr. Ramirez, that's a pretty low bar, right?

10  I've hardly ever seen that in a class cert motion.

11         MR. RAMIREZ:  Nor have I, Judge.  And when asked at

12  some point at one of the meet and confers, in fact a meet and

13  confer we had on September 16th, when I asked whether the

14  defendants thought that our firm would not be appointed and

15  said, will the defendants be looking to take our depositions.

16  Let's just say that that was left up in the air.  Okay.

17         So now there's the possibility that the lawyers are

18  going to be deposed now?  I mean that's just not -- it's just

19  not ripe.

20         THE COURT:  Right.  And there hasn't been a motion for

21  class cert filed yet?

22         MR. RAMIREZ:  Your Honor, we're in no position to do

23  that at this time because of the lack of discovery.

24         THE COURT:  I mean, I'm just wondering why this isn't

25  premature at this time.  If there hasn't been a motion for

LCFBASHC

```
 1   class cert filed yet, and as I understand it this information
 2   if produced would be used to oppose class cert or challenge
 3   Mr. Ramirez's firms adequacy as class counsel.  I'm just
 4   wondering why now?  Why is this dispute coming up now?
 5           MR. DONOVAN:  Judge, a request was made -- if I could
 6   also before I address that.  The In Re Agent Orange case that
 7   we relied upon and quoted says that it agreed with the district
 8   court's ruling that in all future class actions, counsel must
 9   inform the court of the existence a fee sharing agreement at
10   the time it is formulated.  And this is an issue of whether a
11   conflict exists, Judge.
12           It's not my intention to -- and it's true, that we had
13   this conversation.  I don't know about the deposition one way
14   or the other, but it's true.  The competency issue is an issue.
15   In fact, the Court is entitled to inquire about competency,
16   now, not later, now.
17           And we're not on a fishing expedition, Judge.  We have
18   a retainer agreement from one of the plaintiffs.  My
19   recollection is that it's plaintiff Townes that purports to
20   allocate 25 percent of the fee to C.K. Lee, who's a lawyer who
21   is not even involved in this case.  I don't think this is
22   premature.  I think I'm entitled to find --
23           THE COURT:  Okay.  Was Townes represented by Mr. Lee
24   before?  I understand Mr. Lee's firm was in the related case.
25   Either that plaintiff either dismissed or withdrew, but I
```

LCFBASHC

1    didn't think that that had anything to do with the *Ashour* case.

2    I think Mr. Lee's firm was the lowest docket number on, and

3    that these two cases were related, but then I thought that the

4    intervention and related case issues had been resolved.

5         MR. DONOVAN:  The *Kubilius* case, Judge, was dismissed.

6    My recollection is that Ms. Townes was not a party to that

7    case.

8         THE COURT:  Okay.

9         MR. DONOVAN:  Again, the issue is whether it's

10    relevant, Judge, and discoverable.  And under *In Re Agent*

11    *Orange*, it is, and that case says that the Court has to inquire

12    as to that.

13         I don't know -- if the Court's incline to wait, I

14    understand that.  But if, for instance, there is a fee sharing

15    agreement by and between other folks that raises conflicts with

16    the class or with these particular plaintiffs.  That's an issue

17    maybe for deposition for one of the plaintiffs, inquire whether

18    they knew about this other fee sharing agreement.

19         THE COURT:  This seems to me to be somewhat premature

20    because I'm not even understanding why there is a conflict,

21    what the potential conflict is.

22         MR. DONOVAN:  Well, Judge, for example, in *In Re Agent*

23    *Orange*, the terms of the fee sharing agreement was found to be

24    improper, and the Court found --

25         THE COURT:  But this isn't *In Re Agent Orange*.  What

LCFBASHC

```
 1   is the conflict that you are concerned about here?  How is
 2   Mr. Ramirez or his firm -- I think you're trying to raise a
 3   conflict with Mr. Ramirez's firm, and I'm just not sure how
 4   that relates.
 5           MR. DONOVAN:  The issue is whether this fee sharing
 6   agreement is discoverable or not, and then the issue is --
 7           THE COURT:  Discoverable for what purpose?
 8           MR. DONOVAN:  To determine whether there's a conflict
 9   between the attorney and the class they seek to represent.  I
10   don't know one way or the other whether there is one, because I
11   don't have the fee sharing agreement.  All I know is that
12   there's a fee sharing agreement presumably between the Reese
13   firm and the Pearson firm, and perhaps between the Reese firm
14   and Mr. Lee.
15           Again, I apologize.  I'm a broken record.  That's
16   discoverable under *In Re Agent Orange*.  It's relevant to
17   determining a conflict.
18           THE COURT:  Okay.  Pause.  Pause.  In those cases
19   isn't it the case that actually both law firms or both counsel
20   are still in the case?
21           Mr. Ramirez, maybe you can explain to me what the
22   issue is.
23           MR. RAMIREZ:  I'm not sure what the issue is frankly.
24   Your Honor, what I can tell you is what the law is in the
25   state.  If we're going to work with someone else in any
```

LCFBASHC

1    capacity, we cannot do so until we disclose that to our client

2    and get their agreement in writing.  And because Mr. Lee, we

3    foresee him consulting with us, assisting with us, and at some

4    point down the road if there's a settlement or a win after

5    trial and there's a recovery, we might share fees with him,

6    then that is a reason why he is disclosed.  There's nothing

7    nefarious, and frankly, it's the law.

8         THE COURT:  Mr. Donovan is saying that a fee sharing

9    agreement hasn't been disclosed, but you just disclosed that

10   there exist a fee sharing agreement.

11        MR. RAMIREZ:  He quoted the fact that Mr. Lee was

12   listed in the retainer agreement for Ms. Townes. I'm answering

13   that question.  And that is routinely what we do.  What we do

14   routinely is, our bar, believe it or not, works on a hand

15   shake, word of mouth.

16        We routinely cut a deal with another attorney that's

17   going to work on it.  We put it in the letter, and at the end

18   of the day, we end up honoring our deal.  There's never an

19   issue made of it.  We practice all over the country, like I

20   said, for decades.

21        And til this day I never had this issue come up ever

22   where defendants cared about what we're doing with other people

23   that may or may not be working on the case.  So if there were

24   anyone listed on the agreement other than my firm, would then

25   defendants have the right to discover whether or not there is

LCFBASHC

1    another person working on the case that might get a fee?

2    Frankly, I think it's a fishing expedition.  At the end of the

3    day, whether or not we're sharing fees with anyone, it's up to

4    the judiciary to censor us or disbar us for violating the

5    ethical rules and not for the defendants to enforce.

6           THE COURT:  Again, I go back to, what is it that --

7    why is this dispute even right?  What is the case of

8    controversy?

9           MR. DONOVAN:  Your Honor, since we're talking about

10   things that someone never experience, I never experienced a

11   retainer agreement or seen a retainer agreement where a claim

12   is being assigned to the lawyer.

13          In this case, the retainer agreement assigned the

14   counsel fee claim at paragraph 6 to the law firm, so they own

15   the claim, purportedly, that's what it says.

16          MR. RAMIREZ:  Your Honor, I could speak to that.

17          MR. DONOVAN:  Paragraph 6 of the retainer agreement it

18   says --

19          THE COURT:  Is this in 173-3 anywhere?

20          MR. DONOVAN:  It's in 173, Exhibit 1.  It's in both of

21   them, paragraph 6, attorneys fees.  Page 3 of 6, your Honor.

22          MR. VISCONI:  173 1.

23          THE COURT:  Let me try to pull it up, 173-1.

24          MR. DONOVAN:  Page 3 of 6, your Honor.

25          MR. RAMIREZ:  Your Honor, I could speak to that

LCFBASHC

1     whenever the Court would like.

2               THE COURT:  Okay.  I'm on it.

3               MR. RAMIREZ:  May I?

4               THE COURT:  Go ahead.

5               MR. RAMIREZ:  Your Honor, as of late -- actually, not

6     as of late, when the Trump era tax cuts came into play, there

7     was an exemption in the code that exempted fees earned by

8     attorneys in contingent cases from the income of the client.

9               When the new code came into place, that went away.  So

10    the problem that we've been having lately and why we've sort of

11    tuned our retainer agreement and have put in this assignment

12    clause is because what's been happening lately is, certain

13    defendants are taking a 1099 that they would typically give to

14    the client or the selling party for, let's say 25,000, and

15    they're adding to that our fees; which are, let's say,

16    $250, 000, so this plaintiff now is walking away with a

17    $300,000 liability.  It gets better, because we also have to

18    pay taxes on that.

19              It's been a big issue.  There's a bill right now in

20    the Senate kicking around.  I doubt it will ever come into law

21    because of the bank-up.  So after talking to tax attorneys,

22    talking to other individuals in the plaintiffs' bar, we did a

23    few things.  So that's what that assignment does, it tries to

24    take out the liability for our fees from the plaintiff.

25              It's not done for any other reason, for any nefarious

LCFBASHC

reason, and so hopefully that clarifies the issue.

THE COURT:  You all are instructed to meet and confer on this issue too, and if necessary, you're going to brief it. My leaning right now is that this is premature.  We don't need to get into this issue or demand production of any of the underlying agreements at this time.

But if it comes to briefing and you intend to brief it, I will apportion cost under 37(a)(5).  In other words, this is one of those cases where I expect you to meet and confer and figure out a way through this.  The incentive or disincentive is that the loser on the motion is going to pay, is going to pay for that motion.  So think long and hard whether you want to make that motion or want to oppose that motion, or maybe there's some way that you can work it out that doesn't involve that risk.

If this fees issue is something that cannot be tabled at least until a motion for class cert, I need to know about it and would like to see a proposed briefing schedule on that issue by the time you're putting in your joint agenda for the next status conference.

MR. VISCONI:  Your Honor, may I ask a question?

THE COURT:  Sure.

MR. VISCONI:  Discovery is now bifurcated in this case.  If this does became an issue later in the case in terms of at the time of class certification, we will have an

LCFBASHC

1  opportunity to then receive the documents, and if there are

2  applicable follow-up questions?

3         THE COURT:  I'm not suggesting that documents should

4  indeed be produced, because what I'm hearing from Mr. Ramirez

5  right now is that they're not intending to produce anything

6  further.

7         Now through your meet and confer process, you may

8  agree on something interim that I do not have to bless if you

9  both agree.  But, if we get to a point and to me the next

10 logical juncture may be -- but I'm not suggesting that you make

11 it so if it doesn't need to be so -- the next juncture might

12 be, for example, at a point, at class cert where you are

13 suggesting that Mr. Ramirez and his firm are not adequate

14 counsel or you're trying to raise some sort of a conflict

15 issue.

16        When that becomes ripe, if and when that becomes ripe,

17 then you may need to brief it.  Right now I'm not seeing why

18 this is an issue that needs to be addressed right now on the

19 record that it is.  I think this is something, again, that

20 ought to be resolved between counsel.  If it does not, I think

21 you know where we're going to go with that.

22        Do we have other issues that we need to address today

23 or should we set a date for our next conference?

24        MR. DONOVAN:  Judge, I do think there's the other

25 request that are unrelated to the fees that relate -- request

LCFBASHC

```
 1    24 to the plaintiffs seeking communications which amount to how
 2    they were first notified about the existence of this lawsuit,
 3    if there are any.
 4              THE COURT:  I thought we dealt with request 24 at the
 5    last conference.
 6              MR. DONOVAN:  I don't believe we did, Judge.  I think
 7    we just addressed 24 on my side, not their side.
 8              THE COURT:  There's another request, defendant's
 9    request 24?
10              MR. DONOVAN:  Correct, your Honor.
11              THE COURT:  Where does this show up on the agenda or
12    on the status letter?
13              MR. DONOVAN:  It's in our premotion conference letter.
14              THE COURT:  Why couldn't it be in 175?
15              MR. DONOVAN:  It is.  It's attached as Exhibit A, your
16    Honor.
17              THE COURT:  I know, but why couldn't it have been in
18    the body of 175 so we have it all in one place.  This was what
19    was originally filed as 170, and then is Exhibit A in 175?
20              MR. DONOVAN:  Correct, Judge.  On page 2 at the
21    bottom.
22              THE COURT:  Is this ripe after a meet and confer?
23              MR. DONOVAN:  Yes, your Honor.
24              THE COURT:  Mr. Ramirez.
25              MR. RAMIREZ:  Yes, Judge.  I'll start with the fact
```

LCFBASHC

that it's not relevant, but I'll also add that from a practical

standpoint, your Honor -- and I go through this every week when

I go to file a new case -- I literally get thousands of people

that answer the ads we put out.

And if I retain one person on day one and I talk to

500 other people the next few weeks, which I typically do at

times, and each of these people tells me, no, they don't want

to do it.  Yes, they want to do it.  One can argue that I'm

acting on behalf of the person I signed up on day one.  And now

somehow the things that I've done, which are completely

irrelevant to my plaintiffs or clients' advocacy, now are

subject to discovery.

Again, it's not relevant.  But from a practical

standpoint, it would seem burdensome, a waste of time, of

resources.  Because at the end of the day, whether I get one or

fifty plaintiffs to represent the class, it doesn't matter.  We

only need one.

THE COURT:  Yes. I mean, I'm not sure where the

relevance is here.

MR. DONOVAN:  Judge, at page 3, first full paragraph,

we explain why the communication to plaintiffs Townes and Brown

about this case, the first time they found out about it would

be relevant.  In their answers they say they learned about it

in December of 2020, and those initial communications would be

probative.

LCFBASHC

1          I'm not required or a party is not required to accept

2     an answer to an arbitrary as true.  I'd like to see the

3     documents probative of how they became aware of the lawsuit.

4     And with regard to others, the fact of the matter is *Auscape*,

5     as we cite, sets forth that that's a discoverable level of

6     information to the extent to show whether an agreed class

7     exist.

8          Your Honor, plaintiffs Townes and Brown were joined in

9     this lawsuit after a motion was filed, and the context of that

10    motion was that first plaintiff had expressed reluctance to be

11    in this case.  And in deposition, that plaintiff said that he

12    formed that belief -- time of his deposition was January 26, he

13    said a few weeks before.

14         THE COURT:  Is this Mr. Ashour?

15         MR. DONOVAN:  Correct, your Honor.  If the timing

16    issue of how these folks found out about the lawsuit, whether

17    they found out -- I don't know when they found out about it

18    initially.  Maybe they made a purchase after it.  That's

19    relevant to the timeline of whether they were received in

20    connection with purchases.  It goes to the timeline of their

21    alleged awareness of being deceived.

22         THE COURT:  Well, why can't you get that from a

23    deposition?

24         MR. RAMIREZ:  We disclosed that already, respectfully,

25    your Honor.

LCFBASHC

```
 1              THE COURT:  I don't know how this is proportional.

 2              MR. DONOVAN:  Judge, to the extent that there are

 3    documents showing when they first became aware of the

 4    lawsuit -- otherwise, I'm just -- yes, I understand I can get

 5    it at a deposition, but I have to accept their testimony as

 6    true.  What if there's a document that contradicts that

 7    testimony?

 8              MR. RAMIREZ:  Your Honor, we've been accused of this

 9    for months now.  Defendants continue to say that they need to

10    prove that our clients aren't lying.  They signed a --

11    Mr. Ashour gave testimony under oath the same way that Townes

12    and Brown will, and you can't go out there to prove something

13    that you have no basis has happened.

14              We disclosed when they found out.  We disclosed how.

15    They answered an ad that we put out on a top class action

16    website.  One person learned about that from her mother.  We

17    disclosed all of that.  You have to accept their word on this

18    and you could confirm it at a deposition.  We don't have to go

19    now on a wild goose hut to find something that might impeach

20    this person's credibility.

21              THE COURT:  Mr. Donovan, do you want to brief this

22    under the same loser pays rule?

23              MR. DONOVAN:  Judge, I understand that you're going to

24    direct that.  Can I also say for the record, they refer to a

25    top class action website.  Can I get a copy of that website?
```

LCFBASHC

1    If that's where they say they learned about the lawsuit, I will

2    accept that since they're referring to it, and then we won't

3    have to worry about it.

4         MR. RAMIREZ:  It's a quick Google search. I will send

5    you the URL after this hearing.

6         THE COURT:  Yes, please send the URL to Mr. Donovan.

7    I don't need it.  Okay.  Will that be sufficient, Mr. Donovan?

8         MR. DONOVAN:  Yes, your Honor.

9         THE COURT:  Okay.  You are entitled to make your

10   motion, but take a look at 37(a)(5) before you do. Okay.  All

11   right.  What else?

12        MR. DONOVAN:  The other deals with Section B on page 3

13   of the letter, deals with two basic issues, Judge, about

14   plaintiff Ashour.  He received a retainer agreement that's

15   dated January 9, 2019.  This deals also with the timeline,

16   Judge.

17        THE COURT:  Didn't we deal with this last conference?

18        MR. RAMIREZ:  Yes, Judge.

19        MR. DONOVAN:  No.

20        THE COURT:  I have that the complaint wasn't filed

21   until five or six months later after -- the testimony was

22   whether or when or how he was exposed to citric acid and

23   whether he had that experience as a bartender.  And I think my

24   ruling at the time was -- and unfortunately since we didn't

25   have a recording and the transcript -- my ruling at the time

LCFBASHC

1   was that you're not going to get any information on a prior

2   employment dispute or employer info.  I think what I had

3   ordered was that --

4           MR. RAMIREZ:  You provide the name of the employer.

5           THE COURT:  -- provide the name of the employer when

6   Mr. Ashour was working as a bartender.  How is that not a

7   motion for reconsideration?

8           MR. DONOVAN:  Judge, this doesn't deal with his

9   employer.

10          THE COURT:  Let's first say, the information that was

11  directed at the last conference, was that provided?

12          MR. DONOVAN:  No, your Honor.

13          MR. RAMIREZ:  Your Honor, the employer's name was

14  given to Mr. Donovan at Mr. Ashour's deposition, so he does

15  have that already.

16          And, your Honor, you did rule on this, and you denied

17  that motion, but you ordered us to provide the employer's name,

18  which Mr. Ashour had already given to the defendants at his

19  deposition.

20          MR. DONOVAN:  Judge, he identified employers in his

21  deposition, but there hasn't been identification of this

22  employer is the one that he was exposed to --

23          THE COURT:  Do you really want me to get the

24  deposition and take a look at it and see if the name of the

25  employer, this particular employer, can be discerned from the

LCFBASHC

1  deposition?  Because if it does, I will sanction you, or you

2  could work it out yourselves.

3       MR. DONOVAN:  Judge, I apologize.  I did not realize

4  that was the case.  All I'm saying is that this application

5  doesn't deal with the employers.

6       THE COURT:  Okay.  I am just trying to make sure we're

7  not going over old ground?

8       MR. DONOVAN:  I don't believe we are, your Honor.

9       THE COURT:  Why was this not resolved at the last

10 conference?  What is the open issue now?

11      MR. DONOVAN:  Judge, my recollection is it wasn't

12 resolved at the last conference because I addressed the Court

13 and said that there were some other issues that I felt was

14 necessary to write a letter to your Honor requesting a

15 conference.  That's my recollection of what transpired.

16      This issue deals with when the plaintiff received the

17 retainer agreement.  I asked him when he received it.  He said

18 he didn't know, and he said he deleted his emails.  The request

19 is for records sufficient to show when he received the email or

20 deleted it, and the same is true with regard to the draft

21 complaint that's referred to in the retainer agreement.

22      Again, this goes to marking down a date, Judge.  The

23 retainer agreement indicates that he received the draft

24 complaint before receiving the retainer agreement.  I have

25 since received communication from counsel saying that either

LCFBASHC

1    the retainer agreement or what not was mistaken.  Be that as it

2    may, the letter indicates the complaint that was sent and the

3    retainer that was sent.  I'm only seeking to find out the dates

4    they were sent and sent back.  That marks a date that the

5    plaintiff believes he was deceived.

6         MR. RAMIREZ:  Your Honor, the plaintiff testified at

7    his deposition that he was deceived for many years before he

8    reached out to my partner Michael Reese.  It's testimony given

9    under oath.

10        MR. DONOVAN:  Your Honor, his testimony, my

11   recollection is, that in late 2018 which he later described was

12   late November or late December, he went on a website, and

13   around that time had a communication with Mr. Reese.

14        January 9 is the date of the retainer agreement which

15   presumably was sent before that.  The retainer agreement refers

16   to a draft complaint being previously sent to the retainer

17   agreement.  All I'm looking for is the chronology of when it

18   was received and/or deleted.  He said he deleted those emails.

19        THE COURT:  Why does it matter?

20        MR. DONOVAN:  Because, for instance, Judge, if he

21   received a draft complaint in July of 2018 and made a purchase

22   after that day, that would be indicative that he wasn't

23   deceived in connection with the particular purchase and would

24   be indicative of lack of adequacy.

25        MR. RAMIREZ:  Again, without any proof, he is calling

LCFBASHC

1    the client, our plaintiff a liar.  He testified under oath that

2    he was buying this stuff for years before he turned around and

3    looked at the label one day and said, oh, there's citric acid

4    here, which I know is a preservative because of my job as a

5    bartender.  I'm not sure what the timing of the complaint

6    versus when he got the letter versus when the complaint was

7    finally filed, the chronology of any of that stuff, I don't

8    think it's going to help anyone either prove the case or defend

9    against it.  In fact, I don't think, I know it's not going to.

10           THE COURT:  Mr. Donovan, how do you want to proceed?

11           MR. DONOVAN:  I guess we'll meet and confer again,

12   your Honor.

13           THE COURT:  Yep.  And if you think that there needs to

14   be a motion made, work on a briefing schedule.  Keep 37(a)(5)

15   in mind.  If you're going to refer to Mr. Ashour's deposition,

16   I expect the entire deposition to be attached.

17           If I find that this motion was not made in good faith

18   or made for good faith basis or seeks information that would be

19   duplicative and the like, again, refer to 37(a)(5).

20           MR. DONOVAN:  Understood, your Honor.

21           THE COURT:  All right.  Other issues?

22           MR. RAMIREZ:  Your Honor, just the issue of the motion

23   to dismiss as it relates to understanding the full scope of the

24   discovery that we'll need to request, gather, review.

25           THE COURT:  The motion to dismiss is not before me,

LCFBASHC

1    right?

2              MR. RAMIREZ:  Right.  I believe it's before Judge

3    Torres.

4              THE COURT:  So what's the question?

5              MR. RAMIREZ:  Your Honor, just to the extent that we

6    would probably need closure on that to understand the full

7    scope of the discovery that we'll be needing to get.  We're

8    still aways away.  And that's it.  I have nothing else to say,

9    Judge.

10              THE COURT:  Let me just take a look at my notes here.

11   Do we need to pushout?  We do need to pushout the fact

12   discovery end date, right, because right now it's the end of

13   the December?

14              Again, I think because the motion is pending before

15   the district judge, let's set another date for discovery status

16   conference.  I am looking at early February because that will

17   give you hopefully a month of work from now, and assuming that

18   we're not going to get a whole lot done in the next two weeks.

19   There's potentially some humor in scheduling you for Groundhog

20   Day.  You keep coming up with the same issues maybe I won't

21   choose that date.  How about February 1st?

22              MR. RAMIREZ:  February 1st at three, Judge?

23              THE COURT:  How about 3:30?  Just a minute.  Let's do

24   3:30 on February 1st.  Anything else to address at this time?

25              MR. RAMIREZ:  No, your Honor.

LCFBASHC

1              MR. DONOVAN:  No, your Honor.  Thank you.

2              THE COURT:  And I look forward to see your joint

3     status letter.  I do need to extend discovery.  I'm going to

4     extend discovery until, let's say -- February 28, 2022 is the

5     new discovery end date, assuming that it will probably still

6     need to get pushed given how other things are moving in the

7     case.  All right.

8              Have a safe and happy and healthy holiday season.  I

9     look forward to seeing you again in February, and I hope you at

10    least enjoy the holidays and you're not only just thinking

11    about the case.  I'm going to ask the parties to order a copy

12    of the transcript since we will have one this time and share

13    the cost.  Thank you.

14              (Adjourned)

15

16

17

18

19

20

21

22

23

24

25