

328 BARRY AVENUE S., SUITE 200
WAYZATA, MN 55391
*office* (612) 389-0600
*fax* (612) 389-0610
PWFIRM.COM

MELISSA S. WEINER
*direct* (612) 389-0601
MWEINER@PWFIRM.COM

January 12, 2024

**VIA ECF**
Honorable Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re: *Ashour, et al. v. Arizona Beverages USA LLC, et al.*
Case No. 1:19-cv-07081-AT-OTW

Dear Judge Torres:

Plaintiffs, Ahmed Ashour ("Ashour"), Joy Brown ("Brown"), and Crystal Townes ("Townes") (collectively, "Plaintiffs"), submit the following Response to Defendants' pre-motion letter. ("Letter") (ECF No. 290) Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts ("Rule 56.1 Stm. Pl. Resp."), referenced herein, was previously filed in accordance with Your Honor's Individual Practices. (ECF. No. 290-1)

## I. A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO HORNELL, AZBH, AND BM USA'S LIABILITY

Defendants' Letter with regard to the joint and several liability of all Defendants fails to consider the ample testimony, discovery responses, and document productions in this case that evidence Hornell Brewing Company Inc. ("Hornell"), Arizona Beverages Holdings I and II LLC (collectively "AZBH"), and Beverage Marketing USA Inc. ("BM USA"), are all directly implicated by Plaintiffs' claims.[1]

Throughout this litigation, Defendants have jointly and collaboratively responded to Plaintiffs' allegations, Plaintiffs' discovery requests, and provided corporate representative 30(b)(6) testimony jointly. (*See* Rule 56.1 Stm., Pl. Resp. ¶¶ 86-104.) Furthermore, evidence exists that directly supports that all Defendants are involved in the manufacture; ingredients; decision to use the "no preservative" statement; sale; marketing and/or labeling of the Products.

- **Hornell:** Evidence demonstrates Hornell is involved in the marketing, advertising, and promotion expenses for the Products. [redacted]

[1] Plaintiffs do not dispute Defendants' statements as to the various statutes of limitations. However, Plaintiffs' Complaint includes claims on behalf of a Nationwide class that were not addressed in Defendants' Letter.

[redacted] (*See* Rule 56.1 Stm., Pl. Resp. ¶ 86). *See also*, *Beverage Marketing USA, Inc. v. South Beach Beverage Co., Inc*., Civ. No. 265/2002, 2007 WL 1187975, at *1 (N.Y. Sup. Apr. 11, 2007) ("Beverage Marketing and Hornell are involved in the development, production and sales of AriZona beverages. Beverage Marketing holds the AriZona products trademarks and licenses those rights to Hornell. Hornell distributes and markets AriZona products.").

- **AZBH**: [redacted]. (*See* Rule 56.1 Stm., Pl. Resp. ¶¶ 90, 94.)

- **BM USA**: [redacted] (*See* Rule 56.1 Stm., Pl. Resp. ¶ 101.) *See also*, *Beverage Marketing USA, Inc.*, 2007 WL 1187975, at *1 ("Beverage Marketing and Hornell are involved in the development, production and sales of AriZona beverages. Beverage Marketing holds the AriZona products trademarks and licenses those rights to Hornell. Hornell distributes and markets AriZona products.").

Defendants have cited to one unverified "document" produced during the deposition of their 30(b)(6) witness as evidence that ABUSA is the *only* Defendant responsible for the sale, marketing and labeling of the Products. (ECF No. 290, at 2 (citing Rule 56.1 Stm., ¶¶ 86, 90, 94, 101).) This "document" was produced absent any foundation for the purpose it is being used here and has yet to be verified under oath as promised. [redacted] (Vultaggio Dep. 182:12-17.) [redacted] (*Id.* at 183:3-7) Lastly, the "document" wholly fails to address the relationship of the named Defendants as to the manufacture, ingredients, decision to use the "no preservative" statement, sale, marketing and/or (g) the labeling of the Products. Defendants' request should be denied.[2]

## II. THE RETAINER AGREEMENTS ARE CONSISTENT WITH NEW YORK LAW AND DO NOT IMPACT PLAINTIFFS' ARTICLE III STANDING

Defendants argue that the retainer agreements between Townes and Brown and Plaintiffs' counsel (the "Retainer Agreements"), violate the doctrine of champerty because counsel took an assignment of attorneys' fees that may be owed to them for work performed on behalf of Plaintiffs. (ECF No. 290, at 2.) Moreover, Defendants argue that because the Retainer Agreements do not

---

[2] Defendants should not be permitted an additional opportunity to support this baseless argument with additional facts. Discovery commenced in early 2020, and Defendants have had years to prepare the Letter and have been the cause for significant delay and multiple requested extensions.

provide for contingent fee arrangements, New York's safe harbor does not save the Retainer Agreements from champerty.

First, this (inapplicable) doctrine is typically invoked at a much earlier stage where an assignment or contract is alleged to be champertous. That has not happened here despite the fact that Defendants were provided with copies of the Retainer Agreements on September 2, 2021. In fact, as noted below, the very cases that Defendants cite in support of this argument confirm that raising champerty at this stage when the issue has never been raised before achieves nothing.

Nevertheless, the seldom-invoked, increasingly abandoned doctrine of champerty prohibits "the initiation and/or maintaining of a suit [by an attorney] in return for a financial interest in the outcome . . . ." *Elliott Assoc. L.P v. Banco de la Nacion*, 194 F.3d 363, 372 (2d Cir. 1999) (citation omitted). New York's champerty law states that an attorney shall not "[d]irectly or indirectly buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon." NYJL § 488(1). However, New York does protect retainer agreements that provide for a contingent fee arrangement. NYJL § 488(2).

Defendants first argue that counsel's taking of an assignment for attorneys' fees that they may be owed for work performed on the case is the type of assignment contemplated by New York's champerty law. Tellingly, Defendants do not cite to even one case where a revocable assignment of claims to attorneys' fees was found to constitute champerty. Moreover, Defendants' sole support for a finding of champerty here is a case that not only did not involve the revocable assignment of a claim to attorneys' fees earned by the attorney assignee, but instead involved a retainer agreement where the attorneys were seeking 45% percent of actual damages and 80% of statutory damages in the event of a recovery. (ECF No. 290, at 3 (citing *Taylor-Burns v. AR Res., Inc.*, 268 F. Supp. 3d 592, 598 (S.D.N.Y. 2017)). Clearly, that case is not instructive. Importantly, should there ever be a settlement judgment in this case, it is this Court that will determine what monies are paid to Plaintiffs' counsel by way of fees and expenses, thereby nullifying any risk of excessive fees being paid to them like those sought in *Taylor-Burns*.

Defendants cite to three other cases in further support of their argument. However, none of those cases involved the assignment of Plaintiffs' claims to attorneys' fees payable to them, and instead, involved the assignment of claims to surrogates for the sole purpose of initiating lawsuits. (ECF No. 290, at 3-4 (citing *Phoenix Light S.F. Limited v. U.S. Bank Nat'l Assoc.*, 612 F. Supp. 3d 263, 281-83 (S.D.N.Y. 2020) (finding that assignment of rights by a CDO trustee to certain CDO issuers for purpose of initiating litigation was champertous); *Aretakis v. Ceasars Entertainment, et al.*, 16 Civ. 8751 (KPF), 2018 WL 1069450, at *10 (S.D.N.Y. Feb. 23, 2018) (granting motion to dismiss because the assignment of a claim by the real party in interest to another for the purpose of initiating a lawsuit was champertous); *Refac Int'l, Ltd. v. Lotus Development Corp.*, 131 F.R.D. 56, 58 (S.D.N.Y. 1990) (same)). Those cases are not instructive either. Defendants further argue that the Retainer Agreements are not protected by NYJL's safe

harbor against champerty because they are not "contingent fee arrangements." (ECF No. 290, at 3.) Defendants' argument fails because it mischaracterizes both the Retainer Agreements and what constitutes a contingent fee arrangement.

First, Defendants are wrong when they state that Plaintiffs' fee claims were assigned outright to the lawyers. [REDACTED] (*See* ECF No. 290, Ex. A at § 6 [REDACTED].[3] *Id.*

Second, Defendants are also wrong when they pronounce without any support whatsoever that to qualify as a contingent fee arrangement, the Retainer Agreements must provide a percentage of the attorneys' fees to be collected from a recovery. In fact, it would be up to the Court upon application by Plaintiffs' counsel to determine an appropriate percentage.

## III. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO PLAINTIFF BROWN'S RELIANCE ON THE "NO PRESERVATIVES" REPRESENTATION

Despite Defendants' suggestion otherwise, relief under the UCL, FAL, and CLRA is available without individualized proof of "reliance and injury, so long as the named plaintiffs demonstrate injury and causation." *See Williams v. Gerber Prods. Co*. 552 F.3d 934, 938 9th Cir. 2008). Under the UCL, FAL, and CLRA, ordinary principles of actual and proximate causation apply. *See City of Long Beach v. Total Gas & Power North America, Inc*., 456 F. Supp. 3d 416, 448 (S.D.N.Y. 2020). A challenged statement need not be the sole or even dominant factor in consumers' purchasing decisions. *Morell v. WW Int'l, Inc*., 551 F. Supp. 3d 173, 183 (S.D.N.Y. 2021). A consumer who purchased products in reasonable reliance on the defendant's misleading representations or advertising has suffered "damage" sufficient to bring a claim. *Id.*

Similarly, to prevail on a breach of express warranty claim, the burden is on the plaintiff to prove "(1) the seller's statements constitute an "affirmation of fact or promise" or a "description of the goods"; (2) the statement was "part of the basis of the bargain"; and (3) the warranty was breached." *Caldwell v. Nordic Naturals, Inc*., Civ. No. 23-cv-02818-EMC, 2024 WL 24325, at *8

---

[3] Like with respect to Defendants' champerty arguments, Plaintiffs are left wondering why Defendants now raise for the first time that Plaintiffs lack Article III standing to sue for attorneys' fees. ECF No. 290 at 4. Indeed, even if timely or proper, which it is not, obtaining a ruling at the summary judgment stage on this issue is meaningless. Nevertheless, because the assignment of fee claims taken by Plaintiffs' counsel is not irrevocable, and Plaintiffs can effectuate a reassignment of those claims through termination of counsel, Defendants' argument that Plaintiffs lack any standing in this regard lacks merit.

(N.D. Cal. Jan. 2, 2024) Generally, where a plaintiff has adequately stated a California consumer protection claim, which is the case here, the plaintiff has also sufficiently stated a claim for breach of express warranty. *See, e.g.*, *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017).); *Ham v. Hain Celestial Grp., Inc*., 70 F. Supp. 3d 1188 (N.D. Cal. 2014).

Plaintiff Brown easily meets these standards. First, she alleged that the "no preservatives" representation was the proximate cause of her injuries. (*See e.g.*, SAC ¶¶ 45-46, 75-76, 82, 96, 104). Plaintiff Brown's verified discovery responses reflect her reliance upon the "no preservatives" representation in her purchases of the Arizona Products. (Plaintiff's Amended Responses and Objections to Defendants' Initial Interrogatories to Plaintiff Joy Brown, Response No. 8, dated Oct. 27, 2021). (Brown Dep., at 27:8-25; 84:24-85:5; 85:15-20; 107:3-108:6).[4] Defendants' reliance upon cherry picked lines of testimony of Plaintiff Brown are taken out of context, fail to acknowledge Plaintiff Brown's testimony regarding her reliance upon the label, and the questions asked of Plaintiff Brown were asked in a manner in which a lay person would likely be confused. *See e.g.*, *Smith v. Crown Lift Trucks*, No. 04 Civ. 2866(GEL), 2005 WL 3500438 (S.D.N.Y. Dec. 20, 2005) (where plaintiff may have provided testimony that conflicts with prior statements, determining how to interpret any such contradictory testimony is a question for a jury).

To the extent Defendants argue Plaintiffs have not yet established the specific injury Ms. Brown suffered, that argument is premature. Expert discovery and class certification briefing have not even commenced in this matter, and the materiality of the challenged representation and the value attached thereto will be before this Court pursuant to a forthcoming scheduling order.

## IV. IN A CASE ALLEGING A PRICE PREMIUM THEORY OF DAMAGES, PLAINTIFFS' POST-SUIT PURCHASES OR VOLUNTARY PAYMENTS ARE NOT PROPER GROUNDS FOR GRANTING SUMMARY JUDGMENT

Defendants argue that they are entitled to summary judgment against Plaintiffs Townes and Brown because they continued to buy the Products after retaining counsel and suing Defendants. (ECF No. 290, at 5.) Defendants also argue that to the extent that they continued to purchase the Products post-suit, that the "voluntary payment doctrine" bars recovery.

Defendants fail to cite any binding caselaw that supports their "continued purchases" argument. Moreover, the main case they cite in support of this argument, *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1336 (S.D. Fl. 2007), concerned a dismissal under Rule 12(b)(6) before the

[4] Defendants' assertion that Plaintiff Brown's testimony at 107:3-108:6 was the product of "improper leading and argumentative questions during re-direct, suggest answers to Ms. Brown about reasons for purchases" is wholly without merit. .

plaintiff could ever establish whether or not the product was sold at a premium due to the defendant's false and misleading statements. The second case they cite for this proposition, *Red v. Kraft Foods*, No. CV 10–1028–GW, 2012 WL 8019257, at *12 (N.D. Cal, Apr. 12, 2012), dealt with this issue on a motion for class certification. Defendants' reliance is misplaced.

Defendants' argument that summary judgment is appropriate here is further belied by the fact that the reasons for why a consumer would continue to purchase a product after learning of a defendant's deceptive conduct is a question of fact that cannot be determined as a matter of law on a summary judgment motion. *See In re Light Cigarettes Mktg. Sales Pracs. Litig*., 751 F. Supp. 2d 196, 204 (D. Me. 2010) (concluding in a deceptive marketing case that testimony that plaintiff smokers bought cigarettes because they were addicted to them prevented the court from concluding as a matter of law that they received the benefit of their bargain). As Defendants concede, Plaintiffs testified as to the many reasons why they purchased the Products (*see* ECF No. 290, at 5), each of which merit consideration by a trier of fact. Thus, because genuine disputes as to material facts exist with respect to the reasons why Plaintiffs made post-suit purchases, summary judgment is inappropriate.

Defendants' second argument, that the voluntary payment doctrine requires summary judgment in their favor for post-suit purchases by Plaintiffs, also fails. First, as Defendants readily concede (*Id*., at 6-7), whether this doctrine applies to Plaintiff Brown's California purchases is debatable. For that reason alone, their argument should be rejected. Second, as to both Plaintiffs, because this case alleges payment of a price premium due to Defendant's deception, they each continue to suffer damages by way of the purchase price they pay over what they would pay if the Products were represented in a non-misleading manner. At a minimum, the voluntary payment doctrine is a defense that Defendants may be able to interpose at trial in order to mitigate damages, but is certainly not appropriate for resolution on summary judgment.

## V. PLAINTIFF ASHOUR HAS ADEQUATELY ALLEGED A CLAIM FOR EXPRESS WARRANTY

With respect to Plaintiff Ashour's breach of warranty claim, the question is whether a promise was conveyed by the seller and thus became "a term of the parties' contract" and subsequently breached. *See* Richard A. Lord, Williston on Contracts 4th § 52.45 (4th ed. 2004) (stating that an express warranty is "a term of the parties' contract"); Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance"); BLACK'S LAW DICTIONARY at 1582 (7th ed. 1999) (defining "express warranty" as "[a] warranty created by the overt words or actions of the seller"). To this end, where Plaintiff Ashour was promised a beverage with "no preservatives," but received a beverage with preservatives, a promise was made by Defendants that was not kept. *See id*.

Furthermore, Plaintiff Ashour's damages are not speculative and are able to be proven with reasonable certainty. [redacted]. (Ashour Dep., at 94:6-97:23.) [redacted]. (*Id.*) [redacted] (*Id.*, at 116:12-117:24; 119:14-22.) This testimony is sufficient for Plaintiffs' damages expert to prove Plaintiff Ashour's damages with reasonable certainty.

## VI. PLAINTIFF ASHOUR TESTIFIED THAT HE RELIED UPON THE "NO PRESERVATIVES" REPRESENTATION IN HIS PURCHASE OF ARIZONA RX ENERGY AND MUCHO MANGO PRODUCTS

Defendants' Letter imposes an improper standard for reliance on Defendants' misrepresentation for Plaintiff Ashour's purchases of Rx Energy and Mucho Mango. Under the UCL, FAL, and CLRA, to be actionable, a challenged statement need not be the sole or even dominant factor in consumers' purchasing decisions. *Morell*, 551 F. Supp. 3d at 183. Plaintiffs do not dispute that Plaintiff Ashour purchased the Rx Energy and Mucho Mango Products, in part, because he was interested in trying the flavors. (Ashour Dep., at 118:7-13, 120:5-11). However, Plaintiff Ashour's testimony clearly establishes that he relied on the "no preservatives" representation on the Rx Energy and Mucho Mango Products' labels when making those purchases. (*Id.* at 152:17-153:10) [redacted] (emphasis added). Plaintiff Ashour's testimony is sufficient to establish causation between Defendants' "no preservatives" representation and Plaintiff Ashour's purchases of the Rx Energy and Mucho Mango Products. *Morell*, 551 F. Supp. 3d at 183.

## VII. DEFENDANTS' RULE 12(C) MOTION IS UNTIMELY AND RELIES UPON STANDARDS NOT APPLICABLE IN THIS JURISDICTION

Defendants' Letter pursuant to Rule 12(c) is premature and relies upon inapposite case law. As a preliminary matter, *Sonner v. Premier Nutrition Corp.*, is a Ninth Circuit decision that has never been adopted by the Second Circuit or the Southern District of New York. 971 F.3d 834 (9th Cir. 2020). While *Sonner* does address the relationship between the UCL, FAL, and CLRA and claims of equitable restitution, the decision relies upon an analysis of the relationship between federal and state equitable principles. *Id.*, at 839-40. The analysis from *Sonner* has almost exclusively been limited to California federal courts and stands in conflict with pleading in the alternative pursuant to Fed. R. Civ. P. 8(d)(2).

A Rule 12(c) motion is limited to matters contained within the pleadings. *See* Fed. R. Civ. P. 12(c). Here, Plaintiffs have properly sought equitable relief under California law. Despite Defendants' contention to the contrary, *Sonner* "has minimal application at the pleading stage" and does not warrant dismissal. *Murphy v. Olly Public Benefit Corp.*, No. 22-cv-03760-CRB, 2023

WL 210838, at *11 (N.D. Cal. Jan. 17, 2023); *Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2022 WL 344966, at *9 (N.D. Cal. Feb. 4, 2022) (explaining that imposing "a burden at the pleading state may be premature"). As the Court acknowledged in its Order denying Defendants' Motion to Dismiss, "Courts in this circuit hesitate to 'strike class allegations before a class certification motion is filed.'" (ECF. No. 92, p. 12) (citing *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 515 (S.D.N.Y. 2015))). Expert discovery has not commenced. Such expert opinions will demonstrate the basis for calculating class-wide damages in this action. As a result, and consistent with the Court's Order denying Defendants' Motion to Dismiss, Defendants' Rule 12(c) Motion for Judgment on the Pleadings as to Plaintiffs Ashour and Brown's unjust enrichment claims should be denied as premature.

Furthermore, "nothing in *Sonner* precludes plaintiffs from [pleading equitable relief] in the alternative to remedies at law." *Cepelak v. HP Inc*., Civ. No. 20-cv-02450-VC, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021). Courts in this district recognize the availability of plaintiffs to plead claims in the alternative. *Astroworks v. Astroexhibit, Inc*., 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) ("It is black letter law that a complaint may plead in the alternative.") (citing Fed. R. Civ. P. 8(d)(2)). Such a right to plead in the alternative is separate and distinct as to whether a plaintiff may be able to recover on both alternative theories. *Gilman v. Marsh & McLennan Co*., 868 F. Supp. 2d 118, 136–37 (S.D.N.Y. 2012).[5] Here, Plaintiffs, on behalf of the California class, have adequately pled unjust enrichment in the alternative to Plaintiffs and the California class's UCL, FAL, and CLRA claims. (EFC No. 118, SAC ¶¶ 125-29.)[6] Defendants' reliance upon *Sonner* is misplaced and directly conflicts with this Court's acceptance of alternative pleading. For those reasons, Defendants should not be permitted to bring a Rule 12(c) motion at this juncture.

Very truly yours,

PEARSON WARSHAW, LLP
*/s/ Melissa S. Weiner*
MELISSA S. WEINER

cc: All counsel of record via ECF

---

[5] In *Gilman*, defendants moved to dismiss plaintiff's claims for unjust enrichment and quantum meruit, pleaded as alternatives to plaintiff's breach of contract claim. 868 F. Supp. 2d at 136-37. Defendants argued that "the existence of a valid and enforceable written contract ... generally precludes recovery" on the theory of unjust enrichment and quantum meruit. *Id*. In denying defendants' motion, the court noted that they were "correct with regard to recovery," but plaintiff's claims were properly pleaded in the alternative. *Id*.

[6] The text of the CLRA makes clear that a claim for restitution is separate from a claim for damages within the context of the statute. *See* Cal. Civ. Code § 1780(a); *see, e.g.*, *Chang v. Fage USA Dairy Industry, Inc*., 14-CV-3826-MKB, 2016 WL 5415678, at *9 (E.D.N.Y. Sept. 28, 2016) (noting that the court had found no California Supreme Court or appellate court decisions directly on point, but "the California Supreme Court has described restitution and damages as distinct remedies").