UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

AHMED ASHOUR, et al,

Plaintiffs,

v. 19 Civ. 7081 (OTW)

ARIZONA BEVERAGES, USA, LLC, et al,

Defendants.

Conference

------------------------------x

New York, N.Y.
January 31, 2024
11:00 a.m.

Before:

HON. ONA T. WANG,

U.S. Magistrate Judge

APPEARANCES

REESE, LLP
Attorneys for Plaintiffs
BY: CARLOS F. RAMIREZ

STEVENS & LEE, PC
Attorneys for Defendants
BY: ROBERT P. DONOVAN

(Case called)

THE LAW CLERK: Counsel, please state your appearance for the record.

MR. RAMIREZ: Your Honor, good morning, again. Carlos Ramirez, Reese LLP, for plaintiffs.

THE COURT: Good morning, your Honor.

MR. DONOVAN: Robert Donovan, on behalf of defendants.

THE COURT: All right. Good morning.

It's been a few years this case has been pending. It seems like it's also been a while since we have seen each other in person.

I see that there was a discovery dispute that appears to have started with missing e-mails, missing e-mail strings or at least that seems to be defendant's position. Why don't we hear about this chronologically and how it played out.

Why don't you start, Mr. Donovan. Give me just a quick summary. Then I will ask Mr. Ramirez to explain how this relates to the 30(b)(6) issue.

MR. DONOVAN: Sure, your Honor. Thank you.

There was a missing string of e-mails that we were alerted to by the plaintiffs. In terms of chronology our document production substantially was completed by mid-September. Sometime thereafter we were advised -- I think it is in the status letter -- that there was a missing string. We then performed an investigation. And what happened, Judge,

was that we found that -- I think these e-mails, these two strings are almost the same. What we found was, we did a search and uncovered that when we first did the searches, there were a number of searches that were undertaken in this case, your Honor, over 60,000 pages of documents have been produced, that there was an inadvertent failure not to search a number of archives that can be searched, and there's one archive for the individual custodian mailboxes.

So once that was done, those documents were produced. And I don't think there's any dispute now that we produced those, the missing string so to speak, by letter dated November 21.

So that's the explanation about those missing strings. I should add, your Honor -- and I believe this is the case -- that this string, some of which contain e-mails from and to internally Allen Flavors, so we wouldn't have had those, but in any event, the plaintiffs had that e-mail during the course of discovery, in fact asked our witnesses about these e-mails.

So that's the explanation about how we missed that string. It was, I would respectfully submit, a good-faith mistake. Once we learned about it, we investigated and provided an explanation as to that.

THE COURT: Okay. I have a question. When you said plaintiffs had that e-mail during the course of discovery and asked the witnesses about the e-mail, is it that they had the

string that had been produced in some other way; it just hadn't been produced from a particular custodian and went into the archives and produced the same string from different custodians, or was it that you were able to produce it in time for witnesses to be deposed about it?

MR. DONOVAN: I don't want to give the Court a misimpression.

THE COURT: Okay.

MR. DONOVAN: I believe the chronology is that the e-mail, the additional string, your Honor, I think it is like five e-mails back and forth between Mr. Del Corso from Allen flavors and Jim Garm, I believe the record shows that that e-mail, the whole string was received by virtue of the plaintiff subpoenaing Allen flavors in or around July or August. So I'm only mentioning that for purposes of advising the Court that that full string was in the plaintiff's possession. In fact, our witnesses were asked about those e-mails.

Until we had full substantial production by mid-September, I mean, at that point, that's the trigger point, like, why didn't you have these e-mails, the additional string? And we didn't have an answer to that frankly until we did an investigation in mid-November. We found, as I mentioned, your Honor, we didn't know the individual custodians have their own archives that we didn't realize were not searched. They were

searched and responsive documents were produced. Many of them were duplicative of the ones we already produced, but in the course of that we produced those, the missing string.

THE COURT: All right.

Go ahead, Mr. Ramirez. So the missing string -- missing, I put that in little air quotes -- e-mails, that issue was resolved?

MR. RAMIREZ: No, your Honor.

THE COURT: Why not?

MR. RAMIREZ: That's the reason why we are here.

I just want to correct the record. The e-mails that were produced do in fact have Arizona employees that are basically communicating directly with Allen flavors. So to the extent that there was a custodian that appears, these unproduced e-mails those should have been found.

The chronology is a little tricky because -- well, I shouldn't say tricky, but I also want to correct that. As Mr. Donovan said, defendants substantially completed their production by mid-September. Later in September, we found these missing e-mails. By October 5 we flagged these to defendants, and the joint status letter filed October 6 also flagged it to the Court.

Fast forward three or so weeks later, actually a month later, we have a custodian now. We haven't heard back from defendant about why this huge discrepancy had occurred. By the

way, your Honor, these were extremely unfavorable e-mails that were not produced.

THE COURT: But you got them from Allen flavors in the subpoena, right?

MR. RAMIREZ: We did. But for the fact that we had to subpoena another people, we would have never known it.

THE COURT: Subpoenas are normal in the course of litigation, right? Because sometimes things are retained, sometimes they don't show up in the initial search, so subpoenas are not unusual, right?

MR. RAMIREZ: That's correct, your Honor.

THE COURT: Okay.

MR. RAMIREZ: But the string cuts off right when it becomes very unfavorable to defendants.

THE COURT: The string cuts off in the --

MR. RAMIREZ: The string produced by Arizona cuts off right before --

THE COURT: Wait.

MR. RAMIREZ: I'm sorry, your Honor.

THE COURT: But the e-mail string you obtained from Allen flavors you had already, correct?

MR. RAMIREZ: Right.

THE COURT: So that's how you knew that the one that was subsequently produced by Arizona Iced Tea cut off.

Is that right?

MR. RAMIREZ: Previously produced. By November 2, we took the deposition of the 30(b)(6) witness. We tried to get into the e-mails because we had still not heard back from defendants as to how this discrepancy could have happened.

If those e-mails were missing, we wanted to basically find out what happened, how did these not show up, and could there be other e-mails that were also not searched. Had we been allowed to ask the deponent by November 2, we would have probably flagged what they ended up finding down the road after the deposition. But the fact is that the deponent was not prepared. Over the course of several months, he met with counsel only for about two hours and --

THE COURT: Okay. You are shading into another issue, which is the 30(b)(6) deposition.

MR. RAMIREZ: Yes.

THE COURT: I am having a little bit of confusion because I thought in reading the letters and hearing the chronology that the -- oh, no, no. Okay.

So the e-mails provided by defendant after their investigation that they hadn't searched the archives or hadn't fully searched the archives happened after the 30(b)(6) deposition?

MR. RAMIREZ: Right.

THE COURT: Okay. Pause.

You are saying that you should have been allowed to

ask questions about e-mail and ESI preservation at the deposition on November 2?

MR. RAMIREZ: Yes, your Honor.

THE COURT: Okay.

Where is the injury?

What is the remediation you are asking for?

MR. RAMIREZ: Your Honor, we would like to inquire further because just the way that they missed these hard drives or folders --

THE COURT: The archives, they are archived e-mails, right?

MR. RAMIREZ: Right, that resided in individual folders for the custodians.

THE COURT: Have you asked -- and I am not necessarily suggesting that this is what I would order, but have you asked defendant whether there ought to be or should be a targeted search of the archived e-mails?

Have you asked or have you seen any other discrepancies between what was produced in response to a subpoena and what you got from defendants that isn't otherwise explainable or explained?

MR. RAMIREZ: No, we have not from a third party.

THE COURT: Why not?

MR. RAMIREZ: Because Allen flavors was the other party to the missing e-mail, and they produced it.

THE COURT: No, no, no.

MR. RAMIREZ: Okay.

THE COURT: My question is, when you see a discrepancy, right, and the question, the practical-language question that comes up is, "Hey, I see an Arizona employee on this e-mail string that we got from a third party. How come it wasn't produced by you? Why wasn't it produced by you?"

I understand that you asked that about that particular e-mail string. Arizona Iced Tea did what they were supposed to do, which is they went and did an investigation tried to figure it out and said, "Oh, aha. Because we didn't search these employee e-mail archives, and here they are."

Now, the next question is -- and if I were a lawyer on either side, I would probably want to know the answer to this -- are there other discrepancies that may be concerning? And then the other part of that is you have these e-mails and you have the full e-mail string from July anyway from the third party, so where is the harm?

MR. RAMIREZ: Your Honor, there have been other discrepancies that have been flagged. In fact, the October 6 report, there we cited the fact that a string of custodians were searched. This is a big, big, a huge company, and we have experience in these types of cases. And many more e-mails are typically --

THE COURT: Not other types of cases. October 6

report, custodians searched. What discrepancies are there? Are they material? And would resolving these discrepancies be proportional given the status of this case?

MR. RAMIREZ: Well, first of all, we don't know what effect they would have because we have no knowledge of them. And, for example, your Honor, Donald Vultaggio, we have been told that he doesn't use e-mail, but we in fact know now that, even though he does not personally send e-mails out, he does get e-mails and does send e-mails via his assistant Jayne Ciccone.

THE COURT: Okay. Is Jayne one of the custodians?

MR. RAMIREZ: Yes.

THE COURT: Okay. So, again, what's the discrepancy? You have to be able to point to actual things that are missing. You can't just say, oh, you know, this person doesn't use e-mail, but it turns out that his assistant sends the e-mails on his behalf. People sometimes work that way. If the assistant's e-mail inbox, e-mail was searched and properly searched, then there's no harm, right? Because then you have got the information.

So I want you to be as precise as you can --

MR. RAMIREZ: Yes.

THE COURT: -- about what the particular discrepancies are in this case and how they have been resolved and if they have been resolved.

MR. RAMIREZ: Your Honor, respectfully, we don't know what is out there, because clearly we have been complaining, and we have tech reports where we complained about the lack of information. We have to go by experience from the searches. So, your Honor, we cannot articulate something that we don't know. We can't prove a negative.

Clearly the defendants represented that they had substantially completed their production. Had we relied on that only and not subpoenaed third parties, we would have never found out.

THE COURT: That brings me to the second part of my issue with your whole argument, which is you have the full e-mail string. It is unfavorable to defendants. You have the whole e-mail string from a third party. So you got the information. You were able to use it in depositions.

MR. RAMIREZ: But, your Honor, we don't know whether other e-mails exist out there the same way that these e-mails were not produced, your Honor.

Plaintiffs believe that they should be given the opportunity to confirm whether or not there were other servers. When we deposed the 30(b)(6) deponent and we started asking questions about how documents are handled, we were not allowed, and he was instructed not to answer because it was quote-unquote discovery or quote-unquote attorney-client privilege. Asking someone their duties in connection with a

search that clearly was not done effectively -- and, your Honor, the searches that were done here were extremely broad, things like preservative with exclamation mark. So these should have been caught.

THE COURT: Again, though, your saying on your belief that there must be things that are missing because you are not seeing what you would like to see presumably. You have one confirmed instance where you subpoenaed documents from another party, a third party and got something that hadn't been previously produced by the defendant. You went back to the defendant and you said, "Hey, I got this, where is it?" Right? And then they did their investigation, they realized that they needed to search e-mail archives, and then they produced what they had of that.

That one instance was remedied. Plus their failure to produce that e-mail string in the first instance is not material because you got the information from a third party that you subpoenaed.

Then I asked you what other evidence you have of items or documents that defendants should have produced in the course of their production that was not produced.

MR. RAMIREZ: Your Honor, the e-mails produced here, the amount are very low for a company this size. Employees -- I mean, this is something that happens -- they typically do a lot of communicating via e-mail. For us to try and -- to back

up a little bit, we were told that the production had been substantially completed. In fact it wasn't, because there were missing e-mails.

Plaintiffs would like the opportunity and they've shown and the law says that if you can prove that there were e-mails that were missing that you have established good cause to dig further.

Maybe there are other servers that weren't searched. Plaintiffs respectfully would like the opportunity to find out whether there are other servers that weren't searched. We also found out during the deposition that some employees worked on their home computers. We would like the opportunity to inquire whether or not there are e-mails there.

It's hard to prove a negative. Just because we had one document, which by the way is not favorable and it is just one instance, we want the opportunity to find out, your Honor, whether there are other instances.

THE COURT: All right. What other discovery disputes do you have going on here? Is this the last one?

MR. DONOVAN: This is it, your Honor.

THE COURT: This is it. Then after this discovery is closed?

MR. DONOVAN: Discovery is closed. Fact discovery closed on December 22, your Honor.

THE COURT: This potentially is an outstanding issue

that might be resolved and closed before the close of the discovery deadline.

MR. RAMIREZ: Your Honor, if I could raise a 30(b)(6) issue. This deponent plaintiffs would argue was not prepared for this deposition. He didn't know whether or not there had been a litigation hold put in place. He couldn't tell us whether there were recipes, beverage recipes, which are very important for this case, where they were kept and whether they even existed. He couldn't tell us whether there was a written document retention policy.

In fact, he testified, when we asked him, "Is there a written document retention policy?" he said, "Not my knowledge." But it is not his knowledge, your Honor. It is the corporation's knowledge.

Over the course several months he met with counsel and was prepped for around two hours. These are things that go to the heart of discovery here, including the fact whether or not the employees were using their home computers to store information that probably should have been searched.

He couldn't testify anything about the storage of labels, which as Court knows, this case is all about labels and whether they were the subject of the hack that occurred in 2019. These are all things that the corporation should have known.

THE COURT: Whether the labels were the subject of

what?

MR. RAMIREZ: Your Honor, defendants were hacked in 2019.

THE COURT: I know. I'm aware of that.

MR. RAMIREZ: Right. This is just one example of the many things --

THE COURT: You are trying to tie a ransomware attack to this labeling issue?

MR. RAMIREZ: No, your Honor. What we're saying is there are a bunch of instances where the corporation's representative could not answer questions about things that he should have been prepared. That's just a handful of instances. The deposition transcript will show there are others.

THE COURT: No, no, no.

One of the issues we have been contending with from the start of this case, and I actually do not recall if you were on the case when this happened, because there were two cases that were later consolidated.

MR. RAMIREZ: Right.

THE COURT: But from the outset we knew that discovery was off to a very slow start because the company had been subject to a ransomware attack. To me that's kind of an intervening event that makes the document discovery and preservation issues here different from a typical case, right?

So even if you knew what the protocols and procedures

were pre-ransomware attack, I am not sure that that really matters. I don't think that really matters because what we're dealing with here is a party who, through no fault of their own, essentially their documents got spoliated by somebody else and then they had to reconstruct it.

So it's not inconceivable to me that there would be gaps. It is not inconceivable to me that there would be things that are missing and that maybe the searches and the processes and the procedures that were being used during this time may even have been related to the fact that the company was trying to reconstruct a lot of what had happened and they were slowly getting their data back.

So I don't think you can overlay the expectations and the rules that one would put on a party's production without taking into account the ransomware attack.

Putting that aside, another reason why you are not going to get the additional discovery that you are seeking is because, even if the ransomware attack had not happened, you have not made the showing that is necessary that you should get more discovery about the discovery process. My reasoning for this is you've got the information, you got the documents from the subpoenaed third party. So you were able to use that information in depositions, in questioning, in discovery the way you're supposed to.

When you confronted the defendant about the missing

e-mail string, they did their own investigation and they found it or they found a portion of it, right? And they produced it to you. It confirmed it was consistent with what you already had from the subpoenaed third party.

Then I asked you, are there other examples, in other words, other evidence, not your belief, but other evidence that there was documents or information that defendant should have had that you now see from another source, akin to the Allen Flavors e-mail string. I did not hear any, which for a litigation of this size and complexity even for a defendant, a corporate defendant that had not suffered a ransomware attack is pretty darn good.

So you are not getting the additional discovery into discovery, and you are not getting another 30(b)(6) deposition.

All right?

MR. RAMIREZ: Yes.

THE COURT: All right.

So depositions are otherwise done.

MR. RAMIREZ: Yes, your Honor.

THE COURT: Mr. Donovan?

MR. DONOVAN: I'm fine, your Honor. Thank you.

THE COURT: All right.

So in that instance, then, you want a summary judgment briefing schedule. Is that the next step?

MR. DONOVAN: Judge, the defendants filed a premotion

letter to the Court on January 5 I believe.

THE COURT: Okay. I am looking for it. All right.

MR. DONOVAN: Plaintiffs responded. But, yes, obviously subject to what the Court desires, we would like to file that motion obviously.

THE COURT: Okay. So the premotion letter was filed to Judge Torres. It's under her procedures, right?

MR. DONOVAN: Correct, your Honor.

THE COURT: Okay. All right.

Well, because it was directed to Judge Torres, I don't expect that I should be the one to try to dissuade you from filing a summary judgment motion or putting you on a schedule. But if that changes, I am happy to put you on a schedule.

That said, because Judge Torres is going to be dealing with your summary judgment motion, you should reach out to her chambers or follow up with her after this conference is over. Because I think she was waiting for me to determine that discovery is closed to rule on this outstanding discovery dispute, which I have. Then we'll probably be closing the reference and you will be going back to Judge Torres.

Okay?

MR. DONOVAN: Thank you, your Honor.

THE COURT: All right. Thank you.

MR. RAMIREZ: Thank you, your Honor.

THE COURT: All right. Thank you very much.

Because I did issue a ruling on the record, I am going to request that you order a copy of the transcript. Split the cost 50/50 in case there are any issues down the road.

MR. RAMIREZ: Yes, your Honor. Thank you.

THE COURT: Thank you very much.

We are adjourned.

(Adjourned)