# Stevens & Lee

669 River Drive, Suite 201
Elmwood Park, NJ 07407
(201) 857-6760
www.stevenslee.com

Direct Dial: (201) 857-6778
Email: robert.donovan@stevenslee.com
Direct Fax: (610) 371-7938

February 12, 2024

**VIA ECF**
Honorable Ona T. Wang, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

> Re:    **Ahmed Ashour, et al. v. Arizona Beverages USA LLC, et al.**
>          **Index No. 19-cv-07081 (AT)(OTW)**
>          **Joint Letter Attaching Proposed Redactions of ECF No. 283**

Dear Judge Wang:

Kindly accept this joint letter to identify the following color codes on the redacted document (ECF No. 283), attached hereto as Exhibit "A", filed under seal, pursuant to the Court's order (ECF No. 308):

> Pink:    Indicates redactions agreed by the parties; and
> Yellow:  Indicates redactions requested by defendants, without plaintiffs' consent.

There are no proposed redactions by plaintiffs without defendants' consent.

Thank you for Your Honor's attention to this matter.

Respectfully submitted,

**REESE LLP**

/s/ Carlos F. Ramirez
CARLOS F. RAMIREZ
*Attorneys for Plaintiffs*

**STEVENS & LEE**

/s/ Robert P. Donovan
ROBERT P. DONOVAN
*Attorneys for Defendants*

Allentown  •  Bergen County  •  Bala Cynwyd  •  Fort Lauderdale  •  Harrisburg  •  Lancaster  •  New York
Philadelphia  •  Princeton  •  Reading  •  Rochester  •  Scranton  •  Valley Forge  •  Wilkes-Barre  •  Wilmington
A PA Professional Corporation, Salvatore A. Giampiccolo, NJ Managing Attorney

02/12/2024 SL1 2037546v1 115260.00002

# EXHIBIT A

# REESE LLP

December 7, 2023

**VIA ECF**
Honorable Ona T. Wang, U.S.M.J.
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Courtroom 20D
New York, New York 10007

Re:  *Ashour, et al. v. Arizona Beverages USA LLC, et al.*
Case No.: 1:19-cv-07081-AT-OTW

Dear Judge Wang:

Plaintiffs request a pre-motion conference pursuant to Local Civil Rule 37.2 to discuss the need to bring a motion to compel Defendants to produce information and/or testimony sought pursuant to Plaintiffs' Second Amended Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(b)(6), dated October 30, 2023 (attached hereto as Exhibit 1 (the "Notice")). Specifically, Plaintiffs seek to compel Defendants' answers to questions they were instructed to not answer at a 30(b)(6) deposition held on November 2, 2023, concerning Topic 29 of the Notice (seeking information concerning ESI).

## The Parties' Meet and Confer Regarding This Issue Was Not Fruitful

After Defendants' witness was instructed not to answer Plaintiffs' questions, as discussed below, the Parties agreed to call the Court to get a ruling on the issue. The Court was unavailable at that time. A few hours later, the Court issued a ruling that the parties should meet and confer during the lunch break to resolve the dispute. Per the Court's Order, the Parties met and conferred, however, they remained at an impasse. The Parties agreed that Plaintiffs would not continue to pursue the line of questioning Defendants objected to and, to the extent that Plaintiffs wanted to seek that information in the future, Plaintiffs would need to seek a Court Order requiring Defendants to answer said questions.[1] For the reasons given below, a motion to compel would be proper under these circumstances.

## Topic 29 (ESI)

It should be noted at the outset that since Defendants' service of their objections and responses to the original 30(b)(6) Notice *over two years ago*, the Parties have had to engage in countless meet and confers on the content of the Notice's Topics, not to mention the countless hours spent litigating the same before this Court. Indeed, even over the course of the last several months, the Parties have had to continue to meet and confer concerning many of the Notice's Topics, including the Topics raised herein.

After numerous meet and confers, Plaintiffs agreed to limit Topic 29 to "the location, storage, maintenance, and/or handling of electronically stored information ('ESI') and any 'backup tape and voicemail

---

[1] Attached hereto as Exhibit 2 are excerpts of the deposition transcript relating to the Parties' discussions concerning this issue.

1

systems.'"

At the 30(b)(6) deposition, Plaintiffs attempted to ask Defendants' Topic 29 witness about the location, storage, and maintenance of emails produced by Defendants in this litigation. The line of questioning was necessary because it had come to Plaintiffs' attention that Defendants had not produced certain relevant emails exchanged between them and one of their suppliers, Allen Flavors, Inc. ("AF"). Specifically, an email thread produced by Defendants (attached hereto as Exhibit 3) is missing emails that appear in an email thread produced by Defendants (attached hereto as Exhibit 4). Thus, on notice of the glaring discrepancy between emails produced by Defendants and AF, Plaintiffs sought to ask questions within the parameters of Defendants' email production compared to AF. Plaintiffs sought to ask questions within the parameters of the agreed upon Topic in order to determine how Defendants could have failed to produce emails clearly responsive to Plaintiffs' discovery requests. Notably, the documents Defendants failed to produce were unfavorable to Defendants. Had Plaintiffs been allowed to pursue this line of questions, Plaintiffs would have also asked questions in order to determine whether any other responsive documents had not been produced. However, Defendants' counsel repeatedly instructed the Topic 29 witness to not answer any questions seeking information concerning the missing emails issue because they allegedly went beyond the parameters of the information and they purportedly sought "discovery on discovery." See e.g., Ex. 2 at 51:7-61:13, 87:17-92:6, 110:4-116:22.

Defense counsel's instructions were improper. Plaintiffs' line of questioning was clearly within the scope of Topic 29, as agreed upon by the Parties. For example, the information Plaintiffs sought concerned the locations where Defendants store their ESI, including emails. Questions concerning where ESI is located, as well as its storage and maintenance by Defendants, were clearly within the parameters of the agreed upon Topic. Importantly, if Plaintiffs had been allowed to ask these questions, they would have likely elicited testimony about how Defendants had, *in fact*, failed to search certain individual users' mailbox archives, which is exactly where Defendants later found the missing emails,[2] which substantiates the need to ensure no *additional* discovery has been withheld. Moreover, Plaintiffs' questions would have obviated more needless litigation between the Parties on yet another discovery matter and the draining of additional judicial resources.

But even if the Court were to agree with Defendants' interpretation that Plaintiffs' questions were not within the scope of Topic 29, Plaintiffs have established good cause as to why they should be allowed to inquire into Defendants' failure to produce relevant ESI. In fact, a party seeking this type of information may obtain it if it can show that additional responsive materials exist and were withheld. See *Orillaneda v. French Culinary Inst.*, No. 07-3206, 2011 WL 4375365, at *5-9 (S.D.N.Y. Sept. 19, 2011) (noting that discovery on discovery may be ordered if the compelling party can identify specific deficiencies in the opposing party's production); *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) (same).

The email threads at Exhibits 3 and 4 clearly establish that Defendants failed to turn over responsive, highly relevant evidence that Plaintiffs would have never known about had they not subpoenaed a third party. Importantly, this confirms Plaintiffs' suspicion since early last year that Defendants have not been producing all of the relevant emails responsive to Plaintiffs' requests. This should come as no surprise to the Court because Plaintiffs have raised this issue on at least ten occasions both in writing and during court conferences. As addressed in a multitude of Joint Status Reports filed in this case, Plaintiffs noted that:

> Plaintiffs' counsel has reviewed these productions in their entirety and continues to be puzzled by how so few particularly relevant emails have been produced, especially given (1) the significant number of custodians' whose emails are being searched (sixteen different people) and (2) the relatively broad search terms being deployed (e.g., the phrase "No Preservatives" and the terms "preserv*" AND "ingredient*"). To further illuminate that Plaintiffs are not receiving the type of robust email productions common in class actions against major corporations and to put some metrics on the issue, Plaintiffs have searched the ESI productions to date and report, based

---

[2] Letter from Stevens & Lee to Plaintiffs' counsel concerning production of missing emails, dated November 21, 2023 (attached hereto as Exhibit 5).

on searching metadata who emails are from, the following minimal quantity of emails from key personnel: Don Vultaggio (Chairman): Zero emails from him,[3] Spencer Vultaggio (Chief Marketing Officer): 5 emails from him; Wesley Vultaggio (Chief Creative Officer): 2 emails from him; Dean Angel (Director of Program Assurance): 15 emails from him; and Mike Kutner (Vice President of Procurement and Copack Operations): 8 emails from him. There have been a larger number of produced emails to the custodians but, even then, these are often predominantly just mass mailings with little (if any) relevance to the case. Simply put, Defendants have largely not produced the types of standard back-and-forth email correspondence that is common in businesses (especially businesses of the stature of Defendants). *Also, with respect to some emails, the thread is not produced in its entirety and in the order in which the conversation takes place.* Moreover, the authors' responses are interspersed across hundreds of other documents (likely in violation of F.R.C.P. Rule 26(b)(5)(A)) making it extremely difficult for the document reviewer to comprehend the substance of the email conversation.

Joint Status Report, dated April 28, 2023 at p. 2-3, ECF No. 257 (emphasis added); *see also* Joint Stat. Rprt. 2, ECF No. 190; Joint Stat. Rprt. 1, ECF No. 192; Joint Stat. Rprt. 2, ECF No. 195; Joint Stat. Rprt. 2, ECF No. 208, Ltr. Mot. 2, ECF No. 213, Joint Stat. Rprt. 1, ECF No. 227, Joint Stat. Rprt. 2, ECF No. 241, Joint Stat. Rprt. 2, 4, ECF No. 253; Joint Stat. Rprt. 1, ECF No. 273.

In sum, Defendants' 30(b)(6) witness for Topic 29 was improperly instructed to not answer questions meant to probe into the location, storage, and maintenance of ESI as contemplated by the agreed upon Topic. Had Plaintiffs been allowed to do so, Plaintiffs would have identified the fact that Defendants had failed to search certain users' email archives. Those questions would have also helped avoid more needless litigation on discovery matters and the further waste of judicial resources. In addition, Plaintiffs have clearly established that Defendants failed to produce responsive, highly relevant documents, thereby necessitating the need for Plaintiffs to determine whether any other responsive documents have not been produced. Accordingly, Plaintiffs should be allowed to reopen the 30(b)(6) deposition on Topic 29 and Defendants should be ordered to answer Plaintiffs' questions relating to their efforts to identify and collect responsive ESI for production in this matter.

Respectfully submitted,

REESE LLP

By: /s/ Carlos F. Ramirez
Carlos F. Ramirez
cramirez@reesellp.com
Michael R. Reese
mreese@reesellp.com
REESE LLP
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

---

[3] While it has been represented to Plaintiffs' counsel on numerous occasions that Mr. Vultaggio does not "use" email, Plaintiffs came across at least one email addressed to him but the email address that it was sent to belonged to another Arizona employee, Jayne Ciccone. Thus, while Mr. Vultaggio may not log into an email program and "use" it to read/send emails, he is nevertheless communicating via email. Those emails should be produced forthwith.

Melissa S. Welner
mwelner@pwfirm.com
Ryan T. Gott (Admitted *pro hac vice*)
rgott@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue South, Suite 200
Wayzata, Minnesota 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*Attorneys for Plaintiffs and the Proposed Class*

4

CONFIDENTIAL

Page 1

1     UNITED STATES DISTRICT COURT

2     SOUTHERN DISTRICT OF NEW YORK

3     ─────────────────────────────

4    AHMED ASHOUR, individually and

5    on behalf of all others

6    similarly situated,

7              Plaintiff,

8         v.                           Index No.

9    ARIZONA BEVERAGES USA LLC,        1:19-cv-07081

10   HORNELL BREWING CO., INC.,        (AT) (OTW)

11   BEVERAGE MARKETING USA, INC.,

12   ARIZONA BEVERAGES HOLDINGS LLC,

13   and ARIZONA BEVERAGES HOLDINGS

14   2 LLC,

15             Defendants.

16   ─────────────────────────────

17

                CONFIDENTIAL

18

19

20

21

22

23

24

25

Case 1:19-cv-07081-AT-OTW  Document 283-2  Filed 12/07/23  Page 2 of 9

CONFIDENTIAL

**Page 2**

1  VIDEOTAPED DEPOSITION OF 30(b)(6) CORPORATE
2  REPRESENTATIVE FOR ARIZONA BEVERAGES - GABE UTSET
3  DATE:  Thursday, November 2, 2023
4  TIME:  10:14 a.m.
5  LOCATION:  Remote Proceeding
6    Arizona Beverages
7    60 Crossways Park Drive West
8    Suite 400
9    Woodbury, NY 11797
10 REPORTED BY:  Beth Fontane-Howard
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Page 4**

1            INDEX
2  EXAMINATION:                    PAGE
3    By Mr. Ramirez               9
4    By Mr. Visconi              121
5    By Mr. Ramirez              122
6
7            EXHIBITS
8  NO.      DESCRIPTION            PAGE
9  Utset:
10 Exhibit 1  Amended Deposition Notice   12
11 Exhibit 2  Plaintiff's Request For Documents 47
12 Exhibit 3  Email Thread
13    Bates DISI 0188343 Through 36   76
14 Exhibit 4  Email Bates AIU 0002003 to 07   77
15 Exhibit 5  Letter to Donovan        106
16 Exhibit 6  Email Regarding Search Terms   108
17
18 QUESTIONS INSTRUCTED NOT TO ANSWER
19    PAGE      LINE
20    60        8
21    89        22
22    113       18
23    115       18
24    116       2
25    116       18

**Page 3**

1            APPEARANCES
2  ON BEHALF OF PLAINTIFF AHMED ASHOUR, INDIVIDUALLY
3  AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED:
4    CARLOS F. RAMIREZ, ESQUIRE (by videoconference)
5    Reese LLP
6    100 West 93rd Street, 16th Floor
7    New York, NY 10025
8    cramirez@reesellp.com
9    (914)860-4994
10
11 ON BEHALF OF DEFENDANTS ARIZONA BEVERAGES USA LLC,
12 HORNELL BREWING CO., INC., BEVERAGE MARKETING USA,
13 INC., ARIZONA BEVERAGES HOLDINGS LLC AND ARIZONA
14 BEVERAGES HOLDING US 2 LLC:
15    JOHN N. VISCONI, ESQUIRE (by videoconference)
16    Steven & Lee, P.C.
17    485 Madison Avenue, 20th Floor
18    New York, NY 10022
19    john.visconi@stevenlee.com
20    (201)857-6762
21
22 ALSO PRESENT:
23    Dewey Nelson, Videographer (by videoconference)
24
25

**Page 5**

1            G. UTSET
2    THE VIDEOGRAPHER:  Good morning.  We
3  are going on the record at 10:14 a.m. on
4  November 2, 2023.  Please note that this
5  deposition is being conducted virtually.
6  Quality of recording depends on the
7  quality of camera and Internet connection
8  of participants.  What is seen from the
9  witness and heard onscreen is what will be
10 recorded.  Audio and video recording will
11 continue to take place unless all parties
12 agree to go off the record.  This is Media
13 Unit 1 of the video recorded deposition of
14 Gabe Utset taken in the matter of Ahmed
15 Ashour, individually and on behalf of all
16 others similarly situated vs. Arizona
17 Beverages, et al, filed in the United
18 States District Court, Southern District
19 of New York, Case No.
20 1:19-cv-07081(AT)(OTW).
21    This deposition is being conducted
22 remotely using virtual technology.  My
23 name is Dewey Nelson representing Veritext
24 and I am the videographer.  Court reporter
25 is Beth Fontane-Howard from the firm

2 (Pages 2 - 5)

Case 1:19-cv-07081-AT-OTW   Document 283-2   Filed 12/07/23   Page 3 of 9

CONFIDENTIAL

**Page 50**

G. UTSEY

1
2    THE VIDEOGRAPHER: We are off the
3    record. The time is 11:24 a.m.
4    (Off the record.)
5    THE VIDEOGRAPHER: We are back on the
6    record. The time is 11:26 a.m.
7    MR. RAMIREZ: I probably should have
8    asked for two questions --
9    THE REPORTER: I'm sorry.
10   MR. RAMIREZ: -- prior to that, but
11   it's my fault.
12 BY MR. RAMIREZ:
13   Q   Let me reask this question,
14 Mr. Utsey, because I don't recall if I
15 asked it or for your answer. Were you
16 involved in searching for documents that
17 may have been stored on Arizona's servers
18 called for by the document request labeled
19 as Exhibit 2 that is before you now?
20   MR. VISCONI: I'm going to maintain
21   the objection, Carlos, in part because if
22   you recall there was an extensive meet and
23   confer process that led to search terms.
24   So I don't know if -- even if what he did
25   is not privileged, and I'm not ready to

**Page 51**

G. UTSEY

1    concede that yet, but it may not have been
2    pursuant to this document per se.
3    MR. RAMIREZ: All right. Let me
4    rephrase that.
5 BY MR. RAMIREZ:
6    Q   Were you involved in the
7    collection of -- withdrawn. Were you
8    involved in the search for documents that
9    would have been stored on Arizona's
10   servers called for in connection with this
11   litigation?
12   MR. VISCONI: Objection.
13   Go ahead. You can answer if you can.
14   THE WITNESS: Yes.
15 BY MR. RAMIREZ:
16   Q   Were any other people involved
17 in that same task at your company?
18   MR. VISCONI: Objection.
19   Go ahead.
20   THE WITNESS: Do you define involved
21   as the task of searching?
22 BY MR. RAMIREZ:
23   Q   Yes. And we'll take it in two
24 steps. Let's talk about searching.

**Page 52**

G. UTSEY

1
2    A   No.
3    Q   Moving on from searching, were
4 you involved in the assembly of documents
5 that would have been -- I'm going to
6 withdraw that. I think I need to
7 understand the process. After your search
8 of documents pursuant to the request that
9 is in front of you, what, if anything, did
10 you do with the search results?
11   MR. VISCONI: Objection.
12   Go ahead.
13   THE WITNESS: As -- as John mentioned
14   earlier, I'm not sure that I did anything
15   pursuant to that document that you have up
16   currently. That being said, there were
17   obviously searches that were performed and
18   the results of those searches were then
19   passed on to an internal counsel employee
20   for purposes that are not entirely --
21   MR. VISCONI: No, I'm going to stop
22   him. I'm going to stop him right there.
23   I'm going to stop him right there.
24   MR. RAMIREZ: That's fine. That's
25   fine. That's fine, John.

**Page 53**

G. UTSEY

1
2 BY MR. RAMIREZ:
3    Q   At whose direction, again,
4 without telling me the substance of any
5 lawyers, not non-lawyers, any lawyers, did
6 you perform the searches that's relating
7 to the document request before you?
8    MR. VISCONI: I'm objecting to this.
9    And Carlos, I just -- topic 29 is
10   about what the ESI universe at the company
11   looks like. It is not a request for
12   discovery about discovery. To get
13   discovery about discovery, you have to
14   file a formal motion and make certain
15   levels of proof to the court and have a
16   court order permitting you to receive
17   discovery about discovery. We don't have
18   that in this case. Mr. Utsey is here to
19   testify about the universe of systems and
20   how ESI is stored and maintained. He is
21   not here to testify about what steps were
22   undertaken to provide documents in this
23   case. He's not here to testify about the
24   process of discovery. He can give you the
25   roadmap for all of the systems that

14 (Pages 50 - 53)

CONFIDENTIAL

## Page 54

**G. UTSET**

1  Arizona has and he could tell you what
2  would be on those systems, but this not
3  about how discovery was obtained in this
4  case. You have to file a motion with the
5  court to get that.
6      MR. RAMIREZ: I'm unaware of the rule
7  that requires that. That being said, I am
8  allowed to go into how discovery was, as I
9  said, handled. Which is part of the --
10  the topic. And that includes how
11  discovery was gathered. That is the point
12  of this 30(b)(6), John, to confirm that
13  everything was done as required by the
14  rules to obtain a discovery that we are
15  allowed to get under Rule 26.
16      MR. VISCONI: No, I disagree. You
17  have to make an affirmative showing that
18  you have reasonably grounded concerns of
19  discovery misconduct and a judge has to
20  find that that's the case. And if we have
21  to get on the phone with Judge Wang today,
22  that's what we're going to have to do.
23  But this is not discovery about discovery.
24  You have not made the proper proofs and

## Page 55

**G. UTSET**

1  gotten a court order to do that.
2      MR. RAMIREZ: Well, we do have proof,
3  which is the fact that certain emails
4  weren't produced in totality that in fact
5  contain other longer threads as produced
6  by third-parties. That being said, I am
7  not familiar, if you could please cite me
8  the rule, the case that will not allow me
9  to go into how discovery was gathered
10  when, in fact, we do have proof that
11  certain discovery was not produced. If
12  you want to get Judge Wang on this, on the
13  phone for this particular issue, I'm happy
14  to because this one is like -- this is a
15  non-starter. This is certainly things
16  that we are entitled to go into.
17      MR. VISCONI: And we can do that, but
18  you say you have proof, but you have not
19  filed a motion and a court has not
20  authorized you to conduct discovery on
21  discovery which is what's required.
22      MR. RAMIREZ: Can you please cite --
23  sorry. Can you please cite to me the rule
24  that says that I'm not allowed to go into

## Page 56

**G. UTSET**

1  how discovery was gathered and handled?
2  Because the topic is clear that that's
3  part of --
4      MR. VISCONI: No, it's not. First of
5  all, no, it's not.
6      MR. RAMIREZ: Yeah. It is.
7      MR. VISCONI: The part that you read
8  about "communications concerning the
9  claims raised in the actions" which is
10  where you stopped, is not part of the
11  agreed upon topic. The agreed upon topic
12  is strictly after "as confirmed during the
13  meet and confer process." So this is
14  pursuant to Rule 26, There is a bevy of
15  case law on it. I don't have a case
16  citation as I sit here, but I certainly
17  can and can provide that to you, but you
18  need to file a motion with the court if
19  you want discovery on discovery. And you
20  haven't done that.
21      MR. RAMIREZ: John, this is not
22  discovery on discovery. You keep calling
23  it that. It's not. Let me read to you
24  again the topic that we agreed on. "As

## Page 57

**G. UTSET**

1  confirmed during the meet and confer
2  process, defendants agreed to designate a
3  witness regarding the location, storage,
4  maintenance and/or handling," handling
5  means pulling it, searching for it,
6  producing it. That is what handling
7  means, John.
8      MR. VISCONI: No, we disagree with
9  that. That is not --
10      MR. RAMIREZ: If you want to lose
11  this one in front of the judge, if you
12  want to fight on this and lose this
13  matter, this issue, then I'm happy to do
14  that.
15      MR. VISCONI: Let's do that then.
16      MR. RAMIREZ: You want to call it
17  discovery on discovery because that helps
18  your position, but it is not discovery on
19  discovery. It is how the discovery was
20  handled. What do you think handling means
21  in this sentence?
22      MR. VISCONI: I think how the company
23  handles its BSI generally, not as it
24  relates to this case.

15 (Pages 54 - 57)

Case 1:19-cv-07081-AT-OTW    Document 283-2    Filed 12/07/23    Page 5 of 9

CONFIDENTIAL

**Page 58**

G. UTSET

1
2    MR. RAMIREZ: What's the point of a
3    30(b)(6) if we can't establish that the
4    company didn't do their due diligence and
5    they didn't abide by the discovery laws?
6    MR. VISCONI: Again, Carlos, that is
7    called discovery about discovery and I
8    don't know how many times I can say it,
9    but you need authority from the court to
10   get that.
11   MR. RAMIREZ: Okay. So are you
12   instructing your witness to not answer
13   that question?
14   MR. VISCONI: I'm saying let's get on
15   the phone with Judge Wang and see if you
16   have permission to obtain discovery about
17   discovery.
18   MR. RAMIREZ: Okay, let's do it.
19   Let's do it.
20   MR. VISCONI: Okay.
21   THE VIDEOGRAPHER: Are we going off
22   the record?
23   MR. VISCONI: Yeah, I think we're
24   going to have to.
25   THE VIDEOGRAPHER: All right. We are

**Page 59**

G. UTSET

1
2    off the record. The time is 11:36 a.m.
3    (Off the record.)
4    THE VIDEOGRAPHER: We are back on the
5    record. The time is 11:39 a.m.
6    BY MR. RAMIREZ:
7    Q    Mr. Utset, were you ever
8    provided with a list of search terms to
9    use in connection with your search of
10   documents in connection with this
11   litigation?
12   A    Yes.
13   Q    Without telling me the substance
14   of any conversations you may have had with
15   your attorneys about this, who provided
16   you with that list of search terms?
17   MR. VISCONI: Objection.
18   THE WITNESS: Internal --
19   Sorry.
20   Internal counsel.
21   BY MR. RAMIREZ:
22   Q    And upon receipt of that list of
23   search terms, what, if anything, did you
24   do?
25   MR. VISCONI: Objection.

**Page 60**

G. UTSET

1
2    I think, again, this is going to go
3    into work product privilege and again,
4    this is discovery on discovery. This is
5    not what he's here to testify about.
6    MR. RAMIREZ: Are you directing him
7    to not answer, John?
8    MR. VISCONI: Well, I am because I
9    think it goes into work product.
10   MR. RAMIREZ: If he's not revealing
11   the substance of whatever -- withdrawn.
12   It can't be work product 'cause you
13   produced it. I mean, these are documents
14   that were produced. I'm not asking him to
15   testify on documents that are logged on
16   the privilege log.
17   MR. VISCONI: No, you're asking him
18   about the procedure he underwent to obtain
19   documents.
20   MR. RAMIREZ: And I get to confirm
21   whether or not he performed the searches
22   properly in order to confirm that we've
23   received all of the documents that are
24   responsive to plaintiff's request.
25   MR. VISCONI: Assuming you have

**Page 61**

G. UTSET

1
2    authority to ask discovery about the
3    discovery process which again is what is
4    pending before the Judge, Carlos. That's
5    what we need Judge Wang to rule on.
6    MR. RAMIREZ: Okay. That's fine.
7    But the point of a 30(b)(6) is for us to
8    confirm that all steps were taken in order
9    for plaintiffs to confirm that they
10   received the relevant and responsive
11   documents pursuant to their request.
12   Okay, so we'll table that until we hear
13   back from the judge.
14   BY MR. RAMIREZ:
15   Q    Okay. Let's talk about the
16   infrastructure, Mr. Utset, as far as IT is
17   concerned. You mentioned earlier that
18   there are multiple locations -- withdrawn.
19   You mentioned earlier that Arizona has
20   locations throughout the country. You
21   mentioned New York, New Jersey,
22   Pennsylvania, California. Do each of
23   those locations house their own servers
24   that store documents and emails?
25   A    No.

16 (Pages 58 - 61)

Case 1:19-cv-07081-AT-OTW   Document 283-2   Filed 12/07/23   Page 6 of 9

CONFIDENTIAL

Page 86

G. UTSET

1
2  email up from that one. It's sent
3  Thursday, August 6, 2015, 12;26. I
4  believe you recognize all of those --
5  withdrawn. Looking at that email, do you
6  know who Allen Flavors is, Mr. Utset?
7      MR. VISCONI:  Objection.
8      THE REPORTER:  Spell the name,
9  please?
10     MR. RAMIREZ:  Allen Flavors,
11 A-L-L-E-N Flavors.
12     MR. VISCONI:  My objection's on the
13 record.  None of this is related to topic
14 29, but he can answer it, he can answer
15 it.
16     THE WITNESS:  I cannot provide an
17 accurate description to what Allen Flavors
18 is.
19 BY MR. RAMIREZ:
20  Q  Have you seen the name before?
21     MR. VISCONI:  Objection.
22  A  I have seen the name before.
23     MR. RAMIREZ:  And John, just so you
24 know, this is related -- if you could just
25 give me some latitude, although obviously

Page 87

G. UTSET

1
2  you're welcome to put the objection.
3      MR. VISCONI:  I'm going to continue
4  to object, but in the spirit of the
5  holiday season I'll let you keep going.
6      MR. RAMIREZ:  Thank you. You're a
7  good man.
8 BY MR. RAMIREZ:
9  Q  And you see that the last email
10 is from Jay Petrequmi to Jim Day sent
11 Thursday, August 6, 2015, at 5:04 p.m.?
12     MR. VISCONI:  Objection.
13     Go ahead.
14     THE WITNESS:  I see that email at the
15 top.
16 BY MR. RAMIREZ:
17  Q  And Mr. Utset, can you please,
18 to the extent you can, describe what this
19 document is?
20     MR. VISCONI:  Objection.
21     No.  That's so far outside the scope,
22 Carlos.
23     MR. RAMIREZ:  Okay. Let me make the
24 record, John, per your own comment
25 earlier -- no, your argument, we are

Page 88

G. UTSET

1
2  entitled to show that there are gaps in
3  the production and that certain documents
4  that should have been produced by Arizona
5  were not, in fact, produced.  I will,
6  after this, discuss an email that shows
7  the entire thread that occurred between
8  the parties that day which Arizona did not
9  produce.
10     MR. VISCONI:  And Carlos, this
11 witness is here to testify about the
12 storage of electronically stored
13 information, not a particular email and
14 what he thinks it is.
15     MR. RAMIREZ:  It doesn't matter what
16 he thinks it is, John.  The point is that
17 Mr. Utset was charged with searching
18 documents responsive to plaintiff's
19 document request and to the extent that
20 certain documents were not produced, that
21 were produced by a third-party.  As you
22 said earlier, we're allowed to show this
23 to the Court in our motion to ask
24 questions about the document searching
25 protocol that the company undertook.

Page 89

G. UTSET

1
2     MR. VISCONI:  Right. But the
3  questions you're asking are supposed to be
4  the questions that come after the Court
5  grants a motion, not before it.  This is a
6  document that -- hang on. This is a DESI
7  document.  This is one that Arizona
8  produced.  We'll stipulate to that.
9     MR. RAMIREZ:  John, to the extent
10 that Mr. Utset is here to talk about the
11 handling and the searching of documents,
12 we are allowed to go into that exercise
13 and we're allowed to make a record as you
14 demanded earlier.  So for you to tell us
15 that we can't establish -- you said
16 yourself, you have to show that there was
17 an issue, that there was some kind of
18 malfeasance and now you're telling me that
19 I can't establish that?  How am I supposed
20 to establish it if not --
21     MR. VISCONI:  Carlos, I'm telling you
22 these questions are inappropriate and I'm
23 going to direct him not to answer until we
24 can get the Court on the phone.
25     MR. RAMIREZ:  You really want to do

23 (Pages 86 - 89)

CONFIDENTIAL

Page 90

G. UTSET

1
2    that?
3        MR. VISCONI: I really do because it
4    seems that we are sincerely at an impasse
5    here.
6        MR. RAMIREZ: So, John, how do you
7    expect for us to establish the record that
8    you yourself said is what we need to
9    establish to litigate any potential
10   motion? Which I'm not --
11       MR. VISCONI: Carlos, you've already
12   got documents in your mind demonstrate
13   that we were deficient in our production.
14   Show that to the Court and see if she
15   agrees.
16       MR. RAMIREZ: Oh, I think she will
17   agree for sure.
18       MR. VISCONI: I'm happy to litigate
19   that.
20       MR. RAMIREZ: Okay. So are we. But
21   to the extent that we have a witness here
22   that was supposed to be prepared to
23   testify about documents produced in this
24   litigation and the --
25       MR. VISCONI: I disagree with that.

Page 92

G. UTSET

1
2        MR. VISCONI: To not answer the
3    question about this document, yes.
4        MR. RAMIREZ: That's your position.
5    Okay.
6        MR. VISCONI: Yes.
7 BY MR. RAMIREZ:
8    Q    Mr. Utset, can you please take a
9    look at what has been marked as Utset
10   Exhibit No. 4?
11   A    Can you please confirm which
12   document that was?
13   Q    Oh, sure. It's the one that's
14   labeled AFI 000 2003.
15   A    Thank you. Okay.
16   Q    I'm going to direct your
17   attention to the Bates number and that's
18   at the bottom right-hand corner, ending in
19   2006.
20   A    Okay.
21   Q    At the very top, you see there's
22   an email? It says, "To Jim Dar." Do you
23   see that?
24   A    I do see that.
25       MR. VISCONI: Objection.

Page 91

G. UTSET

1
2        MR. RAMIREZ: -- of that, John,
3    should I read into the record one more
4    time what this topic is about?
5        MR. VISCONI: You can, but it's not
6    going to do anything, Carlos.
7        MR. RAMIREZ: No, but you don't get
8    to decide what happens and what doesn't
9    happen. If you're telling me that you're
10   having him not testify based on your
11   biased reading of the topic, I don't think
12   that's going to go over very well with the
13   judge. Effectively, you're making a
14   relevance argument which you know you're
15   not allowed to make on a 30(b)(6)
16   deposition or any deposition for that
17   matter.
18       MR. VISCONI: And unfortunately,
19   you're asking a line of questions that
20   require prior court order based on good
21   cause to ask. And you don't have that.
22       MR. RAMIREZ: So you're directing
23   your client -- excuse me. You're
24   directing your 30(b)(6) witness to not
25   answer this question.

Page 93

G. UTSET

1
2    Sorry. Go ahead.
3 BY MR. RAMIREZ:
4    Q    And CC'd is Jay Petragnani. Do
5    you see that?
6        MR. VISCONI: Objection.
7        Go ahead.
8        THE WITNESS: Yes, I do.
9 BY MR. RAMIREZ:
10   Q    Okay. Going up to the next
11   email which is dated August 4, 2015, 11:36
12   a.m. Do you see where it says, "From Jim
13   Dar?"
14       MR. VISCONI: Objection.
15       Go ahead.
16       THE WITNESS: Yes, I do.
17 BY MR. RAMIREZ:
18   Q    There are several other people
19   in the to and CC lines. Do you recognize
20   any of those names?
21       MR. VISCONI: Objection.
22       Go ahead.
23       THE WITNESS: I do not recognize any
24   of those names.
25 //

24 (Pages 90 - 93)

Case 1:19-cv-07081-AT-OTW   Document 283-2   Filed 12/07/23   Page 8 of 9

CONFIDENTIAL

**Page 110**

G. UTSET

1
2  questioning that you objected to.
3  BY MR. RAMIREZ:
4   Q  Mr. Utset, you testified earlier
5  that you engaged in a search for documents
6  in connection with this litigation.
7      MR. VISCONI:  Objection.
8      Go ahead.
9      THE WITNESS:  Yes.
10 BY MR. RAMIREZ:
11  Q  Without telling me the substance
12 of my communications that you may have
13 had with your attorneys, both in-house and
14 outside counsel, were you provided with
15 search terms in order to engage in your
16 search?
17     MR. VISCONI:  Objection.
18     This is discovery on discovery.  But
19     assuming there's only a couple questions
20     here I'll --
21     MR. RAMIREZ:  Just a couple.
22     MR. VISCONI:  -- allow him to answer,
23     but I maintain the objection.
24     MR. RAMIREZ:  Thank you, John.
25     THE WITNESS:  Yes.

**Page 111**

G. UTSET

1
2  BY MR. RAMIREZ:
3   Q  And did you use those terms to
4  conduct your search for documents in this
5  case?
6      MR. VISCONI:  Objection.
7   A  Yes.
8   Q  Can you please tell us the --
9  withdrawn.  How much did you spend in
10 searching for the documents in connection
11 with the production made in this case?
12     MR. VISCONI:  Objection.
13     And Carlos, in addition to being very
14     obviously discovery about discovery, I
15     think this question is harder to answer
16     than you may think.  I mean, we have been
17     involved in this process for several
18     years, you know, without even the witness
19     saying that there have been multiple
20     searches of many different locations.  So
21     I don't think it's a fair question to ask
22     how much time he's spent on "the search."
23     I maintain my objection that this is out
24     of bounds and you would need a court order
25     for this.  But to the extent the witness

**Page 112**

G. UTSET

1
2  can answer it, my objection's on the
3  record.
4      THE WITNESS:  I cannot give you an
5      accurate amount of time that I spent on
6      the search.
7  BY MR. RAMIREZ:
8   Q  Can you give me a ballpark?
9      MR. VISCONI:  Objection.
10     Go ahead.
11     THE WITNESS:  I can't even give you a
12     ballpark with any amount of certainty.  It
13     would be too a guess in the wind.  I don't
14     feel comfortable giving you that.
15 BY MR. RAMIREZ:
16  Q  Okay.  That's fine.  During your
17 search, did you ever come across any
18 documents that appear to be consumer
19 surveys of Arizona products?
20     MR. VISCONI:  Objection.
21  A  I do not know.
22  Q  Do you not recall or do you --
23 do you not recall?  Is that your answer?
24  A  I do not recall.
25  Q  Okay.  To the extent that any

**Page 113**

G. UTSET

1
2  customer surveys would have been conducted
3  by Arizona concerning the products,
4  particularly the ready to drink products,
5  who would be the person that would be in
6  charge of storing those on their computer
7  or servers?
8      MR. VISCONI:  Objection.
9      If you can answer, go ahead.
10     THE WITNESS:  I do not know.
11 BY MR. RAMIREZ:
12  Q  After you completed your search
13 of documents, in what form did you hand
14 those over to your attorneys?  Without
15 telling me what conversations you may have
16 had,
17     MR. VISCONI:  Now, I'm objecting and
18     I'm shutting that down, Carlos.  We're not
19     going there.
20     MR. RAMIREZ:  So just to be clear,
21     shutting down means you're instructing
22     your client to not answer the question.
23     MR. VISCONI:  Yes.  Pursuant to your
24     agreement to withdraw line of questioning
25     about discovery about discovery,

29 (Pages 110 - 113)

CONFIDENTIAL

Page 114

G. UTSET

1
2       MR. RAMIREZ: I understand, John. As
3   I said, I'm still a little vague on the
4   concept, but that's fair.
5 BY MR. RAMIREZ:
6       Q   These are some clean-up
7   questions. I'm not trying to ask you
8   questions you've already given answers to.
9   I believe you testified that ~~~~~~~~~
10  ~~~~~ whether the ~~~~~~~ were ~~~~~ in
11  ~~~~~ ~~~~ ~~~~~~ of ~~~~~~ ~~~~. Is my
12  recollection correct?
13      MR. VISCONI: Objection.
14      Go ahead.
15      THE WITNESS: My recollection is that
16  your recollection is correct.
17 BY MR. RAMIREZ:
18      Q   Great, I like that, I like
19  that answer. In connection with your
20  searches -- I shouldn't say plural but --
21  in connection with your search for
22  documents in connection with this case,
23  did you ever speak to Don Vultaggio [ph]?
24      MR. VISCONI: Objection.
25      This is discovery on discovery,

Page 115

G. UTSET

1
2   Carlos.
3       THE REPORTER: Did not get that name,
4   Don [ph] -- I don't have that name.
5       MR. RAMIREZ: Vultaggio.
6       THE REPORTER: Could --
7       MR. RAMIREZ: Yes. V as in Victor.
8   U-L-T-A-G-G-I-O.
9       I understand your objection, John.
10  I'm going to ask the questions. Your
11  objection, you can keep making it, but I
12  have to get a record if we're going to
13  pursue this motion.
14      MR. VISCONI: That's fine. I'm
15  objecting and saying --
16      MR. RAMIREZ: Okay. So you're
17  directing your client to not answer, fine.
18      MR. VISCONI: I am. At this time.
19      MR. RAMIREZ: Okay.
20 BY MR. RAMIREZ:
21      Q   Did you, Mr. Utset, speak to
22  Spencer Vultaggio in connection with the
23  searches that you performed for purposes
24  of producing documents in this case?
25      MR. VISCONI: Same objection.

Page 116

G. UTSET

1
2       And I'm directing him not to answer
3   about discovery on discovery.
4       Go ahead.
5       THE REPORTER: Would you give me the
6   name again? The first name is Spencer did
7   you say?
8       MR. RAMIREZ: Yes, Spencer. Yes.
9   Spencer Vultaggio, V-U-L-T-A-G-G-I-O. I
10  will give you the names going forward.
11  Apologies.
12      THE REPORTER: Thank you.
13 BY MR. RAMIREZ:
14      Q   Same question, Mr. Utset, for
15  Wesley Vultaggio, W-E-S-L-E-Y. Vultaggio,
16  V-U-L-T-A-G-G-I-O.
17      MR. VISCONI: And same objection.
18      And I'm instructing him not to
19  answer.
20      MR. RAMIREZ: We're almost done here.
21  I just need to confirm I have everything
22  that I need.
23 BY MR. RAMIREZ:
24      Q   In general, do you ever speak to
25  Mr. Vultaggio? Excuse me. In general, do

Page 117

G. UTSET

1
2   you ever speak to Don Vultaggio [ph]?
3       MR. VISCONI: Objection. Outside the
4   scope.
5       But go ahead if you can answer it.
6       THE WITNESS: Very rarely.
7 BY MR. RAMIREZ:
8       Q   What would typically a
9   conversation be about?
10      MR. VISCONI: Same objection.
11      A   Less of a conversation and more
12  of a greeting in passing in the hallway,
13  "Hi, Don [ph]. Good morning."
14      Q   Two more questions. Just going
15  back to your testimony earlier and again,
16  I don't want to re-ask you questions, I
17  just want to make sure I hit everything
18  before we're done. Other than meeting
19  Mr. Visconi for purposes of preparing for
20  this deposition, did you meet with anyone
21  else? I don't want to know the substance
22  if it was a lawyer.
23      A   I find another prep that involved
24  another lawyer.
25      Q   When did that occur?

30 (Pages 114 - 117)

Case 1:19-cv-07081-AT-OTW    Document 283-3    Filed 12/07/23    Page 1 of 3

From:     Jay Petragnani
Sent:     Thursday, August 6, 2015 5:04 PM EDT
To:       Jim Dar
Subject:  RE: Arizona New Flavor Fruit Drink Label Issues

Thanks,
Jay

From: Jim Dar
Sent: Thursday, August 06, 2015 12:26 PM
To: Jay Petragnani; Frank Del Corso; Julie Brenner
Subject: RE: Arizona New Flavor Fruit Drink Label Issues

I just send response from Allen Flavors to Mervyn of Knouse Foods.

Thanks

Jim

From: Jay Petragnani
Sent: Thursday, August 06, 2015 9:23 AM
To: Frank Del Corso; Julie Brenner; Jim Dar
Subject: FW: Arizona New Flavor Fruit Drink Label Issues

Please read below and advise.

Thanks,
Jay

From: Hofe, Greg [mailto:GHofe@knouse.com]
Sent: Thursday, August 06, 2015 9:15 AM
To: Barry Jacobs; Jay Petragnani
Cc: DSouza, Mervyn
Subject: FW: Arizona New Flavor Fruit Drink Label Issues

Per Mervyn's note below, I can not pack until we get these issues resolved(highlighted below).On the
schedule to run next week at PP..Help!Thx   Greg

From: DSouza, Mervyn
Sent: Thursday, August 06, 2015 8:37 AM
To: Hofe, Greg <GHofe@knouse.com>
Subject: FW: Arizona New Flavor Fruit Drink Label Issues

Greg, not sure when you are planning to run these items.  We should not pack till this is
resolved.  Thx

Highly Confidential -- Attorneys Eyes
Only

DESI010034

From: Jim Dar [mailto:jdar@drinkarizona.com]
Sent: Monday, August 03, 2015 9:38 PM
To: DSouza, Mervyn <M'DSouza@Knouse.com>
Cc: Hofe, Greg <GHofe@Knouse.com>; Jay Petragnani <jpetragnani@drinkarizona.com>
Subject: RE: Arizona New Flavor Fruit Drink Label Issues

Mervyn

I need to find out.

Thanks

Jim

From: DSouza, Mervyn [mailto:M'DSouza@Knouse.com]
Sent: Monday, August 03, 2015 3:17 PM
To: Jim Dar
Cc: Hofe, Greg; Jay Petragnani
Subject: FW: Arizona New Flavor Fruit Drink Label Issues
Importance: High

Hi Jim,  would you please review the comments below and advise how to resolve.

Thanks in advance,

--Mervyn

From: Coforchio, John
Sent: Monday, August 03, 2015 9:43 AM
To: DSouza, Mervyn <M'DSouza@Knouse.com>
Cc: Wilkinson, Sue <SWilkinson@Knouse.com>
Subject: Arizona New Flavor Fruit Drink Label Issues
Importance: High

Mervyn,
As we discussed, Sue and I were reviewing the documentation I need on the new bases for the 3 New gallon  Arizona Fruit Drinks and discovered the following discrepancies:

The bases have listed several ingredients that are not listed on the label:

Kiwi Strawberry Fruit Juice Cocktail:
   1)  Fruit Juice for color
   2)  Gycerol ester of wood rosin,
   3)  Potassium Sorbate,
   4)  Sodium benzoate;

Highly Confidential -- Attorneys Eyes Only

DIEG1010036

Orangeade fruit juice Cocktail
1) Sugar
2) Glycerol ester of wood rosin,
3) Potassium Sorbate

Grapeade Fruit juice cocktail:
1) Fruit Juice for color,
2) Caramel color

These labels and cartons also state "100% natural; No Preservatives; No Artificial color; No artificial flavor.

From our understanding, the base ingredients:
1) must be on the label
2) the preservatives would not be allowed (regardless of the level in the finished product to meet the No preservative claim

John P.
Manager of Technical Specifications
E-mail
Ph. 7          ext 4632
K
63 East
Bigler



DESI010036

Case 1:19-cv-07081-AT-OTW    Document 283-4    Filed 12/07/23    Page 1 of 5

| | |
|---|---|
| **Message** | |
| **From:** | Frank Del Corso [/O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Fbfdelcorso] |
| **Sent:** | 8/6/2015 12:02:20 PM |
| **To:** | Melanie Nissim [/O=First Organization/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=mnissim) |
| **Subject:** | RE: Arizona New Flavor Fruit Drink Label Issues |

I did

**Frank Del Corso**
*Director of Product Development*
29 to Avenue Street
Edison, NJ 08820
Tel 900.501.5995 ext 123
Fax 908.561.4104
Frank@allonflavors.com
Web: www.allonflavors.com

📖 Please consider the environment before printing this e-mail.

**From:** Melanie Nissim
**Sent:** Wednesday, August 05, 2015 4:41 PM
**To:** Frank Del Corso
**Subject:** RE: Arizona New Flavor Fruit Drink Label Issues

Did you let him know we prefer he leave that out?!

**Melanie Nissim**
*Director of Customer Service*
29 Progress Street
Edison, NJ 08820
Tel 900.501.5995 ext 119
Fax 908.561.4104
frank@allonflavors.com
Web: www.allonflavors.com

📖 Please consider the environment before printing this e-mail.

**From:** Frank Del Corso
**Sent:** Wednesday, August 05, 2015 4:21 PM
**To:** Melanie Nissim
**Subject:** FW: Arizona New Flavor Fruit Drink Label Issues

Here you go...

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

F 0002003



Frank Del Corso
*Director of Product Development*

[redacted] ext 123
[redacted]
Email: [redacted]
Web: [redacted]

Please consider the environment before printing this e-mail.

**From:** Jim Dar [mailto:jdar@drinkarizona.com]
**Sent:** Wednesday, August 05, 2015 10:26 AM
**To:** Frank Del Corso
**Cc:** David Kaplan; Susan Halsted; Bruce Weber
**Subject:** RE: Arizona New Flavor Fruit Drink Label Issues

Hi Frank

It is nice and understanding write up,

Please see attached where I have added a statement to back up our claim of using small quantity of Sodium Benzoate and Potassium Sorbate is ineffective as preservatives,

We may keep this statement or remove it and go with what you have,

Let me know what we want to do,

Regards

Jim

**From:** Frank Del Corso [mailto:[redacted]]
**Sent:** Wednesday, August 05, 2015 9:55 AM
**To:** Jim Dar
**Cc:** David Kaplan; Susan Halsted; Bruce Weber
**Subject:** RE: Arizona New Flavor Fruit Drink Label Issues

Jim,

Attached is our response to [redacted] not sure if you want to add your name and header to this so I left it blank,



Frank Del Corso
*Director of Product Development*

[redacted]
[redacted]
[redacted]
[redacted]

Please consider the environment before printing this e-mail.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

AF 00002004

From: Jim Dar [mailto:jdar@drinkarizona.com]
Sent: Tuesday, August 04, 2015 12:42 PM
To: Frank Del Corso
Cc: David Kaplan; Susan Halsted; Bruce Weber
Subject: RE: Arizona New Flavor Fruit Drink Label Issues

I need to let you all know that we should say that the label printing was mixed up with the labels of another customer, OR some other description of similar type. Also check the Specification sheets for each and remove preservatives from it. I can send those as to what is actually in the base.

Regards

Jim

From: Frank Del Corso [mailto:frank@allenflavors.com]
Sent: Tuesday, August 04, 2015 12:14 PM
To: Jim Dar
Cc: David Kaplan; Susan Halsted; Bruce Weber
Subject: RE: Arizona New Flavor Fruit Drink Label Issues

Jim,

We're figuring out our response and will get back to you later today.



**Frank Del Corso**
*Director of Product Development*
23 Progress Street
Edison, NJ 08820
Tel: 908 561 5095 ext 123
Fax: 908 561 9169
Email: frank@allenflavors.com
Web: www.allenflavors.com

Please consider the environment before printing this e-mail.

From: Jim Dar [mailto:jdar@drinkarizona.com]
Sent: Tuesday, August 04, 2015 11:36 AM
To: David Kaplan; Bruce Weber; Al Handel; Nick Tambone; Frank Del Corso; Melanie Nissim
Cc: Ira Stolberg; Susan Halsted
Subject: FW: Arizona New Flavor Fruit Drink Label Issues
Importance: High

FYI...............

I need to reply.

In future please remove these from the label.

Regards

Jim

From: Nissim, Melvyn [mailto:Melvyn@allenflavors.com]
Sent: Monday, August 03, 2015 3:17 PM

HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY

AF 00002005

To: Jim Dar
Cc: Hale, Greg; Jay Petragnani
Subject: FW: Arizona New Flavor Fruit Drink Label Issues
Importance: High

Hi Jim, would you please review the comments below and advise how to resolve. Thanks in advance,

--Mervyn

From: Caterino, John
Sent: Monday, August 03, 2015 9:43 AM
To: DSouza, Mervyn <MDSouza@knouse.com>
Cc: Wilkinson, Sue <SWilkins@knouse.com>
Subject: Arizona New Flavor Fruit Drink Label Issues
Importance: High

Mervyn,
As we discussed, Sue and I were reviewing the documentation needed on the new bases for the 3.8L w/gallon Arizona Fruit Drinks and discovered the following discrepancies:

The bases have listed several ingredients that are not listed on the label ...

- Kiwi Strawberry Fruit Juice Cocktail
1) Fruit Juice for color
2) Gycerol ester of wood rosin
3) Potassium Sorbate
4) Sodium benzoate

- Orangeade fruit juice Cocktail
1) Sugar
2) Gycerol ester of wood rosin
3) Potassium Sorbate

- Grapeade Fruit juice cocktail
1) Fruit Juice for color
2) Caramel color

These labels and cartons also state 100% natural, No Preservatives, No Artificial color, No artificial flavor

From our understanding, the base ingredients:
1) must be on the label
2) the preservatives would not be allowed regardless of the level in the finished product to meet the No preservative claim

John P. Caterino
Manager of Technical Specifications
E-mail: jcaterino@knouse.com
Ph. 717-677-____ 16-32
Knouse Foods
63 East Hanover St.
Biglerville, PA 17307



Allen Flavors, Inc.
One Arrow Road, Building 40, Woodbury NY 11797
www.allenflavors.com

---

**Disclaimer:**

This e-mail message from Allen Flavors, Inc., including any attachments, is private and may contain confidential and privileged information. If you are not the intended recipient, please do not read, copy or use it or disclose it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system.

---

**Disclaimer:**

This e-mail message from Allen Flavors, Inc., including any attachments, is private and may contain confidential and privileged information. If you are not the intended recipient, please do not read, copy or use it or disclose it to others. If you have received this message in error, please notify the sender immediately by replying to this message and then delete it from your system.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

AFI0002007

Case 1:19-cv-07081-AT-OTW   Document 283-5   Filed 12/07/23   Page 1 of 2

# Stevens & Lee

669 River Drive, Suite 201
Elmwood Park, NJ 07407
(201) 857-6760
www.stevenslee.com

Direct Dial: (201) 857-6762
Email: John.visconi@stevenslee.com
Direct Fax: (610) 371-8501

November 21, 2023

**VIA EMAIL AND FEDERAL EXPRESS**
Carlos F. Ramirez, Esq.
Reese LLP
100 West 93rd Street, 16th Floor
New York, New York 10025

**VIA EMAIL**
Melissa S. Weiner, Esq.
Pearson, Simon & Warshaw, LLP
350 Sansome Street, Suite 680
San Francisco, California 94104

Re:    Ahmed Ashour et al. v. Arizona Beverages USA LLC, et al.
       Index No. 19-cv-07081 (AT)(OTW)
       Supplemental Document Production

Dear Counsel:

Please see the enclosed encrypted link to DESI 062692 through DESI 064266. These documents are being produced as "Highly Confidential – Attorneys' Eyes Only." We will follow up with a subsequent letter identifying the specific document request numbers that correspond to each document produced.

In connection with the Joint Status Letter to the Court, dated October 6, 2023, and after Plaintiffs provided two "Missing Strings" of emails on October 5, 2023, Defendants investigated: (1) whether any responsive emails were inadvertently not collected or produced; (2) why this may have occurred; and (3) the scope of any inadvertent omissions. The enclosed production includes the "Missing Strings" identified by Plaintiffs. Those documents can be found at DESI 063282-063310.

The original and expanded email searches were conducted on the client's Microsoft 365 Exchange Journal Archive, but not on each individual custodian's separate mailbox archive. This was an inadvertent oversight, of which we were not aware until conducting a search for the missing email strings. As detailed herein, that search has now occurred.

All emails archived in an individual user's mailbox should have also been archived in the 365 Exchange Journal Archive. However, during the search for missing emails, we learned that there were some responsive emails in the individual users' mailbox archives, that appear not to be in the Microsoft 365 Exchange Journal Archive.

Allentown • Bergen County • Bala Cynwyd • Cleveland • Fort Lauderdale • Harrisburg • Lancaster • New York
Philadelphia • Princeton • Reading • Rochester • Scranton • Valley Forge • Wilkes-Barre • Wilmington
APA Professional Corporation, Salvatore A. Olampiccolo, NJ Managing Attorney

# Stevens & Lee

Carlos F. Ramirez, Esq.
Melissa S Weiner, Esq.
November 21, 2023
Page 2

As a result of this discovery, Arizona undertook a search of each of the identified custodians' individual mailbox archives and re-searched the 365 Exchange Journal Archive using the expanded search terms agreed upon by the parties. We uploaded all documents containing hits to the expanded search terms into DISCO, our document review platform. Approximately 90% of the hits were found to be exact duplicates of documents previously reviewed. We conducted a search of the remaining "new" documents. Many constituted 100% duplicates of previously reviewed documents, but since they were not deemed to be "exact" duplicates, they were not automatically de-duped at ingestion. After conducting the review, we have identified 280 documents that are responsive and not privileged. Approximately 80 of the 280 documents are exact or near duplicates of documents already produced. We are producing them, however, out of an abundance of caution.

Thank you for your time and attention to this matter.

Very truly yours,

STEVENS & LEE

s/John N. Visconi
John N. Visconi

JNV