**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AHMED ASHOUR, JOY BROWN, and CRYSTAL TOWNES, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC,<br><br>               Defendants. | CASE NO. 1:19-cv-07081-(AT) (OTW)<br><br><u>**CLASS ACTION**</u> |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .............................................................................................1

II.    PLAINTIFFS PRESENT DISPUTED FACTS FOR JURY CONSIDERATION ..............3

    A.     Defendants Jointly Mislead Reasonable Consumers ..................................3

    B.     Questions of Fact Exist as to Defendants ABUSA, Hornell, BMU, ABH, and ABH2's Responsibility for the Products...........................................4

         1.     Hornell's involvement in the manufacture, labeling, packaging, marketing, distribution, and sale of the Products.........................................5

         2.     BMU's involvement in the manufacture, labeling, packaging, marketing, distribution, and sale of the Products.........................................5

         3.     ABH and ABH2's involvement in the manufacture, labeling, packaging, marketing, distribution, and sale of the Products ....................6

    C.     Plaintiffs' Testimony Regarding Their Purchases of the Arizona Products ...........7

         1.     Plaintiff Ashour's Purchases of the Arizona Products...............................7

         2.     Plaintiff Townes' Purchases of the Arizona Products ...............................7

         3.     Plaintiff Brown's Purchases of the Arizona Products...............................8

III.    PROCEDURAL POSTURE ...........................................................................8

IV.    LEGAL STANDARD ...................................................................................9

V.     ARGUMENT .............................................................................................9

    A.     Defendants' Statement of Facts Fails to Comply with Federal Rule of Civil Procedure 56 (c) and Local Rule 56.1 ...................................................9

    B.     Questions of Fact Preclude Summary Judgment as to Defendants BMU, Hornell, ABH, and ABH2.....................................................................10

    C.     Plaintiffs Townes and Brown's Retainer Agreements are Consistent with New York Law and Do Not Impact Plaintiffs' Article III Standing....................13

    D.     Plaintiffs Brown and Townes Have Standing .........................................18

    E.     Relief Under the UCL, FAL, CLRA, and Claims for Breach of Warranty is Available Without Individualized Proof of Reliance and Injury, as the Testimony of Plaintiffs Ashour and Brown Demonstrate Injury and Causation.............................................................................................19

         1.     Plaintiff Brown's Verified Answers to Interrogatories and Testimony Demonstrate Injury and Causation .........................................20

         2.     Plaintiff Ashour's Verified Answers to Interrogatories and Testimony Demonstrate Injury and Causation .........................................21

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment

F.      In a Case Alleging a Price Premium Theory of Damages, Plaintiffs Townes and Brown's Post-Suit Purchases and Voluntary Payments are Not Proper Grounds for Granting Summary Judgment............................................................23

G.      Plaintiffs' Unjust Enrichment Claims Are Properly Pled in the Alternative, and Questions of Fact Preclude the Grant of Summary Judgment.......................28

H.      Plaintiff Ashour's Testimony as to His Purchases of Defendants' Products is Sufficient to Allege Damages Under the UCL...................................................29

VI.     CONCLUSION.................................................................................................................30

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                            **Page(s)**

*Aulicino v. N.Y.C. Dep't of Homeless Servs.*,
   580 F.3d 73 (2d Cir. 2009)....................................................................................9

*Bautista v. Valero Mktg. & Supply Co.*,
   No. 15-CV-05557-RS, 2018 WL 11356583 (N.D. Cal. Dec. 4, 2018)...................25

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016) ....................................................................23, 26

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...........................................................................30

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (2007) ........................................................................26, 27

*Caldwell v. Nordic Naturals, Inc.*,
   Civ. No. 23-cv-02818-EMC, 2024 WL 24325 (N.D. Cal. Jan. 2, 2024)................20

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
   456 F. Supp. 3d 416 (S.D.N.Y. 2020)..................................................................19

*Cityspec, Inc. v. Smith*,
   617 F. Supp. 2d 161 (E.D.N.Y. 2009) ...................................................................9

*Colpitts v. Growers*,
   No. 20 Civ. 2487 (JPC), 2023 WL 2752161 (S.D.N.Y., Mar. 31, 2023) ...............13

*Comfortex Co., Ltd., v. XCel Brands Inc.*,
   No. 21-CV-7326 (ER), 2024 WL 1255535 (S.D.N.Y. Mar. 25, 2024) ...................11

*Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*,
   138 F. Supp. 3d 352 (S.D.N.Y. 2015)....................................................................9

*Cunningham v. Cornell Univ.*,
   86 F.4th 961 (2d Cir. 2023) ...................................................................................9

*DeAngelis v. Timberpeg East, Inc.*,
   858 N.Y.S.2d 410 (2008).......................................................................................11

*Eidelman v. Sun Prods. Corp.*,
   No. 21-1046-cv, 2022 WL 1929250 (2d Cir. June 6, 2022)............................23, 26

*Elliott Assoc. L.P v. Banco de la Nacion*,
   194 F.3d 363 (2d Cir. 1999)..................................................................................14

*Epstein v. Kemper Ins. Co.*,
210 F. Supp. 2d 308 (S.D.N.Y. 2002) .................................................................10

*Figueroa v. Mazza*,
825 F.3d 89 (2d Cir. 2016) ...............................................................................9

*Fishon v. Peloton Interactive, Inc.*,
620 F. Supp. 3d 80 (S.D.N.Y. 2022) ...................................................................24

*Hadley v. Kellogg Sales Co.*,
273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...............................................................20

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) ...........................................................23, 26

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) .................................................................20

*Hilario v. Allstate Ins. Co.*,
No. 20-cv-05459-WHO, 2020 WL 7643233 (N.D. Cal. Dec. 23, 2020)................................24

*Holtz v. Rockefeller & Co., Inc.*,
258 F.3d 62 (2d Cir. 2001).................................................................................10

*Justinian Cap. SPC v. WestLB AG*,
65 N.E.3d 1253 (2016)......................................................................................15

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ..................................................................30

*Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*,
632 F. Supp. 3d 402 (S.D.N.Y. 2022)...............................................................14, 15

*In re Light Cigarettes Mktg. Sales Pracs. Litig.*,
751 F. Supp. 2d 196 (D. Me. 2010) .....................................................................28

*MacDonell v. PHH Mortgage Corp.*,
846 N.Y.S.2d 223 (2d Dep't 2007).......................................................................24

*Morell v. WW Int'l, Inc.*,
551 F. Supp. 3d 173 (S.D.N.Y. 2021)...............................................................19, 22

*Morris v. Northrop Grumman Corp.*,
37 F. Supp. 2d 556 (E.D.N.Y. 1999) ....................................................................10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .............................................................................13

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment

*Perreca v. Gluck*,
    262 F. Supp. 2d 269 (S.D.N.Y. 2003)......................................................................................29

*Phoenix Light SF Ltd. v. U.S. Bank Nat. Ass'n*,
    612 F. Supp. 3d 263 (S.D.N.Y. 2020)....................................................................................15

*Prescod v. Celsius Holdings, Inc.*,
    No. 19STCV09321-KF, 2021 WL 5234499 (Cal. Sup. Aug. 2, 2021) ................................26

*Rabin v. Google LLC*,
    No. 22-CV-04547-PCP, 2024 WL 1269313 (N.D. Cal. Mar. 26, 2024) ..............................24

*Riegel v. Medtronic, Inc.*,
    451 F.3d 104 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008)......................................................9

*Sanders v. LoanCare, LLC*,
    No. CV 18-9376 PA, 2020 WL 8365241 (C.D. Cal. Dec. 4, 2020) ......................................25

*Simmons v. Woodycrest Ctr. for Human Dev., Inc.*,
    No. 10-CV-5193 (JSR), 2011 WL 855942 (S.D.N.Y. Mar. 9, 2011) ....................................10

*Simpson v. California Pizza Kitchen, Inc.*,
    989 F. Supp. 2d 1015 (S.D. Cal. 2013).............................................................................27, 28

*Smith v. Crown Lift Trucks*,
    No. 04 Civ. 2866 (GEL), 2005 WL 3500438 (S.D.N.Y. Dec. 20, 2005) ..............................21

*Sobel v. Hertz Corp.*,
    698 F. Supp. 2d 1218 (D. Nev. 2010)....................................................................................25

*Spiro v. Healthport Techs., LLC*,
    73 F. Supp. 3d 259 (S.D.N.Y. 2014)......................................................................................24

*Superintendent of Ins. v. Freedman*,
    443 F. Supp. 628 (S.D.N.Y. 1977), *aff'd*, 594 F.2d 852 (2d Cir.1978) ................................10

*Tambrands, Inc. v. Warner-Lambert Co.*,
    673 F. Supp. 1190 (S.D.N.Y. 1987).......................................................................................10

*Taylor-Burns v. AR Res., Inc.*,
    268 F. Supp. 3d 592 (S.D.N.Y. 2017)....................................................................................16

*Torliatt v. Ocwen Loan Servicing, LLC*,
    570 F. Supp. 3d 781 (N.D. Cal. 2021) ...................................................................................25

*Traer v. Domino's Pizza LLC*,
    No. CV 21-6187-MWF, 2023 WL 6369712 (C.D. Cal. June 29, 2023) ................................11

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 Cir. 2008 ...........................................................................................19

*Woodard v. Labrada*,
    No. ED CV 16-00189-JGB, 2017 WL 3309765 (C.D. Cal. July 31, 2017) ...........................11

*Woodhams v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    No. 18-CV-3990 (JPO), 2024 WL 1216595 (S.D.N.Y. Mar. 21, 2024)................................30

**Statutes**

California Consumer Legal Remedies Act
    Cal. Civ. Code §§ 1750, *et seq*....................................................................... *passim*

California False Advertising Law
    Cal. Bus. & Prof. Code §§ 17500, *et seq*. ........................................................ *passim*

California Unfair Competition Law
    Cal. Bus. & Prof. Code §§ 17200, *et seq*. ........................................................ *passim*

N.Y. Judiciary Law, § 488(1) ...............................................................................14

New York GBL §§ 349, *et seq*.; 350, *et seq*. ..............................................................13

**Other Authorities**

BLACK'S LAW DICTIONARY (7th ed. 1999)..........................................................22

Restatement (Second) of Torts, § 875.....................................................................10

Richard A. Lord, Williston on Contracts 4th § 52.45 (4th ed. 2004) ...........................22

## I.   __INTRODUCTION__

This class action arises from Defendants Arizona Beverages USA LLC ("ABUSA"); Hornell Brewing Co., Inc ("Hornell"); Beverage Marketing USA, Inc. ("BMU"); Arizona Beverages Holdings LLC ("ABH"); and Arizona Beverages Holdings 2 LLC's ("ABH2") (collectively, "Arizona" or "Defendants") false and misleading labeling of their Products as containing "No Preservatives."[1] Plaintiffs Ahmed Ashour ("Plaintiff Ashour"), Joy Brown ("Plaintiff Brown"), Crystal Townes ("Plaintiff Townes") (collectively, "Plaintiffs") have martialed substantial evidence that will prove their case at trial. Defendants cannot meet their burden of establishing an absence of disputed material facts necessary for summary judgment on Plaintiffs' claims. Defendants do not—and cannot—contend the Products do not contain preservatives. Rather, Defendants make a scattershot attempt at summary judgment.[2] All of Defendants' arguments fail.

First, Defendants' Statement of Facts contains a litany of Statements that violate Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(d) and should therefore be stricken. Defendants' Rule 56.1 Statement ("R. 56.1 Stm."), ECF 371-1, *infra*. Second, ample evidence exists to create questions of fact as to BMU, Hornell, ABH, and ABH2's involvement in the manufacture, marketing, distribution, and sale of the Products. *See* Plaintiffs' Response to Defendants' Rule 56.1 Statement of Material Facts ("Resp. R. 56.1 Stm."), at ¶¶ 92, 95-98. Third, Defendants' use of retainer agreements between counsel and Plaintiffs Townes and Brown to argue that their claims are barred, and they lack standing are procedurally and functionally flawed. *See*

---

[1] "Products," or "Class Products" is defined as the Sixteen Arizona Products listed in the Second Amended Complaint. Second Amended Class Action Complaint, ECF No. 118 ("SAC") ¶ 2.
[2] *See* Defendants' Motion for Summary Judgment, ECF No. 314 ("Motion") and Defendants' Memorandum in Support of Summary Judgment, ECF No. 317 ("Defs. Mem.").

Declaration of Robert P. Donovan ("Donovan Decl."), ECF No. 315, Ex. 4, Brown Retainer; Ex. 5, Townes Retainer.

Fourth, Defendants have failed to meet their burden under Rule 56 to establish an absence of disputed material facts necessary for summary judgment as to Plaintiffs Brown and Ashour's reliance upon the "No Preservatives" label in purchasing the Products. The testimony and verified discovery responses of Plaintiffs Brown and Ashour, at a minimum, create a question of fact as to their reliance.[3] Fifth, Plaintiffs Brown and Townes' post-suit purchases and the voluntary payment doctrine do not bar their claims, and could only limit the recovery the named Plaintiffs can seek. Furthermore, questions of fact exist as to when Plaintiffs Brown and Townes possessed "full knowledge" of the facts related to their causes of action as a prerequisite for the limitation of any such recovery for their post-suit purchases under the voluntary payment doctrine.

Sixth, Defendants' Motion as to Plaintiffs' unjust enrichment claims seek to revisit the Court's prior orders and should be rejected under the Law of the Case Doctrine. *See* Order, ECF No. 92; Order, ECF No. 202. To the extent the Court entertains Defendants' arguments, Defendants have failed to meet their burden under Rule 56 to establish an absence of disputed material facts. Indeed, Plaintiffs' testimony establishes that Plaintiffs purchased Defendants' Products based on Defendants' misrepresentations, resulting ill-gotten gains. *See* Donovan Decl., Exs. 1, Ashour Dep.; Ex. 2, Deposition Transcript of Crystal Townes ("Townes Dep."); Ex. 3, Brown Dep. Finally, questions of fact exist as to the damages that Plaintiff Ashour is entitled under

---

[3] *See* Donovan Decl., Ex. 1, Deposition Transcript of Ahmed Ashour ("Ashour Dep."); Ex. 3, Deposition Transcript of Joy Brown ("Brown Dep."); Declaration of Melissa S. Weiner ("Weiner Decl."), Ex. 23, Plaintiff's Supplemental Responses and Objections to Defendants' Initial Interrogatories to Plaintiff Ahmed Ashour; Ex. 26, Plaintiff's Amended Responses and Objections to Defendants' Initial Interrogatories to Plaintiff Joy Brown.

the California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, *et seq.*[4] To establish damages under the UCL, plaintiffs are not required to provide receipts for their purchases but may establish damages through testimony alone. Plaintiff Ashour has testified extensively about his purchases of Defendants' Products, and Defendants' Motion should therefore be denied.

## II.   PLAINTIFFS PRESENT DISPUTED FACTS FOR JURY CONSIDERATION

### A.   Defendants Jointly Mislead Reasonable Consumers

Defendants have labeled the Products as containing "No Preservatives" ██████████ ████████████ *See* Resp. R. 56.1 Stm. ¶ 92; Donovan Decl., Ex. 20, Deposition Transcript of Don Vultaggio, ("Vultaggio Dep."), at 73:19-24; 77:7-19; 92:11-93:7. According to Defendants' corporate representative, ██████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████. *Id*. Ex. 20 at 79:3-80:4; 80:23-81:2 ████ ████████████████████████████████████████████████████████████████

As a result of the "No Preservative" representation, ████████████████████ ██████████████████████ *See* Resp. R. 56.1 Stm., ¶¶ 17, 18, 49, 50, 90, 91, 92; Weiner Decl., Ex. 24.

However, despite representing the Products as containing "No Preservatives," ██████████ ████████████████████████████████████████████████████Resp. R. 56.1 Stm., ¶ 92; Donovan Decl., Ex. 20, Vultaggio Dep. at 74:14-16 ████████████████████████ ████████████████████████████████████. Defendants' corporate representative testified ████████████████████████████████████████████████████████████████



---

[4] While fact discovery is closed, the Court has yet to set deadlines for production of expert opinions or expert discovery. Such expert opinions and discovery will establish the damages methodologies claimed by Plaintiffs individually and on behalf of the Classes.

██████████ *Id*. Ex. 20, at 234:18-24.[5] Defendants' corporate representative provided this sworn testimony despite the ample evidence produced in this case wherein ████████████ ████████████████████████████████████████████████████████████████████████████ ██████████ *See e.g.*, Resp. R. 56.1 Stm., ¶ 92; Weiner Decl. Exs. 27, 28, 29, 30, 31. This case should go to trial.

### B.   Questions of Fact Exist as to Defendants ABUSA, Hornell, BMU, ABH, and ABH2's Responsibility for the Products

████████████████████████████████████████████████████████████████████████ ██████████████████ Resp. R. 56.1 Stm., ¶ 92; Donovan Decl., Ex. 20, Vultaggio Dep. at 69:15-16;  67:16-70:13;  195:20-196:23, 198:3-22. While Defendants' Motion includes references to invoices in which payment is to be remitted to ABUSA, (*see* R. 56.1 Stm., ¶ 94; Declaration of Don Vultaggio, ("Vultaggio Decl."), Ex. A), evidence exists as to the involvement of the other named Defendants in the manufacturing, labeling, marketing, distribution, and sale of the Products. *See* Resp. R. 56.1 Stm. ¶¶ 92-98.

All of Plaintiffs' discovery requests have been propounded upon all Defendants named in this lawsuit, and ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████.[6] *See* Resp. R. 56.1 Stm. ¶¶ 92-98; Weiner Decl., Exs 39, 40, 41, 42, 43, 44, 45, 46, 47, 48. Second, Plaintiffs served a 30(b)(6) deposition notice upon all Defendants. *See* Resp. R. 56.1 Stm. ¶¶ 92-98; Donovan Decl., Ex. 22; Weiner Decl. ¶¶ 11, 12, 13. ██████████████

---

[5] ████████████████████████████████████████████████████████████████████████████ ████████████████████

[6] Similarly, Defendants have exclusively served initial disclosures, discovery requests, and deposition notices on behalf of all Defendants named in this action.

███████████████████████████████████████████████████████████████

████████████████████████████████████████. *See id*.

    1.    Hornell's involvement in the manufacture, labeling, packaging, marketing, distribution, and sale of the Products

Defendants' own discovery responses admit that ██████████████████

███████████████████████████████████████████████████████████████

████████████████████████ *See* Resp. R. 56.1 Stm. ¶ 95; Weiner Decl. Exs. 32,

33. Defendants' Rule 26(a)(1) Initial Disclosures identify ██████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████." *Id.* Defendants have produced

documentation evidencing: █████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████ *See* Resp. R. 56.1 Stm. ¶ 95; Weiner

Decl. Exs. 34, 35, 36, 37, 38. Furthermore, public records evidence the role Hornell has in the

distribution and marketing of the Products. *See* Resp. R. 56.1 Stm. ¶ 95 (citing *Beverage Marketing*

*USA, Inc. v. South Beach Beverage Co., Inc.*, Civ. No. 265/2002, 2007 WL 1187975, at *1 (N.Y.

Sup. Apr. 11, 2007) ("Beverage Marketing and ***Hornell*** are involved in the development,

production, and sales of AriZona beverages. Beverage Marketing holds the AriZona products

trademarks and licenses those rights to ***Hornell***. ***Hornell*** distributes and markets AriZona

products.") (emphasis added)).

    2.    BMU's involvement in the manufacture, labeling, packaging, marketing, distribution, and sale of the Products

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment

Defendants' own discovery responses ████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████ *See* Resp. R. 56.1 Stm. ¶ 98; Weiner Decl. Exs. 32,
33. Similarly, according to Defendants' Amended Objections and Responses to Plaintiff Crystal
Townes' Second Set of Interrogatories, ████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████. *See* Resp. R.
56.1 Stm. ¶ 98; Weiner Decl. Ex 43.[7] Furthermore, public records further evidence the role in
which Hornell has in the distribution and marketing of the Products. *See* Resp. R. 56.1 Stm. ¶ 98
(citing *Beverage Marketing USA, Inc.*, 2007 WL 1187975, at *1 ("***Beverage Marketing*** and
Hornell are involved in the development, production, and sales of AriZona beverages. ***Beverage
Marketing*** holds the AriZona products trademarks and licenses those rights to Hornell. Hornell
distributes and markets AriZona products.") (emphasis added)).

    3.    <u>ABH and ABH2's involvement in the manufacture, labeling, packaging,
marketing, distribution, and sale of the Products</u>

Defendants have produced correspondence from ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[7] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████.

████████████████████ *See* Resp. R. 56.1 Stm. ¶¶ 96-97; Weiner Decl. Ex. 49. In particular, correspondence from ABH and ABH2 ███████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████ *Id*. Ex. 50.

### C.   Plaintiffs' Testimony Regarding Their Purchases of the Arizona Products

#### 1.   Plaintiff Ashour's Purchases of the Arizona Products

Plaintiff Ashour testified that he purchased the following Products: Arizona Green Tea with Ginseng and Honey, Arizona Rx Energy Herbal Tonic, and Arizona Mucho Mango. *See* Resp. R. 56.1 Stm. ¶ 1; Donovan Decl., Ex. 1, Ashour Dep. at 95:15-19; *see also* Weiner Decl. Ex. 23, Nos. 7, 8. Plaintiff Ashour provided specific details for the identified purchases of Arizona Products during his deposition and testified that he purchased Arizona Products two to three times per week from late 2014 to November 2018. *See* Resp. R. 56.1 Stm. ¶ 2; Donovan Decl., Ex. 1 at 94:6-97:23. Plaintiff Ashour testified that he made "a couple, two, three" purchases of Rx Energy and Arizona Mucho Mango. *See* Resp. R. 56.1 Stm. ¶ 2; Donovan Decl., Ex. 1 at 116:12-117:24; 119:14-22. Plaintiff Ashour specifically testified—as to all purchases—that he would not have purchased any Arizona Product if the "No Preservatives" representation was not present on the label. *See* Resp. R. 56.1 Stm. ¶¶ 10, 11, 13, 14; Donovan Decl., Ex. 1 at 152:17-153:10.

#### 2.   Plaintiff Townes' Purchases of the Arizona Products

Plaintiff Townes testified that she purchased the following Products: Arizona Iced Tea with Lemon Flavor, Arizona Arnold Palmer Zero Half Iced Tea & Half Lemonade, Arizona Fruit Punch Fruit Juice Cocktail, Arizona Watermelon Fruit Juice Cocktail, Arizona Golden Bear Lite Strawberry Lemonade, Arizona Raspberry Iced Tea, and Arizona Southern Style Real Brewed Sweet Tea. *See* Resp. R. 56.1 Stm. ¶ 19; Donovan Decl., Ex. 2, Townes Dep. at 41:6-19; 29:8-22; 58:22- 59:8; 59:14-23; 61:12-62:19; 120:17-121:17; *see also* Weiner Decl. Ex. 25, Nos. 7, 8.

Plaintiff Townes testified that she reviewed and relied upon the "No Preservatives" representation on the label of the Products when making her purchases beginning in 2014. *See* Resp. R. 56.1 Stm. ¶ 29; Donovan Decl., Ex. 2 at 45:5-11; 129:16-21; 151:15-21. Plaintiff Townes also testified that the "No Preservatives" representation on the Products' labels "is at the top of my list what I look for" and understood that she paid more for Products because of the "No Preservatives" representation. *See* Resp. R. 56.1 Stm. ¶ 30; Donovan Decl., Ex. 2 at 101:24-102:14; 129:16-21.

### 3.   Plaintiff Brown's Purchases of the Arizona Products

Plaintiff Brown testified that she purchased the following Products: Arizona Green Tea with Ginseng and Honey, Arnold Palmer Half & Half, Iced Tea with Lemon, and Raspberry Flavored Iced Tea. *See* Resp. R. 56.1 Stm. ¶ 53; Donovan Decl., Ex. 3, Brown Dep. at 85:21-86:10; *see also* Weiner Decl., Ex. 26, Nos. 7, 8. Plaintiff Brown testified that that in addition to the taste, price, thirst quenching, sugar content of the Products, she relied on the "No Preservatives" representation in her purchases. *See* Resp. R. 56.1 Stm. ¶ 64; Donovan Decl., Ex. 3 at 107:3-108:6. Further, Plaintiff Brown testified that she reviewed the Products' labels prior to purchase, (*id.*, at 27:8-25), and that those labels clearly stated, "No Preservatives." *Id.*, at 84:24-85:5; 85:15-20.

## III.   **PROCEDURAL POSTURE**

While fact discovery is closed, the Court has not yet set deadlines for production of expert opinions or expert discovery, which will establish the damages methodologies claimed by Plaintiffs individually and on behalf of the Classes. Similarly, Plaintiffs have not yet moved for class certification. Until such a motion is made, the scope of the Classes and the manner in which their damages can be calculated under the law or, alternatively, under their claims for equitable relief in the form of restitution and unjust enrichment, are not before the Court.

## IV.    LEGAL STANDARD

Summary judgment is only proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 108 (2d Cir. 2006), *aff'd*, 552 U.S. 312 (2008) (citing Fed. R. Civ. P. 56(a)). There is a genuine dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009). A "material" fact is one capable of influencing the case's outcome under governing substantive law, and a "genuine" dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion. *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016). "The Court should not grant summary judgment if there is 'any evidence in the record that could reasonably support a jury's verdict for the non-moving party.'" *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 168 (E.D.N.Y. 2009) (citation omitted).

## V.    ARGUMENT

### A.    Defendants' Statement of Facts Fails to Comply with Federal Rule of Civil Procedure 56 (c) and Local Rule 56.1

Many of Defendants' Rule 56.1 Statement of Facts functionally violate Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(d) and should therefore be stricken. First, numerous statements by Defendants are argumentative in nature. *See, e.g.*, R. 56.1 Stm., ECF No. 317-1, ¶¶ 21-24, 26, 27, 42, 55-58, 60, 61. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) (striking argumentative statements).

Second, numerous statements are vague, ambiguous, state legal conclusions, or otherwise consider non-admissible evidence. *See, e.g.*, R. 56.1 Stm., ECF No. 317-1, ¶¶ 21-27, 55-58, 60, 61. *Epstein v. Kemper Ins. Co.*, 210 F. Supp. 2d 308, 314 (S.D.N.Y. 2002) ("Statements in an affidavit or Rule 56.1 statement are inappropriate if they are not based on personal knowledge, contain inadmissible hearsay, are conclusory or argumentative, or do not cite to supporting evidence."); *see also Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 568 (E.D.N.Y. 1999) ("the court ... will only consider [] evidence that is admissible."); *Simmons v. Woodycrest Ctr. for Human Dev., Inc.*, No. 10-CV-5193 (JSR), 2011 WL 855942, at *1 n.1 (S.D.N.Y. Mar. 9, 2011) (disregarding statements consisting of legal conclusions).

Third, numerous statements are reserved for expert testimony and inappropriate for statements of fact. *See, e.g.*, R. 56.1 Stm., ECF No. 317-1, ¶¶ 21-24, 26, 27, 55-58. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) (A "Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record").

## B.   Questions of Fact Preclude Summary Judgment as to Defendants BMU, Hornell, ABH, and ABH2

Contrary to Defendants' argument, significant evidence exists that, at a minimum, creates a question of material fact as to BMU, Hornell, ABH, and ABH2's involvement in the manufacture, marketing, labeling, distribution, and sale of the Products that precludes the grant of Defendants' Motion. The general rule is that joint tortfeasors are liable for the entire harm caused, (Restatement (Second) of Torts, § 875), and this Court has previously applied this general rule to non-principal parties in torts involving misrepresentation. *See, e.g.*, *Superintendent of Ins. v. Freedman*, 443 F. Supp. 628, 638 (S.D.N.Y. 1977), *aff'd*, 594 F.2d 852 (2d Cir. 1978); *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190 (S.D.N.Y. 1987). Importantly, where a factual dispute exists as to whether affiliated parties can be found jointly liable under an alter ego theory

of liability, summary judgment is inappropriate. *Comfortex Co., Ltd., v. XCel Brands Inc*., No. 21-CV-7326 (ER), 2024 WL 1255535, *11-12 (S.D.N.Y. Mar. 25, 2024).

Mirroring the general rule of joint liability, the California Unfair Competition Law ("UCL") Cal. Bus. & Prof. Code §§ 17200, *et seq.*, California Consumer Legal Remedies Act ("CLRA") Cal. Civ. Code §§ 1750, *et seq.*, and California False Advertising Law ("FAL") Cal. Bus. & Prof. Code §§ 17500, *et seq.*, proscribe unfair practices as "undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer." Cal. Civ. Code § 1770(a). Indeed, anyone can be liable under the CLRA for their deceptive practices in making or carrying out agreements that are intended or result in an eventual sale even if the plaintiff does not deal directly with the defendant. *See Traer v. Domino's Pizza LLC*, No. CV 21-6187-MWF, 2023 WL 6369712, at *13 (C.D. Cal. June 29, 2023). Courts analyzing the UCL, CLRA, and FAL routinely state that California law "imposes liability on parties whose agents engage in false advertising or unfair business practices, or who participate in a scheme that results in the dissemination of misleading or deceptive advertising (even if their role in the tortious acts may not give rise to liability independently)." *Woodard v. Labrada*, No. ED CV 16-00189-JGB (SPx), 2017 WL 3309765, at *13 (C.D. Cal. July 31, 2017) (rejecting argument that the supplier defendants failed to state a CLRA claim because there was no direct "transaction" between the plaintiffs and defendants given the defendants role regarding the product). Similarly, under New York GBL §§ 349, *et seq.*; 350, *et seq.*, any entity that engages in consumer-oriented acts or practices that are deceptive or misleading in a material way and that plaintiff has been injured by reason thereof can be held liable. *See e.g.*, *DeAngelis v. Timberpeg East, Inc*., 858 N.Y.S.2d 410, 414 (2008).

Plaintiffs explicitly alleged that all of the named Defendants falsely and deceptively labeled and represented that their Products contained "No Preservatives." Second Amended Complaint ("SAC"), ECF No. 118 ¶¶ 1-10, 65-129. Defendants jointly responded to those allegations and Plaintiffs' discovery requests, and also provided corporate representative 30(b)(6) testimony jointly. *See* Resp. R. 56.1 Stm. ¶¶ 86-104, Donovan Decl., Ex. 20, Vultaggio Dep.; Weiner Decl., ¶¶ 11, 12, 13. Furthermore, ███████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████. *See* Section II.B. *supra*.

Defendants rely upon a single document produced during the deposition of one of their 30(b)(6) witnesses as evidence ███████████████████████████████████████ █████████████████████████. Defs. Mem. at 11 (citing R. 56.1 Stm. ¶¶ 86, 90, 94, 101). This document was produced merely for the identification of ████████████████████ ████████████████████████████ Donovan Decl., Ex. 20, Vultaggio Dep. at 182:12-17. Moreover, Defendants' 30(b)(6) witness did not draft the document. *Id*. Ex. 20, at 183:3-7. Lastly, the document wholly fails to address the relationship of the named Defendants as to the manufacture, ingredients, decision to use the "No Preservative" statement, sale, marketing, and/or the labeling of the Products. *Id*. This self-serving document falls short of what is necessary under Rule 56.

Ironically, the cases cited by Defendants in support of their argument for summary judgment as to Defendants BMU, Hornell, ABH, and ABH2 actually support *denying* Defendants'

Motion and finding that questions of fact exist as to the liability of all named Defendants.[8] In *Perfect 10, Inc. v. Visa International Service Association*, the Ninth Circuit held that any entity that is personally involved in the reproduction, alteration, or distribution of the unlawful, unfair, deceptive, untrue, misleading, or fraudulent business act or practice misleading advertising can be held liable under the UCL and FAL. 494 F.3d 788, 808-09 (9th Cir. 2007). The Ninth Circuit affirmed the district court's dismissal of the member merchant banks because there was no evidence that those entities were actually involved in the alleged misleading advertisements, but merely processed payments related to those advertisements. *Id.*, at n.20. In contrast here, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████   *See* section II.B., *supra*. At a minimum, the evidence cited herein by Plaintiffs, Defendants' discovery responses, and Defendants' participation throughout the entirety of this litigation create a question of fact properly reserved for a jury.

   **C.   Plaintiffs Townes and Brown's Retainer Agreements are Consistent with New York Law and Do Not Impact Plaintiffs' Article III Standing**

   Defendants argue that the retainer agreements between Plaintiffs Townes and Brown and Plaintiffs' counsel (the "Retainer Agreements"), violate the doctrine of ████████████████

████████████████████████████████████████████████████████████

████████   Defs. Mem. at 14-18; Donovan Decl. Exs. 4, 5. Moreover, Defendants argue that because the Retainer Agreements do ████████████████████████, New York's safe harbor does not save them from champerty. *Id*. Defendants are wrong.

---

[8] Defendants' citation to *Colpitts v. Growers*, is perplexing. While the case does involve allegations of violations of the NY GBL §§ 349 and 350, the case does not address joint liability under the New York statutes. No. 20 Civ. 2487 (JPC), 2023 WL 2752161 (S.D.N.Y., Mar. 31, 2023). In fact, there was only one defendant named in *Colpitts*. *Id*. As a result, the case is irrelevant as to whether questions of fact as to the joint liability of BMU, Hornell, ABH, and ABH2 exist in this case.

It should be noted at the outset that this "eleventh hour" affirmative defense by Defendants is typically invoked much earlier in litigation—usually at the motion to dismiss stage. And even though Defendants were provided with copies of the Retainer Agreements over two and half years ago, they only raise it for the first time now, well after the close of fact discovery. Thus, Plaintiffs are left perplexed; wondering why Defendants would seek to raise champerty now if not for the purpose of attempting to wear down Plaintiffs, creating unnecessary work, distracting the Court from the real issues at play, and further delaying trial.

Nonetheless, the seldom-invoked and increasingly abandoned doctrine of champerty prohibits "the initiation and/or maintaining of a suit [by an attorney] in return for a financial interest in the outcome…" *Elliott Assoc. L.P v. Banco de la Nacion*, 194 F.3d 363, 372 (2d Cir. 1999).[9] New York's champerty law states that an attorney shall not "[d]irectly or indirectly buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon." N.Y. Judiciary Law ("NYJL"), § 488(1). However, New York does protect from champerty retainer agreements that provide for a contingent fee arrangement. NYJL § 488(2).

Importantly, "the affirmative defense of champerty requires an assessment of more than the terms contained within the four corners of the contract—the analysis entails looking at the "***actual purpose and intent***" of the parties involved." *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 441-42 (S.D.N.Y. 2022) (citing *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1255 (2016)) (emphasis added); *see also* NYJL § 489(1) (containing specific

---

[9] Further proof that champerty is a vestige of a bygone era, Defendants rely on a Supreme Court opinion from 1857. *See* Defs. Mem. at 14 (quoting *Roberts v. Cooper*, 61 U.S. 467, 472 (1857)).

requirement of "with the intent and for the purpose" for champerty defense). For that reason, resolution of the champerty defense can only take place after discovery on the issue. *Lateral Recovery, LLC*, 632 F. Supp. 3d at 441 (ordering champerty-related discovery); *see also Phoenix Light SF Ltd. v. U.S. Bank Nat. Ass'n*, 612 F. Supp. 3d 263, 268-69 (S.D.N.Y. 2020) (considering champerty on summary judgment after previously denying motion to dismiss on the basis of champerty without prejudice so that more discovery could take place); *CIBC Bank & Tr. Co. (Cayman) v. Banco Cent. do Brasil*, 886 F. Supp. 1105, 1111 (S.D.N.Y. 1995) (noting that courts "on occasion" have found a champertous assignment on a motion to dismiss but declining to do so); *Justinian Cap. SPC*, 65 N.E.3d at 1255 (explaining that summary judgment was granted only after "champerty-related discovery was complete"). Thus, putting aside that the ███████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████. *See* Donovan Decl., Exs. 4, 5. To the extent that the Court is willing to entertain Defendants' argument, discovery must be ordered on the issue before it can be properly adjudicated. In any event, as discussed below, this Court can deny Defendants' Motion on this issue without ordering discovery.

The argument that Defendants put forth is one of first impression and is concocted by improperly joining two factors that exist in many class actions: the first being the typically low recovery amounts owed to plaintiffs in class actions; and the second being that ███████ ████████████████████████████████████████████████████████ Based on these facts, Defendants summarily conclude that, "there can be no genuine dispute that counsel has directly or indirectly ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████."[10] Defs.

Mem. at 16. Defendants' convoluted argument fails.

First, Defendants do not cite to even *one* case where a revocable assignment of claims to attorneys' fees was found to constitute champerty. Moreover, Defendants' sole support for a finding of champerty here is a case that not only did not involve the revocable assignment of a claim to attorneys' fees earned by the attorney assignee, but instead involved a retainer agreement where the attorneys were seeking 45% percent of actual damages and 80% of statutory damages in the event of a recovery. Defs. Mem. at 15-16 (citing *Taylor-Burns v. AR Res., Inc*., 268 F. Supp. 3d 592, 598 (S.D.N.Y. 2017)). Clearly, that case is not instructive. Importantly, should there ever be a settlement or judgment entered in this case, it is this Court that will determine what monies are paid to Plaintiffs' counsel by way of fees and expenses, thereby nullifying any risk of excessive fees being paid to them like those sought in *Taylor-Burns*. Indeed, none of those cases cited by Defendants involved the assignment of plaintiffs' claims to attorneys' fees payable to them, and instead, involved the assignment of claims to surrogates for the sole purpose of initiating lawsuits (*i.e.*, the very thing that champerty laws prohibit). Defs. Mem. at 17 (citing *Phoenix Light S.F. Ltd*., 612 F. Supp. 3d at 281-83 (finding that assignment of rights by a CDO trustee to certain CDO issuers for purpose of initiating litigation was champertous); *Aretakis v. Caesars Entm't, et al*., No. 16 Civ. 8751 (KPF), 2018 WL 1069450, at *10 (S.D.N.Y. Feb. 23, 2018) (granting motion to dismiss because the assignment of a claim by the real party in interest to another for the purpose of initiating a lawsuit was champertous); *Refac Int'l, Ltd. v. Lotus Dev. Corp*., 131 F.R.D. 56, 58 (S.D.N.Y. 1990) (same)). Thus, those cases are likewise not instructive.

---

[10] Defendants' argument that Plaintiffs' counsel ████████████████████████████████████
████████ *See* Defs. Mem. at 16; Donovan Decl., Exs. 4, 5.

Defendants further argue that the Retainer Agreements are not protected by NYJL § 488(2)'s safe harbor against champerty because they are not ███████████████████ Defs. Mem. at 15. Defendants' argument fails because it mischaracterizes both the Retainer Agreements, and what constitutes a contingent fee arrangement. Specifically, Defendants argue the Retainer Agreements are not contingent fee arrangements ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Defs. Mem. at 15. This argument also fails.

First, Defendants are wrong when they state that Plaintiffs' ████████████████

████████████████ Defs. Mem. at 15 (emphasis added). ████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████ *See* Donovan Decl. Exs. 4, 5 at § 6 ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ *Id*. Second, Defendants are wrong when they pronounce, without any support whatsoever, that to qualify as a contingent fee arrangement, the Retainer Agreements need to have provided a percentage of the attorneys' fees to be collected from a recovery. Defs. Mem.

at 15. In fact, it would be up to the Court—upon application by Plaintiffs' counsel—to determine an appropriate percentage.

 (Defs. Mot. at 15 (emphasis added)) is wrong and is wholly unsupported by the very language that they cite. To be clear, with respect to Plaintiffs'

. *See* R. 56.1 Stm., ¶¶ 24, 58; Donovan Decl., Exs. 4, 5, ¶ 6, p. 3. (emphasis added). In other words,

. Defs. Mem. at 15. As a result, Defendants have failed to meet their burden, and their Motion as to Plaintiffs Townes and Brown premised upon the law of champerty should be denied.

### D.   Plaintiffs Brown and Townes Have Standing

Defendants also argue that summary judgment is appropriate as to two issues relating to standing: (1) that Plaintiffs Brown and Townes lack "prudential" standing; and (2) they lack standing to assert claims for counsel fees. Defs. Mem. at 18-19. Defendants' last minute standing arguments are baseless and should be rejected out of hand.

Defendants argue that "Ms. Brown and Ms. Townes do not have prudential standing" to assert claims for summary judgment because ██████████████████████ ███████ Defs. Mem. at 19. However, this matter was brought as a putative class action subject to certification under Rule 23. The whole purpose of the Rule is to allow one or more plaintiffs to assert legal rights on behalf of others. As such, Defendants' Motion must be rejected.

Defendants also argue that Plaintiffs Brown and Townes lack standing to sue for attorneys' fees ████████████████████████████████████. Defs. Mem. at 18-19. As explained in detail above, Defendants are wrong. *See* Section V.C., *supra*. ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ *See* R. 56.1 Stm., ¶¶ 24, 58; Donovan Decl., Exs. 4, 5, ¶ 6, p. 3. At a minimum██ ████████████████████████████████████████████████████████ ██████████████████████████████. Summary judgment is therefore inappropriate.

### E.   Relief Under the UCL, FAL, CLRA, and Claims for Breach of Warranty is Available Without Individualized Proof of Reliance and Injury, as the Testimony of Plaintiffs Ashour and Brown Demonstrate Injury and Causation

Defendants argue that Plaintiffs Ashour and Brown cannot prove that they relied upon the "No Preservatives" representation on the label when making their purchases. Defs. Mem. at 19-21, 26-28. Despite Defendants' suggestion otherwise, relief under the UCL, FAL, and CLRA is available without individualized proof of "reliance and injury, so long as the named plaintiffs demonstrate injury and causation." *See Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 9th Cir. 2008). Under the UCL, FAL, and CLRA, ordinary principles of actual and proximate causation apply. *See City of Long Beach v. Total Gas & Power N. Am., Inc*., 456 F. Supp. 3d 416, 448 (S.D.N.Y. 2020). A challenged statement need not be the sole or even dominant factor in consumers' purchasing decisions. *Morell v. WW Int'l, Inc*., 551 F. Supp. 3d 173, 183 (S.D.N.Y.

2021). A consumer who purchased products in reasonable reliance on the defendant's misleading representations or advertising has suffered "damage" sufficient to bring a claim. *Id.*

Similarly, to prevail on a breach of express warranty claim, the burden is on the plaintiff to prove "(1) the seller's statements constitute an "affirmation of fact or promise" or a "description of the goods"; (2) the statement was "part of the basis of the bargain"; and (3) the warranty was breached." *Caldwell v. Nordic Naturals, Inc.*, Civ. No. 23-cv-02818-EMC, 2024 WL 24325, at *8 (N.D. Cal. Jan. 2, 2024). Generally, where a plaintiff has adequately stated a California consumer protection claim, which is the case here, the plaintiff has also sufficiently stated a claim for breach of express warranty. *See, e.g.*, *Hadley v. Kellogg Sales Co*., 273 F. Supp. 3d 1052, 1095 (N.D. Cal. 2017).); *Ham v. Hain Celestial Grp., Inc*., 70 F. Supp. 3d 1188 (N.D. Cal. 2014).

1.   Plaintiff Brown's Verified Answers to Interrogatories and Testimony Demonstrate Injury and Causation

Defendants conveniently ignore unequivocal evidence of Plaintiff Brown's injury and causation in her verified discovery responses and testimony. *See* Resp. R. 56.1 Stm., ¶¶ 53, 60, 64, 65, 72, 74, 75, 77, 78, 80-89; Donovan Decl., Ex. 3, Brown Dep.; Weiner Decl. Ex. 26, No. 8. Instead, Defendants resort to mischaracterization of Plaintiff Brown's testimony to contest her reliance on the "No Preservatives" representation. Defs. Mem. 19-21. A closer look at her testimony actually shows her injury and causation: Plaintiff Brown testified that she reviewed the labels of the Products prior to her purchase. *See* Resp. R. 56.1 Stm., ¶¶ 53, 60, 64, 65, 72, 74, 75, 77, 78, 80-89; Donovan Decl., Ex. 3 at 27:8-25; Weiner Decl. Ex. 26, No. 8. She testified that on those labels, the "No Preservatives" representation was clearly stated. Donovan Decl., Ex. 3 at 84:24-85:5; 85:15-20; Weiner Decl. Ex. 26, No. 8. Furthermore, Plaintiff Brown testified that in addition to the taste, price, thirst quenching, sugar content of the Arizona Products, the "No Preservatives" representation was a factor in purchasing those Products. Donovan Decl., Ex. 3 at

107:3-108:6; Weiner Decl. Ex. 26, No. 8.[11] Such testimony is sufficient for Plaintiffs Brown's claims under the UCL, FAL, CLRA, and breach of warranty.

Defendants argue that Plaintiff Brown's testimony does not support her claims under the UCL, CLRA, FAL, and breach of warranty with respect to Defendants' "No Preservatives" label. Defs. Mem. at 21. Defendants are wrong. The fact that Plaintiff Brown did not gratuitously testify repeatedly as to the degree to which the "No Preservatives" representation impacted her purchases during her deposition, does not contradict or negate her verified interrogatory answers and testimony that she relied upon the "No Preservatives" representation. *See e.g.*, *Smith v. Crown Lift Trucks*, No. 04 Civ. 2866 (GEL), 2005 WL 3500438 (S.D.N.Y. Dec. 20, 2005) (interpretation of alleged contradictory testimony is a question for a jury). More importantly, at her deposition, just before testifying as to the Products she purchased, Plaintiff Brown was asked how she believed she had been deceived by Defendants' label, she testified: "Well, the labels clearly states (sic) on it 'No Preservatives,' and I was unaware that it had any at all." Donovan Decl., Ex. 4, Brown Dep. at 85:15-23. Thus, Defendants' reliance on case law involving plaintiffs who failed to present any evidence of reliance is misplaced. Defs. Mem. at 19-20. Because Plaintiff Brown has demonstrated the requisite injury and causation under California law, Defendants' Motion should be denied.[12]

2.  <u>Plaintiff Ashour's Verified Answers to Interrogatories and Testimony Demonstrate Injury and Causation</u>

---

[11] Defendants' objection on the record that Plaintiff Brown's testimony was the product of "improper leading and argumentative questions during re-direct, suggest answers to Ms. Brown about reasons for purchases" is wholly without merit. Donovan Decl., Ex. 3 at 107:3-108:6. The questions posed by counsel on redirect were premised upon Plaintiff Brown's verified discovery responses and were open-ended questions in nature. Defense counsel's objections were baseless and obstructionist.

[12] To the extent Defendants argue Plaintiffs have not yet established the specific injury Plaintiff Brown or Ashour suffered, that argument is premature. Expert discovery and class certification briefing have not even commenced in this matter, and the materiality of the challenged representation and the value attached thereto will be before this Court pursuant to a forthcoming scheduling order.

Defendants' Motion imposes an improper standard for reliance on Defendants' misrepresentation for Plaintiff Ashour's purchases of Rx Energy and Mucho Mango. Defs. Mem. at 26-28. To be actionable under the UCL, FAL, and CLRA, a challenged statement need not be the sole or even dominant factor in consumers' purchasing decisions. *Morell*, 551 F. Supp. 3d at 183. Plaintiffs do not dispute that Plaintiff Ashour purchased the Rx Energy and Mucho Mango Products, in part, because he was interested in trying the flavors. Donovan Decl., Ex. 1, Ashour Dep. at 118:7-13, 120:5-11. However, Plaintiff Ashour's testimony clearly establishes that the "No Preservatives" representation on the Rx Energy and Mucho Mango Products' labels was a factor in his decision to make those purchases. Donovan Decl., Ex. 1, Ashour Dep. at 152:17-153:10 ("I haven't seen any beverage product out there that state quite like your client's that has no preservatives on it. It's a – it's a big statement, no. Like I said before, I relied on all three, but *I mostly relied on the no preservatives, that's what influenced me to make the purchase*.") (emphasis added); *see also* Weiner Decl., Ex. 23. Plaintiff Ashour's testimony is sufficient to establish a question of fact as to causation between Defendants' "No Preservatives" representation and Plaintiff Ashour's purchases of the Rx Energy and Mucho Mango Products.

With respect to Plaintiff Ashour's breach of warranty claim, the question is whether a promise was conveyed by the seller and thus became "a term of the parties' contract" and subsequently breached. *See* Richard A. Lord, Williston on Contracts 4th § 52.45 (4th ed. 2004) (stating that an express warranty is "a term of the parties' contract"); Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty"); BLACK'S LAW DICTIONARY at 1582 (7th ed. 1999) (defining "express warranty" as "[a] warranty created by the overt words or actions of the seller"). To this end, where Plaintiff Ashour was promised a beverage with "No Preservatives," but received a beverage with preservatives, a promise was made by Defendants that was not kept. *See id*. Plaintiff

Ashour has demonstrated the requisite causation and damages under California law, and Defendants' Motion should be denied.

> **F.   In a Case Alleging a Price Premium Theory of Damages, Plaintiffs Townes and Brown's Post-Suit Purchases and Voluntary Payments are Not Proper Grounds for Granting Summary Judgment**

Defendants argue that they are entitled to summary judgment against Plaintiffs Brown and Townes because they continued to buy the Products after retaining counsel and suing Defendants. Defs. Mem. at 22. Defendants further argue that Plaintiffs Townes and Brown's claims are barred under the "voluntary payment doctrine." *Id*. at 24-25. Based on well-settled case law, all of Defendants' arguments fail.

First, this case involves the overpayment of a price premium by Plaintiffs that they would not have paid had the Products been labeled in a non-misleading way. SAC ¶ 49. Plaintiffs pled both injury and causation by alleging that Defendants' deceptive labeling allowed them to charge a price premium for the Products, that the price premium was charged both to those who saw and relied upon the false representations and those who did not, and that, as a result of the price premium, they were charged a price they would not otherwise have been charged but for the false labeling. *See id*. ¶¶ 44, 46, 48, 49; *see also Eidelman v. Sun Prods. Corp*., No. 21-1046-cv, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022) (finding that a price premium demonstrates actual injury); *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1104 (N.D. Cal. 2018); *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) ("The proper measure of restitution in a mislabeling case is the amount necessary to compensate the purchaser for the difference between a product as labeled and the product as received."). Thus, because Plaintiffs Brown and Townes continued to be injured each time they purchased the Products, including after they potentially learned the truth about Defendants' misleading conduct, their claims cannot be dismissed as a matter of law on a motion for summary judgment.

Second, even assuming that Plaintiffs had not alleged injury by overpayment, the "voluntary payment doctrine" only bars recovery of monies paid with ***full knowledge of the fraud***. Defendants agree that is the standard. *See* Defs. Mem. at 24 (citing *Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (1st Dep't 2004)); *Hilario v. Allstate Ins. Co.*, No. 20-cv-05459-WHO, 2020 WL 7643233, at *6 (N.D. Cal. Dec. 23, 2020). Thus, to the extent Plaintiffs have presented evidence that they made purchases without said knowledge ***any time during the Class Period***, summary judgment cannot be entered against Plaintiffs claims across the board. As noted by one court, "the voluntary payment doctrine ***limits recovery rather than culpability***." *Rabin v. Google LLC*, No. 22-CV-04547-PCP, 2024 WL 1269313, at *2 (N.D. Cal. Mar. 26, 2024) (emphasis added); *see also Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80 (S.D.N.Y. 2022) (rejecting outright application of the doctrine but noting that it could limit the recovery); *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 275 (S.D.N.Y. 2014); *MacDonell v. PHH Mortgage Corp.*, 846 N.Y.S.2d 223, 224 (2d Dep't 2007); *Oswego Laborers' Local 214 Pension Fund*, 623 N.Y.S.2d 529, 533 (1995).

Here, Plaintiff Brown testified that during the Class Period and prior to December 31, 2020, she purchased: Arnold Palmer in 2018 or 2019, (Resp. R. 56.1 Stm., ¶ 79, Donovan Decl., Ex. 4, Brown Dep. at 87:4-8), Raspberry Iced Tea in 2019ish, (Resp. R. 56.1 Stm., ¶ 85, Donovan Decl., Ex. 4 at 88:4-6), Lemon Iced Tea in 2019, (Resp. R. 56.1 Stm., ¶ 82, Donovan Decl., Ex. 4 at 89:9-11), and eight to ten cases and eight to nine single tall cans of Green Tea prior to December 31, 2020. Resp. R. 56.1 Stm., ¶ 76, Donovan Decl., Ex. 4 at 90:14-91:20.

Similarly, Plaintiff Townes testified that, during the Class Period and prior to December 31, 2020, she first observed the "No Preservatives" representation on an Arnold Palmer Half and Half in 2014 that she then purchased. Resp. R. 56.1 Stm., ¶¶ 29-30, Donovan Decl., Ex. 2, Townes

Dep. at 151:15-152. After that, Plaintiff Townes was not asked about any of the purchases she made between when she first observed the "No Preservatives" label on the Products and December 31, 2020. Further, Defendants did not question Plaintiff Townes about her verified Answers to Interrogatories, in which she states:

> she spent approximately $46 a month on various AriZona beverages since May 2013. On average, she spent $32 for two 16-pack AriZona Ice Tea with Lemon Flavor in the 16 ounce size; $6 dollars for two 128 ounce AriZona Arnold Palmer Zero Half Iced Tea & Half Lemonade; and $10 on 16 ounce bottles and 23 ounce cans of AriZona Fruit Punch Fruit Juice Cocktail, AriZona Watermelon Fruit Juice Cocktail, AriZona Golden Bear Lite Strawberry Lemonade, AriZona Raspberry Flavor Ice Tea, AriZona Iced Tea with Lemon Flavor, and Arizona Southern Style Real Brewed Sweet Tea.

Resp. R. 56.1 Stm., ¶ 29; Weiner Decl., Ex. 25, Nos. 2, 7. Defendants make a last-ditch argument that allowing Plaintiffs Brown's claims to proceed would not only "not advance" the public interest in enforcing California consumer protection laws, but "would undermine them." Defs. Mem. at 25. Defendants fail to cite any case law in support of this notion, and the cases applying California law that have addressed the application of the "voluntary payment doctrine" in the consumer fraud context have held the exact opposite. *See Sanders v. LoanCare, LLC*, No. CV 18-9376 PA, 2020 WL 8365241, at *4 (C.D. Cal. Dec. 4, 2020) (declining (for the second time) to apply the voluntary payment doctrine to UCL claims because it "would be contrary to public policy"); *Torliatt v. Ocwen Loan Servicing, LLC*, 570 F. Supp. 3d 781, 800 (N.D. Cal. 2021) (same); *Bautista v. Valero Mktg. & Supply Co.*, No. 15-CV-05557-RS, 2018 WL 11356583, at *4 (N.D. Cal. Dec. 4, 2018) ("applying the voluntary payment defense here would run contrary to public policy and legislative intent"); *see also Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1224 (D. Nev. 2010) (holding that "to allow [the defendant] to avoid liability for [an] unfair practice through the voluntary payment doctrine would nullify the protections of the act and be contrary to the intent of the legislature.").

The cases Defendants cite in support of their "post-suit purchases" arguments are either inapplicable or do not help them. For example, *Prohias v. Pfizer, Inc*. concerned a dismissal under Rule 12(b)(6) before the plaintiff could ever establish whether the product was sold at a premium due to the defendant's false and misleading statements. 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007); Defs. Mem. at 23. Plaintiffs here will present expert testimony that establishes that Defendants' labeling of the Products as containing "No Preservatives" allowed them to charge a higher price than they could have had the Products been labeled in a non-misleading manner. *See Prescod v. Celsius Holdings, Inc*., No. 19STCV09321-KF, 2021 WL 5234499 (Cal. Sup. Aug. 2, 2021) (Order granting class certification for California consumer protection claims arising out of the defendant's "No Preservatives" representation on its beverage products despite containing citric acid). Plaintiffs' expert(s) will be able to do so using methodologies accepted by courts in this Circuit and throughout the country. *See e.g.*, *Prescod*, 2021 WL 5234499; *Eidelman*, 2022 WL 1929250, at *1; *Hadley*, 324 F. Supp. 3d at 1104; *Brazil*, 660 F. App'x at 534.

Another case Defendants rely upon, *Red v. Kraft Foods*, did consider "post-suit purchases," but did so in determining whether the proposed class representatives were typical of the class for purposes of Rule 23(a)'s typicality requirement. No. CV 10-1028-GW, 2012 WL 8019257, at *12 (N.D. Cal. Apr. 12, 2012); Defs. Mem. at 24. Thus, because that case did not consider whether a plaintiff's post-suit purchases could, as a matter of law, bar her from proving her consumer fraud claims at trial, Defendants' reliance on it is misplaced.

Defendant's reliance on *Buckland v. Threshold Enterprises, Ltd.*, in support of their argument that Plaintiff "Brown will have an equally insurmountable task of proving injury" is misplaced as well. 155 Cal. App. 4th 798 (2007); Defs. Mem. at 23. There, the plaintiff purchased the product "***solely to pursue litigation upon the vindication of her suspicions***" of foul play. *Id*.

at 808 (emphasis added). Because of this, the court held that she lacked "the requisite confidence in the truth and material completeness of [the defendant's] representations and cannot establish actual reliance for the purpose of her fraud claims." *Id*. at 809. However, here the record is clear that the "No Preservatives" representation on the labels was a factor—in addition to the taste, price, to quench her thirst, and the sugar content—in her purchases of the Products. Resp. R. 56.1 Stm. ¶¶ 53, 60, 64, 65, 72, 74, 75, 77, 78, 80-89; Donovan Decl., Ex. 3, Brown Dep. at 107:9-20; Weiner Decl. Ex. 26, No. 8. Plaintiff Brown testified that she regularly purchased the Products in 2018 and 2019, (Resp. R. 56.1 Stm. ¶¶ 53, 60, 64, 65, 72, 74, 75, 77, 78, 80-89; *id*., Ex. 3 at 87:4-8; 88:4-6; 89:9-11; 90:14-91:20), but that it was not until December 2020 that she first came to the belief that she was being deceived by the Defendants' labels. Resp. R. 56.1 Stm. ¶¶ 53, 60, 64, 65, 72, 74, 75, 77, 78, 80-89; *id*., Ex. 3, at 85:3-14. Further, Plaintiff Brown testified that it was not until 2021 that she decided to sue Defendants. Resp. R. 56.1 Stm. ¶¶ 53, 60, 64, 65, 72, 74, 75, 77, 78, 80-89; *id*., Ex. 3, at 52:8-53:14.

Finally, *Simpson v. California Pizza Kitchen, Inc*., is inapplicable. 989 F. Supp. 2d 1015 (S.D. Cal. 2013); Defs. Mem. at 23-24. That case did not deal with consumer fraud claims based on deceptive labeling. Instead, the claim was that the defendant had "breached its implied warranty of merchantability . . . because [the products at issue were] 'not safe for human consumption.'" 989 F. Supp. 2d at 1026. Importantly, California law states that when a buyer "has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him." *Id*. at 1026. Thus, the court held that because the plaintiff had a sufficient opportunity to examine the products yet failed to provide any justifications for not doing so prior to purchasing and consuming them, she waived her rights under the implied

warranty. *Id*. at 1026-27. Here Plaintiffs could not have uncovered the alleged fraud in light of Defendants' prominent labeling and deception.

Defendants' Motion is further belied by the fact that there are numerous reasons for why a consumer would continue to purchase a product after learning of a defendant's deceptive conduct. As Defendants concede, Plaintiffs testified to the many reasons why they purchased the Products, (*see* Defs. Mem. at 3-10), each of which merit consideration by a trier of fact. For that reason alone, Plaintiffs' claims cannot be determined as a matter of law on a motion for summary judgment. *See In re Light Cigarettes Mktg. Sales Pracs. Litig.*, 751 F. Supp. 2d 196, 204 (D. Me. 2010). As genuine disputes of material fact exist, summary judgment is inappropriate.

### G.   Plaintiffs' Unjust Enrichment Claims Are Properly Pled in the Alternative, and Questions of Fact Preclude the Grant of Summary Judgment

Defendants' Motion as to Plaintiffs' claims for unjust enrichment seemingly attempts to argue that Plaintiffs, as a matter of law, cannot plead unjust enrichment in the alternative to their consumer protection claims under the UCL, FAL, CLRA, and NYGBL. Defs. Mem. at 25-26, 29-30. Indeed, all of the cases cited by Defendants are orders on motions to dismiss. *See id.*

However, this Court has already rejected Defendants' motions to dismiss Plaintiffs' unjust enrichment claims, holding that for Plaintiff Ashour and Brown's claims "[t]he California Supreme Court held that there is a standalone claim for restitution, which sounds in the same vein as other states' unjust enrichment causes of action[,]" ECF No. 202 at 9 (citing *City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 450 n.192 (S.D.N.Y. 2020)), and that "courts have found that unjust enrichment can be pleaded in the alternative under California law[,]" *Id.* (citing *In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16 Civ. 6391, 2020

WL 7664461, *12 (N.D. Cal. Dec. 24, 2020)),[13] and for Plaintiff Townes' claim "[u]nder New York law, 'a plaintiff may plead unjust enrichment in the alternative' when a plaintiff alleges fraud such that the defendants' enrichment was unjust." *Id.* at 8-9 (citing *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020). Defendants' attempt to revisit the Court's prior decisions on an issue of law is functionally flawed and should be denied. *See Perreca v. Gluck*, 262 F. Supp. 2d 269, 272 (S.D.N.Y. 2003) ("[T]he 'law of the case' doctrine is a rule of practice followed by New York courts that dictates that a decision on an issue of law made at one stage of a case becomes binding precedent.").

As it relates to Defendants' burden under Rule 56, Defendants' Motion wholly fails to establish an absence of disputed material facts necessary for summary judgment on Plaintiffs' unjust enrichment claims. Defendants proffer only one basis for requesting summary judgment on Plaintiffs' unjust enrichment claims: that they fail for the same reasons as Plaintiffs' statutory claims. Defs. Mem. at 26, 30. As addressed herein, summary judgment on Plaintiffs' statutory claims under the UCL, FAL, CLRA, and NYGBL is inappropriate and should be denied. Therefore, for the same reasons, Plaintiffs' unjust enrichment claims should proceed.

### H.   Plaintiff Ashour's Testimony as to His Purchases of Defendants' Products is Sufficient to Allege Damages Under the UCL

Defendants argue that summary judgment on Plaintiff Ashour's UCL claim is proper because he did not know the quantity of Green Tea Products he purchased over a four year period and because he has no records to document his purchases. Defs. Mem. at 29. However, Defendants'

---

[13] While the Court did not make a determination that California law applied to the California Plaintiffs' claims for unjust enrichment, (*see* ECF No. 202 at 9-10), under New York law "'a plaintiff may plead unjust enrichment in the alternative' when a plaintiff alleges fraud such that the defendants' enrichment was unjust." *Id.* at 8-9. As a result, whether the California Plaintiffs' unjust enrichment claims are subject to New York or California law, as a matter of law, their claims are properly pled in the alternative.

arguments were just rejected in this District. In *Woodhams v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, the defendant moved for summary judgment against several plaintiffs who, although they had given sworn statements that they had purchased the products at issue, failed to produce purchase receipts for them. No. 18-CV-3990 (JPO), 2024 WL 1216595 (S.D.N.Y. Mar. 21, 2024). In denying the motion, the court noted that "[p]laintiffs are not necessarily required to produce such receipts. Courts in this Circuit have recognized that "consumers are likely to lack proof of purchase." *Id*. at *6 (quoting *In re Scotts EZ Seed Litig*., 304 F.R.D. 397, 407 (S.D.N.Y. 2015)). Indeed, to enforce a "requirement that consumers retain receipts for . . . sundries in order to bring a cause of action would undermine the ability of consumers to bring small item actions" *Id*. (quoting *Belfiore v. Procter & Gamble Co*., 311 F.R.D. 29, 65 (E.D.N.Y. 2015)). Courts in the Ninth Circuit have rejected similar arguments. *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124-25 (9th Cir. 2017); *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 962 (N.D. Cal. 2022) (same).

Like the plaintiffs who survived summary judgment in *Woodhams*, Plaintiff Ashour testified under oath that he purchased Arizona Green Tea Products between late 2014 through November 2018. Resp. R. 56.1 Stm. ¶ 2, Donovan Decl., Ex. 1, Ashour Dep. at 94:6-97:23. He also testified that during that period of time, he purchased Arizona Green Tea Products two to three times per week. *Id*. Finally, Plaintiff Ashour testified that he purchased Arizona RX Energy and Arizona Mucho Mango a "couple" of times. *Id*. Ex. 1 at 116:12-117:24; 119:14-22. Thus, summary judgment on Plaintiff Ashour's UCL claim for not providing an exact amount of Products purchased or receipts to substantiate them is improper.

## VI.     **CONCLUSION**

For the reasons set forth herein, Defendants' Motion should be denied in its entirety.

DATED: April 12, 2024

/s/ Melissa S. Weiner
_____

MELISSA S. WEINER
  mweiner@pwfirm.com
RYAN T. GOTT
  rgott@pwfirm.com
**PEARSON WARSHAW, LLP**
328 Barry Avenue S., Suite 200
Wayzata, MN 55391
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

Carlos F. Ramirez
cramirez@reesellp.com
Michael R. Reese
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street
16th Floor New York, New York 10025
Telephone: (212) 643-0500
***Facsimile: (212) 253-4272***

*Attorneys for Plaintiffs*