THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMED ASHOUR, JOY BROWN and CRYSTAL TOWNES, individually and on behalf of all others similarly situated, | Civil Action No. 1:19-cv-07081-AT-OTW |
| Plaintiffs, | (ORAL ARGUMENT REQUESTED) |
| v. | |
| ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC, | |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

STEVENS & LEE
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone: (201) 857-6778
Facsimile: (201) 857-6761
*Robert.Donovan@StevensLee.com*

*Attorneys for Defendants, Arizona Beverages
USA LLC, Hornell Brewing Co., Inc., Beverage
Marketing USA, Inc., Arizona Beverages Holdings
LLC, and Arizona Beverages Holdings 2 LLC*

Robert P. Donovan, Esq.,
Of Counsel and on the Brief

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................iii

PRELIMINARY STATEMENT ....................................................................................................1

I.      No Basis Exists to Strike Defendants' Rule 56.1 Statement ..............................................1

II.     Plaintiffs' Request to Reopen Discovery is Meritless .......................................................1

        A.      Champerty Can Be Decided on Summary Judgment .............................................2

        B.      Plaintiffs Fail to Submit the Required Affidavit
                Under Rule 56(d) ...................................................................................................2

III.    N.Y. Jud. Law § 488(1) Does Not Contain Any Safe Harbor Provision............................3

        A.      The Agreements Are Not Contingent Fee Contracts..............................................5

        B.      No Law or Fact Supports Plaintiffs' Assertion That a
                Champertous Assignment Can Be Revoked............................................................5

IV.     Ms. Brown and Ms. Townes Failed To Satisfy Their Burden to
        Demonstrate Standing To Assert Claims For Attorneys' Fees...........................................6

V.      Plaintiffs Have Failed to Present Admissible Evidence Proving That
        Hornell, BMU, ABH and ABH2 Engaged in Any Deceptive Conduct ..............................7

        A.      Plaintiffs Elicited No Binding Testimony About the Operation
                Of BMU, Hornell, ABH and/or ABH2...................................................................7

        B.      Plaintiffs' Cherry-Picking of Testimony Underscores Their
                Lack of Evidence ...................................................................................................7

        C.      Documents Concerning Hornell Are Inadmissible and Have
                Not Been Shown to Be Relevant ............................................................................8

        D.      Plaintiffs Offer No Evidence That ABH and/or ABH Are Liable ........................10

        E.      Joint Discovery Responses Do Not Prove Joint Liability ....................................10

VI.     Ms. Brown's Opposition Does Not Raise a Genuine Issue of Facts
        Regarding Reliance..........................................................................................................11

        A.      Based Upon Ms. Brown's Deposition Testimony, Her Supposed
                Conflicting Interrogatory Answer is to be Disregarded .......................................11

i

B.     The Deposition Testimony Cited By Ms. Brown is Inadmissible ........................ 12

C.     The Other Testimony Cited Does Not Prove Reliance on the Label ..................... 13

VII.   Ms. Towns' and Ms. Brown's Testimony About Their Continued Purchases, After Retaining Counsel and After Filing Suit, Shows That They Cannot Prove Injury   ............................................................................................................... 14

VIII.  The Opposition Fails to Show How Mr. Ashour Can Establish Damages With Reasonable Certainty .............................................................................................. 15

IX.    Mr. Ashour's Deposition Testimony, Unrelated to Purchases of the Rx Energy and Mucho Mango Products, Does Not Raise a Triable Issue of Fact ................. 16

X.     Plaintiffs Do Not Dispute That Their Unjust Enrichment Claims are Based Upon the Same Factual Allegations as for All Other Causes of Action ........................... 17

CONCLUSION ........................................................................................................................... 17

05/13/2024 SL1 2107557v2 115260.00002

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Brazil v. Dole Packaged Foods, LLC,*
  660 F. App'x 531 (9th Cir. 2016) ........................................................................................... 15

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,*
  769 F.2d 919 (2d Cir. 1985) .................................................................................................... 2

*Comfortex Co., Ltd., v. XCel Brands Inc.,*
  2024 WL 1255535 (S.D.N.Y. March 25, 2024) ........................................................................ 9

*AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.,*
  361 F. Supp. 2d 312 (S.D.N.Y. 2005) ..................................................................................... 11

*Eidelman v. The Sun Products Corporation,*
  2022 WL 1929250 (2d Cir. June 6, 2022) .......................................................................... 14,15

*Lateral Recovery, LLC v. Capital Merchant Services, LLC,*
  632 F. Supp. 3d 402 (S.D.N.Y. 2022) .................................................................................... 2,4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ................................................................................................................. 6

*Mattera V. JPMorgan Chase Corp.,*
  740 F. Supp. 2d 561 (S.D.N.Y. 2010) ...................................................................................... 8

*Pacho v. Enter. Rent–A–Car Co.,*
  572 F.Supp.2d 341 (S.D.N.Y.2008) .......................................................................................... 9

*Phoenix Light v. U.S. Bank National Association,*
  612 F. Supp. 3d 263 (S.D.N.Y. 2020) ...................................................................................... 2

*Smith v. Crown Lift Trucks,*
  2005 WL 35000438 (S.D.N.Y. Dec 20, 2005) ........................................................................ 11

*Taylor Burns v. AR Resources, Inc.,*
  268 F. Supp. 3d 592 (S.D.N.Y. July 7, 2017) ........................................................................... 4

*Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,*
  317 F. Supp. 2d 373 (S.D.N.Y. 2004) ...................................................................................... 8

*U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Blvd.,*
  2014 WL 1653199 (E.D.N.Y. Aug. 23, 2014) ........................................................................ 11

iii

*Wilson v. Frito Lay-North America, Inc.*,
   260 F.Supp.3d 1202 (N.D. Cal. 2017) ............................................................................... 13

**State Statutes**

N.Y. Jud. Law § 488 ................................................................................................... *passim*

N.Y. Jud. Law § 489(2) ...................................................................................................... 4

Uniform Commercial Code § 2608(2) ............................................................................... 6

**Rules**

Fed. R. Evid. 611(c) .......................................................................................................... 13

Fed R. Evid. 801 ............................................................................................................... 10

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 17

Fed. R. Civ. P. 56 ........................................................................................................ 1,2,3

05/13/2024 SL1 2107557v2 115260.00002

**PRELIMINARY STATEMENT**

Defendants, Arizona Beverages USA LLC (individually, "ABU"), Hornell Brewing Co., Inc. (individually, "Hornell"), Beverage Marketing USA, Inc. (individually, "BMU"), Arizona Beverages Holdings LLC (individually ("ABH"), and Arizona Beverages Holdings 2 LLC (individually, "ABH2") (collectively, "Defendants"), submit this memorandum of law in reply to the opposition to their motion for summary judgment filed by plaintiffs, Ahmed Ashour ("Plaintiff Ashour," at times, "Mr. Ashour"), Joy Brown ("Plaintiff Brown," at times, "Ms. Brown") and Crystal Townes ("Plaintiff Townes," at times, "Ms. Townes") (collectively, "Plaintiffs").

**I.      No Basis Exists to Strike Defendants' Rule 56.1 Statement**

Plaintiffs' opposition (ECF No. 330, "Opp.," pp. 9-10) claims that Defendants' Rule 56.1 statement of undisputed material facts (ECF No. 317-1, "R. 56.1 St.") is vague, argumentative, has legal conclusions, relies upon inadmissible evidence, or calls for expert opinion. On the contrary, statement numbers 21-27, 55-58, 60 and 61 cite to the retainer agreements, the parties' deposition testimony and/or documents identified by witnesses having personal knowledge. The statements contain factual assertions and do not call for expert testimony. Plaintiffs' request to strike this pleading is groundless.

**II.     Plaintiffs' Request to Reopen Discovery is Meritless**

Plaintiffs contend that "resolution of the champerty defense can only take place after discovery on the issue" (Opp. at p. 15), that they ███████████████████████████████ ████████████████████████████████████ (ECF No. 328, ¶¶ 95-98) and it would be premature to determine whether Plaintiffs suffered injury (Opp., p. 8 and p. 21, fn. 12).

This action was filed in May 2019 and Plaintiffs have undertaken nearly four years of discovery. Fact discovery expired on December 22, 2023. (ECF No. 275). All discovery closed on January 31, 2024. (ECF No. 303). Prior to the close of discovery, the parties appeared at a

1

Court conference to identify all unresolved discovery issues. (ECF No. 305). Significantly, that January 31 conference took place after Defendants had filed their premotion letter wherein they stated grounds for summary judgment that included champerty. (ECF No. 290). The parties filed a joint pre-conference letter on January 29, 2024, stating what discovery remained unresolved. (See ECF No. 302, referencing ECF Nos. 283 and 284). Plaintiffs did not seek more discovery on champerty, the operations of Hornell, BMU, ABH and ABH 2, and/or injury issues. (*Id.*; ECF No. 305).

### A.    <u>Champerty Can Be Decided on Summary Judgment</u>

The decisions upon which Plaintiffs rely (Opp. pp. 10, 11) recognize that "resolution of the champerty defense generally occurs after some discovery and on summary judgment." *See Lateral Recovery, LLC v. Capital Merchant Services, LLC*, 632 F. Supp. 3d 402, 441 (S.D.N.Y. 2022). In *Phoenix Light v. U.S. Bank National Association*, 612 F. Supp. 3d 263, 286 (S.D.N.Y. 2020), the court granted summary judgment, on champerty grounds, ruling that there was "no genuine dispute that Plaintiffs' purpose in seeking the assignments was to initiate this litigation" rendering the assignments "void under New York champerty law." Plaintiffs' reliance upon *CIBC Bank & Tr., Co. (Cayman) v. Banco Cent. do Brazil,* 886 F. Supp. 1105 (S.D.N.Y. 1995) is misplaced because the court there denied a motion to dismiss, not a motion for summary judgment. *Id.* at 11074.

### B.    <u>Plaintiffs Fail To Submit the Required Affidavit Under Rule 56(d)</u>

Rule 56(d) requires the non-movant to show by affidavit, for specified reasons, that it cannot present facts essential to justify its opposition. In applying predecessor Rule 56(f), the Second Circuit ruled the affidavit needs to explain: 1) the nature of the uncompleted discovery; 2) how those facts are reasonably expected to create a genuine issue of material fact; 3) what efforts the affiant made to obtain those facts; and 4) why those efforts were unsuccessful." *Burlington*

2

*Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir. 1985).  Plaintiffs did not file an affidavit under Rule 56(d).  Their request for more discovery ought to be rejected especially because it would be highly prejudicial to Defendants given the motion for summary judgment.  This motion is ripe for consideration.

**III.    N.Y. Jud. Law § 488(1) Does Not Contain Any Safe Harbor Provision**

Plaintiffs maintain that a contingent fee agreement constitutes a "safe harbor" for "champerty retainer agreements," citing to NYJL §488(2). (Opp. at p. 14)  However, there is no "safe harbor" that legalizes unlawful assignments of claims to attorneys under NYJL §488(1).  NYJL §488(1) and NYJL §488(2) state:

> An attorney or counselor shall not:
>
> 1.    **Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing an action thereon.**
>
> 2.    By himself or herself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his or her hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy for the recovery thereof. But this **subdivision** does not apply to:
>
>    a.   an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received;
>
>    b.   a lawyer representing an indigent or pro bono client paying court costs and expenses of litigation on behalf of the client;

3

     c.  a lawyer advancing court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; or

     d.  a lawyer, in an action in which an attorney's fee is payable in whole or in part as a percentage of the recovery in the action, paying on the lawyer's own account court costs and expenses of litigation. In such case, the fee paid to the attorney from the proceeds of the action may include an amount equal to such costs and expenses incurred. [Emphasis added].

The above-cited subsections N.Y. Jud. Law § 488(2)a.-d. apply to § 488(2), not § 488(1). Plaintiffs fail to cite to any law for the proposition that a contingent fee agreement constitutes a safe harbor from an assignment that violates N.Y. Jud. Law § 488(1). In *Taylor Burns v. AR Resources, Inc.,* 16 Civ. 1259, 268 F. Supp. 3d 592, 598-599 (S.D.N.Y. July 7, 2017), the court addressed a contingent fee agreement but did not rule that a safe harbor existed and entered summary judgment on the grounds of champerty.

The decisions presented on this motion, including those by Plaintiffs, show that N.Y. Jud. Law § 489(2), not § 488(1), contains a safe harbor provision that applies in a specific commercial context when "the assignee pays, or has a 'binding and *bona fide* obligation' to pay a 'purchase price of at least five hundred thousand dollars'…independent of the successful outcome of the lawsuit." *See Lateral Recovery LLC,* 623 F. Supp. 3d at 438-39, fn. 14 (citing *Justinian Cap. SPC v. WestLB AG,* 28 N.Y.3d 160, 169, 65 N.E. 3d 1253, 1258 (2016)) (describing "safe harbor's was enacted to exempt large-scale commercial transactions in New York's debt-trading markets from the champerty statute to facilitate the fluidity of transactions in these markets"); N.Y.J.L. § 489(2) and citing *Phoenix Light SF Ltd. V. U.S Bank Nat'l Ass'n*, 2020 WL 1285783, at *11 (S.D.N.Y. March 18, 2020) (emphasis in original).

4

### A.   The Agreements Are Not Contingent Fee Contracts

Plaintiffs contend that it is not necessary that the agreements state a percentage to be recovered as fees in order to qualify as contingent fee agreements.  (Opp., p. 17).  However, for N.Y. Jud. Law § 488(2)d to apply, the agreement has to state that the fee is "a percentage of the recovery in the action."   Plaintiffs also assert that, ███████████████████████████

███████████████████████████████████████████████████████

(Opp. at p. 18).  That self-serving contention is not supported by any evidence and is contrary to

the agreements that obligate Ms. Townes and Ms. Brown, ████████████████████████

███████████████████████████████████████████████████████

██████████ (ECF No. 315, Exs. 4 and 5, p. 3).  When asked about the meaning of this particular

clause, Plaintiff Brown testified:



Q.   What do you understand █████████ to mean?

A.   ████████████████████████████

[*Id.*, Ex. 3; T. 84:3-23; emphasis added].

Regardless of whether the retainer agreements qualify as contingent fee contracts, that

question is immaterial to the question whether the assignments violate NYJL §488(1).

### B.   No Law or Fact Supports Plaintiffs' Assertion that A Champertous Assignment Can Be Revoked

Plaintiffs absurdly argue that the assignments are "revocable" and cannot be found to be

champertous.  (Opp. at p. 16).  The retainer agreements are binding contracts and contain

assignments that have not been, and cannot legally be, "revoked."  Revocation of acceptance is

permitted under prescribed circumstances, pertains to transactions in goods, governed by the

Uniform Commercial Code § 2608(2), not for the agreement to provide legal services. Regardless, NYJL §488 says nothing about right to revoke an otherwise champertous assignment and the agreements themselves do not provide for that right. There are no facts showing that Plaintiffs "revoked" the assignments. The retainer agreements ███████████████████████ (ECF No. 315, Exs. 4 and 5, Section 14) and there is no evidence of any modifications.

Discovery is closed and the undisputed fact is that Plaintiff Townes' and Brown's assignments of claims to their attorneys were for the primary, if not sole, purpose of filing the present action against Defendants to recover the monies that are the subject of those assigned claims. That is the very essence of champerty and summary judgment, against Plaintiffs Brown and Townes, on that ground alone, is justified.

IV.    **Ms. Brown and Ms. Townes Failed To Satisfy Their Burden to Demonstrate Standing To Assert Claims For Attorneys' Fees**

Ms. Brown and Ms. Townes sue for fees but they do not own those claims. They offer the same conclusory argument that they have standing because they can "revoke" the assignments. (Opp., p. 19). The undisputed facts are that these fee claims were assigned, not reassigned and/or "revoked." The respective dates of these assignments are December 31, 2020 and January 12, 2021 (ECF No. 315, Exs. 4 and 5). Consequently, when Ms. Brown and Ms. Townes sued Defendants on March 19, 2021, they did not own the claim for fees. Nothing they could do in the future can impact their lack of standing because standing is to be determined as of commencement of suit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, fn. 5 (1992). Because Ms. Brown and Ms. Townes failed to meet their burden to demonstrate standing to assert claims for attorneys' fees, summary judgment on those claims, respectfully, ought to be entered.

**V.   Paintiffs Have Failed to Present Admissible Evidence Proving That Hornell, BMU, ABH and ABH2 Engaged in Any Deceptive Conduct**

   **A.   Plaintiffs Elicited No Binding Testimony About the Operations of BMU, Hornell, ABH and/or ABH2**

During his Rule 30(b)(6) deposition, Mr. Vultaggio was asked and answered questions about the owners of ABUSA (ECF No. 315,  Ex. 20, T. 56:17-22; T. 58:22-T. 59:4); his general responsibilities and day-to-day involvement at ABUSA (*id.*, T. 60:10-T. 61:6); the duties of his sons at ABUSA (T.61:7-T.62:4); his direct reports at ABUSA (*id.*, T.65:18-T. 66:15); his training or certifications relating to ABUSA's operations (*id.*, T. 83:22-T. 84:3); ABUSA's competitors (*id.*, T.124:8 – T.125:13); ABUSA's key persons involved in labeling and marketing (*id.*, T. 182:12–T. 185:12); sales employees at ABUSA (*id.*, T. 184:18–22); marketing employees at ABUSA (*id.*, T. 184:24-T. 185:13); and ABUSA's customer relationship with a distributor in New York (*id.*, T. 193:3-T. 194:22).   However, he was not asked any questions about the operations of BMU, Hornell, ABH and/or ABH2.

   **B.   Plaintiffs' Cherry-Picking of Testimony Underscores Their Lack of Evidence**

Plaintiffs erroneously contend that Mr. Vultaggio testified that ████████████ ██████████ (Opp. at p. 3) when the testimony cited did not identify the particular defendants by name.  (ECF No. 315, Ex. 20, T. 73:19-24; T. 77-19; 92:11-T. 93:7). Plaintiffs' recitation of testimony about alleged preservatives is equally misleading.  Mr. Vultaggio testified in detail that the citric acid in the Products ██████████████████████████████████ ████████████████████████████ (*Id.*, T. 29:4-12; T. 170:2-17; T. 233:3-234:17; and T. 235:20-236:11).   He also explained in detail ████████████████████████ ████████ (*Id.*, T. 73:19-76:24).

Plaintiffs also mis-state Mr. Vultaggio's testimony claiming that he testified that the no preservative statement was an important motivation for consumers. (Opp., p. 3). On the contrary, in response to the question whether he thought the label statement no preservatives was a distinguishing factor for his product, he stated that ███████████████████████ ███████████████████ (ECF No. 315, Ex. 20, T. 79:3-10).

## C.   Documents Concerning Hornell Are Inadmissible and Have Not Been Shown to Be Relevant

Notwithstanding the lack of any binding testimony about their operations, Plaintiffs refer to documents to contend that questions of fact exist as to whether Hornell, BMU, ABH and ABH2 engaged in deceptive conduct. (Opp., pp. 5, 10-13). However, the documents cited (ECF No. 333-1, Exs. 35-38) are inadmissible evidence because they are unaccompanied by the required affidavit or sworn testimony. *See Tradax Energy, Inc. v. Cedar Petrochemicals, Inc.,* 317 F. Supp. 2d 373, 378-79 (S.D.N.Y. 2004) (court cannot consider documents unaccompanied by an affidavit "explaining whether they were kept in the ordinary course of business") (citing *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) ("[A]t the summary judgment stage, the party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records."). "Indeed, a court will not entertain inadmissible hearsay unsubstantiated by any other evidence in ruling on summary judgment motion." *Mattera V. JPMorgan Chase Corp.,* 740 F. Supp. 2d 561, 566 fn. 2 (S.D.N.Y. 2010).

Plaintiffs cite to these exhibits claiming that they prove that ████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

███████████████████████████████████████████ (Opp. at p. 5).  These

assertions are based on rank speculation because there is no testimony from anyone, with personal

knowledge, saying what these documents mean, how and why the documents were generated, by

whom and whether they are business records kept in the ordinary course.

Additionally, Plaintiffs have also not shown how these documents are relevant.  Exhibit 35

(ECF No. 333-12) does not ████████████████████████████████████████████

██████ Exhibit 37 (ECF No. 333-14) is dated October 28, 2013.  Whatever these documents are

purported to prove, they have no relevance because, as stated in Defendants' motion (ECF No.

317, pp. 12, 13), the earliest purchase, potentially actionable, could be no earlier than May 14,

2015.  Exhibit number 37 (ECF No. 333-14 at pp. 46-81) also contains ██████████████

████████████████ that prove nothing.  Exhibit number 36 (ECF No. 333-13) contains ████

████████████ and Exhibit 38 (ECF No. 333-15) includes ██████████████████

████████████████████

With respect to the email about █████████████████████ (ECF No. 333-

11, Ex. 34), that document is not evidence that ████████████████████  Assuming,

*arguendo* only, that ████████████████ that supposed fact does not prove liability.  "It is

a general principal [sic] of corporate law deeply ingrained in our economic and legal systems that

a parent corporation (so-called because of control through ownership of another corporation's

stock) is not liable for the acts of its subsidiaries.'" *Pacho v. Enter. Rent–A–Car Co.,* 572

F.Supp.2d 341, 351 (S.D.N.Y.2008) (quoting *United States v. Bestfoods,* 524 U.S. 51, 61, (1998)).

The decision Plaintiff cites, *Comfortex Co., Ltd., v. XCel Brands Inc.,* No.21-CV-7326 (ER), 2024

WL 1255535 (S.D.N.Y. March 25, 2024), concerned an alter ego claim but no claims of alter ego

liability are asserted in this action.

**D.**   **Plaintiffs Offer No Evidence That ABH and/or ABH Are Liable**

As to ███████████ Plaintiffs refer to an email (ECF No. 333-24, Ex. 50), from a ███ ███ that constitutes inadmissible hearsay, being an out-of-court statement offered for the truth of the matter asserted. Fed R. Evid. 801.  There is no evidence as to ████████ function, position and/or and what authority, if any, he has with regard to the Products and whether the statement was made in his representative capacity in order to be admitted under Fed R. Evid. 801(d)(2).

**E.**   **Joint Discovery Reponses Do Not Prove Joint Liability**

Plaintiffs cite no law to support their assertion that a joint response to a discovery request is evidence of joint liability.  (Opp. at p. 12). Defendants' Rule 26(a) initial disclosures (ECF No. 333-9, 10, Exs. 32 and 33) are not evidence that ███████████ engaged in any actionable conduct.  The fact that a witness has been disclosed who may be relied upon, in defense against the claims asserted, is not evidence that ███████████ did anything deceptive.

As to ██████ answers to interrogatories, simply because ███████████████ (ECF Nos. 333-18, Ex.43), does not prove that ███████████████ Plaintiffs offer no explanation as to how ███████████████ in and of itself, proves that ███████████ ███████████   Plaintiffs' reference to a 2007 State Court decision, in an unrelated action (Opp. at p. 5), is not evidence and does not show whether BMU and/or Hornell have engaged in conduct during the relevant date that the statute of limitations period applies here (i.e., since May 14, 2015).  Due to the lack of admissible evidence that Hornell, BMU, ABH and ABH2 engaged in any deceptive conduct, just grounds exist to grant summary judgment in their favor on all Plaintiffs' claims.

05/13/2024 SL1 2107557v2 115260.00002

**VI.    Ms. Brown's Opposition Does Not Raise A Genuine Issue Of Fact Regarding Reliance**

**A.  Based Upon Ms. Brown's Deposition Testimony, Her Supposed Conflicting
Interrogatory Answer is to be Disregarded**

In asserting that a factual dispute exists as to whether Ms. Brown bought the Products in

reliance upon the label statement "No Preservatives," Ms. Brown relies upon an interrogatory

answer.  (Opp. at p. 20).  However, to the extent that answer conflicts with her unequivocal

deposition testimony, the sworn testimony prevails.  *See AB ex rel. EF v. Rhinebeck Cent. Sch.*

*Dist.,* 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) ("Faced with deposition testimony that contradicts

an affidavit and a complaint, this court must accept [the witness's] sworn testimony"); *see also*

*U.S. Underwriters Ins. Co. v. 14-33/35 Astoria Blvd.,* No. 10-CV-1595, 2014 WL 1653199, at *6

(E.D.N.Y. Aug. 23, 2014) (collecting cases and applying this rule where the party's affidavit was

filed before the deposition was taken).

Plaintiffs cite to *Smith v. Crown Lift Trucks*, No. 04 Civ. 2866 (GEL), 2005 WL 35000438

(S.D.N.Y. Dec 20, 2005) to contend that contradictory testimony is a question for the jury.  (Opp.

at p. 21).  *Smith*, however, is inapposite because that matter concerned a plaintiff testifying, in

deposition, in a confused and contradictory manner about his operation of a forklift.  *Id.* at *2.  In

contrast, here, Ms. Brown's testimony was not confused or contradictory.  Each time, when asked

to state all reasons for her purchases, Ms. Brown stated reasons other than the label including,

price, value, flavor, taste, convenience and liking the drink.  (R. 56.1 St., ECF No. 317-1, ¶¶ 72,

74, 75, 77, and 78; ECF No. 315., Ex. 3, T. 92:10-14; T. 93:6-9; T. 94:2-3; T. 94:15-20; *Id.,* ¶¶ 80

and 81; ECF No. 315, Ex. 3, T. 87:9-16; *Id.,* ¶¶ 83 and 84; ECF No. 315., Ex. 3, T. 90:5-10; *Id.,* ¶¶

86 and 87; ECF No. 315, Ex. 3, T. 88:15-20; and *Id.,* ¶¶ 88 and 89; ECF No. 315, Ex. 3, T. 103:4-

16; T. 106:15-23). This testimony prevails over any prior supposed conflicting interrogatory

answer.

**B.**     **The Deposition Testimony Cited By Ms. Brown is Inadmissible**

Ms. Brown's attorney posed the following leading questions to his own client, Ms. Brown:

BY MR. SHIFTAN:

Q.  Okay.  And do you recall providing a written interrogatory responses in this case.

MR. DONOVAN:  Objection to form.

THE WITNESS:  Yes.
BY MR. SHIFTAN:

Q.  Okay.  And do you recall having the answer that:  Plaintiff purchased Arizona products because of their taste, price, to quench your thirst, sugar content and defendant's representations that the products contained no preservatives?

MR. DONOVAN:  Objection to form.

THE WITNESS:  Yes, that is correct.

BY MR. SHIFTAN:

Q.  Is that an accurate answer?

MR. DONOVAN:  Objection to form.

MR. SHIFTAN:  What is the objection?

MR. DONOVAN:  It's a leading question.  It's suggesting the answer.
MR. SHIFTAN:  It's a yes or no question.

MR. DONOVAN:  Still leading.

MR. SHIFTAN:  You can answer.

MR. DONOVAN:  Same objection.

THE WITNESS:  The answer to the question is yes.

[*Id.*, T. 107:9 – T. 108:6].

Ms. Brown refers to this testimony to claim a disputed fact exists as to whether she relied upon the no preservative label.  (Opp. at pp. 8, 20 and 21).  However, these questions are improperly leading questions posed to a non-hostile witness and the responses are not admissible evidence under Fed. R. Evid. 611(c).  *See Wilson v. Frito Lay-North America, Inc.*, 260 F.Supp.3d 1202, 1210-11 (N.D. Cal. 2017) (excluding answers in deposition from consideration on a motion for summary judgment as inadmissible evidence under Evidence Rule 611(c), and granting summary judgment because the plaintiff could not establish that he relied on the alleged misleading label). This testimony is also based upon hearsay because Ms. Brown was not shown the purported interrogatory answer that her counsel referenced.[1]

## C.     The Other Testimony Cited Does Not Prove Reliance On the Label

Ms. Brown cites to another product purchase (Opp., p. 20; ECF No. 315, Ex. 3, T. 27:8-25) but she testified buying that container (marked as "PB-3") in 2022.  (*Id.,* T. 22:21-25).  This purchase cannot raise a genuine material factual dispute because she retained counsel on December 31, 2020 (ECF No. 315-4), sued Defendants on March 19, 2021 (ECF No. 118), and hence knew that product contained a preservative in 2022 but bought it any way.

Ms. Brown refers to testimony responding to the question as to why she believed she was deceived.  (Opp. at p. 20; ECF No. 315, Ex. 3, T. 84:24 – T. 85:20).  This testimony is not evidence that the label statement was an immediate cause for her purchase and/or that she relied upon the label. *See Wilson,* 260 F.Supp.3d at 1213 (an interrogatory response that plaintiff was misled is insufficient to defeat summary judgment as plaintiffs must point to specific facts that they saw the

---

[1] In opposing the motion, Ms. Brown relies upon interrogatory answers dated August 23, 2021 (ECF No. 333-3, Ex. 26), but those answers were amended before her deposition.  (ECF No. 315, Ex. 3, T. 104:7-T. 105:19).  There is no proof as to which responses her attorney was referencing during her deposition because no document was shown during this improper questioning.

misrepresentations, and that those statements were a substantial factor in plaintiffs' decision to purchase) (other citations omitted).  Based upon Ms. Brown's repeated and consistent deposition testimony, she cannot prove reliance and summary judgment in Defendants' favor, as against her claims, is warranted.

**VII.   Ms. Townes' and Ms. Brown's Testimony About Their Continued Purchases, After Retaining Counsel and After Filing Suit, Shows that They Cannot Prove Injury**

Ms. Townes and Ms. Brown incongruously argue that, notwithstanding their multiple post-suit purchases, they "continued to be injured each time they purchased the Products, including after they potentially learned the truth about Defendants' misleading conduct." (Opp. at p. 23). That argument defies common sense because these post-suit purchases were made when these plaintiffs knew that that the products contained citric acid which they considered to be a preservative.  Regardless of the scope of the voluntary payment defense, no reasonable fact finder would find that Ms. Brown and Ms. Townes were injured, at any time, due to the label statement, when they continued to buy the Products regardless of the labels.[2]

Nonetheless, Plaintiffs Townes and Brown contend that their continued purchases, after the suit, are not grounds for granting summary judgment, because "this case involves the overpayment of a price premium by Plaintiffs that they would not have paid had the Products been labeled in a non-misleading way." (Opp. at p. 23).  They assert "injury by overpayment" (*Id.* at p. 24) and cite *Eidelman v. The Sun Products Corporation*, 21-1046-cv, 2022 WL 1929250 (2d Cir. June 6, 2022) as authority for the applicable test concerning Ms. Townes' claims. (Opp. at p. 23). Under *Eidelman,* injury, in the form of a price premium, is established when plaintiff shows that

---

[2] Whether or not Ms. Townes was asked about purchases between the period when she first saw the label and December 31, 2020 (Opp., p. 25), is immaterial because she retained counsel on January 12, 2021 (ECF No. 315, Ex. 4; T. 88:5-T. 89:4), made purchases after that date and stipulated to other post-suit purchases. (ECF No. 315, Ex. 2, T. 135:1-T. 136:22; and Ex. 9).

"as a result of the defendant's deception, the plaintiff paid more for a product than he otherwise would have." *Eidelman*, 2022 WL 1929250 at *1. As to Ms. Brown, they argue that *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) provides for the same test measuring "the difference between a product as labeled and the product as received." (Opp. at p. 23).

However, Ms. Townes testified that the prices for the Products she purchased, before and after filing the complaint, were the same. (ECF No. 315, Ex. 2, T. 49:9-T. 50:3). When asked how the prices compared before the date Ms. Brown retained counsel (December 31, 2020), and after that date, Ms. Brown also stated that "they stayed roughly about the same." (*Id.*, Ex. 3, T. 91:21-25). Ms. Townes agreed that the Products were a "great buy" which she thought meant cheap. (*Id.*, Ex. 2, T. 67:21-T. 68:5). Ms. Brown similarly testified that the Products were sold at a "good value" (*Id.*, Ex 3, T. 94:23-T. 95:2) and that value was one of the reasons for her purchases. (*Id.*, T. 34:22-T.35:9; T. 92:10-14; and T. 106:15-23). Due to their purchases, before and after retaining counsel and filing suit, at the same price, Ms. Townes and Ms. Brown cannot prove injury to a reasonable fact finder, and summary judgment in Defendants' favor is warranted.

## VIII.  The Opposition Fails to Show How Mr. Ashour Can Establish Damages With Reasonable Certainty

To satisfy his burden to prove damages with reasonable certainty, Mr. Ashour relies upon his testimony that he bought the Green Tea Products two or three times a week between 2014 through 2018. (Opp. at p. 30). However, this vague testimony will not aid the fact finder because there are no facts by which a jury could determine the frequency of those purchases (i.e., whether it was two times in a particular week or three times in another), the number of weeks these purchases took place (whether being every week for 4 years or a less) and what prices were paid during that amorphous 4-year period. Mr. Ashour testified that he could not provide an

15

approximation as to the number of Green Tea Products he bought. (ECF No. 315, Ex. 1, T. 139:7-T. 140:5). Presenting this confoundingly ambiguous testimony to the jury would only invite speculation because the fact finder would not know the number of weeks (and occasions) when these purchases took place, would not know the amount of total money expended and, hence, could not arrive at a reasonable approximation of damages.

Mr. Ashour cites to interrogatory answers (Opp. at pp. 7, 22) but those answers confirm that he lacks factual knowledge of his damages. In response to the question to state monetary damages and method of computation, he answered that he would have paid less for the product, but for the false labels, and stated that, without first reviewing the discovery and communicating with experts, he was "incapable of providing an answer to this interrogatory at this time either for himself or for members of the class." (ECF No. 333-1, Ex. 23, No. 2).

Mr. Ashour argues that "to the extent Defendants argue that Plaintiffs have not yet established the specific injury... suffered, that argument is premature" alluding to the need for expert opinion (Opp. at p. 21, fn. 12). Whatever expert report he would proffer on any price premium would not establish his damages because he has no proof of the total money spent on the Green Tea Products, and how many Products he purchased. Due to Mr. Ashour's inability to prove damages, within a reasonable degree of certainty, summary judgment is appropriate.

**IX.   Mr. Ashour's Deposition Testimony, Unrelated to Purchases of the Rx Energy and Mucho Mango Products, Does Not Raise A Triable Issue of Fact**

Mr. Ashour refers to testimony about relying upon "all three" label statements ("all natural," "no artificial color," and "no preservatives"). (Opp. at p. 22). However, that testimony was not in reference to any specific product. Mr. Ashour did not testify that he saw and relied upon the "No Preservative" statements when buying the Mucho Mango and Rx Energy Products. His testimony about the import of the "No Preservative" statement, in general, does not contradict

16

his answers to questions about specific product purchases wherein he identified all reasons for his purchases of the Mucho Mango and the Rx Energy. (ECF No. 315, Ex. 1, T. 118:7-13; T. 118:14-16; T. 120:5-8; and T. 120:9-11). In stating all reasons, none of them were due to the label statement. (*Id.*) Because Mr. Ashour cannot prove to a reasonable fact finder that he relied upon the no preservative statement when buying the Mucho Mango and Rx Energy Products, summary judgment, at least with regard to those claims, respectfully, ought to be entered.

**X.   Plaintiffs Do Not Dispute That Their Unjust Enrichment Claims are Based Upon the Same Factual Allegations As for All Other Causes of Action**

Plaintiffs do not address the well-settled law in both California and New York that, when unjust enrichment claims are based upon the same alleged conduct upon which all the other tort and contract claims are premised, the unjust enrichment cause of action cannot survive summary judgment if judgment is entered against those other claims. Defendants are not attempting to "revisit the Court's prior decisions." (Opp., p. 29). This is not a matter of allowing a party to plead in the alternative. The law of the case doctrine does not apply because the Court is considering, for the first time, a motion for summary judgment, and is not being asked to address whether Plaintiffs have stated an unjust enrichment claim under Rule 12(b)(6). Summary judgment against the unjust enrichment claim is a concomitant result in the event judgment is entered in Defendants' favor on all other claims.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion for summary judgment.

Dated: May 13, 2024                          Respectfully submitted,

                                             */s/ Robert P. Donovan*
                                             Robert P. Donovan

17

STEVENS & LEE
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone:  (201) 857-6760
Facsimile: (201) 857-6761

*Robert.Donovan@StevensLee.com*
*Attorneys for Defendants, Arizona Beverages*
*USA LLC, Hornell Brewing Co., Inc., Beverage*
*Marketing USA, Inc., Arizona Beverages Holdings*
*LLC, and Arizona Beverages Holdings 2 LLC*

18