UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #: _____        │
│ DATE FILED: _3/28/2025__        │
└─────────────────────────────────┘
```

AHMED ASHOUR, JOY BROWN and CRYSTAL
TOWNES, individually and on behalf of all others
similarly situated,

Plaintiffs,

-against-

19 Civ. 7081 (AT)

ARIZONA BEVERAGES USA LLC, HORNELL
BREWING CO., INC., BEVERAGE MARKETING
USA, INC., ARIZONA BEVERAGES HOLDINGS
LLC, and ARIZONA BEVERAGES HOLDINGS 2
LLC,

**OPINION
AND ORDER**

Defendants.

ANALISA TORRES, District Judge:

Plaintiffs, Ahmed Ashour, Joy Brown, and Crystal Townes, individually and on behalf of all others similarly situated, bring this putative class action against Defendants, Arizona Beverages USA LLC ("ABUSA"), Hornell Brewing Co., Inc. ("Hornell"), Beverage Marketing USA, Inc. ("BMU"), Arizona Beverages Holdings LLC ("ABH"), and Arizona Beverages Holdings 2 LLC ("ABH2"). *See generally* Second Am. Compl. ("SAC"), ECF No. 118. Plaintiffs contend that Defendants violated various California and New York consumer protection laws by manufacturing, marketing, and distributing Arizona products labeled as having "no preservatives," despite containing the preservative citric acid. *Id.* ¶¶ 1–4. Defendants move for summary judgment and for judgment on the pleadings, and both parties move to seal documents submitted in connection with the summary judgment motion. ECF Nos. 310, 314, 318, 324, 341, 348. For the reasons stated below, the parties' motions are granted in part and denied in part.

## BACKGROUND[1]

I.    <u>Factual Background</u>

A.  Arizona Products

Defendants manufacture and sell a variety of tea and juice beverages ("Arizona products").  Don Vultaggio is ABUSA's chairman and founder.  Def. 56.1 ¶ 92, ECF No. 328; Def. Ex. 21;[2] Vultaggio Dep. at 56:17–22, 59:2–11, Def. Ex. 20.  In that role, he is involved in numerous aspects of the business and possesses final authority regarding the sales, labeling, and marketing of Arizona products.  Def. Ex. 21; Vultaggio Dep. at 60:10–18, 63:5–65:11, 67:13–70:13, 85:9–15.  For many years, Arizona products have been advertised as containing "No Preservatives."  Vultaggio Dep. at 77:7–19.  Nevertheless, the products contain citric acid, a substance allegedly used to preserve their shelf life.  Pl. SJ Mem. at 4 n.5, ECF No. 330; SAC ¶¶ 22–32.

B.  Plaintiff Ashour

Ahmed Ashour lives in Los Angeles.  Ashour Dep. at 11:22–12:20, Def. Ex. 1.  Between late 2014 and November 2018, he purchased three types of Arizona products from retail stores: Arizona Green Tea with Ginseng and Honey, Arizona Rx Energy Herbal Tonic, and Arizona Mucho Mango.  Def. 56.1 ¶¶ 1–9, 12, 17; Ashour Dep. at 53:23–54:7, 95:10–24, 98:5–10, 113:13–115:2, 148:10–13.  Ashour does not possess any receipts from these purchases, nor can he remember exactly when he made these purchases or how many of the products he purchased. Def. 56.1 ¶¶ 1–9, 12; Ashour Dep. at 31:10–15, 32:3–9; 93:16–98:4, 101:15–104:12, 113:22–

---

[1] These facts are taken from Defendants' Rule 56.1 statement, Plaintiffs' response, and the parties' declarations and accompanying exhibits, unless otherwise noted.  Citations to a paragraph of Defendants' Rule 56.1 statement also include Plaintiffs' response.

[2] Citations to "Def. Ex." are to the exhibits attached to Robert P. Donovan's declaration at ECF No. 315.

117:24, 119:14–22.  According to Ashour, he purchased the Arizona products in part because he believed that they had no preservatives.  Ashour Dep. at 106:2–107:12, 108:8–15.

In November or December 2018, Ashour noticed that the Arizona products contain citric acid.  Ashour Dep. at 56:19–57:3, 59:3–11.  Ashour testified that he felt deceived by Defendants' labeling and that, had he known that the Arizona products contained citric acid, he probably would not have purchased them, at least not after he learned what citric acid was in 2016.  *Id.* at 59:12–25, 79:25–80:5, 152:17–153:10, 166:14–168:18.

### C.  Plaintiff Brown

Joy Brown also lives in Los Angeles.  Brown Dep. at 7:21–8:6, Def. Ex. 3.  Since at least 2018 or 2019, she has purchased the following Arizona products at retail stores: Arizona Green Tea with Ginseng and Honey, Arizona Arnold Palmer Half & Half, Arizona Iced Tea with Lemon, and Arizona Raspberry Flavored Iced Tea.  Def. 56.1 ¶¶ 53, 76, 79, 82, 85, 90; Brown Dep. at 26:2–4, 85:21–86:10, 87:5–8, 99:23–25.

On December 31, 2020, Brown entered into a retainer agreement with her attorney in this matter, Carlos F. Ramirez of Reese LLP ("Reese").  Def. 56.1 ¶¶ 54–55; Brown Retainer Agreement, Def. Ex. 4.  The agreement states that Brown is retaining Reese to represent her in connection with her claims against Defendants "for misrepresentations made by them in connection with the 'sale' of beverages labeled 'No Preservatives' even though they contained citric acid."  Brown Retainer Agreement at AA-00074.  The agreement also specifies that Brown "ha[s] a legal claim that requires Defendants to pay [her] attorney's fees if [she] prevails in [her] case" and that she "assign[s] this claim to attorney's fees to [Reese]."  *Id.* at AA-00076.  Under the agreement, Reese is entitled to either the "specified amount of attorney's fees" ordered by a

court, or, in the case of settlement, "a portion of such settlement . . . equal [to] the fair market value of [Reese's] services, as determined in [Reese's] sole reasonable discretion." *Id.*

Since entering into the retainer agreement, Brown has continued to buy Arizona products. Def. 56.1 ¶¶ 62–63, 66–70; *see* Brown Dep. at 17:19–19:2, 23:24–24:2, 31:9–10. She possesses receipts for some of the Arizona products she purchased. Brown Dep. at 17:18–19:2, 23:24–24:2, 34:12–18. Brown purchases Arizona products because she "enjoy[s] the taste" and finds the drinks "refreshing." *Id.* at 20:7–21:8; *see id.* at 27:14–25, 92:12–14, 93:7–9, 94:16–20, 103:14–16. She also finds them to have a good "value" and "price." *Id.* at 34:22–35:9, 87:9–16, 88:15–20, 95:1–2, 103:14–16.

### D. Plaintiff Townes

Crystal Townes lives in New York City. Townes Dep. at 8:16–22, Def. Ex. 2. Since at least 2013, she has purchased the following Arizona products at retail stores: Arizona Iced Tea with Lemon Flavor, Arizona Arnold Palmer Zero Half Iced Tea & Half Lemonade, Arizona Fruit Punch Fruit Juice Cocktail, Arizona Watermelon Fruit Juice Cocktail, Arizona Golden Bear Lite Strawberry Lemonade, Arizona Raspberry Iced Tea, and Arizona Southern Style Real Brewed Sweet Tea. Def. 56.1 ¶¶ 19, 49; Townes Dep. at 57:13–23.

On January 12, 2021, Townes entered into a retainer agreement with Reese. Def. 56.1 ¶ 20; Townes Retainer Agreement, Def. Ex. 5. Her retainer agreement contains the same language as Brown's agreement with Reese, described above. Townes Retainer Agreement at AA-00068, -00070. After retaining Reese, Townes continued to buy Arizona products at retail stores, and she has bought Arizona products since joining this action. Def. 56.1 ¶¶ 28, 33–41, 43–45, 51–52; Townes Dep. at 29:13–21, 41:2–11, 48:8–24, 61:12–62:10. Townes has no receipts for any of the products she purchased. Def. 56.1 ¶ 29; Townes Dep. at 92:4–93:2.

II.    Procedural History

Ashour commenced this action in the Central District of California on May 14, 2019, bringing claims under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200; False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500; and Consumer Legal Remedies Act (the "CLRA"), Cal. Civ. Code § 1770; and for breach of express warranty and unjust enrichment. *See generally* Compl., ECF No. 1. In July 2019, pursuant to a joint stipulation by the parties, the action was transferred to this District.[3] ECF Nos. 23, 25. Two months later, Ashour amended his complaint, ECF No. 42, and Defendants moved to dismiss, ECF No. 54. In September 2020, the Court granted Defendants' motion with respect to Ashour's request for injunctive relief only. *See generally Ashour v. Ariz. Beverages USA LLC*, No. 19 Civ. 7801, 2020 WL 5603382 (S.D.N.Y. Sept. 18, 2020).

In March 2021, Ashour amended his complaint to add Brown and Townes, the latter of whom asserted claims under New York General Business Law ("GBL") §§ 349 and 350 and for breach of express warranty and unjust enrichment. *See generally* SAC. Defendants once again moved to dismiss, ECF No. 132, and in March 2022, the Court granted the motion as to Plaintiffs' demand for injunctive relief and Plaintiffs' claim for breach of express warranty under New York law, ECF No. 187; *see also Ashour v. Ariz. Beverages USA LLC*, No. 19 Civ. 7081, 2022 WL 14038713 (S.D.N.Y. Oct. 24, 2022). Before the Court are Defendants' motions for summary judgment and judgment on the pleadings, ECF Nos. 314, 318, and the parties' motions to seal certain related filings, ECF Nos. 310, 324, 341, 348.

---

[3] The undersigned initially accepted this case as related to a similar action, *Kubilius v. Arizona Beverage Company LLC*, 18 Civ. 9075. *See* ECF entry dated 8/8/2019. In February 2020, the plaintiffs in the related action voluntarily dismissed their claims against Defendants. ECF No. 129 in 18 Civ. 9075.

**DISCUSSION**

I.    <u>Motion for Judgment on the Pleadings</u>

A.  Legal Standard

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (alteration adopted) (quoting *Patel v. Contemp. Classics*, 259 F.3d 123, 126 (2d Cir. 2001)).  When evaluating a Rule 12(c) motion, the Court considers whether a plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)).  The Court draws all reasonable inferences in Plaintiffs' favor and abstains from "weigh[ing] competing allegations asserted by the moving party." *Id.*  In conducting its analysis, the Court considers "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).

B.  Availability of Equitable Relief

In their motion for judgment on the pleadings, Defendants contend that Ashour and Brown are not eligible for restitution—the only relief available to Plaintiffs for their UCL, FAL, and unjust enrichment claims, and one form of relief available to Plaintiffs under the CLRA—because they "fail[] to plead any facts as to whether an inadequate remedy at law exists in connection with their claims for equitable relief."  Def. JP Mot. at 1, ECF No. 319; *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999) (explaining that

6

available remedies under the UCL "are generally limited to injunctive relief and restitution"); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 951 (N.D. Cal. 2018) ("The only forms of a relief that a private individual may pursue under the UCL and FAL are the equitable remedies of restitution and injunctive relief."); *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (explaining that, in California, "[w]hen a plaintiff alleges unjust enrichment," courts "construe the cause of action as a quasi-contract claim seeking restitution" (citation omitted)); *Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) ("The CLRA provides for restitution as a remedy, and also for legal damages in the form of 'actual damages.'" (quoting Cal. Civ. Code § 1780(a)(1), (3))).

Defendants' argument hinges on the Ninth Circuit case *Sonner v. Premier Nutrition Corp.*, which held that a federal court sitting in diversity may not award equitable relief under the UCL and CLRA if a plaintiff fails to establish that she lacks an adequate remedy at law, here, legal damages under the CLRA.  971 F.3d 834, 844 (9th Cir. 2020).  Plaintiffs contend that *Sonner* does not apply here and does not preclude them from requesting equitable relief in the alternative.[4]  *See* Pl. JP Mem. at 5–8, ECF No. 326.

---

[4] Plaintiffs also point out that the Court previously declined to dismiss their equitable claims for unjust enrichment and that the law-of-the-case doctrine counsels against dismissing their claims for restitution now.  Pl. JP Mem. at 3–5.  Under this doctrine, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case."  *United States v. Quintieri*, 306 F.3d 1217, 1230–31 (2d Cir. 2002) (quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)).  For one thing, this doctrine is not binding on district courts, which are allowed to reconsider their prior rulings.  *Id.*  For another, and as Defendants note, although the Court previously declined to dismiss Plaintiffs' claims for unjust enrichment, *see* Def. JP Reply at 2, ECF No. 340; *Ashour*, 2020 WL 5603382, at *6; *Ashour*, 2022 WL 14038713, at *4, Defendants did not previously present the Court with their adequate-remedy-at-law argument, *see* ECF No. 54-1 at 20–30; ECF No. 132-9 at 24–26; *see also Kregler v. City of New York*, 821 F. Supp. 2d 651, 660 (S.D.N.Y. 2011) ("[T]he law of the case doctrine prevents relitigation of an issue decided at an earlier point in an action only if the court was ever squarely presented with the question." (citation omitted)).  Moreover, and as discussed below, courts are more hesitant to dismiss equitable claims at the pleadings stage than at later points in a case, when the availability of adequate legal relief is clearer, as it is now.  *See, e.g.*, *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 906 (N.D. Cal. 2024).  For these reasons, the law-of-the-case doctrine does not constrict the Court here.

The Court agrees with Defendants.  In cases involving allegations of false advertising or other deceptive practices, plaintiffs often have a mix of remedies available to them, including compensatory damages and equitable relief.   But in federal court, "claimants seeking equitable relief must . . . show that they have no other available or adequate remedy."  *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997).  For that reason, in cases like this one, courts frequently dismiss plaintiffs' claims for equitable relief as improper due to the availability of legal damages.  *See, e.g.*, *Phillips v. Brooklyn Bedding LLC*, No. 23 Civ. 3781, 2024 WL 2830663, at *1–2 (N.D. Cal. Mar. 28, 2024) (dismissing equitable UCL and FAL claims because the plaintiff failed to establish that he lacked an adequate remedy at law); *Barton v. Procter & Gamble Co.*, No. 24 Civ. 1332, 2025 WL 486180, at *12–13 (S.D. Cal. Feb. 13, 2025) (same).

Plaintiffs observe that some courts have refused to dismiss equitable claims when a party requests equitable relief in the alternative to legal damages and the case is at the pleadings stage. Pl. JP Mem. at 5; *see, e.g.*, *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 906 (N.D. Cal. 2024). However, although Defendants style their motion as a motion for judgment on the pleadings, this action has proceeded beyond the pleadings stage, with fact discovery already closed, Pl. JP Mem. at 2, and it is clear at this point that at least Ashour possesses a viable damages claim under the CLRA,[5] *cf. Baton*, 740 F. Supp. 3d at 906 (declining to dismiss claims for equitable relief "until the pleadings are settled").  Furthermore, most of the cases Plaintiffs cite predate the Ninth Circuit's decision in *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308 (9th Cir. 2022), which

---

[5] As the Court explains *infra*, Brown's claims under the CLRA and for breach of express warranty fail for lack of reliance.  The Court declines to analyze whether this fact would allow Brown to pursue her claims for equitable relief because those claims, like her claims at law, would also require her to demonstrate reliance and injury.  *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020); *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038–39 (9th Cir. 2016) (explaining that a plaintiff claiming unjust enrichment under California law "must show that the defendant received and unjustly retained a benefit *at the plaintiff's expense*" (emphasis added)).

reaffirmed that *Sonner*'s holding applies beyond the case's unique procedural posture, *see* Pl. JP Mem. at 5; *Guzman*, 49 F.4th at 1313. The Court, therefore, grants Defendants judgment on Ashour and Brown's claims for equitable relief.

II.  <u>Summary Judgment</u>

   A.  Legal Standard

A party is entitled to summary judgment if it can establish that there "is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of informing the Court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). In making this showing, the party may rely on "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). If the moving party meets its initial burden, the burden shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006). The Court views all facts "in the light most favorable to the non-movant, resolving all ambiguities in her favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

   B.  Liability of BMU, Hornell, ABH, and ABH2

Defendants argue that BMU, Hornell, ABH, and ABH2 are entitled to summary judgment because Plaintiffs put forth no facts demonstrating that these Defendants

manufactured, sold, distributed, labeled, or were otherwise involved with the Arizona products. Def. SJ Mem. at 12–14, ECF No. 317.  Plaintiffs contend that each Defendant is a privately held company owned and operated by one person, Vultaggio; that Defendants have responded to all discovery requests collectively; and that each of Defendants' four corporate witnesses in this matter testified on behalf of all Defendants, indicating that Defendants are jointly responsible for the Arizona products' allegedly misleading labels.  Pl. SJ Mem. at 4–7.

In his deposition, Vultaggio, who unquestionably has authority over the labeling of Arizona products, *see* Def. Ex. 21; Vultaggio Dep. at 34:17–35:6, stated that he was testifying on behalf of all Defendants, Vultaggio Dep. at 9:17–23.  Similarly, initial disclosures and responses to interrogatories were submitted jointly on behalf of all Defendants.  Pl. Exs. 32–33, 39–40, 43–44.[6]  In addition, Plaintiffs cite evidence suggesting that Hornell is ABUSA's parent company, Pl. Ex. 34 at DESI 038105, that BMU is involved in the production of Arizona products, Pl. Ex. 43 at 4, and that ABH and ABH2 are involved in the products' labeling, Pl. Exs. 49–50. Although this evidence does not conclusively establish that BMU, Hornell, ABH, and ABH2 may be held liable for the alleged mislabeling of Arizona products, the evidence creates a genuine dispute of fact inappropriate for resolution at summary judgment.

C.  Law Against Champerty

Relying on the text of Brown and Townes' retainer agreements with Reese, Defendants assert that Brown and Townes' claims are barred by New York's law against champerty, a longstanding judicial doctrine developed to prevent attorneys from commercializing or trading in litigation.[7]  Def. SJ Mem. at 14–18; *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 731 N.E.2d

---

[6] Citations to "Pl. Ex." are to the exhibits attached to Melissa S. Weiner's declaration at ECF No. 333.

[7] The Court agrees with Defendants that New York law governs the retainer agreements because New York, the state in which counsel resides and in which Brown and Townes joined this action, is the "center of gravity" of the parties' transactions.  *Alderman v. Pan Am World Airways*, 169 F.3d 99, 103 (2d Cir. 1999) (citation omitted); *see*

581, 582 (N.Y. 2000). New York's law against champerty as it concerns the conduct of lawyers

is now codified in New York Judiciary Law § 488, which provides that an attorney shall not:

(1) "[d]irectly or indirectly, buy, take an assignment of or be in any manner interested in buying

or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in

action, with the intent and for the purpose of bringing an action thereon," or (2) "promise or

give . . . a valuable consideration to any person, as an inducement to placing . . . in his or her

hands . . . a demand of any kind, for the purpose of bringing an action thereon, or of representing

the claimant in the pursuit of any civil remedy for the recovery thereof." N.Y. Jud. Law

§ 488(1)–(2). Importantly, the prohibition exempts contingency-fee arrangements. *Id.*

§ 488(2)(c)–(d); *Tr. for Certificate Holders of the Merrill Lynch Mortg. Invs., Inc. v. Love

Funding Corp.*, 13 N.Y.3d 190, 199 n.5 (2009).

      This prohibition on champerty is "limited in scope and largely directed toward preventing

attorneys from filing suit merely as a vehicle for obtaining costs." *Bluebird Partners,* 731

N.E.2d at 586. An attorney violates the champerty statute "only if the primary purpose of the . . .

taking by assignment of the thing in action is to enable the attorney to commence a suit thereon,"

*Love Funding*, 13 N.Y.3d at 200 (quoting *Sprung v. Jaffe*, 3 N.Y.2d 539, 544 (1957)), and "the

critical issue in assessing" whether a retainer agreement is champertous is "the purpose behind

[the attorney's] acquisition of rights," *Justinian Cap. SPC v. WestLB AG*, 65 N.E.3d 1253, 1256

(N.Y. 2016) (quoting *Love Funding*, 13 N.Y.3d at 198–99). Although the New York Court of

Appeals "has been willing to find that an action is *not* champertous as a matter of law, it has been

---

*also* Brown Retainer Agreement at AA-00777 (stating that counsel may terminate the agreement "consistent with
the applicable rules of professional conduct for attorneys in the State of New York"); Townes Retainer Agreement at
AA-00071 (same).

hesitant to find that an action *is champertous as a matter of law*." *Bluebird Partners*, 731 N.E.2d at 586 (emphasis in original) (citations omitted).

Plaintiffs contend that Townes and Brown entered into "garden variety" retainer agreements containing contingency fee provisions. Pl. SJ Mem. at 15. Defendants disagree, arguing that the retainer agreements are not contingency fee arrangements, first, because Plaintiffs' claims were "assigned outright" to their lawyers; second, because the agreements do not specify what percentage of Plaintiffs' recovery the lawyers are entitled to; and third, because Plaintiffs must pay their lawyers if they withdraw from the lawsuit. Def. SJ Mem. at 15. In support, Defendants cite one district court case holding that an outrageously one-sided retainer agreement in which the plaintiff "sign[ed] over [to the law firm and its affiliate] the majority of [her] interests in [her] lawsuit[]"—including "45% of any actual damages recovery, 80% of any statutory damages, and all attorney's fees and costs"—violated New York's law against champerty. *Taylor-Burns v. AR Res., Inc.*, 268 F. Supp. 3d 592, 598 (S.D.N.Y. 2017); *see* Def. SJ Mem. at 15–16.

Brown and Townes' retainer agreements are not like the agreement in *Taylor-Burns*. Unlike that agreement, which did not specify the particular claim counsel was retained to pursue, Brown and Townes' retainer agreements stipulate that Plaintiffs are hiring counsel specifically to represent them "in [their] claims against [Defendants] for misrepresentations made by them in connection with the 'sale' of beverages labeled 'No Preservatives' even though they contained citric acid.'" *Compare Taylor-Burns*, 268 F. Supp. 3d at 598 (describing the plaintiff's retainer agreement as "allowing [counsel] to pursue FDCPA claims as they please" and "to pursue claims not identified" at the time of the agreement), *with* Brown Retainer Agreement at AA-00074, *and* Townes Retainer Agreement at AA-00068. Additionally, unlike the retainer agreement in

*Taylor-Burns*, the agreements at issue here do not provide that counsel is entitled to an unreasonably large percentage of Plaintiffs' recovery: They state only that, if there is any recovery, counsel is entitled to legal fees in an amount to be determined by the Court or, in the case of a settlement, in an amount "equal [to] the fair market value of [counsel's] services," and if Plaintiffs terminate counsel's representation before any recovery, Plaintiffs must pay counsel for "the fair market value of [their] services." *Compare Taylor-Burns*, 268 F. Supp. 3d at 598, *with* Brown Retainer Agreement at AA-00076, *and* Townes Retainer Agreement at AA-00070. Defendants do not cite any cases suggesting that this type of relatively standard arrangement violates New York law or the state's Rules of Professional Conduct. More fundamentally, it is apparent that counsel entered into the retainer agreement with the primary purpose of helping Plaintiffs vindicate their rights as consumers, not for bringing suit. Therefore, the Court rejects Defendants' argument.[8] *See Justinian Cap.*, 65 N.E.3d at 1256.

  **D. California Claims**

  Because the Court grants Defendants judgment on the pleadings with respect to Ashour and Brown's claims for equitable relief, all that remains are their legal claims under the CLRA and for breach of express warranty.

  **1. CLRA**

  The CLRA prohibits a host of "unfair methods of competition and unfair or deceptive acts or practices" in the sale of goods to consumers. Cal. Civ. Code § 1770. The statute

---

[8] Defendants also make the novel argument that, because Brown and Townes "assign[ed]" their claim to attorneys' fees to counsel, they lack standing to pursue such fees. Def. SJ Mem. at 18–19; *see* Brown Retainer Agreement at AA-00076; Townes Retainer Agreement at AA-00070. Defendants cite no law in support of this argument, and regardless, attorneys' fees, which were traditionally an element of a suit's "costs" at common law, are not subject to a typical standing analysis. *See Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200–01 (1988); *In re Hot-Hed Inc.*, 477 F.3d 320, 325 (5th Cir. 2007) (explaining that attorneys' fees are "not intended to remedy injury caused by the alleged offense, but [are] instead an incidental cost of litigation").

incorporates a "reasonable consumer" test: To succeed on a claim thereunder, a plaintiff must "show that members of the public are likely to be deceived" by the challenged practice. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  This standard "requires more than a mere possibility that [a] [d]efendant['s] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020) (cleaned up) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* (internal quotation marks omitted) (quoting *Ebner*, 838 F.3d at 965).

In addition, a plaintiff "must demonstrate *actual reliance* on the allegedly deceptive or misleading statements," *id.* at 1020 (emphasis in original) (quoting *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 888 (Cal. 2011)); *see Corbett v. PharmaCare U.S., Inc.*, 67 F. Supp. 3d 1172, 1185 (S.D. Cal. 2021), and that "the misrepresentation was an immediate cause of the injury-producing conduct," *Kwikset Corp.*, 246 P.3d at 888 (quoting *In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009)).  To prove such reliance and injury, a plaintiff may show that, in the absence of the misleading statement, "the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 913 (N.D. Cal. 2020) (quoting *Tobacco II*, 207 P.3d at 39).  "In other words, a plaintiff may show actual reliance by alleging that 'had the omitted information been disclosed[,] one would have been aware of it and behaved differently.'" *Id.* (quoting *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993)).

Defendants argue that Brown cannot establish reliance and injury, first, because there is no record evidence suggesting that Defendants' alleged misstatements factored into Brown's decision to purchase the Arizona products, and second, because Brown continued to purchase Arizona products after learning that they contained citric acid. Def. SJ Mem. at 19–23. The Court begins with Defendants' second point because it is dispositive of the issue: Because Brown kept buying Arizona products after learning that they contained citric acid, she cannot establish reliance, that is, that she would have "behaved differently" had the Arizona products disclosed that they contained the alleged preservative. *Williams*, 449 F. Supp. 3d at 913 (quoting *Mirkin*, 858 P.2d at 574); *see Red v. Kraft Foods, Inc.*, No. 10 Civ. 1028, 2011 WL 4599833, at *12 (C.D. Cal. 2011). Accordingly, summary judgment is granted on Brown's CLRA claim.

Next, Defendants assert that they are entitled to summary judgment on Ashour's claims as they relate to his purchases of two specific Arizona products: Arizona Rx Energy Herbal Tonic and Arizona Mucho Mango. Def. SJ Mem. at 26–27. According to Defendants, Ashour, who primarily bought Arizona Green Tea with Ginseng and Honey, cannot prove reliance as to these other beverage varieties because he testified in his deposition that he purchased them because he "was interested in trying a new flavor." *Id.* at 27 (quoting Ashour Dep. at 118:7–16, 120:5–11). Defendants interpret this statement as foreclosing the possibility that Ashour bought the Arizona products because he also reasonably believed that Arizona products lack preservatives. Reading Ashour's statements in context, however, a reasonable jury could find that he purchased these drinks in part because they, like all Arizona products, claimed to lack preservatives. *See* Ashour Dep. at 152:17–153:10 ("I haven't seen any beverage product out there that states quite like [Arizona products] that [it] has no preservatives in it. . . . I mostly relied on the no preservatives, that's what influenced me to make the purchase.").

Defendants further argue that the Court should grant summary judgment on Ashour's claims because Ashour does not know how often he purchased Arizona products or at what prices and, therefore, is unable "to prove damages with reasonable certainty," as required by California law.  Def. SJ Mem. at 28; *see Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961–62 (9th Cir. 2001).  Defendants misapply the standard.  "Reasonable certainty" does not require a plaintiff to proffer exact amounts.  "California law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (citation omitted).  Accordingly, in California, a plaintiff need not possess receipts detailing exactly how much she spent on a product in order to obtain recovery. *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) (explaining that a lack of receipts "is not an insurmountable obstacle" to estimating the "measurable amount" of wrongfully taken money, as required for restitution under the UCL (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 38 Cal. Rptr. 3d 36, 61 (Ct. App. 2006))); *Williams v. Apple, Inc.*, 338 F.R.D. 629, 645–46 (N.D. Cal. 2021); *see also Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 270–71 (E.D.N.Y. 2019).

Ashour testified at his deposition that he purchased Arizona products between late 2014 and late 2018 for about 99 cents each.  Ashour Dep. at 95:20–98:4, 104:13–21, 117:25–118:4, 120:2–4.  Although he was unable to testify as to a "reasonable approximation" of how many Arizona products he bought during that time, *id.* at 101:15–102:17; 113:13–114:22, 116:12–117:18, 119:14–22, in his responses to Defendants' interrogatories, Ashour estimated that he purchased Arizona products between two and three times per week over the relevant period, Pl. Ex. 23 at 7–8, an estimate that could possibly allow for "some reasonable basis of computation

of damages," *Pulaski*, 802 F.3d at 989 (citation omitted).  Thus, a genuine dispute of material fact exists as to whether Ashour can provide sufficient evidence of a "measurable amount" of loss, and the issue cannot be resolved at summary judgment.

### 2.    Breach of Express Warranty

Defendants also move for summary judgment on Brown's claim for breach of express warranty.  Def. SJ Mem. at 20.  To show breach of express warranty under California law, a party must demonstrate that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l*, 103 Cal. Rptr. 3d 614, 626 (App. Ct. 2010) (citation omitted); *see* Cal Com. Code § 2313.

The only issue in dispute here is whether the "No Preservatives" label was part of the basis of the bargain between Defendants and Brown.  *See* Def. SJ Mem. at 20.  Before California adopted the Uniform Commercial Code's definition of an express warranty, caselaw required a purchaser to affirmatively prove that she relied on specific promises made by a seller to demonstrate that such promises constituted a basis of the parties' bargain.  *See Weinstat*, 103 Cal. Rptr. at 626; *see also Hauter v. Zogarts*, 534 P.2d 377, 383–84 (Cal. 1975) (en banc).  The California Uniform Commercial Code, by contrast, does not require such proof and assumes that "affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods."  *Weinstat*, 103 Cal. Rptr. at 626 (quoting Cal. Com. Code § 2313 cmt. 3).  Only "clear affirmative proof" can "take [a seller's] affirmations, once made, out of the agreement."  *Id.* (quoting Cal. Com. Code § 2313 cmt. 3).

The problem for Brown is that, as explained *supra*, her continued purchase of Arizona products after she learned that they contain citric acid constitutes such "affirmative proof" that

the "No Preservatives" label was not a basis of her bargain with Defendants. The Court, therefore, grants Defendants summary judgment on this claim.

E. New York Claims

Townes brings claims under GBL §§ 349 and 350 and for unjust enrichment.

1. GBL §§ 349 and 350

GBL § 349(a) outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." To succeed on a claim under either section, a plaintiff must demonstrate that a defendant "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). Like the CLRA, GBL §§ 349 and 350 encompass an objective definition of "misleading," under which "the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (citation omitted). Although a plaintiff need not prove that she relied on the allegedly misleading statement, *see Koch*, 967 N.E.2d at 676, she must demonstrate that the misleading statement caused her injury, *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000); *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 394 (E.D.N.Y. 2022).

As with Brown, Defendants contend that Townes' continued purchase of Arizona products after learning that they contained citric acid would prevent a reasonable jury from finding that Townes suffered an injury as a result of the allegedly misleading label.[9] Def. SJ

---

[9] Defendants also appear to argue that the "No Preservatives" label was not materially misleading because Townes could not have been misled. Def. SJ Mem. at 22–23. Defendants misapprehend the materiality requirement; the

Mem. at 22–23.  Unlike Brown, however, Townes' New York claims, which do not require

Plaintiffs to prove reliance, survive this argument.  It is well established that a plaintiff can prove

causation under GBL §§ 349 and 350 using a price premium theory by showing that a

defendant's misleading statement "caused a price premium, that the price premium was charged

both to those who saw and relied upon the false representation[] and those who did not, and that,

as a result of the price premium, [a] plaintiff was charged a price she would not otherwise have

been charged but for the false [statement]."  *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d

80, 100 (S.D.N.Y. 2022).  Here, a reasonable jury could find that (1) Defendants marketed their

Arizona products as having a "unique quality," *i.e.*, as having no preservatives, (2) this

"widespread misrepresentation[]" allowed Defendants to charge a price premium for their

products, and (3) Townes paid more for the products than she would have paid had Defendants

not made such a misrepresentation, regardless of whether she knew that they contained citric

acid.  *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020); *Fishon*, 620 F.

Supp. 3d at 103.

Defendants argue that Townes cannot show injury because of the "voluntary payment

doctrine," a New York common law doctrine that "bars recovery of payments voluntarily made

with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law."

*Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 276 (S.D.N.Y. 2014) (quoting *Dillon v.

U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003) (mem.)).  It

is true that Townes likely will not be able to recover for any purchases of Arizona products she

---

issue is not whether Townes herself knew the "No Preservatives" label to be misleading, but rather whether a
"reasonable consumer acting reasonably" would find the statement to be materially misleading.  *Orlander*, 802 F.3d
at 300.  And, as the Court has previously explained, "[t]he issue of whether the citric acid in the [Arizona] products
functions as a preservative is an issue for expert discovery," *Ashour*, 2022 WL 14038713, at *3, which has not yet
occurred, Pl. SJ Mem. at 3 n.4.

made after learning that the products contained citric acid. *See Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 56 (App. Div. 2004); Pl. SJ Mem. at 23–25. The doctrine, however, does not bar Townes' claims to the extent they concern purchases made before she acquired such knowledge. The Court, therefore, denies summary judgment on Townes' GBL claims.

### 2. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must demonstrate "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009) (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir. 2002)). In other words, a plaintiff must show that the benefits she received were less than what she bargained for. *Vigiletti v. Sears, Roebuck & Co.*, 42 A.D.3d 497, 498 (App. Div. 2007). An unjust enrichment claim is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Unjust enrichment is not available "where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.*

Here, as with Ashour and Brown's claims for equitable relief under California law, Townes' unjust enrichment claim is duplicative of her claims under GBL §§ 349 and 350 because the causes of action "ar[i]se from the same facts and d[o] not allege distinct and different damages."[10] *Town of Wallkill v. Rosenstein*, 837 N.Y.S.2d 212, 215 (App. Div. 2007). Stated differently, Townes' claim for unjust enrichment fails because she possesses an adequate remedy

---

[10] For the same reasons discussed *supra* note 4, the law-of-the-case doctrine does not foreclose this outcome.

at law.[11]  *See, e.g.*, *Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 462–63 (S.D.N.Y. 2023)

(dismissing a claim for unjust enrichment when an adequate remedy was available under New

York's GBL); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 433–34

(S.D.N.Y. 2017) (same).  The Court, therefore, grants Defendants summary judgment on this

claim.

    III.    <u>Motions to Seal</u>

        A.  Legal Standard

The public enjoys a "general right to inspect and copy public records and documents,

including judicial records and documents."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597

(1978).  This presumption of public access "is based on the need for federal courts . . . to have a

measure of accountability and for the public to have confidence in the administration of justice."

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States

v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).  When a party moves to seal documents, it

"bears the burden of showing that higher values overcome the presumption of public access."

*Samsung Elecs. Co., Ltd. v. Microchip Tech. Inc.*, No. 24 Misc. 269, 2024 WL 4169353, at *2

(S.D.N.Y. Sept. 12, 2024) (quoting *Kewazinga Corp. v. Google LLC*, No. 20 Civ. 1106, 2024

WL 3442428, at *1 (S.D.N.Y. July 17, 2024)).

Courts conduct a three-step analysis.  First, a court determines whether the relevant

material constitutes a "judicial document," *i.e.*, a document that is "relevant to the performance

of the judicial function and useful in the judicial process."  *Lugosch*, 435 F.3d at 119 (quoting

---

[11] Courts sometimes dismiss such claims as "duplicative" and sometimes dismiss them as unavailable given the existence of an "adequate remedy at law."  Regardless of the wording, the reasoning is the same.  *See Corsello*, 967 N.E.2d at 1185 (describing an unjust enrichment claim as "not available where it simply duplicates, or replaces, a conventional contract or tort claim" and citing, in support, *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 996 (N.Y. 2008), which determined that a claim for unjust enrichment does not lie when "plaintiffs have an adequate remedy at law").

*United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)).  The relevance of a specific document does not depend on "which way the court ultimately rules or whether the document ultimately in fact influences the court's decision," but rather whether the document "would reasonably have the *tendency* to influence a district court's ruling on a motion."  *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (emphasis in original).

If material constitutes a "judicial document," the "common law presumption of access attaches," and a court must evaluate the "weight of that presumption."  *Lugosch*, 435 F.3d at 119. "[T]he presumption of public access is at its highest when the material is relevant to a court's decision on a dispositive motion."  *SEC v. Ripple Labs, Inc.*, No. 20 Civ. 10832, 2022 WL 329211, at *1 (S.D.N.Y. Feb. 3, 2022).  The presumption is "weaker where the 'documents play only a negligible role in the performance of Article III duties.'"  *Olson v. Major League Baseball*, 29 F.4th 59, 89 (2d Cir. 2022) (quoting *Amodeo*, 71 F.3d at 1050).

A court must balance the weight of the presumption against "competing considerations," including "the privacy interests of those resisting disclosure," *Lugosch*, 435 F.3d at 120 (quoting *Amodeo*, 71 F.3d at 1050), and "the protection of sensitive, confidential, or proprietary business information," *Ripple*, 2022 WL 329211, at *1.  "[B]argained-for confidentiality" through vehicles like protective orders will not, however, overcome the presumption of public access. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018).  Ultimately, sealing judicial documents "may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124.

B.   Application

The parties move to seal or redact certain documents filed in connection with Defendants' motion for summary judgment.  ECF Nos. 310, 324, 341, 348.  These documents include: (1) retainer agreements between Plaintiffs and their counsel, (2) Plaintiffs' deposition testimony and responses to interrogatories, (3) Vultaggio's deposition testimony and responses to interrogatories, (4) documents containing information about Defendants' organizational structure and detailed invoices and sales data for Arizona products, and (5) filings citing the contents of the foregoing materials, including Defendants' Rule 56.1 statement and the parties' summary judgment briefing.  *See* ECF Nos. 311, 324, 341, 348.

These documents are all judicial documents because they were submitted in connection with Defendants' summary judgment motion, *see Ripple Labs*, 2022 WL 329211, at *1, so the question is whether, for each document, competing considerations outweigh the presumption of access.  By and large, Defendants—but not Plaintiffs—fail to meet this standard.

The Court begins with Plaintiffs' retainer agreements.  The language of these agreements is central to Defendants' champerty argument, so the presumption of access is high.  Defendants argue that the retainer agreements should remain under seal because the parties deemed them confidential, ECF No. 311 at 3, but as previously explained, "bargained-for confidentiality" does not defeat the presumption of public access, *Bernsten*, 307 F. Supp. 3d at 168.  Additionally, having reviewed the agreements, the Court sees essentially no sensitive or privileged information that might warrant redaction.  *See Farris v. Avon Prods., Inc.*, No. 23 Civ. 2023, 2024 WL 4441811, at *4 (S.D.N.Y. Oct. 7, 2024).  The Court shall, however, allow Defendants to file public versions of the retainer agreements with Plaintiffs' email addresses redacted.  *See id.* ("Typically, sealing of personal information such as [a party]'s home addresses, personal phone

numbers, and email addresses . . . is warranted unless that information has bearing on issues before the court." (citation omitted)).

Next, Defendants seek to seal Plaintiffs' deposition testimony, which, according to Defendants, contain information about Plaintiffs' retainer agreements and personal information "including private address information and testimony about personal employment and medical history." ECF No. 311 at 3–4. To begin, Defendants offer no reason why the deposition testimony should be placed completely under seal, as opposed to being narrowly redacted. And as just explained, no overriding concern justifies sealing information concerning Plaintiffs' retainer agreements. Regarding Plaintiffs' personal information, Defendants state that "it is difficult to conceive how and why unlimited public access to testimony about . . . addresses and/or employment/medical history, would be necessary." *Id.* at 4. Such conclusory assertions do not justify placing a judicial document under seal. Nevertheless, as before, the Court shall permit Defendants to file public versions of Plaintiffs' deposition testimony with Plaintiffs' birth dates (with the exception of their birth years) and home addresses redacted. *See Farris*, 2024 WL 4441811, at *4; Fed. R. Civ. P. 5.2(a). Similarly, the Court will allow Plaintiffs to redact their home addresses from their responses to Defendants' interrogatories. *See* ECF No. 325 at 7.

Defendants also seek to heavily redact Vultaggio's deposition testimony and to seal an ABUSA personnel chart. ECF No. 311 at 4–6; ECF No. 345 at 3–4; ECF No. 325 at 7–8. Defendants ask to redact about 80% of Vultaggio's testimony because it allegedly contains "highly confidential product cost information, manufacturing processes, labeling decisions and history, supplier information, customers and competitors." ECF No. 345 at 3. Having reviewed the unredacted testimony, the Court cannot agree. Almost all of the testimony Vultaggio provides contains general information that offers few sensitive details that reveal Defendants'

inner workings.  The Court, therefore, instructs Defendants to file a public version of Vultaggio's deposition testimony with any proprietary business information—of which the Court sees little—*narrowly* redacted.  Defendants must provide specific, plausible reasons why any such proposed redactions are necessary.  Defendants are advised that the Court does not consider the identification of persons "involved in selling, marketing[,] and labeling the products at issue in this action" to constitute such proprietary information.  ECF No. 311 at 5; ECF No. 345 at 34; *see also* ECF No. 327 at 5–6.  For that reason, the Court will also not allow the ABUSA personnel chart to remain under seal unless Defendants provide some particularly compelling reason, supported by citation to caselaw, in a renewed motion to seal.

Similarly, Defendants ask to seal a range of internal ABUSA emails that purportedly contain "proprietary and sensitive business information related to ingredients, formulas, and/or labeling decisions."  ECF No. 345 at 4–5.  Again, Defendants do not offer any specific information about why disclosing these documents would affect ABUSA's competitiveness, nor does the Court view most of these emails as containing sensitive business information.  The same can be said of Defendants' requests to redact their discovery responses.  *See* ECF No. 345 at 6–7. Accordingly, Defendants shall refile these categories of documents with narrow proposed redactions and specific justifications for such redactions.

The Court recognizes that documents containing confidential information about a corporation's business models, suppliers, production processes, sources of revenue, and sales figures are regularly allowed to remain under seal.  *See Kewazinga Corp. v. Microsoft Corp.*, No. 18 Civ. 4500, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (listing cases). Considering that fact, plus the fact that such proprietary business information is not relevant to Defendants' motions for summary judgment, the Court will allow the documents containing

25

sales and revenue figures, *i.e.*, Plaintiff Exhibits 24 and 35–38 and Exhibit 1 to Vultaggio's declaration in support of Defendants' motion for summary judgment, ECF No. 316-1, to remain under seal.

The foregoing reasoning applies to information contained in Defendants' Rule 56.1 statement and the parties' summary judgment briefing.

If and when the parties file renewed motions to seal, they shall justify any proposed redactions based on the specific need to redact the underlying information. Defendants are advised that the Court views the vast majority of the summary judgment record as appropriate for the public docket and expects Defendants to keep this in mind when proposing revised redactions.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED, and their motion for summary judgment is GRANTED IN PART and DENIED IN PART. Specifically:

1. Judgment on the pleadings is GRANTED as to Ashour and Brown's equitable claims under the UCL, FAL, and CLRA, and for breach of express warranty under California law;

2. Summary judgment is GRANTED as to Brown's legal claims under the CLRA and for breach of express warranty;

3. Summary judgment is GRANTED as to Townes' claim for unjust enrichment; and

4. Summary Judgment is DENIED in all other respects.

Accordingly, the only claims that remain are Ashour's legal claims under the CLRA and for breach of express warranty and Townes' claims under NY GBL §§ 349 and 350.

The parties' motions to seal are GRANTED IN PART and DENIED IN PART without prejudice to renewal.  Specifically:

1.  The motion to seal Plaintiff Exhibits 24 and 35–38 and Exhibit 1 to Vultaggio's declaration in support of Defendants' motion for summary judgment is GRANTED; and

2.  The motions are DENIED in all other respects.  By **April 25, 2025**, the parties shall propose revised, narrowly tailored redactions consistent with this Order.  If they have not done so by that date, the Court shall direct the Clerk of Court to unseal those exhibits.  Along with their renewed motion to seal, the parties must file two copies of each relevant document: (1) one public version containing the parties' proposed redactions and (2) one non-public version with the proposed language to be redacted highlighted for the Court's convenience.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 310, 314, 318, 324, 341, and 348.

SO ORDERED.

Dated:  March 28, 2025
         New York, New York

ANALISA TORRES
United States District Judge