**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AHMED ASHOUR, JOY BROWN, and CRYSTAL TOWNES, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC,<br><br>        Defendants. | CASE NO. 1:19-cv-07081-(AT) (OTW)<br><br>**<u>CLASS ACTION</u>** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   COMMON FACTS TO THE PROPOSED CLASS...........................................................2

     A.    Defendants' Labeling Was Consistent Throughout the Class Periods ....................2

     B.    Defendants' Documents Confirm the Materiality of the "No Preservatives" Claim...................................................................................................................3

     C.    The "No Preservatives" Claim Proximately Caused Plaintiffs' Injuries .................5

     D.    Citric Acid Acts As A Preservative in the Products ...............................................5

     E.    Class Members Were Injured Because of Defendants' Deceptive Labeling...........7

III.   STANDARD FOR CLASS CERTIFICATION .................................................................9

IV.   THE PROPOSED CLASSES ARE CLEARLY DEFINED...............................................11

V.   THE PROPOSED CLASS SATISFIES THE RULE 23(a) FACTORS ...........................12

     A.    Rule 23(a)(1): The Class is Sufficiently Numerous...............................................12

     B.    Rule 23(a)(2): Questions Of Law and Fact Are Common to the Class .................12

     C.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of Those of the Class ....................15

     D.    Rule 23(a)(4): Plaintiffs and Counsel Will Adequately Represent the Class ........17

VI.   THE PROPOSED CLASS MEETS THE RULE 23(b)(3) FACTORS ............................18

     A.    Common Questions of Law or Fact Predominate Over Any Individual Issues.....................................................................................................................19

          1.    Common Issues Predominate Regarding Liability on Plaintiff Townes's GBL §§ 349 and 350 Claims.......................................................22

          2.    Common Issues Predominate with Regard to Plaintiff Ashour's California Claims .................................................................................24

          3.    Damages for All Claims Can Be Determined on a Class-Wide Basis...........................................................................................................26

     B.    A Class Action Is the Superior Method of Adjudicating the Controversy ...........32

VII.  CONCLUSION.................................................................................................32

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................................17, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013)............................................................................................10, 19, 22

*Avagliano v. Sumitomo Shoji Am., Inc.*,
    103 F.R.D. 562 (S.D.N.Y.1984) ..................................................................................11

*Balderramo v. Go N.Y. Tours Inc.*,
    No. 15-2326 (ER), 2017 WL 2819863 (S.D.N.Y. June 28, 2017) ...........................16

*Bardsley v. Nonni's Foods LLC*,
    No. 20 Civ. 2979 (NSR), 2023 WL 3570550 (S.D.N.Y. May 18, 2023) .................31

*Benson v. Newell Brands, Inc.*,
    No. 1:19-cv-06836 RAG, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021)..................30

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) ...................................................................................10

*Brown v. Hain Celestial Grp., Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ...................................................................3, 17

*Butler v. Sears, Roebuck & Co.*,
    727 F.3d 796 (7th Cir. 2013) .......................................................................................22

*Carpenters Pension Trust Fund v. Barclays PLC*,
    No. 12-5329 (SAS), 2015 WL 5000849 (S.D.N.Y. Aug. 20, 2015)........................31

*Charron v. Wiener*,
    731 F.3d 241 (2d Cir. 2013).........................................................................................18

*Chery v. Conduent Educ. Servs., LLC*,
    581 F. Supp. 3d 436 (N.D.N.Y. 2022).........................................................................31

*Civic Ass'n of the Deaf v. Giuliani*,
    915 F. Supp. 622 (S.D.N.Y. 1996) ..............................................................................13

*Classen v. Weller*,
    145 Cal. App. 3d 27 (1983) ..........................................................................................16

*Cohen v. JP Morgan Chase & Co.*,
    498 F.3d 111 (2d Cir. 2007).........................................................................................23

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...................................................................................................26, 30, 31

*Conisol. Rail Corp. v. Hyde Park*,
47 F.3d 473 (2d Cir. 1995)......................................................................................................12

*Cosgrove v. Oregon Chai, Inc.*,
520 F. Supp. 3d 562 (S.D.N.Y. 2021).....................................................................................31

*Crawford v. Honig*,
37 F.3d 485 (9th Cir. 1994) ....................................................................................................18

*Diaz v. Residential Credit Solutions, Inc.*,
299 F.R.D. 16 (E.D.N.Y. 2014)..............................................................................................18

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ...............................................................................13, 16, 23

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)...................................................................................................................9

*Famular v. Whirlpool Corp.*,
16 CV 944 (VB), 2019 WL 1254882 (S.D.N.Y. Mar. 19, 2019) ...........................................23

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
326 F.R.D. 592 (N.D. Cal. 2018).....................................................................................13, 30

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)......................................................................................................16

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
317 F.R.D. 374 (S.D.N.Y. 2016) ...................................................................................... *passim*

*Green v. Wolf Corp.*,
406 F.2d 291 (2d Cir. 1968).....................................................................................................16

*Gucciardo v. Titanium Constr. Servs., Inc.*,
No. 16-1113 (LGS), 2017 WL 3738777 (S.D.N.Y Aug. 30, 2017) .......................................10

*Guido v. L'Oreal, USA, Inc.*,
No. CV 11-1067 (JCx), 2013 WL 3353857 (C.D. Cal. July 1, 2013). ........................18, 22, 31

*Hasemann v. Gerber Prods. Co.*,
331 F.R.D. 239 (E.D.N.Y. 2019) ...................................................................................... *passim*

*Jensen v. Cablevision Sys. Corp.*,
372 F. Supp. 3d 95 (E.D.N.Y. 2019) ......................................................................................10

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) ...............................................................................25

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................................13

*Keilholtz v. Lennox Hearth Prods. Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010)...............................................................................25

*Kurtz v. Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ...............................................................10, 23, 31

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ...............................................................................................22

*Makaeff v. Trump Univ., LLC*,
   No. 3:10-cv-0940-GPC, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014) ........................20, 24, 25

*Marchak v. JPMorgan Chase & Co.*,
   84 F. Supp. 3d 197 (E.D.N.Y. 2015) .........................................................................19

*Marcus v. AT&T*,
   138 F.3d 46 (2d Cir. 1998)..........................................................................................20

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997).................................................................................10, 12

*Mass. Mut. Life Ins. Co. v. Superior Ct.*,
   97 Cal. App. 4th 1282 (2002) .....................................................................................24

*McGhee v. Bank of Am.*,
   60 Cal. App. 3d 442 (1976) ........................................................................................18

*Miller v. Fuhu Inc.*,
   No. 2:14-CV-06119-CAS, 2015 WL 7776794 (C.D. Cal. Dec. 1, 2015)..........................27, 30

*Moore v. Margiotta*,
   581 F. Supp. 649 (E.D.N.Y. 1984) .............................................................................18

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002).......................................................................................19

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001)..................................................................................12

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015)............................................................................22, 23, 26

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (N.Y. Ct. App. 1995)..................................................................................20

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017)..........................................................................................11

*Petrosino v. Stearn's Prods., Inc.*,
  No. 16-CV-7735 (NSR), 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018)................................23

*Pizzaro v. Sazerac Co., Inc.*,
  No. 23-CV-2751 (KMK), 2025 WL 2682673 (S.D.N.Y. Sept. 18, 2025) ...................... *passim*

*Prescod v. Celsius Holdings, Inc.*,
  No. 19STCV09321, 2021 WL 5234499 (Cal. Sup. Aug. 2, 2021)................................. *passim*

*Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
  277 F.R.D. 97 (S.D.N.Y. 2011) .....................................................................................15

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)...........................................................................................26

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................ *passim*

*Seekamp v. It's Huge, Inc.*,
  No. 09-00018 (LEK), 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012)......................................21

*Segovia v. Vitamin Shoppe, Inc.*,
  No. 14 Civ. 7061 (NSR), 2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) ...............................23

*Sharpe v. W&W Concentrate Co.*,
  No. 19-cv-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021) ........................... *passim*

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) .......................................................................................24

*Steroid Hormone Prod. Cases*,
  181 Cal. App. 4th 145 (2010) ...................................................................................24, 27

*Sykes v. Mel S. Harris & Assocs., LLC*,
  285 F.R.D. 279 (S.D.N.Y. 2012) ...........................................................................17, 19, 21

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................................................24

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013)..................................................................................13, 19, 32

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*In re Vitamin C Antitrust Litig.*,
279 F.R.D. 90 (E.D.N.Y. 2012) ..................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)...............................................................................................12, 13

*Weinstat v. Dentsply Internat., Inc.*,
180 Cal. App. 4th 1213 (2010) .................................................................................24

*In re Whirlpool Corp. Front-Loading Washer Prods Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ....................................................................................13

*Wiener v. Dannon Co., Inc.*,
255 F.R.D. 658 (C.D. Cal. 2009) ..............................................................................25

*Zeisel v. Diamond Foods, Inc.*,
No. C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011).......................25

**Statutes**

California Consumers Legal Remedies Act, §§ 1770, *et seq.* ............................... *passim*

California Commerical Code, § 2313 ..................................................................... *passim*

New York General Business Law § 349................................................................. *passim*

New York General Business Law § 350................................................................. *passim*

**Other Authorities**

21 C.F.R. § 101.22(a)(5)...............................................................................................6

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

## INDEX OF TERMS

| TERM | DESCRIPTION |
|---|---|
| Angel Dep. | Defendants' 30(b)(6) Corporate Representative Deposition of Dean Angel taken on November 9, 2023, attached as Exhibit 34 to the Weiner Declaration. |
| Ashour Dep. | Deposition of Plaintiff Ahmed Ashour taken on January 26, 2021, attached as Exhibit 35 to the Weiner Declaration. |
| *Celsius* Litigation | The *Celsius* litigation implicates two actions: *Prescod v. Celsius Holdings, Inc.*, No. 19STCV09321-KF (Cal. Sup.) and *Hezi v. Celsius Holdings, Inc.*, No. 1:21-cv-09892-VM (S.D.N.Y.). |
| Christiansen Dep. | Defendants' 30(b)(6) Corporate Representative Deposition of Todd Christiansen taken on November 17, 2023, attached as Exhibit 37 to the Weiner Declaration. |
| Class, Classes | As defined in Section IV. Unless otherwise specified, all references to "Classes" or the "Class" refer collectively to the California Class and New York Class. |
| Class Members | Unless otherwise specified, all references to "Class Member" or "Class Members" refer collectively to members of the California Class and New York Class. |
| Class Periods | For the California Class, the Class Period is defined as January 1, 2017 to January 1, 2023.<br><br>The statute of limitations on the California Class's CLRA claim is three (3) years from the date of the commission of such method, act, or practice. *See* Cal. Civ. Code § 1783.<br><br>The statute of limitations on the California Class's breach of express warranty is four (4) years from the date of delivery of the goods. *See* Cal. Com. Code § 2725.<br><br>For the New York Class, the Class Period is defined as January 1, 2019 to January 1, 2023.<br><br>The statute of limitations on the New York Class's GBL §§ 349 and 350 claims is three (3) years from the date of injury.<br><br>The Class definition (including the definition of the Class and Class Periods) can always be modified as issues are redefined for trial. *See Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562, 573 (S.D.N.Y. 1984) (citing *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)). |
| CLRA | California Consumers Legal Remedies Act, Cal. Civ. Code § 1770 |
| Complaint | Second Amended Complaint, ECF No. 118 (cited as "SAC ¶ __") |

| TERM | DESCRIPTION |
|---|---|
| Cronin Rep. | Expert Report of J. Joseph Cronin, Jr., attached as Exhibit 5 to the Weiner Declaration. |
| Defendants | Arizona Beverages USA, Inc.; Hornell Brewing Co., Inc.; Beverages Marketing USA, Inc.; Arizona Beverages Holdings LLC; and Arizona Beverages Holdings 2 LLC, collectively. |
| Del Corso Dep. | Deposition of Allen Flavors' representative, Frank Del Corso, taken on August 10, 2023, attached as Exhibit 30 to the Weiner Declaration. |
| Dubé Rep. | Expert Report of Jean-Pierre Dubé, Ph.D. attached as Exhibit 6 to the Weiner Declaration. |
| FDA | U.S. Food and Drug Administration |
| GBL | New York's General Business Law, §§ 349 and 350 |
| Meyers Decl. | Expert Declaration of Marc Meyers, attached as Exhibit 4 to the Weiner Declaration. |
| Motion | This Motion for Class Certification and supporting documents. |
| Plaintiffs | Plaintiffs Ahmed Ashour and Crystal Townes, collectively. Following the Court's Order on Defendants' Motion for Summary Judgment and Partial Judgment on the Pleadings, all of Plaintiff Joy Brown's claims are dismissed. *See* ECF No. 352. |
| Products | The Products are the sixteen Arizona Ready-to-Drink beverages, as listed in Exhibit 3 to the Weiner Declaration. |
| Product Formulas | All Product Formulas during the Class Periods produced by Defendants as Exhibit 2 to Angel Dep., attached as Exhibit 31 to the Weiner Declaration. |
| Product Labels | All Product labels used by Defendants during the Class Periods, attached as Exhibits 9 through 21 to the Weiner Declaration. |
| Ramirez Decl. | Declaration of Carlos Ramirez in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith. |
| Rule(s) | Federal Rule(s) of Civil Procedure. |
| Townes Dep. | Deposition of Plaintiff Crystal Townes taken on April 8, 2022, attached as Exhibit 36 to the Weiner Declaration. |
| Vultaggio Dep. | Defendants' 30(b)(6) Corporate Representative Deposition of Don Vultaggio taken on November 10, 2023, attached as Exhibit 8 to the Weiner Declaration. |
| Weiner Decl. | Declaration of Melissa S. Weiner in Support of Plaintiffs' Motion for Class Certification, filed concurrently herewith. Exhibits to the Weiner Declaration are cited as "Ex. __." |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

Plaintiffs seek certification of this putative class action concerning Defendants' deception related to its sale and marketing of AriZona Teas beverage Products during the Class Periods. Since approximately 1992, Defendants uniformly and prominently labeled the Products with a "No Preservatives" claim that is patently deceptive and misleading. Defendants' misrepresentations misled consumers into believing the Products contained no preservatives, which caused them to overpay for the Products.

Despite having actual knowledge that the "No Preservatives" claim is deceptive and misleading, Defendants labeled their Products as such for decades. Plaintiffs seek compensation for the Classes (*see* Section IV, *infra*) for economic injuries arising out of their purchases of Defendants' Products, including a refund of the price premium paid as a result of Defendants' misleading labeling.

As set forth in this Motion, this litigation epitomizes the type of case Rule 23 was designed to address because common evidence demonstrates Plaintiffs and Class Members were all exposed to the exact same course of conduct by Defendants: their misrepresentation that the Products contain "No Preservatives," which appeared on the label of each Product sold during the Class Periods. Further, this case is suitable for trial as common evidence will also show that reasonable consumers were harmed by Defendants' deceptive conduct. *See* Weiner Decl., ¶¶ 11-15; *see also* Ex. 2, Common Element Chart. That is, despite the uniform "No Preservatives" representation throughout the Class Periods, common evidence will show all Class Members received the same thing—a Product that contained citric acid, an ingredient that acted as a preservative in all of the Products as confirmed by expert testimony and the scientific literature. *Id*. Whether Defendants' use of the "No Preservatives" representation in the labeling of the Products is materially

misleading will be determined by reference to the objective "reasonable consumer" standard and, thus, will also be established by common, class-wide proof. *Id.*

In support of their Motion, and in addition to the record evidence supporting class certification, Plaintiffs proffer the opinions from three highly respected and qualified experts who confirm common evidence exists to demonstrate: (1) the Products are not free from preservatives (*see* Ex. 4, Meyers Decl.); (2) the "No Preservatives" claim is materially misleading to reasonable consumers purchasing the Products (*see* Ex. 5, Cronin Rep.); and (3) damages can be calculated on a class-wide basis. *See* Ex. 6, Dubé Rep. Indeed, a nearly identical lawsuit against Defendants' competitor was certified as a class action lawsuit. *See Celsius* Litigation; Ex. 7. For the foregoing reasons, Plaintiffs respectfully request the Court certify the Classes in this matter and appoint them and their attorneys as class representatives and class counsel, respectively.

## II.    COMMON FACTS TO THE PROPOSED CLASS

### A.    Defendants' Labeling Was Consistent Throughout the Class Periods

As testified to by their co-founder and Chairman Don Vultaggio, Defendants prominently represented the Products as containing "No Preservatives" on the labels of each and every Product they sold during the Class Periods. *See* Ex. 8, Vultaggio Dep., at 73:19-24, 77:7-19, 92:11-93:7 (confirming the Products contained the "No Preservatives" label since the mid-1990's); *see also* Exs. 9-21, Product Labels.

Defendants' Product labeling—which every consumer was exposed to at the point of purchase—explicitly promises a ready-to-drink beverage containing no preservatives. Each Product contains a substantially similar "No Preservatives" representation adjacent to the Nutrition Facts where it cannot be missed:





*See* Products Labels.[1]

> **B.**    **Defendants' Documents Confirm the Materiality of the "No Preservatives" Claim**

Defendants are well aware of consumers' demand for products free from preservatives and made the "No Preservatives" representation a cornerstone of their Products' labeling—setting them apart from their competitors. *See* Ex. 22, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████ Ex. 23, ████████████████████

---

[1] All iterations of the "No Preservatives" claim feature the statement called out in a box or appearing in a color different from its background. Any changes in font or color are immaterial, and the labels are substantially similar. Where misrepresentations across product lines are identical, "the dissimilarity of the accused products is relatively unimportant." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 892 (N.D. Cal. 2012); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 269 (E.D.N.Y. 2019).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ Ex. 24, █████████

███████████████████████████████████████████████

████████████████████; Ex. 25, DESI17046-55, at 17049 (listing "No Artificial Preservatives" as the top "Quality" attribute for the Arizona Brand Key.); *id.* at 17052 (highlighting the importance of making no preservative beverages and avoiding the use of preservatives); *see also* Ex. 26, AFI0000597-98, 704-05 (report of customer questions about "No Preservatives" representation and use of citric acid).

Furthermore, even when Defendants' co-packers raised serious questions about the viability of the "No Preservatives" representation on the Products' labels, Defendants summarily rejected those concerns with the clear goal of keeping the "No Preservatives" representation despite the risk of liability. Ex. 27, DESI063305-10 (concern raised by Defendants' co-packer about the use of the "No Preservatives" representation stating, "the preservatives would not be allowed regardless of the level in the finished product to meet the No preservatives claim." […] "We need to support our claim of ineffectiveness of the preservatives and all plants from time to time get consumer complaints…,"); Ex. 28, NIAGARA000261-64, 543-47 (responding to further concerns raised by Defendants' co-packer about various label representations including the "No Preservatives" claim, Defendants state, "We will not be making the change recommendations. This is covered in the indemnification. Thank you.").

Defendants' use of the "No Preservatives" representation on the Products' labels was successful as Plaintiffs will be able to show with common evidence that Defendant was able to

charge unsuspecting consumers a premium for that important promise. *See generally*, Cronin Rep.; Dubé Rep.

### C.    The "No Preservatives" Claim Proximately Caused Plaintiffs' Injuries

Plaintiffs retained Joseph Cronin, Jr., Ph.D., an internationally recognized marketing expert and scholar, to testify as to: (1) the impact of product label statements on consumers, generally; (2) the impact of a "No Preservatives" label on consumers' perceptions of, and demand for, food products; and (3) the prominence of the "No Preservatives" representation on the Products' labeling. Cronin Rep., ¶ 2. According to Dr. Cronin, product labels generally have a substantial and significant effect on consumers' attitudes and behaviors relative to brands and products and have a significant and substantial effect on consumer decision making relating to whether to buy a product. *Id*. at ¶ 3. Dr. Cronin further opines that scientific research demonstrates product labels are read by most consumers (85.4%), (*id*. at ¶ 26), and a "No Preservatives" representation on product labels has a substantial influence on consumers' perceptions of food and beverage products such that it drives their decision to buy it. *Id*. at ¶ 27. Furthermore, Dr. Cronin opines that the prominence, uniformity and longevity (here decades) of the "No Preservatives" representation on the Class Products confirms Defendants' *acknowledgment* of the importance of the claim to consumers and the impact on their purchasing decisions. *Id*. at ¶¶ 15, 27.

### D.    Citric Acid Acts As A Preservative in the Products

Plaintiffs retained a highly respected food scientist, Marc Meyers, Ph.D., to testify as to the classification of citric acid as a preservative by FDA, (Meyers Decl., ¶ 50), as well as the concentration and the role that citric acid plays in the Products. *See generally*, *id*. Dr. Meyers opines citric acid is a commonly used and recognized preservative in food and beverage products. *Id.* at ¶¶ 44-47. According to the FDA, citric acid is listed in the category of ingredients used to "prevent food spoilage from bacteria, molds, fungi or yeast" and slows and "prevents changes in

color, flavor, or texture." *Id*. at ¶ 49; *see also* 21 C.F.R. § 101.22(a)(5) (a chemical preservative is "any chemical that, when added to food, tends to prevent or retard deterioration thereof."). Citric acid acts as a preservative by increasing the acidity of a microbe's environment, making it harder for bacteria and mold to survive and reproduce. Meyers Decl. at ¶¶ 51-58. Although there are different food and beverage additives that can function as preservatives, citric acid, in particular, is commonly used as a preservative and flavor in food and beverages because it is one of the stronger edible acids. Of note, while citric acid acts as a preservative at a concentration as low as 0.03%, participants in taste studies of citric acid could not detect its sourness until a concentration of 0.04% was reached. *Id*. at ¶¶ 59-61. Accordingly, if citric acid is present at a high enough level to impact a food product's taste, then it cannot be disputed that it is present in an amount high enough for it to act as a preservative. *Id*. at ¶ 62.

Common evidence will show Defendants also recognize citric acid is a preservative. For example, Defendants admit the citric acid used in their Products is added to "lower pH of the final drink and for maintaining freshness of the drink;" euphemisms for preserving the Products. *See* Ex. 29, KNOUSE001722. This admission is further supported by the representative testimony of Defendants' flavor house, Allen Flavors—the entity responsible for the manufacture of the flavor formulas—who testified citric acid is used in the Products to lower their pH. *See* Ex. 30, Del Corso Dep., at 128:9-12.

Importantly, citric acid functions as a preservative even when used in relatively low quantities. Meyers Decl., ¶¶ 61-62 ("Accordingly, if citric acid is present at a high enough level to impact a food product's taste, then it cannot be disputed that it is present in an amount high enough for it to act as a preservative."); *id*. ¶ 66. Here, Plaintiffs will present common evidence that will show all of the Products contain citric acid in quantities ***more than sufficient for the citric acid to***

*function as a preservative*, in addition to any other functions Defendants have claimed over the years in defense of its "No Preservatives" claim. *Id*. ¶¶ 64-68 ("The Products' formulations, which are disclosed in Table 1, indicate that citric acid is present at levels of between ▮▮▮▮▮▮▮▮▮ of the total product makeup. Thus, in all of the Products, citric acid is clearly acting as a preservative."); *see also* Ex. 31, Product Formulas; Ex. 32, KNOUSE006733, 7032; Ex. 33, AFI0000038, 99, 113, 703; Ex. 34, Angel Dep., at 19:19-20:7 (Defendants' testimony affirming that Exhibit 2 to Angel Dep. (Product Formulas), contains all formula specification and components for all Class Products from May 14, 2013 to the present). Thus, while Plaintiffs do not need to prove the concentration of citric acid in the Products has a preserving effect at class certification, reliable expert testimony will be used to prove at trial to show the citric acid in the Products acts as a preservative.

### E.    Class Members Were Injured Because of Defendants' Deceptive Labeling

Plaintiffs proffer the expert report of Jean-Pierre Dubé, Ph.D. who confirms it is feasible to calculate class-wide economic damages using a common methodology. Dubé Rep., ¶ 22. To do so, Dr. Dubé will apply a commonly accepted economic technique—choice based conjoint analysis (hereafter, "Conjoint Analysis")—to measure the impact of the "No Preservatives" claim and other product features on consumer demand for the Products. *Id*. The Conjoint Analysis will control for the marketplace realities of competitors to the Products with different product features and different prices. *Id*. Therefore, the analysis will control for the supply-side of the market. *Id*.

The results of the Conjoint Analysis can then be used to compute economic damages in two different ways: the Price Premium method and the Willingness-to-Pay method. *Id*. at ¶ 23.

Under the price premium measure, Dr. Dubé will determine the amount consumers overpaid for the Products because Defendants could inflate their market price due to the use of the "No Preservatives" claim. *Id*. at ¶ 29. Under the willingness to pay measure, Dr. Dubé will

calculate the incremental economic value to Class Members from the benefits they associate with the "No Preservatives" representation on the labels of the Products." *Id*. at ¶ 36. As discussed in more detail in Section VI.A.3, *infra*, both measures of economic damages are generally accepted economic methods for determining on a class-wide basis the economic damages consumers incur from particular claims on product labels.

## F.    Plaintiffs' Purchases Were Typical of Reasonable Consumers

Plaintiffs Ashour and Townes purchased the Products, were exposed to Defendants' misleading and deceptive "No Preservatives" labeling and were deceived by it.

Plaintiff Ashour testified he purchased the following Products: Arizona Green Tea with Ginseng and Honey, Arizona Rx Energy Herbal Tonic and Arizona Mucho Mango. *See* Ex. 35, Ashour Dep. at 95:15-19. Plaintiff Ashour provided details for the purchases of the Products during his deposition and testified he purchased the Products two to three times per week from late 2014 to November 2018. *See id*. at 94:6-97:23. Plaintiff Ashour testified he made "a couple, two, three" purchases of Rx Energy and Arizona Mucho Mango. *See id*. at 116:12-117:24; 119:14-22. Plaintiff Ashour specifically testified—as to all purchases—that he would not have purchased any Product if the "No Preservatives" representation was not present on their labels. *See id*. at 152:17-153:10.

Similarly, Plaintiff Townes testified she purchased the following Products: Arizona Iced Tea with Lemon Flavor, Arizona Arnold Palmer Zero Half Iced Tea & Half Lemonade, Arizona Fruit Punch Fruit Juice Cocktail, Arizona Watermelon Fruit Juice Cocktail, Arizona Golden Bear Lite Strawberry Lemonade, Arizona Raspberry Iced Tea and Arizona Southern Style Real Brewed Sweet Tea. *See* Ex. 36, Townes Dep. at 41:6-19; 29:8-22; 58:22-59:8; 59:14-23; 61:12-62:19; 120:17-121:17. Plaintiff Townes testified she reviewed and relied upon the "No Preservatives" representation on the labels of the Products when making her purchases beginning in 2014. *See id*.

at 45:5-11; 129:16-21; 151:15-21. Plaintiff Townes also testified that the "No Preservatives" representation on the Products' labels "is at the top of my list [sic] what I look for" and understood that she paid more for Products because of the "No Preservatives" representation. *See id*. at 101:24-102:14 ("What I know is that once you have Arizona saying they don't have preservatives […] They can charge what they want. They can up the price."); 129:16-21 ("No preservatives is at the top of my list for what I look for…").

Plaintiffs' purchasing experiences are typical of reasonable consumers and Class Members. Both Plaintiffs reviewed and relied upon Defendants' "No Preservatives" representation at the point of purchase and reasonably believed that the Products did not contain preservatives. Ashour Dep., at 152:17-153:10; Townes Dep., at 45:5-11; 101:24-102:14; 129:16-21; 151:15-21. Had Plaintiffs known the truth about Defendants' misrepresentation and deceptive conduct, they would not have purchased the Products or would have paid less for them. *Id*.

## III.  STANDARD FOR CLASS CERTIFICATION

In determining whether a class should be certified, the question is not whether the plaintiff will prevail on the merits, but whether, based on the court's factual and legal determinations, the requirements of Rule 23 are established by a preponderance of the evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011). It is well-established in this Circuit that while "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 385 (S.D.N.Y. 2016) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011))). Thus, "a court 'should not assess any aspect of the merits unrelated to a Rule 23 requirement.'" *Goldemberg*, 317 F.R.D. at 385. "Merits questions may be considered to the

extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466. "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision." *Id.* Although the Court must conduct a rigorous analysis in assessing the propriety of class certification, "[t]he Second Circuit gives Rule 23 a 'liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.'" *Gucciardo v. Titanium Constr. Servs., Inc.*, No. 16-1113 (LGS), 2017 WL 3738777, at *3 (S.D.N.Y Aug. 30, 2017) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). Any doubt as to the propriety of certification should be resolved in favor of certifying the class because denying class certification will almost certainly terminate the action and be detrimental to the Class Members. *See Marisol A.*, 126 F.3d at 377; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("[W]hen a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.").

Here, Plaintiffs allege violations of the CLRA and California's express warranty law, Cal. Com. Code § 2313, for a proposed class of "all persons who purchased Defendants' Products within the State of California for personal use from January 1, 2017 to January 1, 2023." Plaintiffs also allege violation of GBL sections 349 and 350 for a proposed class of "all persons who purchased Defendants' Products in the State of New York for personal use from January 1, 2019 to January 1, 2023." Plaintiffs' proposed Classes meet all of Rule 23's certification requirements, which include numerosity, commonality, typicality and adequacy under Rule 23(a); and predominance and superiority under Rule 23(b)(3). Indeed, district courts in the Second Circuit conclude that consumer protection claims like Plaintiffs' are "ideal for class certification." *See, e.g.*, *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 121 (E.D.N.Y. 2019); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 530 (E.D.N.Y. 2017); *Sharpe v. W&W Concentrate Co.*,

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

No. 19-cv-768 (BMC), 2021 WL 3721392 (E.D.N.Y. July 23, 2021); *Pizzaro v. Sazerac Co., Inc.*, No. 23-CV-2751 (KMK), 2025 WL 2682673 (S.D.N.Y. Sept. 18, 2025). The proposed Classes are also ascertainable in that they are defined according to objective criteria. *In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017).

## IV.    <u>THE PROPOSED CLASSES ARE CLEARLY DEFINED</u>

As an initial matter, Plaintiffs' proposed Classes are "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 257, 264-65. "This modest threshold requirement will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269. Here, the proposed Classes are objectively defined as:

**California Class**: All persons who purchased Defendants' Products within the State of California for personal use from January 1, 2017 to January 1, 2023.[2]

**New York Class**: All persons who purchased Defendants' Products within the State of New York for personal use from January 1, 2019 to January 1, 2023.

Excluded from the Classes are government entities, Defendants, any entity in which they have a controlling interest, Defendants' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries and assignees, as well as Defendants' counsel, Plaintiffs' counsel, your Honor and the members of their immediate families and judicial staff.

The Class definitions are imminently objective as they are simply comprised of every person who purchased at least one of the Products for personal use in New York and California during the Class Periods. Simply put, a person either purchased one of the Products or they did

---

[2] Plaintiffs reserve the right to modify the class definitions. *See Avagliano v. Sumitomo Shoji Am., Inc.*, 103 F.R.D. 562, 573 (S.D.N.Y.1984) (citing *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984) (holding the Class definition (including the definition of the Class and Class Periods) can always be modified as issues are redefined for trial)).

not. *See Prescod v. Celsius Holdings, Inc.*, No. 19STCV09321, 2021 WL 5234499, at \*11 (Cal. Sup. Aug. 2, 2021) ("Class members would know whether or not they were members of the class (as they would be able to determine whether they purchased the Celsius products during the class period)").

## V.    THE PROPOSED CLASS SATISFIES THE RULE 23(a) FACTORS

### A.    Rule 23(a)(1): The Class is Sufficiently Numerous

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable." Numerosity is satisfied if the proposed class consists of forty or more members. *See Conisol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012). Moreover, "[p]laintiffs need not establish the precise number of potential class members since courts are empowered to make common sense assumptions to support a finding of numerosity." *Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (internal quotations omitted).

Here, the Class is "obviously numerous." *Marisol A.*, 126 F.3d at 376. The Products are purchased by consumers each year in thousands of supermarkets, convenience stores, coffee shops and other outlets across the country. During the respective Class Periods, Defendants sold ███████████████ of units of the Products in the State of California and ███████████████ of units of the Products in the State of New York. *See* ███████████████; Ex. 37, Christiansen Dep., at ██████████. Accordingly, the Classes clearly satisfy the numerosity prerequisite of Rule 23(a).

### B.    Rule 23(a)(2): Questions Of Law and Fact Are Common to the Class

As the Supreme Court held in *Dukes*, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of

its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Thus, Plaintiffs satisfy commonality where there is a common issue that "drive[s] the resolution of the litigation' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "Commonality does not mandate that all class members make identical claims and arguments." *Civic Ass'n of the Deaf v. Giuliani*, 915 F. Supp. 622, 633 (S.D.N.Y. 1996) (certifying class). Indeed, "[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement." *Dukes*, 564 U.S. at 369; *see also In re Whirlpool Corp. Front-Loading Washer Prods Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) ("We start from the premise that there need be only one common question to certify a class."); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 81 (E.D.N.Y. 2007) (noting that commonality is "usually a minimal burden for plaintiffs to shoulder.").

Courts examining New York and California law routinely find commonality when claims arise from uniform misrepresentations. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) ("[F]raud claims based on uniform misrepresentations to all members of a class are appropriate subjects for class certification because, unlike fraud claims in which there are material variations in the misrepresentations made to each class member, uniform misrepresentations create no need for a series of mini-trials." (internal quotations and citations omitted)); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (S.D.N.Y. 2015) ("A common question with respect to the second theory of liability is whether the [label] claim is false and/or misleading. The answer to this question is common to all class members, and is apt to drive the resolution of this litigation."); *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014) (common question in a consumer class action is whether a product's manufacturer "defrauded purchasers"

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

by making a specific claim on the product's label); *see also Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607-08 (N.D. Cal. 2018) (finding commonality in case challenging statement of "Made With Real Ginger" on beverage packaging as deceptive and citing other consumer fraud cases in which courts found common questions); *Prescod*, 2021 WL 5234499, at \*14 ("an 'inference of common reliance' may be applied to a CLRA class action that alleges a material misrepresentation consisting of a failure to disclose a particular fact."); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI), 2013 WL 7044866, at \*10 (E.D.N.Y. July 18, 2013) ("where the consumer protection statute at issue supplies an objective test, such claims are considered 'ideal for class certification' because they allow the court to adopt class-wide presumptions of reliance and do not require an investigation into 'class members' individual interaction with the product.'").

In this case, Plaintiffs' and Class Members' claims are based upon the same common contention: Defendants' Products are misleadingly labeled with a uniform "No Preservatives" claim. *See* SAC at ¶¶ 1-10, 33-37; Product Labels; Vultaggio Dep., at 73:19-24, 77:7-19, 92:11-93:7 (establishing the Products have contained the "No Preservatives" label from the mid-1990's through today). Defendants' conduct uniformly impacted Plaintiffs and Class Members because, when purchasing Defendants' "No Preservatives" labeled Products, each relied upon Defendants' misrepresentation. Ashour Dep., at 152:17-153:10; Townes Dep., at 45:5-11; 129:16-21; 151:15-21; *see also* Cronin Rep., ¶¶ 13, 14, 18-25. Despite the "No Preservatives" representation, all the Products contain citric acid in an amount that causes it to function as a preservative in the Products. Meyers Decl., ¶ 70 ("Thus, in all of the Products, citric acid is clearly acting as a preservative."); *see also* Product Formulas; Ex. 32, KNOUSE006733, 7032; Ex. 33, AFI0000038, 99, 113, 703; Angel Dep., at 19:19-20:7.

Defendants' unlawful conduct will be proven by common evidence applicable to Plaintiffs and all Class Members; specifically, Defendants' uniform labeling of the Products as containing "No Preservatives" throughout the Class Periods. Thus, common questions underlying this litigation will focus on Defendants' uniform course of conduct toward Class Members, rather than the conduct of any individual Plaintiff or Class Member. Common questions include but are not limited to:

> (a)   whether the "No Preservatives" representation on each and every Product is false and misleading to a reasonable consumer;
>
> (b)   whether the Products contain a preservative;
>
> (c)   whether Defendants' conduct, as set forth in the SAC, violates the CLRA;
>
> (d)   whether Defendants' conduct, as set forth in the SAC, violates California express warranty law;
>
> (e)   whether Defendants' conduct, as set forth in the SAC, violates GBL § 349;
>
> (f)   whether Defendants' conduct, as set forth in the SAC, violates GBL § 350;
>
> (g)   whether Defendants' conduct violates public policy; and
>
> (h)   whether Plaintiffs and the Class Members were injured and the proper measure of their losses as a result of those injuries.

*See generally*, SAC at ¶¶ 61(a)-(f). These questions are common to the Class and predominate over individual issues. All of these issues are central to the Class Members' claims, and each establishes commonality under Rule 23(a)(2). The commonality prerequisite of Rule 23(a) is satisfied.

**C.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of Those of the Class**

Rule 23(a)(3) requires that the named plaintiffs' claims be "typical" of the class. Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is not demanding." *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 107 (S.D.N.Y. 2011); *Prescod*, 2021 WL 5234499, at *24 (same). The requirement is met when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Balderramo v. Go N.Y. Tours Inc.*, No. 15-2326 (ER), 2017 WL 2819863, at *3 (S.D.N.Y. June 28, 2017) (quoting *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)); *see also Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968) ("If we were to deny a class action simply because all of the allegations of the class to not fit together like pieces in a jigsaw puzzle, we would destroy much of the utility of Rule 23."); *Classen v. Weller*, 145 Cal. App. 3d 27, 45 (1983); *Prescod*, 201 WL 5234499, at *24 ("it is not necessary that the class representative have personally incurred all of the damages suffered by each of the other class members."). Consumers of the same product, exposed to the same labels and packaging, will have almost entirely the same claims with, at most, minor variations in the facts surrounding their individual purchases. *See Ebin*, 297 F.R.D. at 566-67 (plaintiff purchasers of mislabeled olive oil products were typical of other potential class members despite any differences relating to their individual purchasing decisions); *Hasemann*, 331 F.R.D. at 268-69 (concluding that the plaintiffs satisfied the typicality requirement and noting that several courts have found typicality in analogous false advertising cases under the GBL); *Sharpe*, 2021 WL 3721392, at *4-5; *Pizzaro*, 2025 WL 2682673, at *4 ("Here, [p]laintiffs and [c]lass [m]embers' claims arise out of the same course of conduct by [d]efendant: the allegedly misleading labeling of malt beverages.").

Typicality is met here as Plaintiffs and the proposed Class assert the same claims arising from the same course of conduct; Defendants' misrepresentation on the label of every Product they sold to Class Members during the Class Periods that the Products contained "No Preservatives," even though they contained a preservative—citric acid.

Further, Plaintiffs' claims are typical of all other Class Members' claims regardless of which Product they purchased because all Products were labeled with the "No Preservatives" representation. *See* Ashour Dep., at 152:17-153:10; Townes Dep., at 45:5-11; 129:16-21; 151:15-21; Product Labels; Vultaggio Dep., at 73:19-24, 77:7-19, 92:11-93:7 (confirming the Products have contained the "No Preservatives" label during the Class Periods). Where misrepresentations across product lines are identical, "the dissimilarity of the accused products is relatively unimportant." *Brown*, 913 F. Supp. 2d at 892; *Hasemann*, 331 F.R.D. at 269 ("Plaintiffs are arguing that the same course of events—the unlawful conduct of false labeling and marketing—resulted in price premiums for an entire product line. These arguments will be typical for the entire class of consumers that purchased anything from that product line.").

**D.      Rule 23(a)(4): Plaintiffs and Counsel Will Adequately Represent the Class**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, adequacy is satisfied unless plaintiff's interests are antagonistic to the interest of other members of the class." *Sykes*, 780 F.3d at 90; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.")); *Prescod*, 2021 WL 5234499, at *25. "Class representatives must have a sufficient interest in the outcome of the case to ensure vigorous advocacy." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406. "Plaintiffs must also have attorneys who are 'qualified, experienced, and generally able to conduct the litigation.'" *Id*. (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

Courts in the Second and Ninth Circuits consistently apply a lenient standard for meeting both of the adequate representation prerequisites. *Diaz v. Residential Credit Solutions, Inc.*, 299 F.R.D. 16, 20-21 (E.D.N.Y. 2014); *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 (JCx), 2013 WL 3353857, at \*7-8 (C.D. Cal. July 1, 2013). For the first requirement (adequacy of class representatives), Second and Ninth Circuit courts require that plaintiffs merely show that "no fundamental conflicts exist" between a class's representative(s) and its members. *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013); *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994). For the second requirement (adequacy of class counsel), courts in both Circuits generally presume it is met, only finding it is not met in instances where class counsel represents other clients whose interests are inherently at odds with the class's interests or also acts as a class representative. *Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984); *McGhee v. Bank of Am.*, 60 Cal. App. 3d 442, 450 (1976).

Here, the adequate representation prerequisite is satisfied. Plaintiffs have no fundamental conflicts with other Class Members' interests, as they seek the same type of relief (damages) and assert the same legal claims, as other Class Members. *See* Ashour Dep., at 152:17-153:10; Townes Dep., at 45:5-11; 129:16-21; 151:15-21. They have diligently served as class representatives throughout this litigation, providing discovery responses and providing deposition testimony. *See generally*, Ashour Dep.; Townes Dep. Similarly, Plaintiffs' counsel are qualified, experienced and able to conduct the litigation and have extensive experience in class action litigation and consumer advocacy. *See* Weiner Decl., ¶¶ 3-10, Ex. 1, Pearson Warshaw, LLP firm resume; Ramirez Decl., ¶¶ 3-7, Ex. A, Reese LLP firm resume. The adequacy prerequisite is met.

## VI.    THE PROPOSED CLASS MEETS THE RULE 23(b)(3) FACTORS

Rule 23(b)(3) authorizes class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

### A.    Common Questions of Law or Fact Predominate Over Any Individual Issues

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459. "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 118. "[T]he Supreme Court has also instructed that Rule 23(b)(3) does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof . . . individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Sykes*, 780 F.3d at 81 (citations and internal alterations omitted); *Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 208 (E.D.N.Y. 2015); *Sharpe*, 2021 WL 3721392, at *5-9. The predominance inquiry "tests whether proposed class actions are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. Predominance is also "readily met in certain cases alleging consumer . . . fraud." *Id.* at 625. Rule 23(b)(3) demands only predominance of common questions, not exclusivity or unanimity of them.

Common issues unquestionably predominate in this litigation with respect to two important issues that the Class must prove: whether Defendants' "No Preservative" representation was deceptive and whether it was material to consumers. *See* Weiner Decl. ¶¶ 11-15; Ex. 2. Because deceptiveness is evaluated under both New York and California law pursuant to the objective

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

reasonable consumer standard, the Class will be able to establish deception through generalized proof. *See Marcus v. AT&T*, 138 F.3d 46, 64 (2d Cir. 1998) (GBL §§ 349, 350); *Goldemberg*, 317 F.R.D. at 389; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (N.Y. Ct. App. 1995) (same); *see also Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-GPC, 2014 WL 688164, at *11, *13 (S.D. Cal. Feb. 21, 2014) (CLRA); *Prescod*, 2021 WL 5234499, at *23 (finding predominance satisfied as to the CLRA and California express warranty when a "no preservatives" label was uniform during the class period and common evidence existed that citric acid acted as a preservative).

Because materiality is determined by an objective "reasonable consumer" standard, this issue also is common to the class. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 409 ("[T]he Supreme Court has held materiality 'is a question common to all members of the class's when, as here, the materiality of an alleged misrepresentation is judged according to an objective standard." (citing *Amgen*, 568 U.S. at 459)).

In *Goldemberg*, the court certified a New York class under GBL § 349 and § 350 as well as a California class under the CLRA involving "natural" products where the plaintiffs asserted that all class members were subjected to the same deceptive representation, including "the labeling of Aveeno products with the Active Naturals trademark," which led consumers to believe that the products were, in fact, natural when the majority of the ingredients were synthetic and artificial. *Goldemberg*, 317 F.R.D. at 387. The court held "[a]ssuming the product and its labeling and packaging remains constant and is uniform between consumers, then the only question is how such packaging would have influenced a consumer under the objective test." *Id.* at 389. The court defined the objective test as "whether it was 'likely to have misle[d] a reasonable consumer acting reasonably under the circumstances" *Id.* (quoting *Oswego*, 85 N.Y.2d at 26). The court also held

that factual distinctions between individual class members did not defeat a finding of commonality, including, for example, whether "some consumers . . . purchased the product because they liked the color of the bottle, without regard to the Active Naturals labeling, and will continue purchasing the product for that reason." *Goldemberg*, 317 F.R.D. at 399.

"[P]roduct specific labeling and packaging claims . . . do not require proof as to individual understandings and can be judged based on the objective standard . . . . The materiality of potentially deceptive representations is similarly subject to objective proof." *Id.* at 389. "Therefore, common questions predominate over individual issues" and the requirements of Rule 23(b)(3) are met. *Id*. A jury will decide whether the challenged labeling claim is deceptive or not, for all the Products, with respect to all Class Members. *See Sykes v. Mel S. Harris & Assocs., LLC*, 285 F.R.D. 279, 293 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70 (2d Cir. 2015) (certifying GBL § 349 claim where "[e]very potential class member's claim arises out of defendants' uniform, widespread practice" and therefore whether this practice violates GBL § 349 "does not depend on individualized considerations"); *Seekamp v. It's Huge, Inc.*, No. 09-00018 (LEK), 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (certifying GBL § 349 claim where the alleged legality of the representation was the "'gravamen of every class member's claim, and so may be proven on a class-wide level'" (quoting *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 435 (2009))); *Pizzaro*, 2025 WL 2682673, at *6-7 (rejecting defendant's argument that individual questions predominate the materially misleading element because there are different labels on different bottle sizes.); *In re Scotts*, 304 F.R.D. at 410 (quoting *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C D. Cal. 2012)) ("The objective test[s] ... 'under the [] CLRA is ideal for class certification because they will not require the court to investigate class members' individual interaction with the product.'"); *Prescod*, 2021 WL 5234499, at *23

(commonality analysis for an express warranty claim under California law tracks the CLRA analysis). Indeed, label representations are presumed to be material. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 327 (2011) ("Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source.") Thus, as in *Amgen*, the Class here is "entirely cohesive: it will prevail or fail in unison. In no event will the individual circumstances of particular class members bear on the inquiry." *Amgen*, 568 U.S. at 460; *see also Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("There is a single, central, common issue of liability: whether the Sears washing machine was defective.").

Defendants' use of the "No Preservatives" representation on the Product labels was consistent and "can be judged based on the objective standard," and "[t]he materiality of potentially deceptive representations is . . . subject to objective proof." *Goldemberg*, 317 F.R.D. at 389; *Guido*, 2013 WL 3353857, at *12 ("[c]ausation as to each class member is commonly proved more likely than not by materiality.") Thus, Rule 23's predominance requirement is met.

      1.      <u>Common Issues Predominate Regarding Liability on Plaintiff Townes's GBL §§ 349 and 350 Claims</u>

Because common proof can be used to prove each element of Plaintiffs' and the proposed Classes' claims, common issues predominate over any individual concerns. To successfully assert a claim under either GBL sections 349 or 350, a plaintiff must prove "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). In assessing whether an act is materially misleading under the GBL, the inquiry is whether, objectively, the act is "likely to mislead a reasonable consumer acting

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

reasonably under the circumstances." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007); *see also Orlander*, 802 F.3d at 300. Moreover, "[n]either Section 349 nor 350 requires proof of reliance." *Famular v. Whirlpool Corp.*, 16 CV 944 (VB), 2019 WL 1254882, at *8 (S.D.N.Y. Mar. 19, 2019); *see also Segovia v. Vitamin Shoppe, Inc.*, No. 14 Civ. 7061 (NSR), 2017 WL 6398747, at *4 (S.D.N.Y. Dec. 12, 2017) (no reliance requirement for either GBL § 349 or § 350); *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *6 (S.D.N.Y. Mar. 30, 2018) (same). Thus, none of the elements of Plaintiff Townes' GBL claims require individualized proof. *See Pizzaro*, 2025 WL 2682673, at *5. The court in *Hasemann* explained:

> For claims under the GBL, the potentially common question of whether a given product's advertising set is misleading can be measured under an objective standard: whether it was likely to have misled a reasonable consumer acting reasonably under the circumstances. The materiality of potentially deceptive representations is similarly subject to objective proof…. [And] to satisfy the causation requirement under the GBL, nothing more is required than that a plaintiff suffer a loss because of defendants' deceptive act.

331 F.R.D. at 274. Thus, courts consistently find that GBL claims meet the predominance requirement because, again as explained in *Hasemann*, 331 F.R.D. at 274, "class members will be able to use generalized proof to make out their claims, including proof of deception, falsity, and pricing decisions" and "the objective standards—including whether the representations would likely have misled a reasonable customer—underlying the elements of the statutes render them particularly well suited to generating common questions." *See also Kurtz*, 321 F.R.D. at 544 (predominance requirement satisfied with respect to the GBL claims); *Goldemberg*, 317 F.R.D. at 389 (same); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 400 (same); *Ebin*, 297 F.R.D. at 568 (same). As such, common questions related to Plaintiff Townes's GBL claims predominate. The New York Class Members were subjected to the same deceptive "No Preservatives" representation, which

led consumers to believe that the Products were, in fact, preservative free, when in reality, the Products contained citric acid. The Products' labeling consistently and uniformly contained the "No Preservatives" representation and as a result, the only question is how Defendants' use of the "No Preservatives" representation on the labeling of the Products influenced consumers under the objective test. *See Goldemberg*, 317 F.R.D. at 389.

2. <u>Common Issues Predominate with Regard to Plaintiff Ashour's California Claims</u>

Plaintiff Ashour's claims under the CLRA and California's express warranty law boil down to a single issue that is susceptible to common proof; whether Defendants' deceptive label is likely to mislead a reasonable consumer. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)). As with Plaintiff Townes' GBL claims, this is an objective test that is subject to common proof. *See Makaeff*, 2014 WL 688164, at *11.

Under the CLRA, only the class representative needs to have relied on the representation; no such showing is required with respect to other members of the class. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009); *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 155-57 (2010); *Mass. Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1293 (2002). Stated differently, "reliance on the alleged misrepresentations may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members." *Makaeff*, 2014 WL 688164, at *13. Similarly, relief under California's express warranty law is available without individualized proof of deception, reliance and injury. *Weinstat v. Dentsply Internat., Inc.*, 180 Cal. App. 4th 1213, 1227-28 (2010) (California express warranty law "focuses on the seller's behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help

define what the seller "in essence" agreed to sell."). Plaintiff Ashour purchased the Products in reliance on the false "No Preservatives" labels and would not have done so had he known the labels were false. *See* Ashour Dep., at 152:17-153:10.

> Under California law, a misrepresentation is material:
>
> If a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question, and as such materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable mind would have been influenced by it.

*Makaeff*, 2014 WL 688164, at *13 (citing *Stearns*, 655 F.3d at 1022). The fact that the statement prominently appeared on every label is evidence of its materiality. *See, e.g.*, *Johns v. Bayer Corp.*, 280 F.R.D. 551, 558-59 (S.D. Cal. 2012); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 669-70 (C.D. Cal. 2009); *see also* Cronin Rep. ¶¶ 13, 14. Numerous courts have applied this inference of reliance to certify CLRA claims and California express warranty claims. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 410; *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *11 (N.D. Cal. June 7, 2011); *Johns*, 280 F.R.D. at 551; *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 340-43 (N.D. Cal. 2010); *Prescod*, 2021 WL 5234499, at *23. As such, predominance is satisfied for Plaintiff Ashour's California claims as California Class Members were subjected to the same deceptive "No Preservatives" representation, which led reasonable consumers to believe that the Products were, in fact, preservative free, when in reality, the Products contained citric acid. The Products' labeling consistently and uniformly contained the "No Preservatives" representation and as a result, the only question is how Defendants' use of the "No Preservatives" representation on the labeling of the Products influenced consumers under the objective test. *See Prescod*, 2021 WL 5234499, at *23. Thus, Plaintiff Ashour's claims under the CLRA and California's express warranty law are susceptible to common proof.

3.    Damages for All Claims Can Be Determined on a Class-Wide Basis

At class certification, Plaintiffs must "establish[] that damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs' method for calculating damages on a class-wide basis must be consistent with their theory of liability by "measur[ing] only those damages attributable to that theory." *Id.*

At this stage, Plaintiffs need only demonstrate the existence of a viable damages model that makes use of common, class-wide evidence. *See Prescod*, 2021 WL 5234499, at *23; *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 414. This remains true after the Supreme Court's decision in *Comcast, supra*, which reaffirmed that the issue of the commonality of damages calculation is just one of the factors in determining the predominance requirement under Rule 23(b)(3). *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (noting that prior to *Comcast*, the fact that damages would need to be determined on an individual basis was insufficient to defeat class certification and declining to "read *Comcast* as overruling these decisions"). "Thus, *Comcast* requires the Court to consider only whether a proposed *methodology* for calculating damages is consistent with the plaintiffs' theory of liability." *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 414. "A plaintiff's expert is not required to perform their analysis at the class certification stage." *Id.* (quoting *Brown*, 2014 WL 6483216, at *19 ("The point for Rule 23 purposes is to determine whether there is an acceptable class-wide [damages] approach, not to actually calculate under that approach before liability is established.")).

"[T]he injury prong of sections 349 and 350 of the GBL may be satisfied through an allegation that a plaintiff overpaid for the product, or stated differently, by a claim that a plaintiff paid a premium for a product based on the defendants' inaccurate representations." *Hasemann*, 331 F.R.D. at 275 (internal quotation and edits omitted); *see also Orlander*, 802 F.3d at 302

(explaining that in some cases the price premium theory "show[s] that [the] plaintiff paid more than they would have for the good but for the deceptive practices of the defendant-sellers").

Similarly, the injury prong of the CLRA and breach of express warranty under California law may be satisfied by a showing that both the named plaintiff and unnamed class members suffered some damage. Plaintiffs need not show "actual damages" under the CLRA claim; only "any damage," which "may encompass harms other than pecuniary damages." *See Steroid Hormone Product Cases*, 181 Cal. App. 4th at 156. Courts routinely accept "price premium" analysis as a means to allow a jury to assess damages on a class basis at trial. *See Miller v. Fuhu Inc.*, No. 2:14-CV-06119-CAS, 2015 WL 7776794, at *21 (C.D. Cal. Dec. 1, 2015) ("[N]umerous courts, including this one, have accepted both [Choice-Based Conjoint Analysis] and [Contingent Valuation Method] as reliable methodologies for calculating price premiums on a classwide basis in consumer class actions."); *Sharpe*, 2021 WL 3721392, at *5-9 (same); *Prescod*, 2021 WL 5234499, at *23 ("The proposed price premium model, in tandem with the conjoint analysis, demonstrate at certification that any individualized issues would not interfere with the calculation of the price premium under the proposed model.").

To demonstrate they can establish class-wide damages, Plaintiffs submit the expert opinion of Jean-Pierre H. Dubé, Ph.D. who confirms a methodology exists to compute class-wide economic damages based on the Products' "No Preservatives" representation. *See generally* Dubé Rep.

There can be no question as to Dr. Dubé's qualifications to opine on this matter. He is the Sigmund E. Edelstone Professor of Marketing at the University of Chicago Booth School of Business, where he has been on the faculty since 2000. Dubé Rep., ¶ 2; App'x A. Dr. Dubé completed a Ph.D. in economics from Northwestern University in 2000 and a B.S. in quantitative

methods in economics from the University of Toronto in 1995. *Id.* During his teaching career, Dr. Dubé has taught MBA and executive courses in areas including marketing strategies, marketing analytics and pricing strategies, several of which cover frameworks for modeling and empirically estimating consumer willingness to pay and consumer demand, as well as conjoint analysis and its use for demand estimation. *Id.* His research focuses broadly on topics related to consumer demand for branded goods, including demand-side and supply-side issues. *Id.* Dr. Dubé also works as an expert witness in the area of marketing and packaging claims and has real-world experience consulting with firms in a variety of industries about consumer preferences and willingness to pay. *Id.* at ¶¶ 8, 9.

Dr. Dubé confirms he can utilize a Conjoint Analysis, which consists of a choice based conjoint survey to provide the necessary demand inputs required to measure Plaintiffs' and the Class's economic damages. *Id.* at ¶ 22. Specifically, the Conjoint Analysis will measure consumers' preferences for the "No Preservatives" representation. *Id.* The Conjoint Analysis will control for the presence of differentiated competing brands charging different prices on the supply side of the market. *Id.* The Conjoint Analysis's preference estimates can be used to implement a marketplace simulation to measure: (1) the price premium paid by consumers, which will account for the oligopoly competition between Defendants and other supply-side competitors; (*id.* at ¶ 34), and (2) consumers' willingness to pay, which is "retrospective total dollar compensation to the entire class of consumers to *make them whole* for the undelivered benefits associated with the Challenged Claim[3] they believed they were receiving at the time of purchase." *Id.* at ¶ 39.

---

[3] Dr. Dubé defines "Challenged Claim" as the Products' label claim of "No Preservatives." *See* Dubé Rep., ¶ 11.

**Price Premium Calculation**. Dr. Dubé will calculate a price premium, which measures the amount all Class Members overpaid because of the extent to which Defendants could inflate the Products' market price due to the "No Preservatives" representation. *Id*. at ¶ 29. This will include a "marketplace simulation of the oligopoly market in which the Defendants and their main competitors compete on prices," with the assumption that each company sets its prices to maximize the profits from the sale of its brands. *Id*. at ¶ 34. It will also include consideration of each company's demand and marginal costs, and the use of a Conjoint Analysis to determine consumer demand in the but-for world. *Id*. at ¶ 34.

**Willingness to Pay Calculation.** Dr. Dubé will also calculate willingness to pay, which measures the incremental economic value to Class Members from the benefits they associate with the "No Preservatives" representation. *Id*. at ¶ 36. This accounts for different ways in which consumers suffer economic harm: (1) they lose the perceived benefits of the "No Preservatives" representation; (2) they might change their purchase decision; and (3) they might not purchase any tea or juice product at all. *Id*. Again, a Conjoint Analysis will measure consumer preferences based on survey data and a statistical procedure to estimate consumers' preferences using the survey data. *Id*. at ¶¶ 38, 39.

Choice-based conjoint analysis is one of the most widely used conjoint techniques in the world. *Id*. at ¶ 75. It mimics the purchase process for consumers by presenting a set of product profiles and asking which the respondent would purchase and is rooted in "random utility theory," a well-tested theory of choice behavior. *Id*. This approach will allow Dr. Dubé to measure consumer preferences and utilize a standard microeconomic approach to calculate economic damages. *Id*. at ¶¶ 76-77.

Numerous courts have approved of conjoint analysis as a methodology to determine the price attributable to specific product features such as a label claim. *See, e.g.*, *Fitzhenry-Russell*, 326 F.R.D. at 603-06, 615 (accepting conjoint analysis methodology and certifying class); *see also Hasemann*, 331 F.R.D. at 277 ("At this initial stage of class certification, [p]laintiffs proffered models [including conjoint analysis model] are sufficient to meet the *Comcast* test.") (certifying class); *Miller*, 2015 WL 7776794, at *21 ("[N]umerous courts, including this one, have accepted both [choice-based conjoint analysis] and [contingent valuation method] as reliable methodologies for calculating price premiums on a classwide basis in consumer class actions."); *Sharpe*, 2021 WL 3721392, at *5-9 (same); *Prescod*, 2021 WL 5234499, at *23 ("The proposed price premium model, in tandem with the conjoint analysis, demonstrate at certification that any individualized issues would not interfere with the calculation of the price premium under the proposed model."); *see also Pizzaro*, 2025 WL 2682673, at *7-10 (the court rejected the defendant's argument "that there is no price premium because it line prices the products" and accepting conjoint analysis methodology and certifying class); *Benson v. Newell Brands, Inc.*, No. 1:19-cv-06836 RAG, 2021 WL 5321510, at *5 (N.D. Ill. Nov. 16, 2021) (accepting Dr. Dubé's conjoint analysis methodology and certifying class), *petition denied*, No. 21-8034 (7th Cir. Dec. 6, 2021).

Plaintiffs are thus capable of meeting their burden of demonstrating the existence of a viable damages methodology that makes use of common, class-wide evidence under both New York and California law. But to be clear, Plaintiff Townes does not, and will not, need to *quantify* a premium with respect to her GBL claims. So long as a class-wide economic injury is demonstrated, the GBL provides Class Members $550.00 in statutory damages for ***each*** Product sold by Defendants during the Class Period ($50.00 under GBL § 349(h) and $500.00 under GBL

§ 350-e).[4] In other words, if Plaintiff Townes can prove some premium related to the "No Preservatives" claim greater than zero—*i.e.*, if she can prove fact of damages, not necessarily amount of damages—then she will be entitled to statutory damages for each purchase. *See Kurtz*, 321 F.R.D. at 550 ("New York law does not require that the [price premium] must be proven with a specified degree of certitude" given GBL's statutory damages) (citing *Orlander*, 802 F.3d at 302); *id.* at 551 (experts' premium calculations were "largely beside the point" given GBL's statutory damages); *Guido*, 2013 WL 3353857, at *16 ("no expert testimony demonstrating the existence of a measurable impact on [a product's] market price is necessary" when plaintiffs pursue statutory damages under GBL); *Sharpe*, 2021 WL 3721392, at *7 ("there is a separate reason why damages are susceptible to common proof. The GBL offers two different options for damages: plaintiffs can recover the price premium as actual damages, but if those damages are less than the available statutory damages, plaintiffs can choose the latter.").

"Plaintiffs' model survives the minimal scrutiny required under *Comcast* and Rule 23(b)(3)—their theory of liability matches their theory of damages and individualized damages issues will not predominate." *Carpenters Pension Trust Fund v. Barclays PLC*, No. 12-5329 (SAS), 2015 WL 5000849, at *21 (S.D.N.Y. Aug. 20, 2015).

---

[4] Courts in New York hold that the statutory award is *per incident* not per class member. *See, e.g.*, *Bardsley v. Nonni's Foods LLC*, No. 20 Civ. 2979 (NSR), 2023 WL 3570550, at *5 (S.D.N.Y. May 18, 2023) ("available damages under GBL . . . is equal to the number of total boxes [of biscotti] sold multiplied by the statutory damages."); *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 452 (N.D.N.Y. 2022) (rejecting a "per class member" calculation); *Kurtz*, 321 F.R.D. at 526 ("statutory damages . . . it is $50 or $500 per purchase"); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 572-73 (S.D.N.Y. 2021) (class members entitled to $500.00 in GBL damages for each falsely advertised product, resulting in $28,867,500.00).

B.     **A Class Action Is the Superior Method of Adjudicating the Controversy**

Rule 23(b)(3) requires a class action to be "superior to other available methods for fairly and effectively adjudicating the controversy." The Court must consider: (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3). Here, each of the factors weighs in favor of certification.

Each Class Member's interest in bringing their own case is negligible, if not economically irrational, given that the fees and other litigation costs would quickly outstrip any potential recovery. *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415 (citing *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010) ("Where proceeding individually would be prohibitive due to the minimal recovery, the class action device is frequently superior to individual actions.")); *see also In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130-31 (noting the costs of bringing individual actions outweigh the expected recovery).

Plaintiffs are unaware of any other litigation concerning Class Members' claims, and it is desirable to concentrate litigation of the claims in one forum.

VII.    **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully move this Court for an Order certifying the above-identified Classes, appointing Plaintiffs as class representatives and appointing Plaintiffs' counsel as class counsel.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

DATED:   November 17, 2025         */s/ Melissa S. Weiner*

                                                 MELISSA S. WEINER
                    *mweiner@pwfirm.com*
                   RYAN T. GOTT
                    *rgott@pwfirm.com*
                   **PEARSON WARSHAW, LLP**
                   328 Barry Avenue S., Suite 200
                   Wayzata, MN 55391
                   Telephone: (612) 389-0600
                   Facsimile: (612) 389-0610

                   CARLOS F. RAMIREZ
                    *cramirez@reesellp.com*
                   MICHAEL R. REESE
                    *mreese@reesellp.com*
                   **REESE LLP**
                   100 West 93rd Street
                   16th Floor New York, New York 10025
                   Telephone: (212) 643-0500
                   Facsimile: (212) 253-4272

                   *Attorneys for Plaintiffs and Proposed Classes*

             Case No. 1:19-cv-07081-(AT) (OTW)

## <u>WORD COUNT CERTIFICATE</u>

Pursuant to Local Rule 7.1(c) and Judge Torres' Individual Practices in Civil Cases III.D., as well as the parties' joint letter, dated November 3, 2025 (ECF No. 369), Plaintiffs' Memorandum in Support of Plaintiffs' Memorandum for Class Certification contains 10,173 words excluding the caption, index, table of contents, table of authorities, signature block and this certificate.

*/s/ Melissa S. Weiner*
Melissa S. Weiner