# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AHMED ASHOUR, JOY BROWN, )
and CRYSTAL TOWNES, )
individually and on behalf )
of all others similarly )
situated )
)
Plaintiffs, )
)
VS. ) CASE NO. CV 19-7081
)
)
ARIZONA BEVERAGES USA LLC, )
HORNELL BREWING CO., INC., )
BEVERAGES MARKETING USA, INC., )
ARIZONA BEVERAGES HOLDINGS LLC, )
and ARIZONA BEVERAGES )
HOLDINGS 2 LLC, )
)
Defendants. )

---

VIDEO DEPOSITION OF JOY BROWN
TUESDAY, MAY 17, 2022

Reported by: Anne Kielwasser, RPR No. 50901, CSR, CRR

A P P E A R A N C E S

FOR THE PLAINTIFF:

Benjamin E. Shiftan, Esq.
Pearson, Simon & Warshaw, LLP
350 Sansome Street
Suite 680
San Francisco, California 94104
(818) 788-8300
bshiftan@pswlaw.com

FOR THE DEFENDANT

Robert P. Donovan, Esq.
STEVENS & LEE
669 River Drive
Suite 201
Elmwood Park, New Jersey 07407
Telephone: (201) 857-6778
Facsimile: (201) 857-6761
obert.onovan@StevensLee.com

THE LEGAL VIDEOGRAPHER: Saxon Christin

INDEX


| WITNESS: | PAGE: |
|---|---|
| Joy Brown | 5 |
| DIRECT EXAMINATION BY MR. DONOVAN | 5 |
| CROSS-EXAMINATION BY MR. SHIFTAN: | 100 |


*****

EXHIBITS


| | |
|---|---|
| Exhibit No. PB PB 1 , 24-Pack of the Arizona green tea With Ginseng and Honey, marked for identification | 17 |
| Exhibit No. PB PB 2 , receipt dated 02-02-2022, marked for identification | 18 |
| Exhibit No. PB PB 3 , single bottle of the 16-ounce Arizona green tea marked for identification | 21 |
| Exhibit No. PB PB 4 , Costco receipt, marked for identification | 23 |
| Exhibit Nos. PB 5 , PB 6 and PB 7 marked for identification | 29 |
| Exhibit No. PB PB 8 , Costco receipts, dated March 16, 2022, marked for identification | 32 |
| Exhibit No. PB PB 9 , gallon-size bottle, marked for identification | 33 |
| Exhibit No. PB PB 10 , receipt dated 12-20-2021, marked for identification | 34 |
| Exhibit No. PB PB 11 , e-mail, dated 12-15-2021, marked for identification | 55 |
| Exhibit No. PB PB 12 marked for identification | 66 |
| Exhibit No. PB PB 13 marked for identification | 67 |
| Exhibit No. PB PB 14 marked for identification | 68 |
| Exhibit No. PB PB 15 marked for identification | 70 |
| Exhibit No. PB PB 16 marked for identification | 70 |
| Exhibit No. PB PB 17 marked for identification | 71 |
| Exhibit No. PB PB 18 marked for identification | 71 |
| Exhibit No. PB PB 19 marked for identification | 74 |
| Exhibit No. PB PB 20 marked for identification | 74 |
| Exhibit No. PB PB 21 (CONFIDENTIAL) marked for identification | 81 |
| Exhibit No. PB PB 22 marked for identification | 98 |


******

TUESDAY, MAY 17, 2022 10:00 A.M. GARDENA, CA

~ ~ ~

THE VIDEOGRAPHER: Good morning. We are on the record at 9:59 A.M. on May 17th, 2022.

Please note that the microphones are sensitivity and may pick up whispering, private conversations and cellular interference.

Please turn off all cell phones or place them away from the microphones as they can interfere with deposition audio.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the video recorded deposition of Joy Brown, taken by counsel for the defendants in the matter of Ahmed Ashour, et al., versus Arizona Beverages USA LLC, et al., filed in the United States District Court for the Southern District of New York. The case number is 1:19CV07081 AT OTW.

This deposition is being held at 879 West 190th Street, Suite 400, Gardena, Cal. 90248.

My name is Saxton Christin from the firm Veritext. And I am the videographer. The court reporter is Anne Kielwasser from the firm Veritext.

I am not authorized to administer an oath. I am not related to any party in this action, nor am I

financially interested in the outcome. Counsel and all present in the room will now state their appearances and affiliations for the record.

If there are any objections to proceeding, please state them at the time of your appearance, beginning with the noticing attorney.

MR. DONOVAN: Good morning. Robert Donovan on behalf of the defendants.

MR. SHIFTAN: Ben Shiftan for the plaintiffs.

THE VIDEOGRAPHER: Thank you, counsel.

Will the court reporter please swear in the witness.

~ ~ ~

JOY BROWN,

having been duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. DONOVAN:

Q. Good morning, Ms. Brown.

A. Good morning.

Q. My name is Bob Donovan. I'm an attorney for the defendants in this case, and I want to thank you again for agreeing to appear here in person for this deposition.

And I want to start off with some instructions and some basic guidelines to follow, and one of them is just to understand that even though that we're

in this law office, this proceeding is a court proceeding. So your testimony would have the same evidentiary worth as if you were in court testifying. So it's very important for you to understand that when I'm asking questions and you answer them, the Court is going to presume that you understood the question.

So, I'm here to find out what you know. So if there is a question that you don't understand, please tell me, and I'll try to figure out a way to ask you a question that is understandable.

There could be a time when I asked questions where your attorney will object. I ask that you refrain from answering until the objection is on the record.

Just generally speaking, the only time you could be instructed not to answer is if it deals with privilege. But in order to keep the record clear, wait till I finish the question before you answer, because that way it's on the record, and then your attorney would have an opportunity to object if he wants to, and then you can go ahead and answer.

I am looking for, among other things -- well, I'm looking for facts, but in connection with facts, I'm also looking probably for dates and amounts and times and such. So reasonable approximations are fine. The

other thing is, even though we have a video -- rather a video of this, the transcriber, the stenographer, here, can only transcribe what you say. So nonverbal gestures like nodding of the head and such would make the record unclear. So I'd ask that you verbally answer all questions. Okay?

THE WITNESS: Understood.

MR. SHIFTAN: Objection as to form. There's a lot in there. But carry on.

MR. DONOVAN: Okay.

BY MR. DONOVAN:

Q. Okay, do you understand those instructions?

A. I do.

Q. All right. Are you under any medication at all that would impede your ability to understand and answer any questions?

A. No.

Q. And have you ever been deposed before?

A. No.

Q. And can I have your date of birth?

A. 6-5-77.

Q. And where do you reside?

A. Los Angeles.

Q. May I have the address?

A. .

MR. SHIFTAN: We'll mark that confidential.

MR. DONOVAN: Of course.
BY MR. DONOVAN:
Q. , I'm sorry.
A. .
Q. And how long have you resided there?
A. Approximately eight years.
Q. And before residing at where did you live?
A. Out of state.
Q. Where?
A. Mississippi.
Q. Where were you born?
A. Los Angeles.
Q. How long did you live in Mississippi?
A. Just shy of four years.
Q. So, just in terms of rough approximations, you moved to Los Angeles in -- 20 --
A. 2011, 2012-ish.
Q. And who do you live with at Brighton Avenue?
A. My mother lives with me.
Q. Anyone -- anybody else?
A. No.
Q. Are you married?
A. No.
Q. Do you have children?

A. No.
Q. Can I ask you the --
Did you graduate high school?
A. Yes, I did.
Q. Okay, where?
A. Westchester High.
Q. In where, what town?
A. That's LA, by the airport.
Q. What year did you graduate?
A. High school, 1995.
Q. What about college? Did you ever have any college education?
A. I have a bachelor's degree in liberal studies from Cal State University Dominguez Hills.
Q. And when did you obtain that degree?
A. 2003.
Q. And are you employed?
A. Yes.
Q. And who is your employer?
A. Amtrak.
Q. And what do you do for Amtrak?
A. I'm a passenger train conductor.
Q. And how long have you worked for Amtrak in any capacity?
A. July of this year will make 16.

Q. And is that a full-time position at Amtrak?
A. It is.
Q. And do you have a -- currently, have a route that you take?
A. I do.
Q. And what is that?
A. Four days a week roundtrip to San Diego, one day a week roundtrip to Santa Barbara.
Q. And the home on Brighton Avenue, is that an apartment or a house?
A. It is a house.
Q. Did you prepare for this deposition?
A. What do you mean by "prepare"?
Q. Did you review any documents before the deposition to prepare for today?
MR. SHIFTAN: Just to be clear, you're going to answer that as a "yes" or "no," but just don't divulge any communications you had with any attorneys.
THE WITNESS: Yes.
BY MR. DONOVAN:
Q. Okay. You did review documents. What documents did you review?
MR. SHIFTAN: Hold on a second -- umm --
MR. DONOVAN: Well, I'll caution the witness.
BY MR. DONOVAN:

Q. I'm not looking for any communications that you had with your lawyers. That's privileged. Any documents that you reviewed that were not privileged to prepare for this deposition.

MR. SHIFTAN: I still think that that would call for --

Do you want to ask her if she --

I think the standard is if it's saying that she reviewed to refresh her recollection -- that would probably --

MR. DONOVAN: I can ask her. I think that's for debate.

BY MR. DONOVAN:

Q. Did you review any pleadings in the case?

A. No.

Q. Did you review any interrogatory answers in the case?

A. Interrogatories meaning the answers I've already --

Q. Correct.

MR. SHIFTAN: Objection as to form.

Are you talking about in general or when?

MR. DONOVAN: I'm going to go back to the same question.

BY MR. DONOVAN:

Q. Can you tell me what documents, if any, you reviewed in preparation for this deposition.

MR. DONOVAN: It's a totally permissible question, Counsel.

MR. SHIFTAN: Objection as to form. That's not a permissible --

MR. DONOVAN: So, you're directing her not to answer.

MR. SHIFTAN: That question as phrased: "Can you tell me?" She can answer that "yes" or "no."

MR. DONOVAN: She already did.

MR. SHIFTAN: Why don't you can ask it again now.

MR. DONOVAN: Because -- well, you're objecting. And --

Well, the record will show what it will show.

BY MR. DONOVAN:

Q. How much time did you prepare to --

How much time did you take to prepare for this deposition?

A. Just, maybe an hour review of it.

Q. Did you speak to your lawyers to prepare for the deposition?

A. Yes.

Q. And how long was that discussion?
A. In total? Three to four hours, over periods of time.
Q. And on how many occasions did you speak to them in -- during that three to four hours period?
A. How many -- several occasions. Verbal? Can you --
Q. Yeah, we'll start with just --
A. Narrow it down a little for me.
Q. Okay. You spoke -- you communicated with your lawyers to prepare for this deposition, right?
A. Either in written or --
Which form do you mean?
Q. Either or both.
MR. SHIFTAN: Objection to form.
MR. DONOVAN: Well, I'll try to make it --
THE WITNESS: Okay.
(Simultaneous speaking)
THE WITNESS: Can you rephrase the question.
BY MR. DONOVAN:
Q. Did you speak to your lawyers over the telephone to prepare for this deposition?
A. Yes.
Q. Okay. And how many times did you do that?
A. Approximately four.

Q. And did you meet with them in person to prepare for this deposition?
A. Yes.
Q. How many times did you do that?
A. Once.
Q. When did you do that?
A. This morning.
Q. And how long was that session where you met with your lawyer?
A. Thirty minutes.
Q. Was anybody on the phone as well during that session when you met --
Let's back up.
A. Well, that's a different question. You're asking me in-person meeting now.
Q. The 30-minute session that you had this morning, is that with Mr. Shiftan?
A. Correct.
Q. Was anybody on the phone during that session as well?
A. No.
Q. It was just you and Mr. Shiftan.
A. Correct.
Q. Okay. So, other than that in-person session for about 30 minutes, that's the only in-person session you had

to prepare for this deposition.
A. That is correct --
Well, can you rephrase --
Say the question again? I'm sorry.
Q. Other than the 30-minute session that you had with Mr. Shiftan this morning --
A. Correct.
Q. -- that's the only in-person meeting you had with your lawyers to prepare for this deposition.
A. At the -- in-person meeting, yes.
Q. Physically in person?
A. Physically in person, yes.
Q. I'm not trying to trick you on that one.
A. Okay, 'cause --
Q. I'm not trying to trick you at all. I'm just trying to find out --
A. Right.
Q. -- how long you took in person to meet. So that's about a half hour.
A. Correct.
Q. I got that. And when you're on the phone talking to your lawyers to prepare for this deposition, roughly, another three, three and a half hours?
A. Over a period of --
MR. SHIFTAN: Objection as to form.

THE WITNESS: Over periods of time, yes.

BY MR. DONOVAN:

Q. We'll back up with the instructions which were objected to. I'm going to say again. When I ask a question, your attorney may object, and he may object as to form. That's not a basis not to answer the question if you understand the question. Do you understand that?

A. Uh-huh. Yes.

Q. Okay. You got that.

A. Yes.

Q. I noticed when you came into the deposition, you brought some product in. Is that something that you're bringing in response to a request in this case?

A. Yes.

MR. SHIFTAN: Do you want me to put it on the table?

MR. DONOVAN: Sure. Please.

THE WITNESS: Yes.

MR. DONOVAN: Let's have the reporter mark it. We'll just do it one at a time. Why don't we just do it one at a time so it's not all in front of the witness.

MR. SHIFTAN: Do you want to --

MR. DONOVAN: Not -- not -- we'll just do it sequentially, that's all.

MR. SHIFTAN: Okay.

MR. DONOVAN: Thank you, though.
(Exhibit No. PB1, 24-Pack of the Arizona Green Tea With Ginseng and Honey, marked for identification.)
(Discussion off the record.)
BY MR. DONOVAN:
Q. Okay, I'm going to show you PB1, which is in front you.
A. Uh-huh.
Q. Can you tell me what that is?
A. It's a 24-Pack of the Arizona Green Tea With Ginseng and Honey.
Q. Did you purchase that?
A. I did.
Q. When?
A. Approximately, I would say a couple of months ago? I don't know the exact date without looking at a -- referring to a receipt.
Q. Now, you've produced the receipts in this case. You did that, right?
A. Yes.
Q. Is one of the receipts you produced relevant to this product marked PB1?
A. Yes.
Q. Now, you say a few months ago. So, would you say roughly --

A. This is May, so, January, February-ish.
Q. Do you remember where you purchased PB1?
A. Most likely between one of two places, either Costco or the Food 4 Less grocery chain.
Q. Are you confident you purchased it in 2022?
MR. SHIFTAN: Objection as to form.
THE WITNESS: I'm sorry.
BY MR. DONOVAN:
Q. Are you confident that you purchased PB1 in 2022?
MR. SHIFTAN: Same objection.
THE WITNESS: Yes.
BY MR. DONOVAN:
Q. And do you remember how much it was? How much it cost, rather?
A. Anywhere between 10 and $12 for the case, somewhere there, about.
MR. DONOVAN: Can you mark that as PB 2, please.
(Exhibit No. PB 2, receipt dated 02-02-2022, marked for identification.)
MR. SHIFTAN: This is PB 2.
MR. DONOVAN: PB 2, yes.
BY MR. DONOVAN:
Q. Let me show you what's been marked PB 2. Can you tell me what that is?

A. It is a receipt from Costco dated February 2nd, 2022.

Q. Do you know whether that receipt reflects your purchase of PB1?

MR. SHIFTAN: Objection, form.

MR. DONOVAN: What is objectionable to form to that question?

MR. SHIFTAN: You're asking her to --

This is a receipt from Costco. You're asking her to look at it right now and deduce whether this exact purchase is on here.

MR. DONOVAN: That's not a valid objection to form. You're asking --

MR. SHIFTAN: I'm not -- I don't --

Do you want to rephrase your question?

MR. DONOVAN: No, I don't. I asked you: Do you know whether PB 2 relates to the products she purchased to PB 1.

THE WITNESS: Well, I -- in reference to --

MR. SHIFTAN: Objection as to form.

But you can answer.

THE WITNESS: There is a purchase for 10.99 of the Arizona Green Tea, and this is a 24-pack of Arizona Green Tea. So, yes, I would say this refers to this.

BY MR. DONOVAN:

Q. PB 2 relates to your purchase of PB 1.
A. That's correct.
MR. SHIFTAN: Objection as to form.
BY MR. DONOVAN:
Q. And that purchase occurred on February 2, 2022?
A. Yes.
Q. Why did you purchase the product reflected in PB 2?
MR. SHIFTAN: Are you referring to the -- to the specific product on PB 2?
MR. DONOVAN: Counsel, that's an improper objection, and you're getting to a point where you're speaking --
MR. SHIFTAN: I'll object to form then. I just want to make sure the record is clear.
MR. DONOVAN: That's fine, that's fine.
MR. SHIFTAN: Okay.
THE WITNESS: I'm sorry. What is --
BY MR. DONOVAN:
Q. Why did you buy the product reflected in PB 2?
MR. SHIFTAN: Objection to form.
You can answer.
THE WITNESS: I actually enjoy the drink. It is --
I enjoy the taste. It's refreshing.

BY MR. DONOVAN:
Q. Any other reason?
A. I like it.
Q. And why do you like it?
A. For the reasons I already stated.
Q. All right. Any other reason?
MR. SHIFTAN: Objection to form.
THE WITNESS: No.
MR. SHIFTAN: And asked and answered.
THE WITNESS: No.
MR. DONOVAN: Okay, Counsel, can I see the other -- what other exhibits you brought, please?
BY MR. DONOVAN:
Q. Is that the sum and substance of what you brought, ma'am, what's on the table?
A. That is.
In case you want one now. It's ready for us. Nice and cold.
MR. DONOVAN: Can we mark this as PB 3? Thank you.
(Exhibit No. PB 3, single bottle of the 16 ounce Arizona Green Tea marked for identification.)
BY MR. DONOVAN:
Q. I'm going to show you PB 3. Can you tell me what that is?

A. It is a single bottle of the 16 ounce Arizona Green Tea.

Q. And did you purchase that, what's been marked as PB 3?

A. Yes. Yes. It actually came in a case of 24-packs. So, this is the remaining of case I had previously purchased.

Q. So, it's a case separate from PB 1?

A. Correct.

Q. And I noticed that it's refrigerated, or it's cold. Was it in your refrigerator?

A. It was.

Q. When did you purchase PB 3?

A. Like I said, it came from a previous case. So, I don't have the exact date without referring to another receipt. I don't know approximately when.

Q. Do you know whether it was purchased before or after the purchase reflected in PB 2?

A. Probably. I don't know without looking at a receipt if I purchased it before or after.

Q. Can you approximate when you purchased PB 3?

A. No.

Q. Was it in 2022?

MR. SHIFTAN: Objection to form.

THE WITNESS: Yes.

BY MR. DONOVAN:
Q. Was PB 3 purchased in May of this year?
MR. SHIFTAN: Objection to form.
THE WITNESS: Without certainty I can't answer that question, without looking to see. I don't know when I purchased it, on my last Costco visit. I don't know the exact --
BY MR. DONOVAN:
Q. Was it your last Costco visit you purchased PB 3?
A. Yes.
(Discussion off the record.)
(Exhibit No. PB 4, Costco receipt, marked for identification.)
MR. DONOVAN: Let me see that. We have to show that to your attorney first. Okay? That was my fault.
Let the record reflect -- PB --
THE WITNESS: You want to get a paper towel --
MR. DONOVAN: It's a good idea.
BY MR. DONOVAN:
Q. PB 2 is Bate stamped AA0095.
Now, I'm going to show you PB 4 which is Bate stamped AA0009 -- 00097 to 98. Tell me what PB 4 is.
A. PB 4 is another Costco receipt showing that I purchased a 24-pack of the Arizona Green Tea product.

Q. And what's the date of the receipt?
A. This is dated May the 11th, 2022.
Q. I can represent to you that's the latest receipt that we received in this case.
A. Okay.
Q. In terms of date.
Does PB 4 have anything to do with the purchase of PB 3?
MR. SHIFTAN: Objection to form.
THE WITNESS: I don't understand. What do you mean, in relation? There's several products.
BY MR. DONOVAN:
Q. Yes, does PB 4 reflect your purchase of the product PB 3?
MR. SHIFTAN: Objection to form.
THE WITNESS: I don't understand the question.
BY MR. DONOVAN:
Q. Well, it's a receipt that's in front of you, PB 4, right?
A. Correct.
Q. That evidence is, your purchasing, correct me if I'm wrong, an Arizona Green Tea, correct?
A. Yes.
Q. And I'm asking you, now that you have PB 4 in front of you --

A. Uh-huh.
Q. -- and you testified, I think, that the last purchase that you made at a Costco relates to PB 3, I'm wondering whether you know whether PB 4 evidences your purchase of PB 3?
MR. SHIFTAN: Objection to form.
THE WITNESS: Does P -- okay.
BY MR. DONOVAN:
Q. Let me change the question around.
A. Okay. I'm confused.
Q. Okay. PB 4 is a receipt of your purchase of Green Tea, correct?
A. Correct.
MR. SHIFTAN: Objection to form.
BY MR. DONOVAN:
Q. And my question is, is PB 3 --
A. Uh-huh.
Q. Is PB 4 a receipt for your purchase of PB 3?
MR. SHIFTAN: Objection to form.
THE WITNESS: It could possibly be. Because, like I said, this was from a previous case that I had opened up the 24-pack. So, I couldn't -- I couldn't say without certainty whether this particular single bottle came from this particular pack that I purchased on May the 11th.

Q. Okay, fair enough. So, with respect to --
Now we're on PB 3 again. Where did you purchase this product?
A. Costco.
Q. And how much did the product cost?
A. According to the receipts, 10.99, plus CRV and tax.
Q. And when you're using your Costco account, that's your card, correct?
A. Yes. I'm one of about two members on the Costco membership.
Q. Who is the other member?
A. My mother.
Q. When you pay the Costco account, who pays the Costco account?
A. It's split between the two of us. The annual membership? Is that what you're --
Q. Yes.
A. Both of us.
Q. Now, with respect to PB 2, did you pay the money reflected in PB 2?
A. I did.
Q. Did you split it with your mother?
A. No.
Q. Okay. Same question for PB 4. Did you pay the

money that's reflected in PB 4?
A. I did.
Q. Hundred percent?
A. 100 percent.
Q. Now, with respect to PB 3. Now we're back to that.
A. Okay.
Q. You said you purchased at a Costco. You're not sure when. You think it was -- with -- a recent purchase, but you don't know when.
A. Correct.
Q. Was it in a 24-pack, like PB 1?
A. As I stated, yes.
Q. And why did you make the purchase of PB 3?
A. For the previous reasons I've stated already, taste, flavor. I enjoyed it.
Q. Any other reasons?
A. The 24-pack seems to be a greater value than the single bottles.
Q. Any other reason?
A. That is all.
Q. What is it about the taste that you like?
A. It's not as sweet as the regular ice teas. According to the label, sounds good with ginseng and honey. That sounds good to me.

Q. When you say "not as sweet as regular ice tea," what regular ice tea are you referring to?
A. Other brands of ice tea, Snapple brand or the other flavors of tea that Arizona makes.
Q. So, you like the Arizona Green Tea with ginseng and honey more --
A. I prefer that one.
Q. Ma'am, I'm sorry. Let me finish.
You like the Arizona Green Tea with ginseng and honey more than what Snapple brand?
A. Correct.
Q. And you said something about the ginseng. What did you like about the ginseng?
A. I prefer the flavor over the other flavors that Arizona produces.
Q. What other flavors of Arizona are you referring to?
A. I believe they have a -- Arnold Palmer, they have, I believe, either the raspberry ice tea, and I don't recall the other flavors that they manufacture.
Q. But these other flavors of Arizona, you must have tried them, right?
A. I have, to know that I like this one best.
Q. And what is it about the 24-pack value that you liked?

A. For the cost of 24 individual bottles, if you do the math, that's a discount as opposed to buying them separately.

Q. Roughly 40, 45 cents?

A. Give or take.

Q. Per bottle?

A. Yes.

Q. And is that offered you a significant value in your mind?

A. I will say so, yes.

MR. DONOVAN: Keep these in succession, five through seven, please.

(Exhibit Nos. PB 5, PB 6 and PB 7 marked for identification.)

MR. SHIFTAN: Counsel, what do you intend to do with this after the deposition?

MR. DONOVAN: I guess what we'll do is, we'll take photographs, and you can keep it in safekeeping.

MR. SHIFTAN: The beverages?

MR. DONOVAN: Yeah, that's evidence. We could talk. We could talk. Well, let's talk offline.

MR. SHIFTAN: Did you not want her to drink these?

MR. DONOVAN: Counsel, I'm not being deposed here. Please. We'll talk offline what we're going to do

with the exhibits.

MR. SHIFTAN: I'm not trying to depose you, I'm just asking a question.

MR. DONOVAN: Okay, well, it's my deposition. That's an improper inquiry.

BY MR. DONOVAN:

Q. Now PB 1 --

MR. SHIFTAN: Hold on a second. The court reporter already raised the logistical issue and the fact that we have some sort of abnormal exhibits here. I'm just asking what do you envision doing with them.

MR. DONOVAN: We'll talk offline and see if we can reach an agreement and what we're going to do with them. That was my response.

MR. SHIFTAN: Okay.

BY MR. DONOVAN:

Q. PB 1, you said you purchased it around February or February 2nd.

Can I ask you, do you have --

Is there a reason why it hasn't been consumed?

A. I wanted to bring it as, as a show of I do purchase the product. I've held on to it for the purpose -- for the purpose of today in the event that I need to present it in person.

Q. Okay. So, you -- it would be fair to say you purchased PB 1 because of the lawsuit.
A. No.
MR. SHIFTAN: Objection to form.
BY MR. DONOVAN:
Q. No?
A. No. I've had intentions of consuming it, but I was, like, I'll just hold on to it for now.
Q. And you're still consuming Green Tea Arizona?
A. I do.
Q. Now, PB 5.
A. Uh-huh.
Q. Can you tell me what that is?
A. It is the same as PB 3, which is single bottle, 16 ounce, Arizona Green Tea.
Q. And do you know when you purchased PB 5?
A. Well, exhibits PB 5, 6 and 7 all came from the same case which PB 3 was purchased. And as I stated before, it would have been PB -- according to PB 4, might have been from the same case that these all came from.
Q. I think you said it might have been from the same case as PB 3? Do you know?
MR. SHIFTAN: Objection to form.
THE WITNESS: I'm pretty confident that they came from the same case as PB 3.

(Exhibit No. PB 8, Costco receipts, dated March 16, 2022, marked for identification.)

BY MR. DONOVAN:

Q. This is a document produced by you in discovery Bate stamped AA00096 marked PB 8. I'd ask if you can identify it for me, please.

A. Costco receipts, dated March 16, 2022. I see a purchase of the Arizona Green Tea for 10.99.

Q. And that would have been another 24-packet of the Green Tea, like the PB 1 that's in front of you?

A. That's correct.

Q. So, it would be fair to say that in 2022, you have at least purchased three 24-pack green teas from Costco?

A. That is correct. That would be a safe assumption, yes.

Q. And why did you purchase the product reflected in PB 8?

MR. SHIFTAN: Objection to form.

THE WITNESS: Because I ran out of the bottles and wanted to purchase more.

BY MR. DONOVAN:

Q. Is it for the same reasons that you purchased the products reflected in PB 2 and PB 4?

A. Yes.

MR. SHIFTAN: Objection to form.
THE WITNESS: Yes.
BY MR. DONOVAN:
Q. Any other reason?
A. No.
Q. And the reason: Taste, flavors and you enjoyed the 24-pack value?
A. Yes.
MR. DONOVAN: Again, I'm going to take this away from the witness and put it over there, okay?
MR. SHIFTAN: Okay.
MR. DONOVAN: Let's put it over here.
(Exhibit No. PB 9, gallon-size bottle, marked for identification.)
BY MR. DONOVAN:
Q. This is PB 9, which is another bottle that you brought with you to the deposition, correct?
A. It is.
Q. Did you purchase that --
Did you purchase that product?
A. I did.
Q. When?
A. I don't -- I'm not for sure.
Q. Can you proximate?
A. It could have been earlier in the year, this

year. I don't know the exact date.

Q. But you think it was in 2022?

A. Possibly. Without looking at the receipt, I couldn't specify.

Q. Do you know whether you have a receipt for PB 9?

A. Yes. It should be a Food 4 Less receipt, or it might be under the Kroger brand receipt.

MR. DONOVAN: PB 10, please.

(Exhibit No. PB 10, receipt dated 12-20-2021, marked for identification.)

BY MR. DONOVAN:

Q. I'm going to show you what's been marked as PB 10. I'm going to ask you if you can identify it for me please. It's Bate stamped AA00090-91.

A. Yes, I recognize the receipt.

Q. Okay. And what does it reflect?

A. It reflects a purchase in the amount of $2.99 of the Arizona Green Tea on December 20th, 2021.

Q. Do you know whether that receipt PB 10 reflects your purchase of a product PB 9?

A. I would say so, yes.

Q. And why did you purchase the product PB 9?

A. For the same reasons I purchased the 24-pack.

Q. The taste, the flavor, and --

A. And the value. Yes. For the gallon.

MR. SHIFTAN: Objection to form.
Just make sure he finishes his questions before you answer.
THE WITNESS: Okay. I apologize.
BY MR. DONOVAN:
Q. That's okay.
Taste, flavor and the value at the 128 ounces, correct?
A. Correct. Yes.
Q. Any other reason?
A. No.
Q. Do you hold any professional licenses?
A. Yes.
Q. Can you tell me what they are?
A. Conductor certification, Department of Transportation.
Q. And how long have you had that certification?
A. Fifteen years.
Q. Do you have any training or education in food science?
A. No.
Q. Have you ever worked for any law firm?
A. No.
Q. How many brothers and sisters do you have?
A. One brother and two half siblings.

Q. Have any of them ever worked at a law firm?
A. Not to my knowledge.
Q. Can I have your brother's name?
A.
Q. And where does he live?
A. .
Q. What about your half sisters? Can I have their names?
A. .
Q. We'll mark this confidential, by the way.
A. Thank you. and .
Q. And where do they live?
A. .
Q. Have any of your brothers and sisters ever been in a class action lawsuit?
A. Not to my knowledge.
MR. SHIFTAN: Objection to form.
THE WITNESS: I don't see that being relevant, but not to my knowledge.
BY MR. DONOVAN:
Q. In your job as a conductor, are you required, in carrying out your day-to-day duties, are you required to read information on a computer or review information on a continuous basis about routes?
A. Yes.

MR. SHIFTAN: Objection to form.
Just give me a second. Just give me a second to object.
THE WITNESS: Okay.
MR. SHIFTAN: You're doing great.
BY MR. DONOVAN:
Q. Has any parent or cousin or aunt or uncle ever worked for a law firm?
MR. SHIFTAN: Objection to form.
THE WITNESS: No, not to my knowledge.
BY MR. DONOVAN:
Q. Did there come a point in time that you became aware that there were claims filed against the defendants in this lawsuit?
A. I'm sorry, say the question again.
Q. Did you -- did there come a point in time that you became aware that there were claims filed against the defendants in this lawsuit?
MR. SHIFTAN: Objection to form.
THE WITNESS: No.
BY MR. DONOVAN:
Q. Did you become aware of this lawsuit at any particular time?
MR. SHIFTAN: Objection to form.
THE WITNESS: Yes.

BY MR. DONOVAN:
Q. And how did you become aware?
A. Umm --
MR. SHIFTAN: And just, you can definitely answer the question but definitely do not divulge any communications you may have had with counsel.
THE WITNESS: I'm sorry, can you repeat the question?
BY MR. DONOVAN:
Q. You became aware of this lawsuit, and I asked you how you became aware. I'm not asking for the substance of any communications with your attorneys. I'm asking how you became aware.
A. I believe I saw it on a -- online, website. Top Class Action Lawsuits, I believe it's called.
Q. And when did that happen that you reviewed the top class actions lawsuit?
A. Sometime in 2021.
Q. And why were you looking --
Well, how did you find out about the Top Class Actions lawsuit?
A. It popped up in my e-mail.
Q. An e-mail from whom?
A. Top Class Action Lawsuits.
Q. And what did the e-mail say?

A. I do not know. I do not recall.
Q. Well --
A. The verbiage.
Q. Were you searching for Top Class Actions?
A. No.
Q. So, you're on your computer, and you received an e-mail from Top Class Actions?
A. Yes.
Q. And, I'm sorry, do you recall what the e-mail said?
MR. SHIFTAN: Objection to form.
THE WITNESS: Not -- no. It happened too, too long ago for me to.
I believe: "Have you purchased Arizona Green Tea products" or in reference -- something like that.
BY MR. DONOVAN:
Q. And this is an e-mail that you received from Top Class Actions.
A. Yes.
Q. Do you still have that e-mail?
A. No.
Q. What did you do with it?
A. Deleted it.
Q. When?
A. Sometime in 2021.

Q. Why did you delete it?
A. It's old and didn't need it anymore. I tried to empty out my in box file.
Q. Is it permanently deleted?
A. Probably so.
MR. DONOVAN: Counsel, I ask that that be checked and see what the status of that e-mail is.
MR. SHIFTAN: We can take it up offline.
BY MR. DONOVAN:
Q. So, after you received the e-mail from Top Class Actions, what did you do?
A. I submitted my name and contact information through the website.
Q. Anything else did you submit?
A. No.
Q. What do you remember the Top Class Actions' website or e-mail saying to you about Arizona product?
A. I already answered that question.
MR. SHIFTAN: Yeah, objection to form. Asked and answered.
MR. DONOVAN: I don't think I asked that question. I never asked the question about what they said about Arizona product.
THE WITNESS: Do you want to read it back? I think you did.

BY MR. DONOVAN:
Q. Did they say anything about Arizona product on the website?
A. Yes.
MR. SHIFTAN: Objection to form.
BY MR. DONOVAN:
Q. And what did --
MR. SHIFTAN: Are you talking about -- just to be clear, are you talking about a website versus an e-mail?
MR. DONOVAN: Good point.
BY MR. DONOVAN:
Q. Let's deal with the e-mail. Did the e-mail say anything about Arizona products?
A. Yes.
Q. And what did it say?
A. If I recall correctly: Have you ever --
Do you purchase or consume Arizona products. Or something to that effect. I don't know the exact wording they used.
Q. Did they say anything else on the e-mail about Arizona products?
A. I do not recall.
Q. Did they specify what type of Arizona products they were referring to in the e-mail?
A. I do not recall.

Q. And you said you submitted your name and contact information through the website, correct?
A. Yes.
Q. And how did you get to the website?
A. I was --
MR. SHIFTAN: Objection to form.
BY MR. DONOVAN:
Q. How did you access the website?
A. Through my laptop computer.
Q. Was there a link or an address that you knew of?
A. Yes.
Q. Was that in the e-mail that you received?
A. It was a part of it, yes.
Q. So, you went on the website and then you provided them your name. And when you say contact information, what do you mean?
A. Phone number.
Q. At that point in time when you did that, did you know there was a pending lawsuit against Arizona about their products?
A. No.
Q. Had you ever received any e-mail from Top Class Actions prior to this e-mail?
A. Yes.
Q. How did --

Do you know how Top Class Actions had your e-mail address?

A. No, I don't.

Q. Sorry, can you repeat the question I asked right before that.

(Questions read.)

BY MR. DONOVAN:

Q. What other e-mails do you recall receiving from Top Class Actions prior to this one?

A. I received them off and on about various lawsuits, about various things.

Q. Do you know anybody who worked at the Top Class Actions lawsuit website?

A. No.

Q. Have you ever --

Prior to submitting your name and contact information, did you ever previously do that to the Top Class Actions website?

MR. SHIFTAN: Objection to form.

THE WITNESS: Regarding to something totally different to this?

BY MR. DONOVAN:

Q. Yes.

A. I might have, yes.

Q. Do you remember --

A. I don't recall what it was for.

Q. Did you get a response from Top Class Actions website with respect to those other communications about other potential matters?

MR. SHIFTAN: Objection to form. Misstates the testimony.

THE WITNESS: Can we go back to your previous question?

BY MR. DONOVAN:

Q. I asked you if you -- prior to this communication to Top Class Actions.

(INTERRUPTION)

MR. DONOVAN: Thank you.

THE WITNESS: If I could go back. You had asked me have I participated in another class action lawsuit through Top Class Actions. Yes, I have. I just thought about it.

BY MR. DONOVAN:

Q. Can you tell me about that.

A. It was a Walmart weighted products class action lawsuit.

(Reporter asked for clarification.)

THE WITNESS: Weight. Weighted.

BY MR. DONOVAN:

Q. When you say you participated in, how so?

A. Through the -- submitting my name, contact information. I wasn't none of the top, I guess, lead plaintiffs in it, just a member.
Q. And when was that? When did you participate in the Walmart case?
A. I believe I submitted my information either late last year, 2021, or early this year.
Q. What is that case about? What's your claim there?
MR. SHIFTAN: Objection to form. Misstates the testimony.
THE WITNESS: I'm sorry, what's the question?
BY MR. DONOVAN:
Q. What's your claim about in the Walmart case?
MR. SHIFTAN: Same objection.
You can answer.
THE WITNESS: It was being overcharged for weighted -- produce items that need to be weighted when you check out at the register, that the scales were not -- not balanced.
BY MR. DONOVAN:
Q. And your -- your participation in the Walmart case --
A. Uh-huh.
Q. -- did that begin before this case?

A. No, I don't believe so. I believe it happened afterwards.

Q. And do you have documents you received from the Top Class Actions website about that Walmart case?

A. Not from Top Class Action Lawsuits.

Q. Have you received documentation from the lawyers for the plaintiffs in the Walmart case?

A. Yes.

MR. DONOVAN: Counsel, I'd like to see those non-privileged documents.

BY MR. DONOVAN:

Q. Can you tell me what type of document --

MR. SHIFTAN: Hold on a second.

You want to see -- what --

Is that responsive to a request that you've served.

MR. DONOVAN: I believe so.

MR. SHIFTAN: Which one is it?

MR. DONOVAN: When we go offline, I'll show it to you.

MR. SHIFTAN: Okay. Well, we'll take it under consideration.

MR. DONOVAN: Sure, sure, sure, sure. I'll show it to you.

BY MR. DONOVAN:

Q. Do you know the names of your lawyers in the Walmart case?
MR. SHIFTAN: Objection to form.
THE WITNESS: Not off-hand, no.
BY MR. DONOVAN:
Q. Have you been receiving documentation from them?
A. I've received one document in settlement of that case.
Q. And without telling me --
Is the document something that was filed with the Court? Do you know?
MR. SHIFTAN: Objection to form.
THE WITNESS: If the case is settled, I would assume it is settled, yes.
BY MR. DONOVAN:
Q. No, I'm asking you if it was a --
Do you know if the document that you looked at was filed with the Court. Was it a Notice of Settlement?
MR. SHIFTAN: Objection to form.
THE WITNESS: I received a settlement from them.
BY MR. DONOVAN:
Q. You received money from them.
A. Correct.
Q. How much?

A. $20.67. So --
Q. And when did you --
A. A nominal amount.
Q. When did you receive it?
A. Last week -- or -- yeah, yeah, last week.
Q. And did you have to submit information in the Walmart case to show that you were a customer at Walmart or -- in some way, shape, manner or form had a claim against Walmart?
A. I have --
MR. SHIFTAN: Objection to form.
THE WITNESS: I have a Walmart card which I used to purchase items.
BY MR. DONOVAN:
Q. And that had evidence of your purchases?
A. Yes.
Q. And did you give that to your attorneys?
A. No.
MR. SHIFTAN: Objection to form.
BY MR. DONOVAN:
Q. Do you know where that case, the Walmart case, was -- was or is filed? What court?
A. I am not for certain without it being in front of me.
Q. Have you participated in any other class actions

other than the Walmart case?
MR. SHIFTAN: Objection to form.
THE WITNESS: Yes.
BY MR. DONOVAN:
Q. Okay, can you tell me which ones, please?
A. It was a toll road class action.
Q. Were you a plaintiff in that case?
A. I was.
Q. And who was your attorney?
A. I don't know. It was --
I didn't have really any communication with them. It was just -- umm --
I have received an e-mail regarding it. Was I ever on this particular toll road during the time, point in time A to point time B.
Q. And who did you receive that e-mail from?
A. I don't recall.
Q. And when did you receive the e-mail?
A. Possibly earlier this year.
Q. And what's the status of that case? Do you know?
A. I'm not certain what's the status as of today.
Q. Have you received documents about that case from anybody?
A. No.

Q. And do you know who the defendants are in that case?
A. Not off-hand, no.
Q. And can you tell me what the claim is?
A. Was I charged a certain amount in excess of the posted toll road fee.
Q. Was this on a particular road?
A. I want to say the 73 here in California, if I'm not --
I believe it is the 73 toll road.
Q. How did you find out about that class action?
A. They -- I -- I received a ticket and paid the citation.
Q. Okay. And did you receive --
So you paid the citation. Did someone communicate with you about this case?
A. About that particular case, yeah, but it was months after the citation was already paid.
Q. Did someone contact you about this class action lawsuit about toll roads?
A. Yes.
Q. Do you know who did?
A. No. I don't know the law firm.
Q. You received an e-mail?
A. Yes.

Q. Do you still have that e-mail?
A. Possibly. Yes.
MR. DONOVAN: I'll ask for a copy of that as well, Counsel.
MR. SHIFTAN: And I would have the same conversation. But pulled up the RFPs, and if you think it's responsive to RFP 19, that's not the way it was drafted. So --
RFP 19 says: All documents regarding other proposed decertified and uncertified or certified class actions where you served or attempted to serve as a class representative or otherwise appeared on the pleading. I'm not sure you've established that that occurred, but you're welcome to continue the questioning.
BY MR. DONOVAN:
Q. Any other class actions that you participated in?
MR. SHIFTAN: Objection to form.
THE WITNESS: No, not that I recall.
BY MR. DONOVAN:
Q. So, with respect to this class action, you filled out the questionnaire, you provided -- rather --
Excuse me.
You filled out --
You responded to the Top Class Action

website by going to the website --
Strike that.
We'll go back to the Top Class Actions website. Is it fair to say that you went on that website and you provided your contact information?
A. Yes.
Q. Okay. And then what happened?
A. I was contacted by a law office.
Q. When?
A. Last year. 2021.
Q. And who contacted you?
A. Carlos Ramirez.
Q. Do you know how much time it was between when you -- you communicating on the website and Mr. Ramirez contacting you?
A. How much time had elapsed?
Q. Yeah.
A. I would say a week or possibly two.
Q. And I'm not asking for what you discussed with him, but how long was that conversation?
A. The initial conversation? Approximately 20 minutes.
Q. And what happened after that, after that 20-minute conversation? Did you hear from him again?
MR. SHIFTAN: Objection to form.

THE WITNESS: Yes.

BY MR. DONOVAN:

Q. And when was that?

A. The next conversation was probably via e-mail.

Q. And how long after the 20-minute conversation, was that?

A. That I received an e-mail from him?

Q. (Nods head affirmatively.)

A. Within the same month of the phone conversation.

BY MR. DONOVAN:

Q. Now, at the time you first spoke to Mr. Ramirez, had you made the decision that you were going to sue Arizona Beverages?

A. No.

Q. After the 20-minute conversation, did you make a decision to sue Arizona Beverages?

THE COURT: Objection to form.

THE WITNESS: I'm sorry, say the question --

BY MR. DONOVAN:

Q. Yeah, the 20-minute conversation with Mr. Ramirez --

A. Uh-huh.

Q. As a result of that conversation, did you decide to sue Arizona Beverages?

MR. SHIFTAN: Objection to form.

Be careful not to disclose any substance of the communications you might have had with Mr. Ramirez.

THE WITNESS: Not after that conversation, no.

BY MR. DONOVAN:

Q. Did there come a time that you decided to sue Arizona Beverages?

A. I decided to become a participant as one of the plaintiffs in the case.

Q. You understand you filed a claim against Arizona in this case. You know that, right?

A. I do.

Q. When did you decide that you were going to do that?

A. After the e-mail.

Q. The e-mail from whom?

A. Carlos.

Q. That's the e-mail after the 20-minute conversation.

A. Yeah.

MR. SHIFTAN: Do you want to take a break?

MR. DONOVAN: We could take a break at any time as long as a question --

I should have said this -- I apologize. This isn't a war of attrition. You want to take a break, a bathroom break or a water break, that fine. Right now is

fine.
THE WITNESS: Okay, let's do that.
MR. DONOVAN: Thank you.
THE VIDEOGRAPHER: The time is 11:13 a.m. We are off the record.
(Recess taken.)
THE VIDEOGRAPHER: The time is 11:29 A.M. we are now back on the record.
MR. DONOVAN: Can we mark this, please.
(Exhibit No. PB 11, e-mail, dated 12-15-2021, marked for identification.)
MR. DONOVAN: Thank you.
BY MR. DONOVAN:
Q. I'm going to show you what's been marked PB 11. This is an e-mail from Mr. Ramirez to me, dated December 15, 2021. Do you see that?
A. Yes.
Q. And is that the name of the website that you received an e-mail from?
A. Yes, that looks like it.
Q. Okay. And is that the link that you linked on to get onto the website and provide your information?
A. Yes.
Q. And when you went on that website, did you see any information about Arizona products?

A. About the product?
Q. Right.
A. What do you mean?
Q. Did the website talk about Arizona products in any shape, manner or form?
A. Yes.
Q. What did it say?
A. I previously stated: Had I -- or had I ever purchased any item from them, about whether or not I knew it had preservatives in it, artificial preservatives, or something to that effect.
Q. And that's what the website asked you?
MR. SHIFTAN: Objection to form.
MR. DONOVAN: Yeah, I'll strike that.
BY MR. DONOVAN:
Q. How did you get to the point on the website that you were responding to those questions?
A. I'm sorry, say -- repeat the question.
Q. You were responding to questions on the website, correct?
A. Yes.
Q. Okay, and how did you get on the -- how were you able to navigate, so to speak, to get to that point? Did you have to click on something or --
A. I believe it was a link within that website to

click on.

Q. Okay, and what was that link or prompt?

A. I don't recall what it was.

Q. And what do you recall saying to Top Class Actions about your experiences with Arizona products?

A. I believe it asked had I purchased any products, how many items did I purchase of that product, and maybe the time of reference or when the purchases were made.

Q. And what did you say in response to those categories of questions? How many did you purchase?

A. I don't know specifically. That's too far back for me to remember.

Q. And what did you say in terms of the timing?

MR. SHIFTAN: Objection to form.

THE WITNESS: I had purchased -- I had been purchasing the products for at least several years.

BY MR. DONOVAN:

Q. And did you say anything about the cost, the price that you paid?

A. Yes.

Q. Okay. And what did you say?

A. Whatever the item cost me, whatever I purchased.

Q. What was it? Do you remember?

A. It varies, depending on -- depending on if I purchased an individual bottle or a can, up to the gallon

or up the 24-pack.
Q. Right, and what did you say in terms of the price?
A. What I paid for it.
Q. What did you say you paid for it?
MR. SHIFTAN: Objection to form.
THE WITNESS: It depends on the item of purchase.
BY MR. DONOVAN:
Q. Okay.
A. So --
Q. Okay, let's take --
What did you say -- what items did you say you purchased on the website?
A. The gallon bottle.
Q. What did you say the price of that was?
A. Anywhere between 3- to $4.
Q. What other?
A. Excuse me one second.
Q. Sure.
A. I'm sorry. Go ahead.
Q. That's okay. What other products did you say you purchased in terms of quantity?
A. The 24-pack, the individual can.
Q. Any other quantity or container that you

mentioned on the website?
A. Other than those three, no, not that I recall.
Q. What did you say the price was for the 24 --
A. Pack?
Q. 24-pack, yes.
A. Between 11 to up -- up to 14 bucks.
Q. And what about the individual can?
A. 99 cents, between 99 cents and $1.50.
Q. When you say "individual can," can you tell me what quantity or what container size, rather?
A. I believe it is 20 ounces, approximately.
Q. So, you submitted that information to the Top Class Actions' website, correct?
A. Through the link.
Q. Right. Through the link on Top Class Actions' website.
A. Correct.
Q. And then you testified a week or so later, Mr. Ramirez called you.
A. Yes.
Q. Do you have a copy of that submission that you made to the Top Class Actions' website in terms of the information you furnished?
A. No.
MR. SHIFTAN: Objection to form.

BY MR. DONOVAN:
Q. Did you ever have a copy?
MR. SHIFTAN: Same objection.
THE WITNESS: No.
BY MR. DONOVAN:
Q. Did you submit any other information to the Top Class Actions website other than what you just testified to?
A. No.
Q. The toll road case that you testified to before the break --
A. Uh-huh.
Q. How much time have you devoted to that case, we'll say on a monthly basis.
A. Approximately one hour.
Q. Total?
A. Total.
Q. And what did that entail? What did you do?
A. Looking for the check or the online transaction that I used to pay the citation.
Q. What about the Walmart case? How much time do you estimate taken on that?
A. An hour.
Q. What did that entail?
A. Going over my previous purchase history of any

weighted item.
Q. And did you have to review the Notice of Settlement?
MR. SHIFTAN: Objection to form.
THE WITNESS: When you say review...
BY MR. DONOVAN:
Q. Read.
MR. SHIFTAN: Same objection.
THE WITNESS: Yeah.
BY MR. DONOVAN:
Q. Did you have any communication with the attorneys in the Walmart case?
A. Not directly, no.
Q. What do you mean "not directly"? You mean indirectly? Did you submit anything to them?
A. No.
Q. You got paid in that settlement, correct?
A. Correct.
Q. So, did you submit something to the Court?
A. No.
Q. Do you know how you ended up getting a monetary settlement on the Walmart case? How did they know you were a claimant? The Court or anybody.
MR. SHIFTAN: Objection. Mischaracterizes the testimony.

THE WITNESS: When in the store, I used my Walmart card to purchase items, and from there, I was contacted.

BY MR. DONOVAN:

Q. Okay. What I'm saying is, you testified you received about $20 from the settlement.

A. Correct.

Q. And who was that from?

MR. SHIFTAN: Objection.

THE WITNESS: I would assume it was from Walmart.

BY MR. DONOVAN:

Q. Do you know who --

Was it in the form of a check?

A. It was.

Q. Okay, and when did you receive that check?

A. Last week.

Q. And did you submit a claim in that Walmart case prior to receiving the check?

A. Yes.

Q. Okay, who did you submit the claim to?

A. It was -- I believe it was --

I accessed it through Top Class Actions, if I'm not mistaken. You know, I -- come to think about it, I don't recall for sure how. Either they contacted me

or if I saw or read about it through class action. It was one or the other.

Q. When you say "they contacted me," who are you referring to?

A. "They" meaning the law firm.

Q. The law firm for whom?

A. For the plaintiffs against Walmart.

Q. And did you have to fill out a claim form in the Walmart case?

A. Yes.

Q. And how long did that take?

A. Less than an hour, one hour.

Q. And the communications you had either with the Top Class Actions lawsuit website or the lawyers on the Walmart case, how long were those communications? How long did it take you to devote time to --

A. Did they devote?

Q. No, you.

MR. SHIFTAN: Objection to form.

THE WITNESS: I'm sorry, repeat the question one more time.

BY MR. DONOVAN:

Q. Did you devote any time communicating with either the Top Class Actions website or the lawyers when you initially were filing a claim?

A. No.
Q. Have you ever heard of a Daniel Warsaw?
A. It sounds familiar.
Q. Have you ever spoken to a Daniel Warsaw?
A. Not that I recall.
Q. Have you ever communicated with a Melissa Weiner?
A. The name sounds familiar.
Q. Have you ever communicated with her?
A. I don't know.
Q. Have you ever heard of a Lee Litigation Group?
A. No.
Q. Did you ever seek or obtain any legal advice from any attorney at the Lee Litigation Group?
A. No, not that I know of.
Q. Who were your attorneys in this case?
A. Ben Shiftan, Carlos Ramirez, and the name Melissa does ring a bell to me now. I recall her name being on an e-mail communication.
(Reporter asked for repetition.)
THE WITNESS: I'm sorry. I do recall the name Melissa on an e-mail communication with our -- with my attorney.
BY MR. DONOVAN:
Q. Have you communicated with any other lawyers

regarding this case?
A. No.
Q. Did you decide to have the Rees Law Firm represent you in the case?
A. Yes.
Q. Why?
MR. SHIFTAN: Objection to form.
And don't divulge any communications you may have with any of the lawyers.
THE WITNESS: Seemed like a very reputable, professional people that could effectively get the job done.
BY MR. DONOVAN:
Q. At the time you made the decision to have them as your attorneys, did you know how many class actions the Rees firm had been involved in?
A. No.
Q. Did you perform any investigation about the firm before deciding to retain them as your lawyers?
A. No.
Q. Did you look for other law firms with class action experience to represent you in this case prior to making a decision about the Rees firm?
A. No.
Q. And Mr. Shiftan, from the Pearson firm, they

represent you as well on this case, correct?
A. Yes.
Q. Did you ever obtain or seek legal advice from anybody at the Pearson firm prior to this case?
A. No.
Q. Did you ever seek or obtain legal advice from anybody at the Rees firm prior to this case?
A. No.
Q. Prior to this case, did you know anybody who worked or works for anybody at --
Strike that.
Prior to this case, did you know anybody who worked at the Rees firm?
A. No.
Q. Prior to this case did you know anybody who worked at the Pearson firm?
A. No.
Q. Are you related to anybody who works at any law firm?
A. No.
MR. SHIFTAN: Objection to form.
MR. DONOVAN: Mark this, please. I think we're up to 12.
(Exhibit No. PB 12 marked for identification.)
BY MR. DONOVAN:

Q. Let me show you PB 12. Have you ever seen PB 12 before?

MR. SHIFTAN: Take your time to review it.

Is this the full document, Counsel? The bottom appears to be fading out.

MR. DONOVAN: Must have -- well, I'll stipulate --

It looks inadvertently an excerpt of the Rees firm website of cases of false and deceptive advertising.

BY MR. DONOVAN:

Q. Did you ever review the Rees firm's cases listed on their website?

A. Can I finish reading?

Q. Of course.

A. (Reads document.) Okay.

Q. My question is: Did you ever review PB 12 either on a website or any other shape, manner or form information about Rees firm's experience?

MR. SHIFTAN: Objection to form.

THE WITNESS: No, I've never seen this before.

MR. DONOVAN: PB 13, please.

(Exhibit No. PB 13 marked for identification.)

BY MR. DONOVAN:

Q. Let me show you PB 13 and ask you the same

question. Have you ever seen connection to the website from the Pearson firm? Did you ever see that information on Pearson's website and review it?

A. No.

Q. Are you aware of any of the counsel fee awards in any of the cases that the Rees firm has handled?

A. No.

Q. Are you aware of any counsel fee awards in matters that the Pearson firm handled?

A. No.

MR. DONOVAN: We're up to PB 14.

(Exhibit No. PB 14 marked for identification.)

BY MR. DONOVAN:

Q. I'll show you PB 14. And I believe this -- this caption relates to one of the cases referenced on the Pearson firm website, the Wendy's case. Have you ever seen this order, PB 14?

A. No.

MR. SHIFTAN: Objection to form.

BY MR. DONOVAN:

Q. Direct your attention to paragraph 12.

A. Of what page?

Q. I'm sorry. Paragraph 15, page 7. Are you aware in that case class counsel was awarded $1,090,000?

A. I was not, no.

MR. SHIFTAN: Objection to form.

I think you mentioned the Pearson firm. I don't know if you want to correct that.

MR. DONOVAN: Well, the record will reflect it's -- the firm referenced in the order is --

I don't see it, but I think there were a number of other lawyers involved in the case. I'm saying Pearson received it, but they were involved in the case.

MR. SHIFTAN: I'm sorry. What's the question?

MR. DONOVAN: There isn't a question. You asked me --

MR. SHIFTAN: Do you --

The very first answer on the Rees one, Wendy's, I was just trying to --

You were meaning to refer to that, and I was trying to help you. But I apologize.

MR. DONOVAN: Oh, I'm sorry. You're right. You're right. That's my -- my mistake.

BY MR. DONOVAN:

Q. So, this deals with --

Counsel is right. PB 14 concerns -- is a reference to the Wendy's case, which is referenced in the Rees website. So, that's my mistake. I'm sorry.

So, you're not familiar with PB 14 in terms of the attorneys' fees that were awarded --

A. No.
Q. -- in the case?
A. No.
Q. Okay. Let me show you --
MR. DONOVAN: We'll mark this PB 15, please.
(Exhibit No. PB 15 marked for identification.)
BY MR. DONOVAN:
Q. Have you ever seen PB 15 before?
A. No.
Q. Page 2, were you aware of this case where the Pearson firm, Pearson, Simon, Soter, Warshaw & Penny along with the Law Offices of Robert L. Starr received an attorney fee award of $2 million.
A. No.
(Exhibit No. PB 16 marked for identification.)
BY MR. DONOVAN:
Q. Let me ask you about PB 16. Have you ever seen PB 16 before?
A. (Reads document.) No.
Q. Okay, were you aware of -- looking at Paragraph 4, were you previously aware that Pearson firm was involved, with other lawyers, in a matter where the attorney fee award was $2,166,666?
A. No.
Q. Have you ever heard of a Michael R. Rees?

A. No.

MR. DONOVAN: We'll mark this, I guess we're up to 17.

(Exhibit No. PB 17 marked for identification.)

BY MR. DONOVAN:

Q. PB 17, have you ever seen that before?

A. (Reads document.) No, I have not.

Q. Direct your attention to page 11. Were you aware that the Rees firm and other attorneys were involved in a case where the counsel fee award was $8,583.332 -- I'm sorry, eight million --

Strike that.

$8,583.333.48?

MR. SHIFTAN: Objection to form.

THE WITNESS: No, I was not aware.

(Exhibit No. PB 18 marked for identification.)

MR. DONOVAN: Can we go off the record for a second?

MR. SHIFTAN: Sure.

THE VIDEOGRAPHER: The time is 12:03. We are now off the record.

(Discussion off the record.)

THE VIDEOGRAPHER: The time is 12:04 p.m. We are now back on the record.

MR. DONOVAN: We just went off the record

briefly to talk about a potential lunch break, and hopefully we can take a brief one around 1:00 o'clock, or earlier if you'd like, Ms. Brown.

THE WITNESS: 1:00 o'clock is fine.

MR. DONOVAN: Thank you very much.

BY MR. DONOVAN:

Q. I'm going to show you PB 18. Have you ever seen that before?

A. (Reads document.) This looks similar to what I have seen on Top Class Actions lawsuit.

Q. When did you --

Do you recall seeing this or something similar?

MR. SHIFTAN: Objection to form.

THE WITNESS: I recall seeing something similar, reading something similar to this. If -- if this is not actually it, it's very close to it.

BY MR. DONOVAN:

Q. And when do you recall first seeing something very close to what is --

A. I would say --

Q. I'm sorry. Let me finish. I want to make sure -- sorry.

PB 18, when was the first time you remember seeing something similar to PB 18?

MR. SHIFTAN: Objection to form.
THE WITNESS: Umm, possibly early 2021, late 2020.
BY MR. DONOVAN:
Q. So, when you saw this, was it before or after you spoke to Mr. Ramirez?
A. This was --
MR. SHIFTAN: Objection to form.
THE WITNESS: Before.
BY MR. DONOVAN:
Q. And was it in connection with you filling out the information that you provided to the Top Class Actions that you saw this information in PB 18?
MR. SHIFTAN: Objection to form.
THE WITNESS: I'm sorry, repeat.
BY MR. DONOVAN:
Q. You saw PB 18 on the Top Class Actions' website or something very similar to it?
A. Yes.
Q. And was that in connection with you receiving the e-mail from them with the link that you went on and filled out the information. Is that when you saw it?
A. Yes.
Q. And you saw this information prior to submitting -- or strike that.

Did you see this information, the PB 18, before you submitted the information about your contact information, your experience with defendant's products?

A. Yes.

MR. SHIFTAN: Objection to form.

MR. DONOVAN: Let's mark this as PB 19, please.

(Exhibit No. PB 19 marked for identification.)

BY MR. DONOVAN:

Q. I'm going to show you PB 19, and I can represent to you that it's virtually identical to PB 18, and I'm going to ask you, is that -- is that in the format you recall seeing the information about Arizona products on the Top Class Action's website?

A. Yeah, it looks similar to what I viewed, yes.

Q. Okay, we're on PB 21 -- 20. I'm sorry, thank you very much. PB 20?

(Exhibit No. PB 20 marked for identification.)

BY MR. DONOVAN:

Q. I'm going to show you PB 20 and ask you if you know what this is.

A. (Reads document) I do know.

Q. What is it?

A. It's my consent and authorization to participate in the class action.

Q. Now, it's -- the PB 20 is dated December 31,

2020. Do you know when you received that, PB 20?
A. It had to have been shortly before I read it and signed it.
Q. Do you know when?
A. Well, according to this, December 31st, 2020.
Q. So, you signed this on December 31, 2020, correct?
A. According to the -- yes.
Q. And did you receive it on December 31, 2020 before you signed it?
MR. SHIFTAN: Objection to form. Asked and answered.
THE WITNESS: I cannot say for certain if I received it on the same day that I signed it.
BY MR. DONOVAN:
Q. Did you review the document PB 20 before you signed it?
A. I did.
Q. And how long did you take to review it?
A. One hour.
Q. Prior to signing it, did you contact any attorney to ask any questions about the document?
A. No.
Q. Prior to signing it, were you aware that you had the right to go to another lawyer to look at this before

you signed it?
A. Yes.
Q. And did you?
A. No.
Q. It was sent by e-mail to this e-mail address joyB95@yahoo.com?
A. Yes, it was.
MR. DONOVAN: And I think, Counsel, this has already has been designated confidential by the plaintiff -- plaintiffs.
BY MR. DONOVAN:
Q. And is that your e-mail address that you still use?
A. Yes, it is.
Q. So, how did the Rees firm know your e-mail address?
MR. SHIFTAN: Objection to form.
THE WITNESS: That was part of my information that I submitted.
Q. To whom?
A. Through the Top Class Actions link.
Q. Prior to receiving PB 20, had you spoken to Mr. Ramirez or anybody at the Rees firm?
A. Yes.
Q. Was that the 20-minute phone call that you

referenced?

A. Yes.

Q. When you signed PB 20, did you know you were going to be joining a pending putative class action?

A. Yes.

Q. Did you know that the deadline had passed for purposes of adding named parties to the case as of December 31, 2020?

A. I did not.

Q. Please turn to page 6.

A. Is this the last page or second to the last?

Q. No, sorry. That's my mistake. Sorry. Paragraph 6, page 3.

A. Paragraph 6.

Q. Page 3. Excuse me.

A. Paragraph 6. Okay. (Reads document.)

Q. The first sentence under Paragraph 6 it says: "Under relevant law you have a legal claim that requires defendants to pay your attorneys' fees if you prevail in your case." Do you see that?

A. I do.

Q. And the second sentence says: "You hereby assign this claim to attorneys' fees to us." Do you see that?

A. I do.

Q. Have you signed any other claim to anybody in this case?
A. No.
Q. Prior to receiving PB 20, did you expect to receive it before you received it?
MR. SHIFTAN: Objection to form.
THE WITNESS: I don't know --
What?
BY MR. DONOVAN:
Q. Were you expecting to receive a retainer agreement before you received PB 20?
A. Yes.
Q. From the time period between the conversation --
Well, let me ask it this way. Does this help refresh your recollection as to when you had the conversation with Mr. Ramirez before the date of PB 20?
MR. SHIFTAN: Objection to form.
THE WITNESS: Can you repeat the question?
BY MR. DONOVAN:
Q. This PB 20 is dated December 31, 2020.
A. Yes.
Q. You had a conversation with Mr. Ramirez prior to receiving PB 20.
A. Correct.
Q. And I'm asking: Did that date help you, in any

way refresh your memory in terms of what was the date that you first had a conversation with Mr. Ramirez?

A. It narrows it down a little bit, but I cannot say with certainty the date of the actual conversation.

Q. Can you proximate? Was it December?

A. I would be guessing if I gave you an answer.

Q. All right. If you go back to Paragraph 6 again, page 3. At the time you signed the agreement, were you aware that you were assigning your counsel fee claim to your lawyers?

A. Yes.

Q. Have you ever done that before?

A. Yeah.

Q. When?

A. In the other cases I mentioned to you before, the Walmart case as well the toll road case.

Q. Any other cases?

A. Not that I recall.

Q. Paragraph 6B talks about --

You can read it to yourself if you'd like, but it talks about fair market value of services. Do you see that?

A. Give me one moment.

Q. Sure.

A. (Reads document.) Okay, I have read it.

Q. Are you aware of the fair market value of your attorney services?
A. Not the specific detail numbers, no.
Q. Under 6B there is a reference to a "significant portion of total recovery." Do you know what that means?
A. "Significant" meaning more than 50 percent, I would assume.
Q. But do you know?
A. I do. I understand.
Q. Okay. What did you understand the assignment provision to mean?
MR. SHIFTAN: Objection to form.
THE WITNESS: Can you rephrase the question? I don't understand.
BY MR. DONOVAN:
Q. There is an assignment provision, second sentence under Paragraph 6, it says: "You will hereby assign this claim to attorneys' fees to us."
I'm asking you: Do you have an understanding of what that meant?
A. Yes.
Q. What is that understanding?
A. So, any award of judgment against the defendant will be paid to the litigating attorneys.
Q. At the time that you signed the agreement, did

you have an understanding as to why the assignment provision was included?

A. Yes.

Q. And what was that understanding?

A. Based on what I read and what I understood it to be, it's for their time, efforts and energies towards the case, any fees they incurred while litigating the case.

Q. And you understood that you didn't own that claim anymore?

A. I did, yes.

Q. And did you receive anything in exchange for that assignment?

A. No, I did not.

Q. Other than the Pearson firm and the Rees firm, are you aware of any other law firms involved in the case on your behalf?

A. No.

Q. Has there been any --

Just a moment.

Do you see at the end of PB 20, Ms. Brown, that --

Strike that.

MR. DONOVAN: PB 21, please.

(Exhibit No. PB 21 (CONFIDENTIAL) marked for identification.)

BY MR. DONOVAN:

Q. PB 21. I represent to you that that was produced in discovery. If you'd go to the last page --

MR. SHIFTAN: I think this was also designated under the protective order.

MR. DONOVAN: Yes, it's confidential.

BY MR. DONOVAN:

Q. Do you see that it's not signed by Mr. Ramirez? Do you see that?

A. I do.

Q. And if you look at PB 20, it's signed by Mr. Ramirez.

A. Correct.

Q. Did you ever receive the signed copy by Mr. Ramirez?

A. I would have to check my e-mail.

Q. You don't know?

A. I don't know off-hand, no. Are they identical? One that's signed -- except for the last page?

Q. They appear to be -- they appear to be the same.

A. Okay.

Q. And do you know when you received the fully executed copy?

MR. SHIFTAN: Objection to form.

THE WITNESS: With both signatures do you mean?

BY MR. DONOVAN:
Q. Yes, yes.
A. I would -- it would be safe for me to assume shortly after I had signed it on the 31st of December, of 2020.
Q. The PB 20, Mr. Ramirez signed it when?
A. 2021. Hmm.
Q. So, do you know when you received the fully executed copy from Mr. Ramirez?
MR. SHIFTAN: Objection to form.
THE WITNESS: It had to have been after that date then that he had signed it. I would assume so. I don't know for certain.
BY MR. DONOVAN:
Q. We can go back to page 3, Paragraph 6, please.
MR. SHIFTAN: Which exhibit?
MR. DONOVAN: I'm sorry. We'll say PB 20.
THE WITNESS: I'm sorry, what page number did you want.
BY MR. DONOVAN:
Q. Page 3 of 6, Paragraph 6, please. If you'd look at paragraph, the last -- the fourth to the last paragraph, has paragraph C, there, third?
A. Yes.
Q. Below that, which begins: "If you terminate."

Do you see that?

A. I do.

Q. Okay. It says, quote: "If you terminate our representation of you before any recovery, we agree to assign the legal claim for attorneys' fees to you, and you will agree to pay us the fair market value of our services performed until such time of termination as determined in our sole discretion." Do you see that?

A. I do.

Q. You understand "we" to be your attorneys, correct?

A. I do.

Q. And "us" is your attorneys as well.

A. Yes.

MR. SHIFTAN: Objection to form.

BY MR. DONOVAN:

Q. What do you understand "recovery" to mean?

A. "Recovery" to me means, if I decided to no longer be a part or participate in the class action, I would come out of my own pocket for any fees or services they provided up to a reasonable fair market value according to this. I would owe the attorneys at the time I decide to terminate, if I decided to do that.

Q. So, it would be fair to say that --

Well, let's ask it this way: When did you

first become aware --
Well -- strike that.
You believed -- you came to the belief that you were being deceived by defendants' labels?
A. Yes.
Q. And when did you first come to that belief?
A. After reading about the class action through the website there.
Q. Referring to PB 19, the Top Class Actions' website?
A. That's correct.
Q. So, would it be fair to say that you came to that belief sometime before December 31, 2020?
A. Yes.
Q. Why did you feel you were being deceived by the defendant's labels?
A. Well, the labels clearly states on it "no preservatives," and I was unaware that it had any at all.
Q. Any other reason?
A. No.
Q. What Arizona products have you purchased, other than the ones that you testified to at the beginning of the deposition, which is the Green Tea?
A. The Arnold Palmer. They have a fruit flavor. I want to say it's raspberry or some kind of fruit flavor, as

well as -- they have a regular ice tea as well, not green tea.

Q. What type of flavor, do you know?

A. Lemon.

Q. You have the Arnold Palmer, the raspberry fruit, the regular ice tea lemon, the green tea that you've testified to?

A. Correct.

Q. Any other product?

A. Not -- no.

Q. And how much Arnold Palmer have you purchased?

A. I didn't really like it, so, maybe two -- two of the two-gallon bottles.

Q. Two of the two-gallon bottles?

A. Right.

Q. So that's four bottles?

A. Well.

Q. Are they in a pack of two?

A. No, no, no. Two of the one-gallon bottles, excuse me.

Q. Gotch'ya.

A. Sorry.

Q. That's okay. So, a total of two-gallon bottles -- two one-gallon bottles?

A. Two one-gallon bottles, yes.

Q. And where did you purchase that?
A. Most likely at a Food 4 Less or -- that or another grocery chain, Vons.
Q. And why did you buy the --
I'm sorry. When did you buy the Arnold Palmer?
A. That particular flavor? A while ago, maybe 2018, 2019.
Q. And why did you buy the Arnold Palmer?
A. To try it.
Q. And to try the flavor?
A. Correct.
Q. Any other reason?
A. The price.
Q. Any other reason?
A. No.
Q. How about the raspberry fruit flavor?
A. Or some flavor of that sort.
Q. You think it has raspberry flavor.
A. It's -- yeah.
Q. Is it -- was it an ice tea?
A. I believe it was, yes.
Q. And how many did you buy of that?
A. I would approximate it probably three or four individual bottles.

Q. What was the quantity in the bottle? Do you remember?
A. Between 16, 20 ounces.
Q. Do you remember whether you bought the raspberry flavored product?
A. 2019ish.
Q. Do you remember where?
A. No, I do not.
Q. Let's go back to the Arnold Palmer. What was the price of the Arnold Palmer?
A. Two for five, so...
Q. And, I'm sorry, the raspberry, do you remember where you purchased it?
A. I do not.
Q. And why did you purchase the raspberry?
A. Wanted to try that flavor.
Q. Did you like the flavor?
A. Not particularly.
Q. Any other reason?
A. No.
Q. Now you have the regular ice tea lemon.
A. Uh-huh.
Q. When did you purchase that product? How many did you purchase of the lemon?
A. How many?

Q. (Nods head affirmatively.)
A. I'd say three or four.
Q. In what quantity containers?
A. Some in the one-gallon bottle size, and I would say about two to three of the individual 16-ounce bottles.
Q. So, one in a gallon and the other in 16-ounce bottles.
A. Yes.
Q. And I'm sorry if I asked this. When did you buy the -- the lemon ice tea?
A. 2019.
Q. Where?
A. 7-Eleven.
Q. And what the price was for the gallon?
A. The -- I'm sorry, let's make one correction. The individual bottles were purchased at a 7-Eleven, the gallon was purchased at a grocery store.
Q. Do you remember what grocery store?
A. Food 4 Less, Vons, one of the two.
Q. And how much was the gallon?
A. Three dollars.
Q. What about the 16 ounce bottles at the 7-Eleven?
A. I don't know if it was a bottle or a can. A dollar.
Q. Did you ever purchase the lemon in a 23-ounce

can?

A. No.

Q. And the green tea now --

Oh, I'm sorry. So we have a --

Why did you purchase the lemon ice tea.

A. I wanted to try something -- a different flavor.

Q. And did you like the flavor?

A. It was okay.

Q. Any other reason?

A. No.

Q. And the green tea you testified to, your purchases that brought you here, what about other purchases prior to the lawsuit? How many --

When I say green tea, I mean the green tea with ginseng and honey. You understand that, right?

A. I do.

Q. Like, the product that's in PB 7, so we know what we're talking about.

All right, how many of these --

A. Cases?

Q. Yeah, did you purchase prior to the lawsuit?

A. Prior to the lawsuit, umm --

Q. Let me back up so we know where we are. I say prior to PB 20, which is December 31, 2020.

A. I would -- proximately, eight to ten cases,

prior to PB 20.

Q. In your lifetime.

A. Have I purchased --

You have to narrow it down. What are we --

Q. Okay. Why don't we say the last five years. So, we'll say -- we'll go back to May of 2000 -- well, it's more than five years.

A. No, I meant narrowed down which specific --

Q. Container --

A. Quantity. Yeah.

Q. Okay. If you want to do that, we can, so we're at the -- and it's fair, you're right, when we're talking about cases.

A. Uh-huh.

Q. And when you're saying cases, about eight to ten cases all told?

A. Prior to?

Q. December 31, 2020.

A. Correct.

Q. Okay. Let me ask you this. The prices that you were paid [sic] prior to December 31, 2020, how did they compare to the prices you paid after December 31, 2020 of the defendant's products?

A. They stayed roughly about the same.

Q. So, you said eight to ten cases of the six -- of the 16 ounce?
A. 24-pack.
Q. 24-pack. And you bought them where?
A. Costco.
Q. Anyplace else?
A. No, not the cases, no.
Q. And the prices were for those purchases?
A. Anywhere between 11 and 14 bucks per case.
Q. And why did you make those purchases of the green tea in the -- well, yeah, in the 16-ounce, 24-pack?
A. I prefer the bottles. It's the reasons I've already stated, the value, the taste, and I like the drink. And it's convenient to -- to have, instead of a can.
Q. And why is that?
A. Because you can close it. When you're done drinking it, you can put the twist, lid back on it, and put it away when you need it again, bring it out.
Q. You can seal it.
A. You can seal it, as opposed to a can, we've got to drink pretty much all of it at one sitting.
Q. So, we're done with the cases of the 16. What other containers of the green tea?
A. The gallon.
Q. And where did you buy those?

A. Vons or Food 4 Less.
Q. How many? Prior to December 31, 2020.
A. Shoot. I would say 10 to 12.
Q. And what was the price?
A. For the gallon, anywhere between 2.50 up to $4.
Q. And your reasons for purchasing the gallon?
A. I like the taste of it. It's more of a -- convenient to have at home as opposed to the individual bottles.
Q. And why is that?
A. Why is what?
Q. Why is it more convenient than the individual bottles?
A. Well, the individual bottles I take to work, pack it in my lunch. The big bottle I usually leave at home for drinking.
Q. Which is more convenient, the gallon bottle at home or the 16-ounce bottle?
A. The gallon bottle is usually the home. The individual, I take with me to work.
Q. I'm asking why is it more convenient --
Oh, you're saying it's more -- having a gallon is more conducive to having at home --
A. Correct.
Q. -- because you can't bring it to work.

A. Correct.
Q. Understood. Any other reason about the gallon?
A. No.
Q. Any other container sizes of the -- of the green?
A. I purchased the single tall can.
Q. The 23-ounce?
A. Correct.
Q. How many of those did you purchase?
A. Probably eight, eight to nine.
Q. And where?
A. 7-Eleven, ampm, convenient stores.
Q. When?
A. 2018, 2019.
Q. Why did you make those purchases?
A. It was convenient. I was probably traveling somewhere for work, wanted something to drink, and I liked that brand and flavor.
Q. Any other reason?
A. No.
Q. And the price, I'm sorry, of the 23-ounce can?
A. A dollar, a dollar fifty.
Q. Ever buy the 23-ounce can for 99 cents?
A. Yeah, a dollar, yeah, 99 cents plus a penny, but once you add the tax and RCV and -- it's over a dollar.

Q. Do you think the 99-ounce offered good value?
A. Yes.
Q. Do you know of any other ice tea that sold 23 ounces for 99 cents?
A. No, I don't know of any.
THE WITNESS: Counsel, did you want to take that break now?
MR. DONOVAN: Yeah.
THE WITNESS: It's about ten minutes till. We'll make it.
MR. DONOVAN: Yeah, we'll make it --
Absolutely, thank you.
We don't have to put this on the record. We're off the record.
THE VIDEOGRAPHER: The time is 12:49 p.m. We are now off the record.
(Noon recess taken.)
THE VIDEOGRAPHER: The time is 1:42p.m. We are now back on the record.
BY MR. DONOVAN:
Q. Good afternoon, Ms. Brown.
A. Good afternoon.
Q. Have you ever been, other than this case, have you ever been a party to a lawsuit?
A. Yes.

Q. Okay. What other lawsuits?
A. In a motor vehicle accident.
Q. How long ago?
A. Early 2000.
Q. Other than that?
A. No.
Q. And other than the retainer agreement that you signed in this case, which is PB 20, have you ever signed a retainer agreement with any other lawyers?
A. Yeah, in the other two class actions that I mentioned previously.
Q. Did you sign a retainer agreement for those other lawyers for them to represent you in the case?
A. Yes, that's correct.
Q. As a result of that retainer agreement, they represented you as a party in the case?
MR. SHIFTAN: Objection to form.
(Reporter asked for clarification.)
BY MR. DONOVAN:
Q. As a result of that retainer agreement, did they represent you in the case?
A. Yeah.
Q. And one of them is the toll road case that's still going on?
A. I believe so, yes.

Q. And the other one was the Walmart case that was resolved.
A. Correct.
Q. And do you know the names of those lawyers?
A. Not off-hand.
Q. Did you ever look at the defendants' website?
A. No. I wasn't --
Which case are you referring? Are you referring to the Arizona case now?
Q. Yes.
A. Okay, no, to answer your question.
Q. Okay. When I say "defendants," I mean Arizona.
A. Okay. Because we switched gears here for a second.
Q. Understood. We're now talking about a different case.
A. Yes.
Q. I'm talking about the Top Class Actions. I'm talking about the defendants' website.
A. Right.
Q. You've never visited that, right? Correct?
A. That is correct.
Q. Have you ever posted anything on social media about defendants?
A. No.

Q. Have you ever heard of Beverage Marketing USA?
A. No.
Q. Have you ever heard of Hornell Brewing Company?
A. What's the name?
Q. Hornell Brewing Company.
A. Hornell Brewing -- no.
Q. Are you aware of whether or not claims in this case had been dismissed?
A. I am not aware.
Q. Do you recall reviewing any requests for admissions served on you in this case?
A. What do you mean by that? Like a list of questions? Can you define what that means?
(Exhibit No. PB 22 marked for identification.)
BY MR. DONOVAN:
Q. I'm going to show you PB 22. I'll ask if you've ever seen that before.
A. (Reads document.) Oh, okay, yes. I have. I didn't know what the name of it was called.
Q. Thank you.
How much time do you think you've devoted to this case?
A. Of my personal time, I would say close to seven, eight hours.
Q. In your job, do you work full-time, 40 hours?

A. I do, 40 plus.
Q. Generally you work more than 40 a week?
A. Between 40 and 44.
Q. Do you have phone applications where you can obtain receipts for the products that you buy from the stores?
MR. SHIFTAN: Objection to form.
THE WITNESS: Yes.
BY MR. DONOVAN:
Q. What phone application? What stores?
A. On my phone, just the Costco membership.
Q. And online you can purchase -- you can --
Strike that.
And online you can access your receipts for purchases of products?
A. Up to a certain date, yes.
Q. What's the date? Do you know? Is there --
A. I don't know how far it goes or if it will allow me to go.
Q. Have you ever purchased products online for the defendant's products?
A. No.
Q. Have you ever purchased products directly from the defendants?
A. Directly? No, not directly.

MR. DONOVAN: I have nothing further. Thank you very much.

MR. SHIFTAN: I have a couple of questions.

CROSS-EXAMINATION

BY MR. SHIFTAN:

Q. The toll roads and Walmart case that we have been talking about today --

A. Yes.

Q. Did you serve as a named plaintiff in those cases or did you submit -- just submit a claim form?

MR. DONOVAN: Objection to form.

MR. SHIFTAN: Let me rephrase that.

BY MR. SHIFTAN:

Q. Did you serve as a named plaintiff in those cases like you're serving in this one?

A. No.

MR. DONOVAN: Objection to form.

MR. SHIFTAN: What's the objection?

MR. DONOVAN: Leading.

MR. SHIFTAN: I said "did you." Fine.

BY MR. SHIFTAN:

Q. What was your role in those cases?

MR. DONOVAN: Objection to form.

THE WITNESS: I just submitted my information because I either I shopped there or I traveled on that

particular road.

Q. Did you sit for a deposition in those cases?

A. No.

Q. Did you answer any discovery responses like you've answered in this case?

A. No.

Q. Do you recall opposing counsel asking you some questions about why you purchased particular Arizona products?

A. Yes.

Q. Do you recall that testimony today?

A. I do.

Q. And do you recall earlier in the case being asked to provide written answers to similar questions?

A. Yes.

Q. Did counsel show you the list of responses you provided to those questions today?

A. He did not.

Q. Do you think --

Strike that.

One of the questions he asked you was particularly why you purchased them, right?

A. Yes.

Q. And do you recall what your answer was when you provided the written responses to that?

MR. DONOVAN: Objection to form.
MR. SHIFTAN: What's the objection?
MR. DONOVAN: It's leading.
MR. SHIFTAN: Can you read the question?
(Pending question read.)
MR. SHIFTAN: Do you wish to withdraw the objection?
MR. DONOVAN: No, it's objection to form. It's also outside the scope of my direct.
But go ahead, you can answer it. I'm not preventing her from answering the question.
MR. SHIFTAN: Okay.
THE WITNESS: I'm sorry, what was the question again?
BY MR. SHIFTAN:
Q. Sure. Do you recall providing written responses to those questions?
MR. DONOVAN: Objection to form.
THE WITNESS: Yes.
BY MR. SHIFTAN:
Q. Okay. And do you recall what your responses were?
MR. DONOVAN: Objection to form. Also assumes facts if you're asking me why I'm objecting.
THE WITNESS: Yes.

BY MR. SHIFTAN:

Q. Okay. And do you recall identifying -- or --

Strike that.

Earlier today you identified reasons why you purchased Arizona products. Do --

MR. DONOVAN: Objection to form.

BY MR. SHIFTAN:

Q. -- you recall that testimony?

A. Yes.

Q. And what were the reasons why you purchased Arizona products?

MR. DONOVAN: Objection to form. Asked and answered.

THE WITNESS: Oh, for the reasons I stated earlier. The value, the taste, the flavor, convenience of it.

BY MR. SHIFTAN:

Q. And do you recall in your written responses if you also included as a -- one of your reasons that defendants' representations that the products contained no preservatives?

MR. DONOVAN: Objection to form.

The record will reflect that the witness is reading the question from the computer, I guess.

THE WITNESS: Yes.

MR. DONOVAN: Okay, thank you.
MR. SHIFTAN: Is that a problem?
MR. DONOVAN: No, not at all, just want the record to reflect that.
THE WITNESS: Yes.
BY MR. SHIFTAN:
Q. Okay, let me just ask it this way.
Did you omit in your answer earlier today that one of the reasons that you purchased Arizona products was because of the representation of the products contained no preservatives?
MR. DONOVAN: Objection to form.
MR. SHIFTAN: On what ground?
MR. DONOVAN: It's leading and it's argumentative. It's assuming facts. It's putting words in the witness's mouth.
MR. SHIFTAN: Okay. Why don't we just mark the interrogatory then. Do you have a copy of that?
MR. DONOVAN: I do not. I mean, I'm not -- this is your deposition.
MR. SHIFTAN: I can print it out, but if you have it, it makes life a lot easier for everyone.
MR. DONOVAN: It's not within the scope of my direct. So, I'm not going to be in a position where I consent to you asking this line of question where you're

suggesting the answers to the witness. I didn't ask the witness --

MR. SHIFTAN: I'm not suggesting any answers to the witness.

MR. DONOVAN: Well...

MR. SHIFTAN: Do you have a copy of the interrogatory responses or not? I think we served --

(Simultaneous speaking)

MR. DONOVAN: Which one? Which ones do you want?

MR. SHIFTAN: We can use the amended we served yesterday. I can also print it out if you want to make me go through the trouble.

Let's just go off the record, and I'll print it out. No, that's fine.

MR. DONOVAN: I'll look for it, Counsel. It's fine.

Which ones would you like?

MR. SHIFTAN: I said I got it.

MR. DONOVAN: Okay.

THE VIDEOGRAPHER: Would you like to go off the record?

MR. SHIFTAN: Yes, please.

THE VIDEOGRAPHER: Counsel?

MR. DONOVAN: I'm not being difficult. It's

just that there's three answers. It's your -- it's your question. So whatever document you want to show the witness, I shouldn't be participating in that because I don't know which one you want. That's another reason, but...

MR. SHIFTAN: Okay.

MR. DONOVAN: I'm not looking to delay things.

MR. SHIFTAN: That's fine.

THE VIDEOGRAPHER: Okay. The time is 1:57 p.m. We are now off the record.

(Discussion off the record.)

THE VIDEOGRAPHER: The time is 1:59 p.m. We are now back on the record.

BY MR. SHIFTAN:

Q. Ms. Brown, before we took a break, we were talking about the reasons that you purchased the various Arizona products. Can you identify the reasons that you purchased Arizona products to the best of your ability?

MR. DONOVAN: Objection. Asked and answered.

You can answer.

THE WITNESS: Answer the question?

The value, the taste, the convenience of having individual bottles. I like the drink.

BY MR. SHIFTAN:

Q. And prior to joining this lawsuit, you

purchased --
Sorry about that.
Prior to joining this lawsuit, you purchased Arizona products, correct?
MR. DONOVAN: Objection to form, asked and answered.
THE WITNESS: That is correct.
BY MR. SHIFTAN:
Q. Okay. And do you recall providing a written interrogatory responses in this case?
MR. DONOVAN: Objection to form.
THE WITNESS: Yes.
BY MR. SHIFTAN:
Q. Okay. And do you recall having the answer that: Plaintiff purchased Arizona products because of their taste, price, to quench your thirst, sugar content and defendant's representations that the products contained no preservatives?
MR. DONOVAN: Objection to form.
THE WITNESS: Yes, that is correct.
BY MR. SHIFTAN:
Q. Is that an accurate answer?
MR. DONOVAN: Objection to form.
MR. SHIFTAN: What is the objection?
MR. DONOVAN: It's a leading question. It's

suggesting the answer.

MR. SHIFTAN: It's a yes or no question.

MR. DONOVAN: Still leading.

MR. SHIFTAN: You can answer.

MR. DONOVAN: Same objection.

THE WITNESS: The answer to the question is yes.

BY MR. SHIFTAN:

Q. Okay.

MR. SHIFTAN: Nothing further.

MR. DONOVAN: Can you read back that last -- I'll go back and I'll --

Okay. (Paused.)

MR. SHIFTAN: Do you have anything further?

MR. DONOVAN: I've got to supplement my objection to say that also these questions are argumentative and misstate interrogatory answers.

But I have nothing further. Thank you very much.

THE WITNESS: Thank you.

MR. SHIFTAN: Thanks.

THE VIDEOGRAPHER: This concludes today's deposition of Joy Brown.

The time is 2:04 p.m. We are now off the record.

(Discussion off the record.)

MR. SHIFTAN: We'll read and sign. I'll say that on the record.

MR. DONOVAN: We went off the record and the reporter was kind enough to photograph the samples which are -- that were brought to the deposition: PB 1, PB 3, PB 5, PB 6, PB 7, PB 9. And I have asked -- I don't know whether there is a resolution of it as to whether, after -- in the event they're consumed or emptied, that they be preserved for the future in the case.

MR. SHIFTAN: Just to be clear, you have no issue with her drinking the beverages.

MR. DONOVAN: Of course not.

MR. SHIFTAN: Okay.

MR. DONOVAN: It's her beverages. She can do whatever she wants with it. I just want to make sure that the samples are marked and that they be preserved, that's all.

MR. SHIFTAN: And we will read and sign.

And we'll assert the confidentiality designations after we get the transcript in addition to the ones we already assert.

MR. DONOVAN: Thank you.

MR. SHIFTAN: Thanks a lot.

(Deposition concluded at 2:10 p.m.)

REPORTER'S CERTIFICATE

I, ANNE KIELWASSER, Certified Registered Reporter, do hereby certify: That the witness named in the foregoing deposition was by me duly sworn; that the deposition was then taken before me at the time and place herein set forth; that the testimony and proceedings were reported stenographically by me and were transcribed through computerized transcription by me; that the foregoing is a true record of the testimony and proceedings taken at that time; and that I am not interested in the event of the aforementioned action.

Witness my hand dated May 27, 2022.



ANNE KIELWASSER
RPR 50901, CSR, CRR

Benjamin E. Shiftan, Esq.
bshiftan@pswlaw.com

June 1, 2022

RE: Ashour, Ahmed v. Arizona Beverages Usa Llc, Et Al
5/17/2022, Joy Brown (#5189079)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at erratas-cs@veritext.com.

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,
Veritext Legal Solutions

Ashour, Ahmed v. Arizona Beverages Usa Llc, Et Al

Joy Brown (#5189079)

E R R A T A  S H E E T

PAGE______ LINE______ CHANGE____________________________

__________________________________________________________

REASON____________________________________________________

PAGE______ LINE______ CHANGE____________________________

__________________________________________________________

REASON____________________________________________________

PAGE______ LINE______ CHANGE____________________________

__________________________________________________________

REASON____________________________________________________

PAGE______ LINE______ CHANGE____________________________

__________________________________________________________

REASON____________________________________________________

PAGE______ LINE______ CHANGE____________________________

__________________________________________________________

REASON____________________________________________________

PAGE______ LINE______ CHANGE____________________________

__________________________________________________________

REASON____________________________________________________

_____________________________________ __________________

Joy Brown Date

Ashour, Ahmed v. Arizona Beverages Usa Llc, Et Al

Joy Brown (#5189079)

ACKNOWLEDGEMENT OF DEPONENT

I, Joy Brown, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

______________________________ ________________

Joy Brown Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

______ DAY OF ________________, 20___.

__________________________

NOTARY PUBLIC

**&**

**&** 2:5,14 70:11

**0**

**00097** 23:23
**02-02-2022** 3:8 18:19
**07407** 2:15

**1**

**1** 3:7 4:13 19:18 20:1 22:8 27:12 30:7,17 31:2 32:10 109:5 111:3
**1,090,000** 68:24
**1.50.** 59:8
**10** 3:15 18:16 34:8 34:9,13,19 93:3
**10.99** 19:22 26:6
**10.99.** 32:8
**100** 3:4 27:4
**10:00** 4:1
**11** 3:16 55:10,14 59:6 71:8 92:9
**11:13** 55:4
**11:29** 55:7
**11th** 24:2 25:25
**12** 3:17 18:16 66:23,24 67:1,1,17 68:21 93:3
**12-15-2021** 3:16 55:10
**12-20-2021** 3:15 34:9
**128** 35:7
**12:03** 71:20
**12:04** 71:23
**12:49** 95:15
**13** 3:17 67:22,23 67:25
**14** 3:18 59:6 68:11 68:12,14,17 69:21 69:24 92:9
**15** 3:18 55:16 68:23 70:5,6,8
**16** 3:10,13,19 9:25 21:21 22:1 31:15 32:2,7 70:15,17,18 88:3 89:5,6,22 92:2,11,22 93:18
**17** 1:20 3:7,19 4:1 71:3,4,6
**17th** 4:4
**18** 3:8,20 71:16 72:7,24,25 73:13 73:17 74:1,10
**19** 3:20 51:7,9 74:6,7,9 85:9
**19-7081** 1:10
**190th** 4:20
**1995** 9:10
**1:00** 72:2,4
**1:19cv07081** 4:18
**1:42p.m.** 95:18
**1:57** 106:9
**1:59** 106:12

**2**

**2** 1:14 3:8 18:18 18:19,21,22,24 19:17 20:1,5,8,10 20:20 22:18 23:21 26:20,21 32:24 70:10,13
**2,166,666** 70:23
**2.50** 93:5
**2.99** 34:17
**20** 3:21 8:17 52:21 52:24 53:5,15,20 54:17 59:11 62:6 74:15,16,17,19,25 75:1,16 76:22,25 77:3 78:4,11,16,20 78:23 81:20 82:11 83:6,17 88:3 90:24 91:1 96:8 113:15
**20.67.** 48:1
**2000** 91:7 96:4
**2003** 9:16
**201** 2:15,16,16
**2011** 8:18
**2012** 8:18
**2018** 87:8 94:14
**2019** 87:8 89:11 94:14
**2019ish** 88:6
**2020** 73:3 75:1,5,6 75:9 77:8 78:20 83:5 85:13 90:24 91:19,22,23 93:2
**2021** 34:18 38:18 39:25 45:7 52:10 55:16 73:2 83:7
**2022** 1:20 3:13 4:1 4:4 18:5,10 19:2 20:5 22:23 24:2 32:2,7,12 34:2 110:15 111:3
**20th** 34:18
**21** 3:9,21 74:15 81:23,24 82:2
**22** 3:22 98:14,16
**23** 3:11 89:25 94:7 94:21,23 95:3
**24** 3:7 17:2,10 19:23 22:6 23:25 25:22 27:12,18 28:24 29:1 32:9 32:13 33:7 34:23 58:1,24 59:3,5 92:3,4,11
**27** 110:15
**29** 3:12
**2:04** 108:23
**2:10** 109:24
**2nd** 19:1 30:18

**3**

**3** 3:9 21:19,21,24 22:4,13,21 23:2,10 24:8,14 25:3,5,16 25:18 26:2 27:5 27:14 31:14,18,22 31:25 58:17 77:13 77:15 79:8 83:15 83:21 109:5
**30** 14:16,25 15:5 111:17
**31** 74:25 75:6,9 77:8 78:20 85:13 90:24 91:19,22,23 93:2
**31st** 75:5 83:4
**32** 3:13
**33** 3:14
**34** 3:15
**350** 2:5

**4**

**4** 3:11 18:4 23:13 23:22,23,24 24:7 24:13,19,24 25:4 25:11,18 26:25 27:1 31:19 32:24 34:6 58:17 70:21 87:2 89:19 93:1,5
**40** 29:4 98:25 99:1 99:2,3
**400** 4:20
**44** 99:3
**45** 29:4

**5**

**5** 3:3,3,12 29:13 31:11,16,17 109:6

**5/17/2022** 111:5
**50** 80:6
**50901** 1:23 110:18
**5189079** 111:5 112:2 113:2
**5440** 110:16
**55** 3:16

**6**

**6** 3:12 29:13 31:17 77:10,13,14,16,17 79:7 80:17 83:15 83:21,21 109:6
**6-5-77** 7:20
**66** 3:17
**669** 2:14
**67** 3:17
**68** 3:18
**680** 2:6
**6b** 79:19 80:4

**7**

**7** 3:12 29:13 31:17 68:23 89:13,16,22 90:17 94:12 109:6
**70** 3:18,19
**71** 3:19,20
**73** 50:8,10
**74** 3:20,21
**788-8300** 2:7

**8**

**8** 3:13 32:1,5,18
**8,583.332** 71:10
**8,583.333.48** 71:13
**81** 3:21
**818** 2:7
**857-6761** 2:16
**857-6778** 2:16
**879** 4:19

**9**

**9** 3:14 33:13,16 34:5,20,22 109:6
**90248** 4:20
**94104** 2:6
**98** 3:22 23:23
**99** 59:8,8 94:23,24 95:1,4
**9:59** 4:4

**a**

**a.m.** 4:1,4 55:4,7
**aa0009** 23:23
**aa00090-91** 34:14
**aa00096** 32:5
**aa0095** 23:21
**ability** 7:14 106:18
**able** 56:23
**abnormal** 30:10
**absolutely** 95:12
**access** 42:8 99:14
**accessed** 62:23
**accident** 96:2
**account** 26:8,14 26:15
**accuracy** 111:9
**accurate** 107:22
**acknowledgement** 113:3
**acknowledgment** 111:12
**action** 4:25 36:15 38:15,24 44:15,20 46:5 49:6 50:11 50:19 51:21,25 63:1 65:22 74:24 77:4 84:19 85:7 110:12
**action's** 74:13
**actions** 38:17,21 39:4,7,18 40:11,16 42:23 43:1,9,13,18 44:2,11,16 46:4 48:25 51:11,16 52:3 57:5 59:13 59:15,22 60:7 62:23 63:14,24 65:15 72:10 73:12 73:17 76:21 85:9 96:10 97:18
**actual** 79:4
**add** 94:25
**adding** 77:7
**addition** 109:20
**additions** 113:6
**address** 7:23 42:10 43:2 76:5 76:12,16
**administer** 4:24
**admissions** 98:11
**advertising** 67:10
**advice** 64:13 66:3 66:6
**affiliations** 5:3
**affirmatively** 53:8 89:1
**aforementioned** 110:12
**afternoon** 95:21 95:22
**ago** 17:16,24 39:13 87:7 96:3
**agree** 4:12 84:4,6
**agreeing** 5:22
**agreement** 30:13 78:11 79:8 80:25 96:7,9,12,15,20
**ahead** 6:21 58:21 102:10
**ahmed** 1:6 4:15 111:4 112:1 113:1
**airport** 9:8
**al** 4:15,16 111:4 112:1 113:1
**allotted** 111:20
**allow** 99:18
**amended** 105:11
**amount** 34:17 48:3 50:5
**amounts** 6:24
**ampm** 94:12
**amtrak** 9:20,21,23 10:1
**angeles** 7:22 8:13 8:17
**anne** 1:23 4:23 110:3,17
**annual** 26:16
**answer** 6:5,16,18 6:21 7:5,14 10:17 12:8,10 16:6 19:21 20:22 23:4 35:3 38:5 45:16 69:13 79:6 97:11 101:4,24 102:10 104:8 106:20,21 107:14,22 108:1,4 108:6
**answered** 21:9 40:18,20 75:12 101:5 103:13 106:19 107:6
**answering** 6:13 102:11
**answers** 11:16,18 101:14 105:1,3 106:1 108:16
**anybody** 8:21 14:11,19 43:12 49:24 61:23 66:4 66:7,9,10,12,15,18 76:23 78:1

**anymore** 40:2 81:9
**anyplace** 92:6
**apartment** 10:10
**apologize** 35:4 54:23 69:16
**appear** 5:22 82:20 82:20
**appearance** 5:5
**appearances** 5:2
**appeared** 51:12
**appears** 67:5
**appended** 113:7
**applicable** 111:8
**application** 99:10
**applications** 99:4
**approximate** 22:21 87:24
**approximately** 8:6 13:25 17:15 22:16 52:21 59:11 60:15
**approximations** 6:25 8:16
**argumentative** 104:15 108:16
**arizona** 1:12,13,14 3:7,10 4:16 17:2 17:10 19:23,23 21:22 22:1 23:25 24:22 28:4,5,9,15 28:16,21 31:9,15 32:8 34:18 39:14 40:17,23 41:2,13 41:17,21,23 42:19 53:13,16,24 54:6,9 55:25 56:4 57:5 74:12 85:21 97:9 97:12 101:8 103:5 103:11 104:9 106:17,18 107:4 107:15 111:4 112:1 113:1
**arnold** 28:18 85:24 86:5,11 87:5,9 88:9,10
**artificial** 56:10
**ashour** 1:6 4:15 111:4 112:1 113:1
**asked** 6:11 19:16 21:9 38:10 40:19 40:21,22 43:4 44:10,14,22 56:12 57:6 64:20 69:10 75:11 89:9 96:18 101:14,21 103:12 106:19 107:5 109:6
**asking** 6:4 14:15 19:8,10,13 24:24 30:3,11 38:11,12 47:16 52:19 78:25 80:19 93:21 101:7 102:24 104:25
**assert** 109:19,21
**assign** 77:23 80:18 84:5
**assigning** 79:9
**assignment** 80:10 80:16 81:1,12
**assume** 47:14 62:10 80:7 83:3 83:12
**assumes** 102:23
**assuming** 104:15
**assumption** 32:16
**attached** 111:11
**attempted** 51:11
**attention** 68:21 71:8
**attorney** 5:6,20 6:12,19 16:5 23:16 49:9 64:14 64:23 70:13,23 75:22 80:2 111:13
**attorneys** 10:18 38:12 48:17 61:12 64:16 65:15 69:25 71:9 77:19,23 80:18,24 84:5,10 84:13,22
**attrition** 54:24
**audio** 4:10,11
**aunt** 37:7
**authorization** 74:23
**authorized** 4:24
**available** 111:6
**avenue** 8:19 10:9
**award** 70:13,23 71:10 80:23
**awarded** 68:24 69:25
**awards** 68:5,8
**aware** 37:13,17,22 38:2,10,11,13 68:5 68:8,23 70:10,20 70:21 71:9,15 75:24 79:9 80:1 81:15 85:1 98:7,9

**b**

**b** 49:15
**bachelor's** 9:13
**back** 11:23 14:13 16:3 27:5 40:24 44:7,14 52:3 55:8 57:11 71:24 79:7 83:15 88:9 90:23 91:7 92:17 95:19 106:13 108:10,11
**balanced** 45:20
**barbara** 10:8
**based** 81:5
**basic** 5:24
**basis** 16:6 36:24 60:14
**bate** 23:21,23 32:5 34:14
**bathroom** 54:25
**beginning** 5:5 85:22
**begins** 83:25
**behalf** 1:7 5:8 81:16
**belief** 85:3,6,13
**believe** 28:18,19 38:14,15 39:14 45:6 46:1,1,17 50:10 56:25 57:6 59:11 62:22 68:14 87:22 96:25
**believed** 85:3
**bell** 64:18
**ben** 5:9 64:17
**benjamin** 2:4 111:1
**best** 28:23 106:18
**beverage** 98:1
**beverages** 1:12,13 1:13,14 4:16 29:19 53:13,16,24 54:6 109:11,14 111:4 112:1 113:1
**big** 93:15
**birth** 7:19
**bit** 79:3
**bob** 5:20
**born** 8:12
**bottle** 3:9,14 21:21 22:1 25:23 29:6 31:14 33:13,16 57:25 58:15 88:1 89:4,23 93:15,17 93:18,19

**bottles** 27:19 29:1 32:20 86:13,14,16 86:19,24,24,25 87:25 89:5,7,16,22 92:12 93:9,13,14 106:23
**bottom** 67:5
**bought** 88:4 92:4
**box** 40:3
**brand** 28:3,10 34:7 94:18
**brands** 28:3
**break** 54:20,21,24 54:25,25 60:11 72:1 95:7 106:15
**brewing** 1:12 98:3 98:5,6
**brief** 72:2
**briefly** 72:1
**brighton** 8:19 10:9
**bring** 30:22 92:18 93:25
**bringing** 16:13
**brother** 35:25
**brother's** 36:3
**brothers** 35:24 36:14
**brought** 16:12 21:12,15 33:17 90:12 109:5
**brown** 1:6,19 3:3 4:14 5:14,18 72:3 81:20 95:21 106:15 108:22 111:5 112:2,24 113:2,4,12
**bshiftan** 2:7 111:2
**bucks** 59:6 92:9
**buy** 20:20 87:4,5,9 87:23 89:9 92:25 94:23 99:5
**buying** 29:2

**c**

**c** 2:1 83:23
**ca** 4:1
**cal** 4:20 9:14
**california** 2:6 50:8
**call** 11:5 76:25
**called** 38:15 59:19 98:19
**capacity** 9:24
**caption** 68:15
**card** 26:9 48:12 62:2
**careful** 54:1
**carlos** 52:12 54:16 64:17
**carry** 7:8
**carrying** 36:22
**case** 1:10 4:18 5:21 11:14,17 16:13 17:18 18:16 21:17 22:5,6,8,14 24:4 25:21 31:18 31:20,22,25 45:5,8 45:14,23,25 46:4,7 47:2,8,13 48:7,21 48:21 49:1,7,20,23 50:2,16,17 54:8,10 60:10,13,21 61:12 61:22 62:18 63:9 63:15 64:16 65:1 65:4,22 66:1,4,7,9 66:12,15 68:16,24 69:7,8,22 70:2,10 71:10 77:7,20 78:2 79:16,16 81:7,7,15 92:9 95:23 96:8,13,16 96:21,23 97:1,8,9 97:16 98:8,11,22 100:6 101:5,13 107:10 109:9
**cases** 67:9,12 68:6 68:15 79:15,17 90:20,25 91:14,16 91:17 92:1,7,22 100:10,15,22 101:2
**categories** 57:10
**cause** 15:14
**caution** 10:24
**cell** 4:8
**cellular** 4:7
**cents** 29:4 59:8,8 94:23,24 95:4
**certain** 48:23 49:22 50:5 75:13 83:13 99:16
**certainty** 23:4 25:23 79:4
**certificate** 110:1
**certification** 35:15 35:17
**certified** 51:10 110:3
**certify** 110:4
**chain** 18:4 87:3
**change** 25:9 112:4 112:7,10,13,16,19
**changes** 111:10 113:6
**charged** 50:5
**check** 45:19 60:19 62:14,16,19 82:16
**checked** 40:7
**children** 8:25
**christin** 2:20 4:21
**citation** 50:13,15 50:18 60:20
**claim** 45:8,14 48:8 50:4 54:9 62:18 62:21 63:8,25 77:18,23 78:1 79:9 80:18 81:9 84:5 100:10
**claimant** 61:23
**claims** 37:13,17 98:7
**clarification** 44:22 96:18
**class** 36:15 38:15 38:17,21,24 39:4,7 39:18 40:10,16 42:22 43:1,9,12,18 44:2,11,15,16,20 46:4,5 48:25 49:6 50:11,19 51:11,12 51:16,21,25 52:3 57:4 59:13,15,22 60:7 62:23 63:1 63:14,24 65:15,21 68:24 72:10 73:12 73:17 74:13,24 76:21 77:4 84:19 85:7,9 96:10 97:18
**clear** 6:17 10:16 20:15 41:9 109:10
**clearly** 85:17
**click** 56:24 57:1
**close** 72:17,20 92:16 98:23
**cold** 21:18 22:11
**college** 9:11,12
**come** 37:12,16 54:5 62:24 84:20 85:6
**communicate** 50:16
**communicated** 13:10 64:6,9,25
**communicating** 52:14 63:23

**communication** 44:11 49:11 61:11 64:19,22
**communications** 10:18 11:1 38:6 38:12 44:3 54:2 63:13,15 65:8
**company** 98:3,5
**compare** 91:23
**complete** 113:8
**completed** 111:17
**computer** 36:23 39:6 42:9 103:24
**computerized** 110:9
**concerns** 69:21
**concluded** 109:24
**concludes** 108:21
**conducive** 93:23
**conductor** 9:22 35:15 36:21
**confident** 18:5,9 31:24
**confidential** 3:21 7:25 36:10 76:9 81:24 82:6
**confidentiality** 109:19
**confused** 25:10
**connection** 6:23 68:1 73:11,20
**consent** 74:23 104:25
**consideration** 46:22
**consume** 41:17
**consumed** 30:21 109:8
**consuming** 31:7,9
**contact** 40:12 42:1 42:15 43:16 45:1 50:19 52:5 74:2 75:21
**contacted** 52:8,11 62:3,25 63:3
**contacting** 52:15
**contained** 103:20 104:10 107:17
**container** 58:25 59:10 91:10 94:4
**containers** 89:3 92:23
**content** 107:16
**continue** 4:11 51:14
**continuous** 36:24
**convenience** 103:15 106:22
**convenient** 92:14 93:8,12,17,21 94:12,16
**conversation** 51:6 52:20,21,24 53:4,5 53:9,15,20,23 54:3 54:18 78:13,16,22 79:2,4
**conversations** 4:7
**copies** 111:14
**copy** 51:3 59:21 60:2 82:14,23 83:9 104:18 105:6
**correct** 11:20 14:18,23 15:2,7,20 20:2 22:9 24:20 24:21,22 25:12,13 26:9 27:11 28:11 32:11,15 33:17 35:8,9 42:2 47:24 56:20 59:13,17 61:17,18 62:7 66:1 69:3 75:7 78:24 82:13 84:11 85:11 86:8 87:12 91:20 93:24 94:1 94:8 96:14 97:3 97:21,22 107:4,7 107:20 113:8
**correction** 89:15
**corrections** 113:6
**correctly** 41:16
**cost** 18:15 26:5 29:1 57:18,22
**costco** 3:11,13 18:4 19:1,9 23:6,9 23:13,24 25:3 26:4,8,10,14,15 27:8 32:1,7,14 92:5 99:11
**counsel** 4:14 5:1 5:10 12:4 20:11 21:11 29:15,24 38:6 40:6 46:9 51:4 67:4 68:5,8 68:24 69:21 71:10 76:8 79:9 95:6 101:7,16 105:16 105:24 111:14
**couple** 17:15 100:3
**course** 8:1 67:15 109:12
**court** 1:1 4:17,22 5:11 6:1,3,5 30:8 47:11,18 48:22 53:17 61:19,23
**cousin** 37:7
**cross** 3:4 100:4
**crr** 1:23 110:18
**crv** 26:6
**crystal** 1:7
**cs** 111:15
**csr** 1:23 110:18
**currently** 10:3
**customer** 48:7
**cv** 1:10

**d**

**daniel** 64:2,4
**date** 7:19 17:16 22:15 24:1,6 34:1 78:16,25 79:1,4 83:12 99:16,17 112:24 113:12
**dated** 3:8,13,15,16 18:19 19:1 24:2 32:1,7 34:9 55:10 55:15 74:25 78:20 110:15
**dates** 6:24
**day** 10:7 36:22,22 75:14 113:15
**days** 10:7 111:17
**deadline** 77:6
**deal** 41:12
**deals** 6:16 69:20
**debate** 11:12
**deceived** 85:4,15
**december** 34:18 55:15 74:25 75:5 75:6,9 77:7 78:20 79:5 83:4 85:13 90:24 91:19,22,23 93:2
**deceptive** 67:9
**decertified** 51:10
**decide** 53:23 54:12 65:3 84:23
**decided** 54:5,7 84:18,23
**deciding** 65:19
**decision** 53:12,16 65:14,23
**declare** 113:4

**deduce** 19:10
**deemed** 113:6
**defendant** 2:12 80:23
**defendant's** 74:3 85:16 91:24 99:21 107:17
**defendants** 1:15 4:15 5:8,21 37:13 37:18 50:1 77:19 85:4 97:6,12,19,24 99:24 103:20
**define** 98:13
**definitely** 38:4,5
**degree** 9:13,15
**delay** 106:7
**delete** 40:1
**deleted** 39:23 40:4
**department** 35:15
**depending** 57:24 57:24
**depends** 58:7
**deponent** 111:13 113:3
**depose** 30:2
**deposed** 7:17 29:24
**deposing** 111:13
**deposition** 1:19 4:10,14,19 5:22 10:12,15 11:4 12:2,21,24 13:11 13:22 14:2 15:1,9 15:22 16:11 29:16 30:4 33:17 85:23 101:2 104:20 108:22 109:5,24 110:5,6
**designated** 76:9 82:4
**designations** 109:20
**detail** 80:3
**determined** 84:7
**devote** 63:16,17,23
**devoted** 60:13 98:21
**diego** 10:7
**different** 14:14 43:21 90:6 97:15
**difficult** 105:25
**direct** 3:3 5:16 68:21 71:8 102:9 104:24
**directing** 12:7
**directly** 61:13,14 99:23,25,25
**disclose** 54:1
**discount** 29:2
**discovery** 32:4 82:3 101:4
**discretion** 84:8
**discussed** 52:19
**discussion** 13:1 17:4 23:12 71:22 106:11 108:25
**dismissed** 98:8
**district** 1:1,2 4:17 4:17
**divulge** 10:17 38:5 65:8
**document** 32:4 46:12 47:7,10,17 67:4,16 70:19 71:7 72:9 74:21 75:16,22 77:16 79:25 98:18 106:2
**documentation** 46:6 47:6
**documents** 10:14 10:21,21 11:2 12:1 46:3,10 49:23 51:9
**doing** 30:11 37:5
**dollar** 89:24 94:22 94:22,24,25
**dollars** 89:21
**dominguez** 9:14
**donovan** 2:13 3:3 5:7,7,17,20 7:9,10 8:1,2 10:20,24,25 11:11,13,23,25 12:3,7,11,14,18 13:16,20 16:2,17 16:19,23 17:1,5 18:8,13,18,22,23 19:6,12,16,25 20:4 20:11,16,19 21:1 21:11,13,19,23 23:1,8,15,19,20 24:12,17 25:8,15 29:11,17,20,24 30:4,6,12,16 31:5 32:3,22 33:3,9,12 33:15 34:8,11 35:5 36:20 37:6 37:11,21 38:1,9 39:16 40:6,9,21 41:1,6,10,11 42:7 43:7,22 44:9,13,18 44:24 45:13,21 46:9,11,17,19,23 46:25 47:5,15,22 48:14,20 49:4 51:3,15,20 53:2,10 53:19 54:4,21 55:3,9,12,13 56:14 56:15 57:17 58:9 60:1,5 61:6,10 62:4,12 63:22 64:24 65:13 66:22 66:25 67:6,11,22 67:24 68:11,13,20 69:4,10,17,19 70:5 70:7,16 71:2,5,17 71:25 72:5,6,18 73:4,10,16 74:6,8 74:18 75:15 76:8 76:11 78:9,19 80:15 81:23 82:1 82:6,7 83:1,14,17 83:20 84:16 95:8 95:11,20 96:19 98:15 99:9 100:1 100:11,17,19,23 102:1,3,8,18,23 103:6,12,22 104:1 104:3,12,14,19,23 105:5,9,16,20,25 106:7,19 107:5,11 107:19,23,25 108:3,5,10,14 109:3,12,14,22
**drafted** 51:8
**drink** 20:23 29:22 92:13,21 94:17 106:23
**drinking** 92:17 93:16 109:11
**drive** 2:14
**duly** 5:15 110:5
**duties** 36:22

**e**

**e** 2:1,1,4 3:16 38:22,23,25 39:7,9 39:17,20 40:7,10 40:17 41:9,12,12 41:20,24 42:12,22 42:23 43:2,8 49:13,16,18 50:24 51:1 53:4,7 54:14 54:15,17 55:10,15 55:19 64:19,22

73:21 76:5,5,12,15 82:16 111:1 112:3 112:3,3
**earlier** 33:25 49:19 72:3 101:13 103:4,15 104:8
**early** 45:7 73:2 96:4
**easier** 104:22
**education** 9:12 35:19
**effect** 41:18 56:11
**effectively** 65:11
**efforts** 81:6
**eight** 8:6 71:11 90:25 91:16 92:1 94:10,10 98:24
**either** 13:12,14 18:3 28:19 45:6 62:25 63:13,24 67:18 100:25
**elapsed** 52:16
**eleven** 89:13,16,22 94:12
**elmwood** 2:15
**employed** 9:17
**employer** 9:19
**emptied** 109:8
**empty** 40:3
**ended** 61:21
**energies** 81:6
**enjoy** 20:23,25
**enjoyed** 27:16 33:6
**entail** 60:18,24
**envision** 30:11
**errata** 111:11,13 111:17
**erratas** 111:15
**esq** 2:4,13 111:1
**established** 51:13
**estimate** 60:22
**et** 4:15,16 111:4 112:1 113:1
**event** 30:24 109:8 110:12
**evidence** 24:21 29:20 48:15
**evidences** 25:4
**evidentiary** 6:2
**exact** 17:16 19:11 22:15 23:7 34:1 41:19
**examination** 3:3,4 5:16 100:4
**excerpt** 67:8
**excess** 50:5
**exchange** 81:11
**excuse** 51:23 58:19 77:15 86:20
**executed** 82:23 83:9
**exhibit** 3:7,8,9,11 3:12,13,14,15,16 3:17,17,18,18,19 3:19,20,20,21,21 3:22 17:2 18:19 21:21 23:13 29:13 32:1 33:13 34:9 55:10 66:24 67:23 68:12 70:6,15 71:4,16 74:7,17 81:24 83:16 98:14
**exhibits** 3:6 21:12 30:1,10 31:17
**expect** 78:4
**expecting** 78:10
**experience** 65:22 67:19 74:3
**experiences** 57:5

**f**

**facsimile** 2:16
**fact** 30:9
**facts** 6:23,23 102:24 104:15
**fading** 67:5
**fails** 111:19
**fair** 26:1 31:1 32:12 52:4 79:21 80:1 84:6,21,24 85:12 91:13
**false** 67:9
**familiar** 64:3,8 69:24
**far** 57:11 99:18
**fault** 23:16
**february** 18:1 19:1 20:5 30:17 30:18
**fee** 50:6 68:5,8 70:13,23 71:10 79:9
**feel** 85:15
**fees** 69:25 77:19 77:23 80:18 81:7 84:5,20
**fifteen** 35:18
**fifty** 94:22
**figure** 6:9
**file** 40:3
**filed** 4:16 37:13,17 47:10,18 48:22 54:9
**filing** 63:25
**fill** 63:8
**filled** 51:22,24 73:22
**filling** 73:11
**financially** 5:1
**find** 6:7 15:16 38:20 50:11
**fine** 6:25 20:16,16 54:25 55:1 72:4 100:20 105:15,17 106:8
**finish** 6:18 28:8 67:14 72:22
**finishes** 35:2
**firm** 4:21,23 35:22 36:1 37:8 50:23 63:5,6 65:3,16,18 65:23,25 66:4,7,13 66:16,19 67:9 68:2,6,9,16 69:2,5 70:11,21 71:9 76:15,23 81:14,14
**firm's** 67:12,19
**firms** 65:21 81:15
**first** 23:16 53:11 69:13 72:19,24 77:17 79:2 85:1,6
**five** 29:11 88:11 91:6,8
**flavor** 27:16 28:14 34:24 35:7 85:24 85:25 86:3 87:7 87:11,17,18,19 88:16,17 90:6,7 94:18 103:15
**flavored** 88:5
**flavors** 28:4,14,16 28:20,21 33:6
**follow** 5:24
**follows** 5:15
**food** 18:4 34:6 35:19 87:2 89:19 93:1
**foregoing** 110:5 110:10 113:5
**form** 7:7 11:21 12:5 13:13,15 15:25 16:6 18:6

19:5,6,13,20 20:3 20:14,21 21:7 22:24 23:3 24:9 24:15 25:6,14,19 31:4,23 32:19 33:1 35:1 36:17 37:1,9,19,24 39:11 40:19 41:5 42:6 43:19 44:5 45:10 47:3,12,20 48:8,11 48:19 49:2 51:18 52:25 53:17,25 56:5,13 57:14 58:6 59:25 61:4 62:14 63:8,19 65:7 66:21 67:18 67:20 68:19 69:1 71:14 72:14 73:1 73:8,14 74:5 75:11 76:17 78:6 78:17 80:12 82:24 83:10 84:15 96:17 99:7 100:10,11,17 100:23 102:1,8,18 102:23 103:6,12 103:22 104:12 107:5,11,19,23
**format** 74:11
**forth** 110:7
**four** 8:15 10:7 13:2,5,25 86:16 87:24 89:2
**fourth** 83:22
**francisco** 2:6
**front** 16:21 17:7 24:18,25 32:10 48:23
**fruit** 85:24,25 86:5 87:17
**full** 10:1 67:4 98:25
**fully** 82:22 83:8
**furnished** 59:23
**further** 100:1 108:9,13,17
**future** 109:9

**g**

**gallon** 3:14 33:13 34:25 57:25 58:15 86:13,14,19,23,24 86:25 89:4,6,14,17 89:20 92:24 93:5 93:6,17,19,23 94:2
**gardena** 4:1,20
**gears** 97:13
**general** 11:22
**generally** 6:15 99:2
**gestures** 7:3
**getting** 20:12 61:21
**ginseng** 3:7 17:3 17:11 27:24 28:5 28:10,12,13 90:15
**give** 29:5 37:2,2 48:17 79:23
**given** 113:9
**go** 4:12 6:21 11:23 44:7,14 46:19 52:3 58:21 71:17 75:25 79:7 82:3 83:15 88:9 91:7 99:19 102:10 105:13,14,21 108:11
**goes** 99:18
**going** 6:5 10:16 11:23 16:4 17:6 21:24 23:22 29:25 30:13 33:9 34:12 34:13 52:1 53:12 54:12 55:14 60:25 72:7 74:9,11,19 77:4 96:24 98:16 104:24
**good** 4:3 5:7,18,19 23:19 27:24,25 41:10 95:1,21,22
**gotch'ya** 86:21
**graduate** 9:3,9
**great** 37:5
**greater** 27:18
**green** 3:7,10 17:2 17:10 19:23,24 21:22 22:2 23:25 24:22 25:12 28:5 28:9 31:9,15 32:8 32:10,13 34:18 39:15 85:23 86:1 86:6 90:3,11,14,14 92:11,23 94:5
**grocery** 18:4 87:3 89:17,18
**ground** 104:13
**group** 64:11,14
**guess** 29:17 45:2 71:2 103:24
**guessing** 79:6
**guidelines** 5:24

**h**

**h** 112:3
**half** 15:19,23 35:25 36:7
**hand** 47:4 50:3 82:18 97:5 110:15
**handled** 68:6,9
**happen** 38:16
**happened** 39:12 46:1 52:7,23
**head** 7:4 53:8 89:1
**hear** 52:24
**heard** 64:2,11 70:25 98:1,3
**held** 4:19 30:23
**help** 69:16 78:15 78:25
**hereto** 113:7
**high** 9:3,6,10
**hills** 9:14
**history** 60:25
**hmm** 83:7
**hold** 10:23 30:8 31:8 35:12 46:13
**holdings** 1:13,14
**home** 10:9 93:8,16 93:18,19,23
**honey** 3:7 17:3,11 27:24 28:6,10 90:15
**hopefully** 72:2
**hornell** 1:12 98:3 98:5,6
**hour** 12:22 15:19 60:15,23 63:12,12 75:20
**hours** 13:2,5 15:23 98:24,25
**house** 10:10,11
**huh** 16:8 17:8 25:1 25:17 31:12 45:24 53:22 60:12 88:22 91:15
**hundred** 27:3

**i**

**ice** 27:23 28:1,2,3 28:19 86:1,6 87:21 88:21 89:10 90:5 95:3
**idea** 23:19
**identical** 74:10 82:18
**identification** 3:8 3:9,10,11,12,13,14 3:15,16,17,17,18

3:18,19,19,20,20 3:21,22,22 17:3 18:20 21:22 23:14 29:14 32:2 33:14 34:10 55:11 66:24 67:23 68:12 70:6 70:15 71:4,16 74:7,17 81:25 98:14
**identified** 103:4
**identify** 32:6 34:13 106:17
**identifying** 103:2
**impede** 7:14
**important** 6:3
**improper** 20:11 30:5
**inadvertently** 67:8
**included** 81:2 103:19
**incurred** 81:7
**index** 3:1
**indirectly** 61:15
**individual** 29:1 57:25 58:24 59:7 59:9 87:25 89:5 89:16 93:8,12,14 93:20 106:23
**individually** 1:7
**information** 36:23 36:23 40:12 42:2 42:16 43:17 45:2 45:6 48:6 52:5 55:22,25 59:12,23 60:6 67:19 68:2 73:12,13,22,24 74:1,2,3,12 76:18 100:24
**initial** 52:21
**initially** 63:25
**inquiry** 30:5
**instructed** 6:16
**instructions** 5:24 7:11 16:3
**intend** 29:15
**intentions** 31:7
**interested** 5:1 110:11
**interfere** 4:9
**interference** 4:7
**interrogatories** 11:18
**interrogatory** 11:16 104:18 105:7 107:10 108:16
**interruption** 44:12
**investigation** 65:18
**involved** 65:16 69:7,8 70:22 71:9 81:15
**ish** 8:18 18:1
**issue** 30:9 109:11
**item** 56:9 57:22 58:7 61:1
**items** 45:18 48:13 57:7 58:13 62:2

**j**

**january** 18:1
**jersey** 2:15
**job** 36:21 65:11 98:25
**joining** 77:4 106:25 107:3
**joy** 1:6,19 3:3 4:14 5:14 108:22 111:5 112:2,24 113:2,4 113:12
**joyb95** 76:6
**judgment** 80:23
**july** 9:25
**june** 111:3

**k**

**keep** 6:17 29:11,18
**kielwasser** 1:23 4:23 110:3,17
**kind** 85:25 109:4
**knew** 42:10 56:9
**know** 6:7 17:16 19:3,17 22:16,17 22:19 23:5,6 25:4 27:10 28:23 31:16 31:22 34:1,5,19 39:1 41:18 42:19 43:1,12 47:1,11,17 48:21 49:10,21 50:1,22,23 52:13 54:10 57:11 61:21 61:22 62:13,24 64:10,15 65:15 66:9,12,15 69:3 74:20,21 75:1,4 76:15 77:3,6 78:7 80:5,8 82:17,18,22 83:8,13 86:3 89:23 90:17,23 95:3,5 97:4 98:19 99:17,18 106:4 109:6
**knowledge** 36:2 36:16,19 37:10
**kroger** 34:7

**l**

**l** 70:12
**la** 9:8
**label** 27:24
**labels** 85:4,16,17
**laptop** 42:9
**late** 45:6 73:2
**latest** 24:3
**law** 6:1 35:22 36:1 37:8 50:23 52:8 63:5,6 65:3,21 66:18 70:12 77:18 81:15
**lawsuit** 31:2 36:15 37:14,18,22 38:10 38:17,21 42:19 43:13 44:15,21 50:20 63:14 72:10 90:13,21,22 95:24 106:25 107:3
**lawsuits** 38:15,24 43:11 46:5 96:1
**lawyer** 14:9 75:25
**lawyers** 11:2 12:23 13:11,21 15:9,22 46:6 47:1 63:14,24 64:25 65:9,19 69:7 70:22 79:10 96:9 96:13 97:4
**lead** 45:2
**leading** 100:19 102:3 104:14 107:25 108:3
**leave** 93:15
**lee** 2:14 64:11,14
**legal** 2:20 64:13 66:3,6 77:18 84:5 111:23
**lemon** 86:4,6 88:21,24 89:10,25 90:5
**liberal** 9:13
**licenses** 35:12
**lid** 92:17
**life** 104:22

**lifetime** 91:2
**liked** 28:25 94:17
**line** 104:25 112:4 112:7,10,13,16,19
**link** 42:10 55:21 56:25 57:2 59:14 59:15 73:21 76:21
**linked** 55:21
**list** 98:12 101:16
**listed** 67:12
**litigating** 80:24 81:7
**litigation** 64:11,14
**little** 13:9 79:3
**live** 8:8,14,19 36:5 36:12
**lives** 8:20
**llc** 1:12,13,14 4:16 111:4 112:1 113:1
**llp** 2:5
**logistical** 30:9
**long** 8:5,14 9:23 13:1 14:8 15:18 35:17 39:13 52:20 53:5 54:22 63:11 63:15,15 75:19 96:3
**longer** 84:19
**look** 19:10 65:21 75:25 82:11 83:21 97:6 105:16
**looked** 47:18
**looking** 6:22,23,24 11:1 17:16 22:19 23:5 34:3 38:19 60:19 70:20 106:7
**looks** 55:20 67:8 72:9 74:14
**los** 7:22 8:13,17
**lot** 7:8 104:22 109:23
**lunch** 72:1 93:15

**m**

**ma'am** 21:15 28:8
**mail** 3:16 38:22,23 38:25 39:7,9,17,20 40:7,10,17 41:9,12 41:12,20,24 42:12 42:22,23 43:2 49:13,16,18 50:24 51:1 53:4,7 54:14 54:15,17 55:10,15 55:19 64:19,22 73:21 76:5,5,12,15 82:16
**mails** 43:8
**making** 65:23
**manner** 48:8 56:5 67:18
**manufacture** 28:20
**march** 3:13 32:1,7
**mark** 7:25 16:19 18:18 21:19 36:10 55:9 66:22 70:5 71:2 74:6 104:17
**marked** 3:7,9,10 3:11,12,13,14,15 3:16,17,17,18,18 3:19,19,20,20,21 3:21,22 17:3,22 18:20,24 21:22 22:3 23:13 29:13 32:2,5 33:13 34:10,12 55:11,14 66:24 67:23 68:12 70:6,15 71:4,16 74:7,17 81:24 98:14 109:16
**market** 79:21 80:1 84:6,21
**marketing** 1:13 98:1
**married** 8:23
**math** 29:2
**matter** 4:15 70:22
**matters** 44:4 68:9
**mean** 10:13 13:13 24:11 42:16 56:3 61:14,14 80:11 82:25 84:17 90:14 97:12 98:12 104:19
**meaning** 11:18 63:5 69:15 80:6
**means** 80:5 84:18 98:13
**meant** 80:20 91:9
**media** 4:13 97:23
**medication** 7:13
**meet** 14:1 15:18
**meeting** 14:15 15:8,10
**melissa** 64:6,18,22
**member** 26:12 45:3
**members** 26:10
**membership** 26:11,17 99:11
**memory** 79:1
**mentioned** 59:1 69:2 79:15 96:11
**met** 14:8,12
**michael** 70:25
**microphones** 4:5,9
**million** 70:13 71:11
**mind** 29:9
**minute** 14:16 15:5 52:24 53:5,15,20 54:17 76:25
**minutes** 14:10,25 52:22 95:9
**mischaracterizes** 61:24
**mississippi** 8:11 8:14
**misstate** 108:16
**misstates** 44:5 45:10
**mistake** 69:18,23 77:12
**mistaken** 62:24
**moment** 79:23 81:19
**monetary** 61:21
**money** 26:20 27:1 47:23
**month** 53:9
**monthly** 60:14
**months** 17:15,24 50:18
**morning** 4:3 5:7 5:18,19 14:7,16 15:6
**mother** 8:20 26:13 26:23
**motor** 96:2
**mouth** 104:16
**moved** 8:17

**n**

**n** 2:1
**name** 4:21 5:20 36:3 40:12 42:1 42:15 43:16 45:1 55:18 64:8,17,18 64:21 98:4,19
**named** 77:7 100:9 100:14 110:4
**names** 36:8 47:1 97:4

**narrow** 13:9 91:4
**narrowed** 91:9
**narrows** 79:3
**navigate** 56:23
**necessary** 113:6
**need** 30:25 40:2 45:18 92:18
**never** 40:22 67:21 97:21
**new** 1:2 2:15 4:17
**nice** 21:18
**nine** 94:10
**nodding** 7:4
**nods** 53:8 89:1
**nominal** 48:3
**non** 46:10
**nonverbal** 7:3
**noon** 95:17
**nos** 3:12 29:13
**notary** 113:13,19
**note** 4:5 111:10
**noted** 113:7
**notice** 47:18 61:2
**noticed** 16:11 22:10
**noticing** 5:6
**number** 4:18 42:17 69:7 83:18
**numbers** 80:3

**o**

**o'clock** 72:2,4
**oath** 4:24
**obert.onovan** 2:17
**object** 6:12,20 16:5,5 20:14 37:3
**objected** 16:4
**objecting** 12:14 102:24
**objection** 6:13 7:7 11:21 12:5 13:15 15:25 18:6,11 19:5,12,20 20:3,12 20:21 21:7 22:24 23:3 24:9,15 25:6 25:14,19 31:4,23 32:19 33:1 35:1 36:17 37:1,9,19,24 39:11 40:19 41:5 42:6 43:19 44:5 45:10,15 47:3,12 47:20 48:11,19 49:2 51:18 52:25 53:17,25 56:13 57:14 58:6 59:25 60:3 61:4,8,24 62:9 63:19 65:7 66:21 67:20 68:19 69:1 71:14 72:14 73:1,8,14 74:5 75:11 76:17 78:6 78:17 80:12 82:24 83:10 84:15 96:17 99:7 100:11,17,18 100:23 102:1,2,7,8 102:18,23 103:6 103:12,22 104:12 106:19 107:5,11 107:19,23,24 108:5,15
**objectionable** 19:6
**objections** 5:4
**obtain** 9:15 64:13 66:3,6 99:5
**occasions** 13:4,6
**occurred** 20:5 51:13
**offered** 29:8 95:1
**office** 6:1 52:8
**offices** 70:12
**offline** 29:21,25 30:12 40:8 46:19
**oh** 69:17 90:4 93:22 98:18 103:14
**okay** 7:5,9,11 9:5 10:21 13:10,17,24 14:24 15:14 16:9 16:25 17:6 20:17 21:11 23:16 24:5 25:7,10,11 26:1,25 27:7 30:4,15 31:1 33:10,11 34:16 35:4,6 37:4 46:21 49:5 50:14 52:7 55:2,21 56:22 57:2,21 58:10,12 58:22 62:5,16,21 67:16 70:4,20 74:15 77:16 79:25 80:10 82:21 84:3 86:23 90:8 91:6 91:12,21 96:1 97:11,12,13 98:18 102:12,21 103:2 104:1,7,17 105:20 106:6,9 107:9,14 108:8,12 109:13
**old** 40:2
**omit** 104:8
**once** 14:5 94:25
**ones** 49:5 85:22 105:9,18 109:21
**online** 38:14 60:19 99:12,14,20
**opened** 25:22
**opportunity** 6:20
**opposed** 29:2 92:20 93:8
**opposing** 101:7
**order** 6:17 68:17 69:5 82:5
**otw** 4:18
**ounce** 3:10 21:21 22:1 31:15 89:5,6 89:22,25 92:2,11 93:18 94:7,21,23 95:1
**ounces** 35:8 59:11 88:3 95:4
**outcome** 5:1
**outside** 102:9
**overcharged** 45:17
**owe** 84:22

**p**

**p** 2:1,1,13 25:7
**p.m.** 71:23 95:15 106:9,12 108:23 109:24
**pack** 3:7 17:2,10 19:23 23:25 25:22 25:24 27:12,18 28:24 32:13 33:7 34:23 58:1,24 59:4,5 86:18 92:3 92:4,11 93:15
**packet** 32:9
**packs** 22:6
**page** 3:1 68:22,23 70:10 71:8 77:10 77:11,13,15 79:8 82:3,19 83:15,18 83:21 112:4,7,10 112:13,16,19
**paid** 50:12,15,18 57:19 58:4,5 61:17 80:24 91:22 91:23
**palmer** 28:18 85:24 86:5,11 87:6,9 88:9,10

**paper** 23:18
**paragraph** 68:21 68:23 70:20 77:13 77:14,16,17 79:7 79:19 80:17 83:15 83:21,22,22,23
**parent** 37:7
**park** 2:15
**part** 42:13 76:18 84:19
**participant** 54:7
**participate** 45:4 74:23 84:19
**participated** 44:15 44:25 48:25 51:16
**participating** 106:3
**participation** 45:22
**particular** 25:23 25:24 37:23 49:14 50:7,17 87:7 101:1,8
**particularly** 88:18 101:22
**parties** 4:12 77:7
**party** 4:25 95:24 96:16
**passed** 77:6
**passenger** 9:22
**paused** 108:12
**pay** 26:14,20,25 60:20 77:19 84:6
**pays** 26:14
**pb** 3:7,7,8,8,9,9,11 3:11,12,12,12,13 3:13,14,14,15,15 3:16,16,17,17,17 3:17,18,18,18,18 3:19,19,19,19,20 3:20,20,20,21,21 3:21,21,22,22 18:18,19,21,22,24 19:17,18 20:1,1,7 20:10,20 21:19,21 21:24 22:4,8,13,18 22:21 23:2,9,13,17 23:21,22,23,24 24:7,8,13,14,18,24 25:3,4,5,11,16,18 25:18 26:2,20,21 26:25 27:1,5,12,14 29:13,13,13 30:7 30:17 31:2,11,14 31:16,17,18,19,19 31:22,25 32:1,5,10 32:18,24,24 33:13 33:16 34:5,8,9,12 34:19,20,22 55:10 55:14 66:24 67:1 67:1,17,22,23,25 68:11,12,14,17 69:21,24 70:5,6,8 70:15,17,18 71:4,6 71:16 72:7,24,25 73:13,17 74:1,6,7 74:9,10,15,16,17 74:19,25 75:1,16 76:22 77:3 78:4 78:11,16,20,23 81:20,23,24 82:2 82:11 83:6,17 85:9 90:17,24 91:1 96:8 98:14 98:16 109:5,5,5,6 109:6,6
**pb1** 17:2,6,22 18:2 18:9 19:4
**pearson** 2:5 65:25 66:4,16 68:2,9,16 69:2,8 70:11,11,21 81:14
**pearson's** 68:3
**pending** 42:19 77:4 102:5
**penny** 70:11 94:24
**people** 65:11
**percent** 27:3,4 80:6
**perform** 65:18
**performed** 84:7
**period** 13:5 15:24 78:13
**periods** 13:2 16:1
**permanently** 40:4
**permissible** 12:3,6
**person** 5:22 14:1 14:15,24,25 15:8 15:10,11,12,18 30:25
**personal** 98:23
**phone** 14:11,19 15:21 42:17 53:9 76:25 99:4,10,11
**phones** 4:8
**photograph** 109:4
**photographs** 29:18
**phrased** 12:9
**physically** 15:11 15:12
**pick** 4:6
**place** 4:8,12 110:6
**places** 18:3
**plaintiff** 2:3 49:7 76:10 100:9,14 107:15
**plaintiffs** 1:9 5:9 45:3 46:7 54:8 63:7 76:10
**pleading** 51:12
**pleadings** 11:14
**please** 4:5,8 5:5,11 6:8 16:17 18:18 21:12 29:12,25 32:6 34:8,14 49:5 55:9 66:22 67:22 70:5 74:6 77:10 81:23 83:15,21 105:23
**plus** 26:6 94:24 99:1
**pocket** 84:20
**point** 20:12 37:12 37:16 41:10 42:18 49:15,15 56:16,23
**popped** 38:22
**portion** 80:5
**position** 10:1 104:24
**possibly** 25:20 34:3 49:19 51:2 52:18 73:2
**posted** 50:6 97:23
**potential** 44:4 72:1
**prefer** 28:7,14 92:12
**preparation** 12:2
**prepare** 10:12,13 10:15 11:3 12:19 12:20,23 13:11,22 14:1 15:1,9,22
**present** 5:2 30:25
**preservatives** 56:10,10 85:18 103:21 104:11 107:18
**preserved** 109:9 109:16
**presume** 6:5
**pretty** 31:24 92:21

**prevail** 77:19
**preventing** 102:11
**previous** 22:14 25:21 27:15 44:7 60:25
**previously** 22:7 43:17 56:8 70:21 96:11
**price** 57:19 58:3 58:16 59:3 87:14 88:10 89:14 93:4 94:21 107:16
**prices** 91:21,23 92:8
**print** 104:21 105:12,15
**prior** 42:23 43:9 43:16 44:10 62:19 65:22 66:4,7,9,12 66:15 73:24 75:21 75:24 76:22 78:4 78:22 90:13,21,22 90:24 91:1,18,22 93:2 106:25 107:3
**private** 4:6
**privilege** 6:17
**privileged** 11:2,3 46:10
**probably** 6:24 11:10 22:19 40:5 53:4 87:24 94:10 94:16
**problem** 104:2
**proceeding** 5:4 6:1 6:1
**proceedings** 110:7 110:10
**produce** 45:18
**produced** 17:18 17:21 32:4 82:3
**produces** 28:15
**product** 16:12 17:22 20:7,10,20 23:25 24:14 26:3 26:5 30:23 32:17 33:20 34:20,22 40:17,23 41:2 56:1 57:7 86:9 88:5,23 90:17
**products** 19:17 24:11 32:24 39:15 41:13,18,21,23 42:20 44:20 55:25 56:4 57:5,6,16 58:22 74:3,12 85:21 91:24 99:5 99:15,20,21,23 101:9 103:5,11,20 104:9,10 106:17 106:18 107:4,15 107:17
**professional** 35:12 65:11
**prompt** 57:2
**proposed** 51:10
**protective** 82:5
**provide** 55:22 101:14
**provided** 42:15 51:22 52:5 73:12 84:21 101:17,25
**providing** 102:16 107:9
**provision** 80:11,16 81:2
**proximate** 33:24 79:5
**proximately** 90:25
**pswlaw.com** 2:7 111:2
**public** 113:19
**pulled** 51:6
**purchase** 17:12 19:4,11,22 20:1,5 20:7 22:3,13,18 24:8,13 25:3,5,11 25:18 26:3 27:9 27:14 30:23 32:8 32:17,21 33:19,20 34:17,20,22 41:17 48:13 57:7,10 58:8 60:25 62:2 87:1 88:15,23,24 89:25 90:5,21 94:9 99:12
**purchased** 18:2,5 18:9 19:17 22:7 22:17,20,21 23:2,6 23:9,25 25:24 27:8 30:17 31:2 31:16,18 32:13,23 34:23 39:14 56:9 57:6,15,22,25 58:14,23 85:21 86:11 88:13 89:16 89:17 91:3 94:6 99:20,23 101:8,22 103:5,10 104:9 106:16,18 107:1,4 107:15
**purchases** 48:15 57:8 90:12,12 92:8,10 94:15 99:15
**purchasing** 24:21 57:16 93:6
**purpose** 30:24,24
**purposes** 77:7
**put** 16:15 33:10,12 92:17,17 95:13
**putative** 77:4
**putting** 104:15

**q**

**quantity** 58:23,25 59:10 88:1 89:3 91:11
**quench** 107:16
**question** 6:6,8,10 6:18 11:24 12:4,9 13:19 14:14 15:4 16:5,6,7 19:7,15 23:5 24:16 25:9 25:16 26:25 30:3 37:15 38:5,8 40:18,22,22 43:4 44:8 45:12 53:18 54:22 56:18 63:20 67:17 68:1 69:9 69:10 78:18 80:13 97:11 102:4,5,11 102:13 103:24 104:25 106:2,21 107:25 108:2,6
**questioning** 51:14
**questionnaire** 51:22
**questions** 6:4,12 7:5,15 35:2 43:6 56:17,19 57:10 75:22 98:13 100:3 101:8,14,17,21 102:17 108:15
**quote** 84:3

**r**

**r** 2:1 70:25 112:3,3
**raised** 30:9
**ramirez** 52:12,14 53:11,21 54:2 55:15 59:19 64:17 73:6 76:23 78:16

78:22 79:2 82:8 82:12,15 83:6,9
**ran** 32:20
**raspberry** 28:19 85:25 86:5 87:17 87:19 88:4,12,15
**rcv** 94:25
**reach** 30:13
**read** 36:23 40:24 43:6 61:7 63:1 75:2 79:20,25 81:5 102:4,5 108:10 109:1,18 111:9 113:5
**reading** 67:14 72:16 85:7 103:24
**reads** 67:16 70:19 71:7 72:9 74:21 77:16 79:25 98:18
**ready** 21:17
**really** 49:11 86:12
**reason** 21:2,6 27:20 30:20 33:4 33:6 35:10 85:19 87:13,15 88:19 90:9 94:2,19 106:4 111:11 112:6,9,12,15,18 112:21
**reasonable** 6:25 84:21
**reasons** 21:5 27:15 27:17 32:23 34:23 92:12 93:6 103:4 103:10,14,19 104:9 106:16,17
**recall** 28:20 39:1,9 41:16,22,25 43:8 44:1 49:17 51:19 57:3,4 59:2 62:25 64:5,18,21 72:12 72:15,19 74:12 79:18 98:10 101:7 101:11,13,24 102:16,21 103:2,8 103:18 107:9,14
**receipt** 3:8,11,15 17:17 18:19 19:1 19:3,9 22:16,20 23:13,24 24:1,3,18 25:11,18 34:3,5,6 34:7,9,15,19 111:18
**receipts** 3:13 17:18,21 26:6 32:1,7 99:5,14
**receive** 48:4 49:16 49:18 50:14 62:16 75:9 78:5,10 81:11 82:14
**received** 24:4 39:6 39:17 40:10 42:12 42:22 43:10 46:3 46:6 47:7,21,23 49:13,23 50:12,24 53:7 55:19 62:6 69:8 70:12 75:1 75:14 78:5,11 82:22 83:8
**receiving** 43:8 47:6 62:19 73:20 76:22 78:4,23
**recess** 55:6 95:17
**recognize** 34:15
**recollection** 11:9 78:15
**record** 4:4,12 5:3 6:14,17,19 7:4 12:16 17:4 20:15 23:12,17 55:5,8 69:4 71:17,21,22 71:24,25 95:13,14 95:16,19 103:23 104:4 105:14,22 106:10,11,13 108:24,25 109:2,3 110:10
**recorded** 4:13
**recording** 4:11
**recovery** 80:5 84:4 84:17,18
**rees** 65:3,16,23 66:7,13 67:9,12,19 68:6 69:13,23 70:25 71:9 76:15 76:23 81:14
**refer** 69:15
**reference** 19:19 39:15 57:8 69:22 80:4
**referenced** 68:15 69:5,22 77:1 111:6
**referring** 17:17 20:9 22:15 28:2 28:16 41:24 63:4 85:9 97:8,9
**refers** 19:24
**reflect** 23:17 24:13 34:16 69:4 103:23 104:4
**reflected** 20:7,20 22:18 26:21 27:1 32:17,24
**reflects** 19:3 34:17 34:19
**refrain** 6:13
**refresh** 11:9 78:15 79:1
**refreshing** 20:25
**refrigerated** 22:10
**refrigerator** 22:11
**regarding** 43:20 49:13 51:9 65:1
**register** 45:19
**registered** 110:3
**regular** 27:23 28:1 28:2 86:1,6 88:21
**related** 4:25 66:18
**relates** 19:17 20:1 25:3 68:15
**relation** 24:11
**relevant** 17:21 36:18 77:18
**remaining** 22:6
**remember** 18:2,14 40:16 43:25 57:12 57:23 72:25 88:2 88:4,7,12 89:18
**repeat** 38:7 43:4 56:18 63:20 73:15 78:18
**repetition** 64:20
**rephrase** 13:19 15:3 19:15 80:13 100:12
**reported** 1:23 110:8
**reporter** 4:22 5:11 16:19 30:9 44:22 64:20 96:18 109:4 110:4
**reporter's** 110:1
**represent** 24:3 65:4,22 66:1 74:9 82:2 96:13,21
**representation** 84:4 104:10
**representations** 103:20 107:17
**representative** 51:12

**represented** 96:16
**reputable** 65:10
**request** 16:13 46:15
**requests** 98:10
**required** 36:21,22 113:13
**requires** 77:18
**reside** 7:21
**resided** 8:5
**residing** 8:7
**resolution** 109:7
**resolved** 97:2
**respect** 26:1,20 27:5 44:3 51:21
**responded** 51:25
**responding** 56:17 56:19
**response** 16:13 30:14 44:2 57:9
**responses** 101:4 101:16,25 102:16 102:21 103:18 105:7 107:10
**responsive** 46:15 51:7
**result** 53:23 96:15 96:20
**retain** 65:19
**retainer** 78:10 96:7,9,12,15,20
**return** 111:13,17
**review** 10:14,21 10:22 11:14,16 12:22 36:23 61:2 61:5 67:3,12,17 68:3 75:16,19 111:7
**reviewed** 11:3,9 12:2 38:16
**reviewing** 98:10
**rfp** 51:7,9
**rfps** 51:6
**right** 7:13 13:11 15:17 17:19 19:10 21:6 24:19 28:22 43:4 54:10,25 56:2 58:2 59:15 69:17,18,21 75:25 79:7 86:15 90:15 90:19 91:13 97:20 97:21 101:22
**ring** 64:18
**river** 2:14
**road** 49:6,14 50:6 50:7,10 60:10 79:16 96:23 101:1
**roads** 50:20 100:6
**robert** 2:13 5:7 70:12
**role** 100:22
**room** 5:2
**rough** 8:16
**roughly** 15:23 17:25 29:4 91:25
**roundtrip** 10:7,8
**route** 10:3
**routes** 36:24
**rpr** 1:23 110:18

**s**

**s** 2:1 112:3
**safe** 32:15 83:3
**safekeeping** 29:18
**samples** 109:4,16
**san** 2:6 10:7
**sansome** 2:5
**santa** 10:8
**saw** 38:14 63:1 73:5,13,17,22,24
**saxon** 2:20
**saxton** 4:21
**saying** 11:8 40:17 57:4 62:5 69:7 91:16 93:22
**says** 51:9 77:17,22 80:17 84:3
**scales** 45:19
**school** 9:3,10
**science** 35:20
**scope** 102:9 104:23
**seal** 92:19,20
**searching** 39:4
**second** 10:23 30:8 37:2,3 46:13 58:19 71:18 77:11 77:22 80:16 97:14
**see** 21:11 23:5,15 30:12 32:7 36:18 40:7 46:9,14 55:16,24 68:2 69:6 74:1 77:20 77:23 79:22 81:20 82:8,9 84:1,8
**seeing** 72:12,15,19 72:25 74:12
**seek** 64:13 66:3,6
**seen** 67:1,21 68:1 68:16 70:8,17 71:6 72:7,10 98:17
**sensitivity** 4:6
**sent** 76:5 111:14
**sentence** 77:17,22 80:17
**separate** 22:8
**separately** 29:3
**sequentially** 16:24
**serve** 51:11 100:9 100:14
**served** 46:16 51:11 98:11 105:7 105:11
**services** 79:21 80:2 84:6,20
**serving** 100:15
**session** 14:8,12,16 14:19,24,25 15:5
**set** 110:7
**settled** 47:13,14
**settlement** 47:7,19 47:21 61:3,17,22 62:6
**seven** 29:12 98:23
**shape** 48:8 56:5 67:18
**sheet** 111:11
**shiftan** 2:4 3:4 5:9 5:9 7:7,25 10:16 10:23 11:5,21 12:5,9,12 13:15 14:17,22 15:6,25 16:15,22,25 18:6 18:11,21 19:5,8,14 19:20 20:3,9,14,17 20:21 21:7,9 22:24 23:3 24:9 24:15 25:6,14,19 29:15,19,22 30:2,8 30:15 31:4,23 32:19 33:1,11 35:1 36:17 37:1,5 37:9,19,24 38:4 39:11 40:8,19 41:5,8 42:6 43:19 44:5 45:10,15 46:13,18,21 47:3 47:12,20 48:11,19 49:2 51:5,18 52:25 53:25 54:20 56:13 57:14 58:6

59:25 60:3 61:4,8 61:24 62:9 63:19 64:17 65:7,25 66:21 67:3,20 68:19 69:1,9,12 71:14,19 72:14 73:1,8,14 74:5 75:11 76:17 78:6 78:17 80:12 82:4 82:24 83:10,16 84:15 96:17 99:7 100:3,5,12,13,18 100:20,21 102:2,4 102:6,12,15,20 103:1,7,17 104:2,6 104:13,17,21 105:3,6,11,19,23 106:6,8,14,24 107:8,13,21,24 108:2,4,7,9,13,20 109:1,10,13,18,23 111:1
**shoot** 93:3
**shopped** 100:25
**shortly** 75:2 83:4
**show** 12:16,17 17:6 18:24 21:24 23:15,22 30:22 34:12 46:19,23 48:7 55:14 67:1 67:25 68:14 70:4 72:7 74:9,19 98:16 101:16 106:2
**showing** 23:24
**shy** 8:15
**siblings** 35:25
**sic** 91:22
**sign** 96:12 109:1 109:18 111:12
**signature** 110:16
**signatures** 82:25
**signed** 75:3,6,10 75:14,17 76:1 77:3 78:1 79:8 80:25 82:8,11,14 82:19 83:4,6,12 96:8,8 111:20
**significant** 29:8 80:4,6
**signing** 75:21,24
**similar** 72:9,13,15 72:16,25 73:18 74:14 101:14
**similarly** 1:8
**simon** 2:5 70:11
**simultaneous** 13:18 105:8
**single** 3:9 21:21 22:1 25:23 27:19 31:14 94:6
**sisters** 35:24 36:7 36:14
**sit** 101:2
**sitting** 92:21
**situated** 1:8
**six** 92:1
**size** 3:14 33:13 59:10 89:4
**sizes** 94:4
**snapple** 28:3,10
**social** 97:23
**sold** 95:3
**sole** 84:8
**solutions** 111:23
**sorry** 8:3 15:4 18:7 20:18 28:8 37:15 38:7 39:9 43:4 45:12 53:18 56:18 58:21 63:20 64:21 68:23 69:9 69:17,23 71:11 72:22,23 73:15 74:15 77:12,12 83:17,18 86:22 87:5 88:12 89:9 89:15 90:4 94:21 102:13 107:2
**sort** 30:10 87:18
**soter** 70:11
**sounds** 27:24,25 64:3,8
**southern** 1:2 4:17
**speak** 12:23 13:4 13:21 56:23
**speaking** 6:15 13:18 20:13 105:8
**specific** 20:10 80:3 91:9
**specifically** 57:11
**specify** 34:4 41:23
**split** 26:16,23
**spoke** 13:10 53:11 73:6
**spoken** 64:4 76:22
**stamped** 23:21,23 32:5 34:14
**standard** 11:8
**starr** 70:12
**start** 5:23 13:8
**state** 5:2,5 8:9 9:14
**stated** 21:5 27:13 27:15 31:18 56:8 92:13 103:14
**states** 1:1 4:17 85:17
**status** 40:7 49:20 49:22
**stayed** 91:25
**stenographer** 7:2
**stenographically** 110:8
**stevens** 2:14
**stevenslee.com** 2:17
**stipulate** 67:7
**store** 62:1 89:17 89:18
**stores** 94:12 99:6 99:10
**street** 2:5 4:20
**strike** 52:2 56:14 66:11 71:12 73:25 81:22 85:2 99:13 101:20 103:3
**studies** 9:13
**submission** 59:21
**submit** 40:14 48:6 60:6 61:15,19 62:18,21 100:10 100:10
**submitted** 40:12 42:1 45:6 59:12 74:2 76:19 100:24
**submitting** 43:16 45:1 73:24
**subscribed** 113:14
**substance** 21:14 38:11 54:1
**succession** 29:11
**sue** 53:12,16,24 54:5
**sugar** 107:16
**suggesting** 105:1,3 108:1
**suite** 2:6,15 4:20
**sum** 21:14
**supplement** 108:14
**sure** 16:17 20:15 27:9 33:23 35:2

46:23,23,23,23 51:13 58:20 62:25 71:19 72:23 79:24 102:16 109:15
**swear** 5:11
**sweet** 27:23 28:1
**switched** 97:13
**sworn** 5:15 110:5 113:14

**t**

**t** 112:3,3
**table** 16:16 21:15
**take** 4:12 10:4 12:20 29:5,18 33:9 40:8 46:21 54:20,21,24 58:12 63:11,16 67:3 72:2 75:19 93:14 93:20 95:6
**taken** 4:14 55:6 60:22 95:17 110:6 110:11
**talk** 29:21,21,21 29:25 30:12 56:4 72:1
**talking** 11:22 15:22 41:8,9 90:18 91:13 97:15 97:18,19 100:7 106:16
**talks** 79:19,21
**tall** 94:6
**taste** 20:25 27:16 27:22 33:6 34:24 35:7 92:13 93:7 103:15 106:22 107:16
**tax** 26:7 94:25
**tea** 3:7,10 17:3,10 19:23,24 21:22 22:2 23:25 24:22 25:12 28:1,2,3,4,5 28:9,19 31:9,15 32:8,10 34:18 39:15 85:23 86:1 86:2,6,6 87:21 88:21 89:10 90:3 90:5,11,14,14 92:11,23 95:3
**teas** 27:23 32:13
**telephone** 2:16 13:21
**tell** 6:9 12:1,10 17:9 18:25 21:24 23:23 31:13 35:14 44:19 46:12 49:5 50:4 59:9
**telling** 47:9
**ten** 90:25 91:16 92:1 95:9
**terminate** 83:25 84:3,23
**termination** 84:7
**terms** 8:16 24:6 57:13 58:2,23 59:22 69:25 79:1
**testified** 5:15 25:2 59:18 60:7,10 62:5 85:22 86:7 90:11
**testifying** 6:3
**testimony** 6:2 44:6 45:11 61:25 101:11 103:8 110:7,10 111:9,18 113:8
**thank** 5:10,21 17:1 21:19 36:11 44:13 55:3,12 72:5 74:15 95:12 98:20 100:1 104:1 108:17,19 109:22
**thanks** 108:20 109:23
**thing** 7:1
**things** 6:22 43:11 106:7
**think** 11:5,8,11 25:2 27:9 31:21 34:2 40:21,25 51:6 62:24 66:22 69:2,6 76:8 82:4 87:19 95:1 98:21 101:19 105:7
**third** 83:23
**thirst** 107:16
**thirty** 14:10
**thought** 44:16
**three** 13:2,5 15:23 15:23 32:13 59:2 87:24 89:2,5,21 106:1
**ticket** 50:12
**till** 6:18 95:9
**time** 5:5 6:11,15 10:1 12:19,20 13:3 16:1,20,21 37:12,16,23 42:18 49:14,15,15 52:13 52:16 53:11 54:5 54:21 55:4,7 57:8 60:13,21 63:16,21 63:23 65:14 67:3 71:20,23 72:24 78:13 79:8 80:25 81:6 84:7,22 95:15,18 98:21,23 98:25 106:9,12 108:23 110:6,11 111:19
**timeframe** 111:8
**times** 6:24 13:24 14:4
**timing** 57:13
**today** 10:15 30:24 49:22 100:7 101:11,17 103:4 104:8
**today's** 108:21
**told** 91:17
**toll** 49:6,14 50:6 50:10,20 60:10 79:16 96:23 100:6
**top** 38:14,17,20,24 39:4,7,17 40:10,16 42:22 43:1,9,12,17 44:2,11,16 45:2 46:4,5 51:25 52:3 57:4 59:12,15,22 60:6 62:23 63:14 63:24 72:10 73:12 73:17 74:13 76:21 85:9 97:18
**total** 13:2 60:16,17 80:5 86:23
**totally** 12:3 43:20
**towel** 23:18
**town** 9:7
**townes** 1:7
**train** 9:22
**training** 35:19
**transaction** 60:19
**transcribe** 7:3
**transcribed** 110:8
**transcriber** 7:2
**transcript** 109:20 111:6,20 113:5,8
**transcription** 110:9
**transportation** 35:16
**traveled** 100:25
**traveling** 94:16

**trick** 15:13,15
**tried** 28:22 40:2
**trouble** 105:13
**true** 110:10 113:8
**try** 6:9 13:16 87:10,11 88:16 90:6
**trying** 15:13,15,16 30:2 69:14,16
**tuesday** 1:20 4:1
**turn** 4:8 77:10
**twist** 92:17
**two** 18:3 26:10,16 35:25 52:18 86:12 86:12,13,14,14,18 86:19,23,24,25 88:11 89:5,19 96:10
**type** 41:23 46:12 86:3

**u**

**uh** 16:8 17:8 25:1 25:17 31:12 45:24 53:22 60:12 88:22 91:15
**umm** 10:23 38:3 49:12 73:2 90:22
**unaware** 85:18
**uncertified** 51:10
**uncle** 37:7
**unclear** 7:4
**understand** 5:25 6:4,8 7:11,14 16:7 16:7 24:10,16 54:9 80:9,10,14 84:10,17 90:15
**understandable** 6:10
**understanding** 80:20,22 81:1,4
**understood** 6:6 7:6 81:5,8 94:2 97:15
**unit** 4:13
**united** 1:1 4:16
**university** 9:14
**usa** 1:12,13 4:16 98:1 111:4 112:1 113:1
**use** 76:13 105:11
**usually** 93:15,19

**v**

**v** 111:4 112:1 113:1
**valid** 19:12
**value** 27:18 28:24 29:8 33:7 34:25 35:7 79:21 80:1 84:6,21 92:13 95:1 103:15 106:22
**varies** 57:24
**various** 43:10,11 106:16
**vehicle** 96:2
**verbal** 13:6
**verbally** 7:5
**verbiage** 39:3
**verify** 111:9
**veritext** 4:22,23 111:14,23
**veritext.com.** 111:15
**versus** 4:15 41:9
**video** 1:19 4:11,13 7:1,2
**videographer** 2:20 4:3,22 5:10 55:4,7 71:20,23 95:15,18 105:21,24 106:9 106:12 108:21
**viewed** 74:14
**virtually** 74:10
**visit** 23:6,9
**visited** 97:21
**vons** 87:3 89:19 93:1
**vs** 1:10

**w**

**wait** 6:17
**walmart** 44:20 45:5,14,22 46:4,7 47:2 48:7,7,9,12 48:21 49:1 60:21 61:12,22 62:2,11 62:18 63:7,9,15 79:16 97:1 100:6
**want** 5:21,23 11:7 16:15,22 19:15 20:15 21:17 23:18 29:22 40:24 46:14 50:8 54:20,24 69:3 72:22 83:19 85:25 91:12 95:6 104:3 105:10,12 106:2,4 109:15
**wanted** 30:22 32:21 88:16 90:6 94:17
**wants** 6:20 109:15
**war** 54:24
**warsaw** 64:2,4
**warshaw** 2:5 70:11
**water** 54:25
**way** 6:9,19 36:10 48:8 51:7 78:14 79:1 84:25 104:7
**we've** 92:20
**website** 38:14 40:13,17 41:3,9 42:2,4,8,14 43:13 43:18 44:3 46:4 52:1,1,4,4,14 55:18,22,24 56:4 56:12,16,19,25 58:14 59:1,13,16 59:22 60:7 63:14 63:24 67:9,13,18 68:1,3,16 69:23 73:17 74:13 85:8 85:10 97:6,19
**week** 10:7,8 48:5,5 52:18 59:18 62:17 99:2
**weight** 44:23
**weighted** 44:20,23 45:18,18 61:1
**weiner** 64:7
**welcome** 51:14
**wendy's** 68:16 69:14,22
**went** 42:14 52:4 55:24 71:25 73:21 109:3
**west** 4:19
**westchester** 9:6
**whispering** 4:6
**wish** 102:6
**withdraw** 102:6
**witness** 3:1 5:12 7:6 10:19,24 13:17,19 16:1,18 16:21 18:7,12 19:19,22 20:18,23 21:8,10 22:25 23:4,18 24:10,16 25:7,20 31:24 32:20 33:2,10 35:4 36:18 37:4 37:10,20,25 38:7 39:12 40:24 43:20 44:7,14,23 45:12

45:17 47:4,13,21 48:12 49:3 51:19 53:1,18 54:3 55:2 57:15 58:7 60:4 61:5,9 62:1,10 63:20 64:21 65:10 67:21 71:15 72:4 72:15 73:2,9,15 75:13 76:18 78:7 78:18 80:13 82:25 83:11,18 95:6,9 99:8 100:24 102:13,19,25 103:14,23,25 104:5 105:1,2,4 106:3,21 107:7,12 107:20 108:6,19 110:4,15 111:8,10 111:12,19
**witness's** 104:16
**wondering** 25:4
**wording** 41:19
**words** 104:15
**work** 93:14,20,25 94:17 98:25 99:2
**worked** 9:23 35:22 36:1 37:8 43:12 66:10,13,16
**works** 66:10,18
**worth** 6:2
**written** 13:12 101:14,25 102:16 103:18 107:9
**wrong** 24:22

**y**

**yahoo.com** 76:6
**yeah** 13:8 29:20 40:19 48:5,5 50:17 52:17 53:20 54:19 56:14 61:9 74:14 79:13 87:20 90:21 91:11 92:11 94:24,24 95:8,11 96:10,22
**year** 9:9,25 23:2 33:25 34:1 45:7,7 49:19 52:10
**years** 8:6,15 35:18 57:16 91:6,8
**yesterday** 105:12
**york** 1:2 4:18

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.