THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AHMED ASHOUR, JOY BROWN and CRYSTAL TOWNES, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ARIZONA BEVERAGES USA LLC, HORNELL BREWING CO., INC., BEVERAGE MARKETING USA, INC., ARIZONA BEVERAGES HOLDINGS LLC, and ARIZONA BEVERAGES HOLDINGS 2 LLC,<br><br>Defendants. | Civil Action No. 1:19-CV-07081-AT-OTW |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTFICATION**

**TARTER KRINSKY & DROGIN LLP**
Howard Wolfson
Andrew N. Krinsky
1350 Broadway
New York, New York 10018
*Attorneys for Defendants, AriZona Beverages USA LLC, Hornell Brewing Co., Inc., Beverage Marketing USA, Inc., AriZona Beverages Holdings LLC, and AriZona Beverages Holdings 2 LL*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 3

A. Dr. Kivetz's Consumer Surveys Compel Denial Of Class Certification ..... 3

B. The Proposed Dubé Conjoint Analysis Is Fatally Flawed ..... 4

C. The Alleged Misrepresentation Was Materially Different On Different Products ..... 5

D. Cronin's Testimony Supports Denial Of Class Certification ..... 7

E. Plaintiffs' Purchases Were Motivated By Individual Product-Specific Preferences ..... 8

F. The Named Plaintiffs Did Not Purchase The Full Scope Of Products ..... 8

ARGUMENT ..... 9

**I.** THE PROPOSED CLASSES ARE NEITHER ASCERTAINABLE NOR MANAGEABLE ..... 9

**II.** PLAINTIFFS CANNOT SATISFY TYPICALITY, COMMONALITY, OR ADEQUACY FOR THE PROPOSED NEW YORK CLASS UNDER RULE 23(a) 13

A. Townes Is Not Typical And Her Claims And Defenses Are Not Common To Those Of The Proposed NY Class ..... 13

B. Townes ' Cannot Fairly Or Adequately Protect The Interests Of The Proposed New York Class Members ..... 14

**III.** THE NEW YORK GENERAL BUSINESS LAW CLASS SHOULD NOT BE CERTIFIED ..... 16

A. Common Issues Do Not Predominate ..... 16

B. Plaintiffs Cannot Establish Predominance And Commonality Because The Alleged Misrepresentation Varied From Product to Product ..... 19

C. Plaintiffs Cannot Establish Through Common Proof That Every Class Member Suffered Injury, Let Alone The Same Injury ..... 20

D. Dubé's Proposed Conjoint Analysis Is Not A Substitute For Evidence And Is Fatally Flawed ..... 22

**IV.** PLAINTIFF ASHOUR HAS NOT SATISFIED THE REQUIREMENTS FOR CERTIFICATION OF HIS CLRA AND BREACH OF WARRANTY CLAIMS .... 23

A. Causation And Reliance Raise Individual Issues For Each Putative Class Member ........ 23

B. Ashour Has Not Established That Common Issues Predominate .................................... 26

C. Ashour Has Not Established Typicality/Adequacy ........................................................ 27

D. Ashour Cannot Establish Class-Wide Injury or Damages ............................................... 27

E. Certification Of Ashour's Cal. Com. Code § 2313 Claim Should Be Denied................. 28

CONCLUSION ............................................................................................................... 29

CERTIFICATE OF COMPLIANCE ....................................................................................... 30

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) .......... 26

*Amiel v. Evo Brands, LLC*,
2025 WL 3078161 (S.D.N.Y. Nov. 4, 2025) .......... 13

*Asiana v. Ben & Jerry's Homemade, Inc.*,
2014 WL 60097 (N.D. Cal. Jan. 7, 2014) .......... 13

*Ault v. J.M. Smucker Co.*,
310 F.R.D. 59 (S.D.N.Y. 2015) .......... *passim*

*In re Avon Anti-Aging Skincare Creams and Prods. Mktg. & Sales Pracs. Litig.*,
2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015) .......... 11, 13, 19

*In re AXA Equitable Life Ins. Co. COI Litig.*,
2020 WL 4694172 (S.D.N.Y. Aug. 13, 2020) .......... 16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
22 F.3d 52 (2d Cir. 2000) .......... 15

*Bargetto v. Walgreen Co.*,
2024 WL 3493260 (N.D. Cal. June 14, 2024) .......... 28

*Bildstein v. MasterCard Int'l Inc.*,
329 F. Supp. 2d 410 (S.D.N.Y. 2004) .......... 20

*Brecher v. Republic of Argentina*,
806 F. 3d 22 (2d Cir. 2015) .......... 9, 11

*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014) .......... 19

*Colgan v. Leatherman Tool Grp., Inc.*
135 Cal. App. 4th 663 (2006) .......... 28

*Colpitts v. Growers*,
2023 WL 2752161 (S.D.N.Y. Mar. 31, 2023) .......... 20

*In re ConAgra Foods, Inc.*,
302 F.R.D. 537 (C.D. Cal. 2014) .......... 17

*de Lacour v. Colgate-Palmolive Co.*,
2024 WL 36820 (S.D.N.Y. Jan. 3, 2024) .......... 17

*Drimmer v. WD-40 Company*,
2007 WL 2456003 (S.D. Cal. Aug. 24, 2007), *aff'd*, 343 F. App'x 219 (9th Cir. 2009) .......... 16

*Esposito v. Info. Tech. Corp. of the Tri-States*,
2022 WL 1155917 (S.D.N.Y. Apr. 19, 2022) .......... 20

*Evans v. Select Portfolio Servicing, Inc.*,
827 F. Supp.3d 422 (E.D.N.Y. 2026) .......... 10

*Fero v. Excellus Health Plan, Inc.*,
502 F. Supp. 3d 724 (W.D.N.Y. 2020) .......... 19

*Fierro v. Cap. One, N.A.*,
656 F.Supp.3d 1121 (S.D. Cal. 2023) .......... 23

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009) .......... 15

*In re Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (3d Cir. 2013) .......... 18

*In re Fyre Festival Litig.*,
2020 WL 7043497 (S.D.N.Y. Dec. 1, 2020) .......... 19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir.1990) .......... 14, 15

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
317 F.R.D 374 (S.D.N.Y. 2016) .......... 18

*Gross v. Vilore Foods Co.*,
2022 WL 1063085 (S.D. Cal. Apr. 8, 2022) .......... 25, 26, 28

*Haag v. Hyundai Motor Am.*,
330 F.R.D. 127 (W.D.N.Y. 2019) .......... 20

*Hadley v. Kellogg Sales Co.*,
324 F. Supp. 3d 1084 (N.D. Cal. 2018) .......... 27

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
285 F.R.D. 573 (E.D. Cal. 2012) .......... 26

*Jones v. ConAgra Foods, Inc.*,
2014 WL 2702726 (N.D. Cal. 2014) .......... 24, 27

*Karhu v. Vital Pharms., Inc.*,
621 F. App'x 945 (11th Cir. 2015) .......... 11

*Kelly v. Beliv LLC*,
2024 WL 1076217 (S.D.N.Y. Jun. 4, 2026) .......... 22

*In re KIND LLC "Healthy & All Nat." Litig.*,
627 F. Supp. 3d 269 (S.D.N.Y. 2022), *aff'd* sub nom, *Bustamante v. KIND, LLC*, 100 F.4th 419 (2d Cir. 2024) .......... 17, 18

*Kronenberg v. Allstate Ins. Co.*,
743 F. Supp. 3d 465 (E.D.N.Y. 2024) .......... 19, 20

*Leyse v. Lifetime Ent. Servs., LLC*,
679 F. App'x 44 (2d Cir. 2017) .......... 12

*In re Loestrin 24 FE Antitrust Litig.*,
410 F.Supp.3d 352 (D.R.I. 2019) .......... 13

*Major v. Ocean Spray Cranberries, Inc.*,
2013 WL 2558125 (N.D. Cal. June 10, 2013) .......... 27

*Marchak v. JPMorgan Chase & Co.*,
84 F.Supp.3d 197 (E.D.N.Y. 2015) .......... 18

*Marcus v. AT&T Corp.*,
138 F.3d 46 (2d Cir. 1998) .......... 19

*Marshall v. Hyundai Motor Am.*,
334 F.R.D. 36 (S.D.N.Y. 2019) .......... 20

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
209 F.R.D. 323 (S.D.N.Y. 2002) .......... 16

*Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
713 F. Supp. 3d 660 (N.D. Cal. 2024) .......... 27

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) .......... 18

*Neale v. Volvo Cars of N. Am.*,
2017 WL 6055774 (D.N.Y. Dec. 6, 2017) .......... 13

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006) .......... 14, 19

*Nypl v. J.P. Morgan Chase & Co.*,
2022 WL 819771 (S.D.N.Y. Mar. 18, 2022) .......... 9, 10

*Orshan v. Apple Inc.*,
2023 WL 3568079 (N.D. Cal. Mar. 31, 2023) .......... 26

*Oscar v. BMW of N. Am., LLC*,
274 F.R.D. 498 (S.D.N.Y. 2011) .......... 20

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*,
85 N.Y.2d 20 (1995) .......... 19

*Pagan v. Abbott Lab'ys, Inc.*,
287 F.R.D. 139 (E.D.N.Y. 2012) .......... 20

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takedar*,
674 F.Supp.3d 799 (C.D. Cal. 2023) ........ 24

*Pelman v. McDonald's Corp*.,
272 F.R.D. 82 (S.D.N.Y. 2010) ........ 20

*In re Petrobas Secs.*,
862 F.3d 250 (2d Cir. 2017) ........ 9, 10, 11, 13

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ........ 10

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
2016 WL 5920345 (C.D. Cal. June 23, 2016) ........ 27

*Randolph v. J.M. Smucker Co*.,
303 F.R.D. 679 (S.D. Fla. 2014) ........ 11, 13

*Ruffo v. Adidas America, Inc.*,
2016 WL 4581344 (Sept. 2, 2016) ........ 10, 11

*Sanders v. Apple Inc*.,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........ 28

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ........ 12

*In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig*.,
2023 WL 6121894 (D.N.M. Sept. 19, 2023) ........ 27

*Seekamp v. It's Huge, Inc.*,
2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ........ 18

*Shin v. Sanyo Foods Corp. of Am*.,
348 F.R.D. 477 (C.D. Cal. 2025) ........ 28

*Small v. Lorillard Tobacco Co., Inc*.,
94 N.Y.2d 43 (1999) ........ 20

*Solomon v. Bell Atl. Corp.*,
777 N.Y.S.2d 50 (App. Div. 1st Dept 2004) ........ 14

*Solomon v. Bell Atlantic*,
9 A.D. 3d 49 (1st Dept 2004) ........ 14

*Stearns v. Ticketmaster Corp*.,
655 F.3d 1013 (9th Cir. 2011) ........ 25

*Sykes v. Mel S. Harris and Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015) ........ 18

*Telesco v. Starbucks Corp.*,
682 F. Supp. 3d 397 (S.D.N.Y. 2023) ........ 16

*Turcios v. Carma Lab'ys, Inc.*,
296 F.R.D. 638 (C.D. Cal. 2014) ........ 26

*In re Vioxx Class Cases*,
180 Cal. App. 4th at 129) ........ 23, 24, 25

*Vizcarra v. Unilever U.S., Inc.*,
339 F.R.D. 530 (N.D. Cal. 2021) ........ 24, 27

*Vrugtman v. Its Just Lunch Int'l LLC*,
2023 WL 6369765 (C.D. Cal. Aug. 25, 2023) ........ 27

*Watkins v. MGA Ent., Inc.*,
550 F.Supp.3d 815 (N.D. Cal. 2021) ........ 23

*Weiner v. Snapple Beverage Corp.*,
2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ........ 11, 13

*Wiener v. Dannon Co.*,
255 F.R.D. 658 (C.D. Cal. 2009) ........ 27

*Withers v. eHarmony, Inc.*,
2010 WL 11520198 (C.D. Cal. June 2, 2010) ........ 27

*Zakaria v. Gerber Prods. Co.*,
755 F. App'x. 623 (9th Cir. 2018) ........ 23

**Statutes and Authorities**

Cal. Com. Code § 2313 ........ 28

Local Civil Rule 7.1(c) ........ 30

Local Civil Rule 7.1(c), I ........ 30

Rule 23 ........ 9, 13, 14 16, 19

https://fortune.com/2024/06/27/arizona-iced-tea-price-founder-explains/ (June 27, 2025 – Fortune: revisits AriZona's 99¢ pricing as inflation pushed the cost of everyday goods higher, comparing the philosophy with other famous fixed-price consumer products) ........ 21

https://trcmarketresearch.com/blog/arizona-iced-tea-pricing-strategy-a-price-anchoring-case-study/ (June 1, 2016 – TRC Insights: market-research analysis uses AriZona as a price-anchoring and inflation case study, noting how unusual it is for a consumer packaged-goods price point to remain stable for more than three decades) ........ 21

https://www.businessinsider.com/how-arizona-teas-99-cent-price-tag-is-still-standing-2025-7 (July 2025 - Business Insider: examines how AriZona's 99¢ price has endured and calculates that a Big Can would cost approximately $2.30 if its original price had simply tracked inflation) ........ 21

https://www.instagram.com/reel/DccTI1AhTDB/ ........ 21

https://www.instagram.com/reel/DcTjp-cCuJ2/ ........ 21

https://www.kqed.org/arts/13915543/as-inflation-gets-worse-the-99%C2%A2-iced-tea-persists (June 29, 2022 – KQED: "As Inflation Gets Worse, the 99¢ Iced Tea Persists." The piece treats AriZona's 99¢ price as a conspicuous holdout during a broad consumer-price surge.) ........ 21

https://www.today.com/video/learn-the-sweet-success-story-behind-arizona-s-iced-tea-213712965765 ........ 21

https://x.com/RitchieTorres/status/1954670426451251257 (Rep. Ritchie Torres (D-NY) — August 10, 2025: "Since 1997, AriZona Iced Tea has proudly kept its iconic 99-cent price tag.") ........ 21

m Dean, *As inflation soars, How is AriZona iced tea still 99 cents?* (Apr, 12, 2022) ........ 21

Talia Kaplan, *AriZona iced tea keeps 99-cent can price despite surging inflation, Co-founder says consumers deserve a break* (Apr. 28, 2022) ........ 21

**PRELIMINARY STATEMENT**

Plaintiffs seek to certify sweeping California and New York classes on the premise that consumers all purchased these inexpensive beverages for the same reason and that the reason was that the products' purportedly misrepresented that they contained no preservatives.[1] Plaintiffs' own testimony and the consumer surveys conducted by Defendants' renowned expert, Dr. Ran Kivetz, contradict that false premise.

Consumers purchase Defendants' beverages for a host of differing reasons, including taste, flavor, price, value, brand recognition, sweetness, sugar content, and other ingredients. Fewer than 1% of survey respondents even mentioned having no preservatives as a consideration. Because purchasing reasons are highly personal, certification would potentially require hundreds of thousands of mini-trials to determine why each member bought the products and whether that member was misled and injured.

The Court's March 28, 2025, Opinion and Order granting in part Defendants' motion for summary judgment ("3/28 Order") graphically illustrates the problem with certification. The Court dismissed Plaintiff Joy Brown's CLRA claim because a plaintiff "'must demonstrate *actual reliance* on the allegedly deceptive or misleading statements'" and that "'the misrepresentation was an immediate cause of the injury – producing conduct.'" (3/28 Order at 14, emphasis in original.) Brown could not establish reliance or injury:

> Because Brown kept buying AriZona products after learning that they contained citric acid, she cannot establish reliance, that is, she would have "'behaved differently" had the AriZona products disclosed that they contained the alleged preservative.

---

[1] The products, which were hot-filled so that no preservatives were necessary, do not contain preservatives. The alleged preservative, citric acid, is used as a flavoring agent, not as a preservative. (See the expert report of Catherine Hutt Adams dated August 28, 2026, which is Exhibit "B" to the accompanying Declaration of Howard S. Wolfson in opposition to this motion ("Wolfson Dec.".)

*Id.* at 15. The same reliance inquiry would be required for each member, including whether the member continued purchasing after learning the Products contained citric acid. Reliance is quintessentially individual and precludes certification of Ashour's CLRA and California warranty claims.

Similarly, although the Court declined to dismiss Townes' GBL claims notwithstanding that she, like Brown, continued purchasing after learning the Products contained citric acid, it held under the voluntary payment doctrine "that Townes likely will not be able to recover any purchases … made before she acquired such knowledge." (3/28 Order at 19-20.) This Court's holding is critical to the certification motion. That is because with respect to the GBL claims, not only is Townes subject to a unique defense, individualized inquiries would be required for each member in order to determine if they, too, are subject to the voluntary payment doctrine. This is not an issue that lends itself to common proof.

The foregoing aside, certification fails at the threshold because the classes are not ascertainable and Plaintiffs' propose no method for identifying worldwide members. To do so would require identifying everyone who bought beverages in New York or California over four-and-six-year periods, including tourists, interstate commuters, and people who resided elsewhere but happened to be there. Defendants sell to retailers and distributors who do not identify the ultimate purchasers. Consumers are unlikely to retain receipts or packaging for inexpensive items purchased years earlier; thousands of mini-trials would be needed to determine membership, making the process infeasible and unmanageable.

Plaintiffs' also offer no common injury proof. Their price premium theory is unsupported by any record facts and is implausible because AriZona's products are priced below the competition. Further, Townes testified she paid the same price before and after she filed this action,

contradicting the claim of a common price premium. Plaintiffs rely only on the report of Jean-Pierre Dubé, and propose to conduct a conjoint analysis ***LATER***, if certification is granted. The proposed conjoint analysis is unreliable, as discussed below and in the accompanying Daubert motion.

Further, Plaintiffs' own testimony illustrates that reasons such as taste, price, calories, sugar content, flavor preference, convenience, and brand familiarity drove their purchases. This, along with Dr. Kivetz's surveys, demonstrate the lack of commonality in consumers' purchasing decisions and any class-wide injury. Lastly, the placement, size, formatting, color and prominence of the no preservatives statement varied among Products. Plaintiffs' purported expert, Richard Cronin, admitted that those differences affect whether consumers would even notice the statement, defeating commonality, typically and predominance.

What remains after summary judgment is not a class action, but an individualized dispute involving two plaintiffs and three causes of action.

## STATEMENT OF FACTS

### A. Dr. Kivetz's Consumer Surveys Compel Denial Of Class Certification

Dr. Ran Kivetz conducted two empirical materiality surveys testing consumers reasons for purchasing AriZona Products and whether the "No Preservatives" statement was common, causal and material. (*See* Declaration of Howard Wolfson ("Wolfson Dec."); Exh. A at ¶¶ 22–26).) Dr. Kivetz is renowned and his surveys have been relied upon in numerous cases. (*Id.* ¶¶ 12-13.) Each survey employed a gold-standard, double blind, random "test-control" design: approximately half saw an original package displaying the no preservatives claim, and the remaining half were assigned to a "control group" and saw an otherwise identical package without the no preservative claim. (*Id.* ¶¶ 27, 38, 51.) The Iced Tea California Survey tested Green Tea with Ginseng and Honey among 410 qualified California consumers. (*Id.* ¶¶ 22, 25, 33.) The Juice Drink New York

Survey tested Fruit Punch Fruit Juice Cocktail among a sample of 414 qualified New York consumers. (*Id.* ¶¶ 22, 25, 33.)

Before viewing the AriZona Product, participants identified their most important purchase considerations. Only 3 out of 410 (0.7%) in the Iced Tea California Survey and 12 out of 414 (2.9%) in the Juice Drink New York Survey mentioned anything related to "no preservatives". (*Id.* ¶ 59.) They instead cited taste/flavor (69.0% in the Iced Tea Survey; 63.8% in the Juice Drink Survey); price/value (46.3%; 46.9%); sweetness/sugar (37.3%; 30.9%); brand equity/recognition (36.3%; 27.3%); and other non-preservative ingredients. (*Id.* ¶ 50.) There was no statistically significant difference between test and control group participants in their likelihood of purchasing the Products. When asked why they would or would not purchase the Products, participants cited multiple reasons unrelated to preservatives, including brand equity/recognition (43.4% in the Iced Tea test group; 37.2% in the Juice Drink test group); taste/flavor (42.4%; 33.3%); price/value (13.2%; 41.1%); and packaging (16.1%). *(Id.* ¶¶ 65, 67.) Motivations varied considerably across consumers. *(Id.* ¶ 75.) The no preservatives claim, however, had no causal effect on consumers' purchasing decisions. (*Id.* ¶ 63.)

In the Iced Tea California Survey, average willingness to pay ("WTP") was $2.05 in the test group versus $2.04 in the control group, a difference that is statistically indistinguishable from zero. (*Id.* ¶ 77.) Because the challenged claim did not materially increase consumers' WTP, the associated price premium was zero, contradicting Plaintiffs' unsupported claim of a class-wide price premium. (*Id.* ¶¶ 78–79.)

**B. <u>The Proposed Dubé Conjoint Analysis Is Fatally Flawed</u>**

Dr. Kivetz found the Dubé Proposed Conjoint Survey fatally flawed. (*Id.* ¶¶ 82–129.) It (i) omits crucial design details, including the number of choice tasks, sample size, and attribute

presentation (*id.* ¶¶ 91–97); (ii) departs from marketplace conditions, showing no packaging, omitting relevant attributes and claims, and singling out the challenged claim (*id.* ¶¶ 98–125); and (iii) repeats stimulating within-subjects that reveals its purpose and magnifies demand and focalism, biases, inflating any price premium (*id.* ¶¶ 127–128). It also gives "No Preservatives" equal prominence with other attributes, even though the claim appeared on the back or side panels in small font, never on the front (*id.* ¶ 111), and estimates the same price premium regardless of placement, prominence or repetition. (*Id.* ¶ 115.) The proposed analysis cannot isolate a premium attributable to the no preservatives claim or establish class-wide injury or damages. (*Id.* ¶ 129.) (A fuller discussion of the numerous flaws in what Dubé proposes is contained in the accompanying Daubert motion.)

## C. <u>The Alleged Misrepresentation Was Materially Different On Different Products</u>

The Second Amended Complaint ("SAC") defines the Products as sixteen varieties, plus "[a]ny other AriZona product representing it contains no preservatives despite containing citric acid." (SAC ¶ 2.) Exh. A to the SAC identifies twenty-three size and flavor variations, including 20 fl. oz. bottles, 23 oz cans, gallon jugs, and other formats.

Plaintiffs define the "Product Labels" as "[a]ll product labels used by Defendants during the Class Periods, attached as Exhibits 9 through 21 to the Weiner Declaration. Exhibits 9 through 21 collectively contain nearly 200 discrete labels spanning multiple flavors, package sizes, printing years, and — critically — several different treatments of the "no preservatives" phrase. Far from a single "uniform experience," the labels show the "no preservatives" claim in at least four distinct formats, appearing in different physical locations, at very different sizes, bundled with different companion claims, alongside varying "natural" messages, changing ingredient panels, and shifting

front-of-pack marketing. That heterogeneity defeats any theory that all putative class members were exposed to the same representation.

The phrase "no preservatives" is not presented uniformly. Rather, it appears on the exhibits in at least four different visual formats, and even within a single flavor family, the format changes from iteration to iteration. On some labels, “PRESERVATIVES” is not a stand-alone claim, but rather grouped with three other items. For example, on some labels, a much larger and bolded word “NO” is accompanied by “PRESERVATIVES,” “ARTIFICIAL COLOR” and “ARTIFICIAL FLAVOR.” (Pl. Ex. 18, 10, 12, 16, 17, 21). On others, “ARTIFICAL COLOR” is replaced by different words, such as “PRESERVATIVES” or “SYNTHETIC COLOR.” (Pl. Ex. 9, 13, 19). On yet another set of labels, the three “no” claims are printed as a single vertical line separated by bullets or periods, with each “NO” repeated: “NO PRESERVATIVES • NO ARTIFICIAL COLOR • NO ARTIFICIAL FLAVOR.” (Pl. Exs. 18, 19, 9).

Different labels also headline different “natural” claims, and consumers cannot be presumed to have received the same overall “natural” message. Some use “100%” natural while others substitute “ALL” natural, and still others carry both. (Pl. Ex. 16). Certain labels use the narrower phrase “100% NATURAL FLAVOR” or “ALL NATURAL INGREDIENTS.” (Pl. Ex’s. 10, 20). Some prominently display "ANTIOX / VITAMIN C / FORTIFIED" badges; some do not. (Ex. 10, Ex. 16). The Rx-Energy labels add an additional "REFRESHING HERBAL TONIC" front-of-pack claim and a disclaimer on the back that the products is a FOOD, NOT A DRUG” with additional verbiage that does not appear on any other flavor's label. (Pl. Ex. 18).

Because "no preservatives" appears in at least four different formats — including one where it is subordinate to a shared oversized "NO," another where it is bundled with two entirely different claims ("no calorie" or "no synthetic color"), another where it is a small line of body text

buried in a marketing paragraph, a putative class member's "exposure" to the challenged representation is entirely product-, size-, year-, and iteration-specific, not uniform. Similarly, because the labels vary in their "natural"-family messaging, in their functional and health-related claims, in their front-of-pack marketing hierarchy, in their ingredient compositions, in their country-of-origin disclosures, and in their package sizes and formats, each putative class member's overall label "experience" is materially different from every other's. Across the Products, the statement varied in size, font, color, format, and placement.

**D. <u>Cronin's Testimony Supports Denial Of Class Certification</u>**

Cronin testified that consumers buy overall "experience," and that numerous factors influence the purchase. (Wolfson Dec.; ECF No. 379, Ex. 5 at 47:18-23.) The effect of the "No Preservatives" statement therefore turns on each consumer's individual preferences and motivations.

Cronin also testified that consumers do not experience the statement uniformly, because of shelf placement, orientation, and presentation of the package, factors outside Defendants' control. (*Id*. 52:11-14; 49:23-25; 50:1-5.) Visual prominence depends on orientation, contrast, size, and color, and the statement may attract attention through contrasting position, orientation, type, size, or color. *(Id.* 44:11-19; 50: 17-20; 56:6-10; 37:8-12.) Cronin recognized that proximity to the Nutrition Facts panel can act as a "shortcut" directing consumers away from the full nutritional information. (*Id*. 83:25; 84:1-4.)

Whether the statement is meaningful or visually salient depends on the individual consumer's perspective. An information seeking consumer is more likely to notice the statement than one buying for other reasons. (*Id*. 118:7-19; 183:17-24; 184:4-20; 189:9-19; 191:9-12.)

Cronin acknowledged no guarantee every consumer would even see the package statement. (*Id*. 56:22-25.) Encounter and reliance, therefore, require individualized inquiry.

Finally, Cronin testified that consumers lack a uniform understanding of "preservatives," and may purchase Products knowing they contain them. (*Id*. 54-55:1-5.) Of course, without a shared understanding, the term is not amenable to common proof.

**E. <u>Plaintiffs' Purchases Were Motivated By Individual Product-Specific Preferences</u>**

Ashour bought Green Tea with Honey and Ginseng for flavor and because he wanted a green tea drink after the coffee shops had closed. (Wolfson Dec. Exh. C at 105:16-21, 106:4-13). He bought the Rx Energy product to try "a new flavor . . . I haven't tried before" from "a big name" brand, with "no other reason. Purely to try it out. That's it." (*Id.* 118:7-16.) He bought the Mucho Mango Product only because "[he] was interested in trying [it] out." (*Id*. 120:5-8.) In his words, "No other reason. Just to try the flavor. That's all." (*Id.* 120:9-11.)

Townes testified that taste, price, sugar and calorie content, thirst, and her children's preferences drove her purchases. (Exh. D at 41:12-16; 41:24-25; 42:1-5; 42:9-12; 55:10-25; 56:10-14; 62:23 – 63: 2; 100:19 – 101:2; 107:11-19; 108:14-20; 132:24 – 133:11; 158:20 – 159:7.) Townes identified no purchase reason tied to the No Preservatives statement, and continued purchasing the Products after commencing this action. (*Id.* 43:17-25, 45:5-11.)

**F. <u>The Named Plaintiffs Did Not Purchase The Full Scope Of Products</u>**

Together, the named Plaintiffs purchased only ten of the at least twenty-three proposed varieties in the proposed class. Ashour bought three: a 23 oz can of AriZona Green Tea with Ginseng and Honey, a 20 oz bottle of AriZona Mucho Mango Fruit Juice, and a 23 oz can of the AriZona Rx Energy Herbal Tonic. (Exh. C at 53:24-54:3.) Townes purchased seven: AriZona Iced Tea with Lemon Flavor 23 oz can (Exh. D at 60-61), AriZona Iced Tea with Raspberry Flavor 23

oz can (*id*. 130-131); AriZona Southern Style Real Brewed Sweet Tea 24 oz bottle and 23 oz can (*id*. 100, 135-136); a gallon of AriZona Arnold Palmer Zero- Half Iced Tea, Half Lemonade (*id*. 116); Golden Bear Lemonade Lite (Strawberry) 24 oz bottle and 23 oz can (*id*. 33, 60, 148); AriZona Watermelon Fruit Juice 23 oz can (*id*. 60; 132); and AriZona Fruit Punch Fruit Juice 24 oz Bottle and 23 oz can. (*Id*. 33; 120-121.) Neither Plaintiff purchased the remaining thirteen (13) Products, yet they seek to represent individuals who allegedly did.

**ARGUMENT**

Where, as here, Plaintiffs seek certification pursuant to Rule 23(b)(3), they must satisfy all of the criteria of 23(a) and:

> must also show (1) that the questions of law or fact common to class members predominate over any questions affecting only individual members, and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The Second Circuit has also 'recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.

*Nypl v. J.P. Morgan Chase & Co.*, 2022 WL 819771, at *6 (S.D.N.Y. Mar. 18, 2022) (citation and quotation omitted). Plaintiffs must establish by a preponderance of the evidence that each Rule 23 requirement is met. *Id.*

**I.**

**THE PROPOSED CLASSES ARE NEITHER ASCERTAINABLE NOR MANAGEABLE**

Rule 23 requires class membership to be determinable; a definition that is "indeterminate in some fundamental way [cannot be certified]." *In re Petrobas Secs.*, 862 F.3d 250, 269 (2d Cir. 2017). "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Brecher v. Republic of Argentina*, 806 F. 3d 22, 24 (2d Cir. 2015) (quotation is omitted). Due

process requires adequate notice so absent members may participate, opt out, or be bound. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

Plaintiffs' class definitions demand identification of virtually *every purchaser* of Defendants' Products in two entire states, over a six-year (California) and four-year (New York) period. New York alone has millions of daily interstate commuters. Both states draw millions of tourists and business travelers. Any individual who purchased an AriZona Product would be entitled to notice, an opportunity to be heard, and an opportunity to opt out. *Shutts*, 472 U.S. at 811-12.

Plaintiffs' bear the burden of proposing an ascertainable class, yet they offer no identification or notice method. *See Evans v. Select Portfolio Servicing, Inc.*, 827 F. Supp.3d 422, 462 (E.D.N.Y. 2026) ("[I]t is unclear how the Court could direct proper notice to the putative class members in all 50 states."); *JP Morgan Chase & Co.*, 2022 WL 819771 at *10. *See also In re Petrobras Sec.*, 862 F.3d at 269 n.20 ("Ascertainability provides a guiding principle for the otherwise murky analysis of classes that, though ostensibly defined by objective criteria, nonetheless present fatal challenges of determinability").

In *Ruffo v. Adidas America, Inc.*, 2016 WL 4581344, at *2 (Sept. 2, 2016), Judge Hellerstein denied class certification on this ground:

> Plaintiffs have not satisfied the predominance or ascertainability requirements. For the nationwide class and New York subclass proposed by plaintiff, the members of each class are not reasonably ascertainable, or manageable.
>
> Adidas also points out that the majority of Springblade sneakers were sold wholesale by Adidas to stores such as Dick's Sporting Goods and Footlocker. Adidas has no records of the consumers who purchased the shoes, and assuming a class could be certified, the identification of class members will be near impossible.

*Id.* at *2 (citations and quotations omitted). *See also e.g., Ault v. J.M. Smucker Co.*, 310 F.R.D. 59 (S.D.N.Y. 2015) (no viable method to identify cooking-oil purchasers); *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *12-13 (S.D.N.Y. Aug. 5, 2010) (class of purportedly deceived consumers of Snapple beverages not ascertainable "[b]ecause the purported class is not limited to New York, or even the United States, residents" and "Plaintiffs have failed to show how the potentially millions of putative class members could be ascertained . . . ."); *In re Avon Anti-Aging Skincare Creams and Prods. Mktg. & Sales Pracs. Litig.*, 2015 WL 5730022, at *5 (S.D.N.Y. Sept. 30, 2015); *Randolph v. J.M. Smucker Co*., 303 F.R.D. 679, 689-690 (S.D. Fla. 2014) (consumers were unlikely to retain receipts or remember relevant product and label).

Plaintiffs' only argument is that the classes "are imminently objective as they are simply comprised of every person who purchased at least one of the Products for personal use in New York and California during the Class Periods." (Pl. Memo. at 11.) This merely restates the definition. Plaintiffs do not, however, address how these purchasers could be found and provided with notice. Cross examining each member as to whether s/he purchased one of the Products would require thousands of mini-trials and defeat superiority. Denying Defendants the opportunity to challenge each member's bona fides, violates due process. *See Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948-49 (11th Cir. 2015).

As the Second Circuit stated in *Brecher*, 806 F. 3d at 25:

> While objective criteria may be necessary to define an ascertainable class, it cannot be the case that any objective criterion will do. A class defined as "those wearing blue shirts," while objective, could hardly be called sufficiently definite and readily identifiable.

Here, as in *Brecher*, purchasers are "practically impossible to trace." A definition that can only be given content through the unverifiable self-identification of potentially millions, leaves the definition "indeterminate in some fundamental way." *Petrobras*, 862 F.3d at 269.

The Second Circuit's decision in *Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 47 (2d Cir. 2017), is right on point. There was no reliable method to identify members because no records were kept of the challenged robocalls. Rejecting plaintiff's proposal to let class members self-identify, the Second Circuit held:

> Leyse proposed to identify class members by soliciting individual affidavits certifying receipt of the prerecorded call accompanied by telephone bills showing subscription to New York City residential telephone service in August 2009. Leyse adduced no evidence that this method employed objective criteria, was administratively feasible, or permitted ready identification of members. The district court consequently concluded that, under *Brecher, the* proposed class was unascertainable because (1) no list of the called numbers existed, (2) no such list was likely to emerge, *see id;* and (3) (as further explained in the order denying reconsideration) proposed class members could not realistically be expected to recall a brief phone call received six years ago or ... to retain any concrete documentation of such receipt. Although a list of class members will not always be necessary to render a class ascertainable, we identify no abuse of discretion in this finding that Leyse had failed to show a sufficiently reliable method for identifying the proposed class to avoid mini-hearing[s] on the merits of each case.

*Id.* at 47 (citations and quotations omitted). In *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471-72 (6th Cir. 2017), the Sixth Circuit followed *Leyse* where it denied class certification on ascertainability grounds because "having class members submit individual affidavits testifying to receipt of the Prolia fax—was not feasible, concluding that the reliability of an individual's recollection of having received a seven-year-old, single-page fax would be dubious at best."

Plaintiffs do not propose self-identification because they recognize it is infeasible. Self-identification by affidavit would require the Court to conduct, for each member, an individualized inquiry into whether he or she bought one of the relevant Products, during the applicable period, in the correct state and for personal use, all without any supporting proof – as consumers do not

retain proof for inexpensive purchases made years ago. Each claim would require a mini-hearing. Courts reject self-identification, especially for inexpensive purchases. *See In re Avon*, 2015 WL 5730022 at *5; *Ault*, 310 F.R.D. at 65-66; *Weiner*, 2010 WL 3119452 at *13; *Wasser*, 329 F.R.D. at 472; *Asiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *3 (N.D. Cal. Jan. 7, 2014); *Randolph*, 303 F.R.D. at 689-90; *In re Loestrin 24 FE Antitrust Litig.*, 410 F.Supp.3d 352, 404 (D.R.I. 2019); *Neale v. Volvo Cars of N. Am.*, 2017 WL 6055774, at *5 (D.N.Y. Dec. 6, 2017); *Amiel v. Evo Brands, LLC*, 2025 WL 3078161 (S.D.N.Y. Nov. 4, 2025). Plaintiffs have not shown a reliable identification method.

Nothing in *Petrobas* undermines the continuing viability of the decisions cited above where there is no method (nor one even *proposed*) by which to reliably identify and notify worldwide members. *Petrobas* expressly acknowledged that "administrative infeasibility" may "cause a proposed class to founder on the shoals of predominance, superiority, or both." *Petrobas*, 862 F.3d at 269 n.20. Whether considered a fatal defect of ascertainability, preponderance, superiority, or all three, the point is that a class that cannot be identified and notified without hundreds-of-thousands mini-trials is improper and unmanageable under Rule 23.

## II.

## PLAINTIFFS CANNOT SATISFY TYPICALITY, COMMONALITY, OR ADEQUACY FOR THE PROPOSED NEW YORK CLASS UNDER RULE 23(a)

### A. Townes Is Not Typical And Her Claims And Defenses Are Not Common To Those Of The Proposed NY Class

On summary judgement, the Court found that Townes has no claim under the GBL for purchases after January 12, 2021 by operation of the voluntary payment doctrine. (3/28 Order at 19-20 (*citing Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 56 (App. Div. 1st Dept 2004).) Courts deny certification when a plaintiff uniquely faces the voluntary payment defense. In *In re Currency*

*Conversion Fee Antitrust Litig.*, continued credit card use after learning of the deceptive fee created a "possible defense that he was not deceived by the purported misrepresentation or non-disclosure" and made the plaintiff "atypical of class members who paid the conversion fee unknowingly." 230 F.R.D. 303, 308 (S.D.N.Y.2004), *modified on other grounds*, 2005 WL 1705285 (S.D.N.Y. July 22, 2005). Similarly, in *Newman v. RCN Telecom Servs., Inc.*, the court denied class certification, noting that plaintiff is "atypical . . . because he is subject to an affirmative defense based on the voluntary payment doctrine that raises individual issues about his own claims." 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (collecting cases). The court in *Newman* described *Solomon*, on which this Court itself relied in the 3/28 Order, as "directly on point." There, the First Department denied certification because "Defendants also assert certain affirmative defenses that raise individual issues," including the voluntary payment doctrine. *Solomon v. Bell Atlantic*, 9 A.D. 3d 49, 55 (1st Dept 2004).

This Court's ruling that Townes' continued purchases of the Products with full knowledge that they contain citric acid makes recovery unlikely, renders her "atypical of class members who [purchased the Products] unknowingly." Rule 23(b)(3) preponderance is likewise implicated. Thousands of "mini-trials" would be needed to identify members subject to the voluntary payment defense. While the doctrine precludes Townes' recovery after January 12, 2021, the dates for members subject to this defense will be spread across a four-year period. This *individualized* proof is antithetical to a class action.

### B. Townes ' Cannot Fairly Or Adequately Protect The Interests Of The Proposed New York Class Members

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179–80 (2d Cir.1990); cert.

denied, 498 U.S. 1025, 111 S. Ct. 675, 112 L.Ed.2d 667 (1991). This creates "danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id*. at 180 (internal citations omitted.)

Townes cannot satisfy the materiality, causation, or injury elements of her GBL claims, (*see* 3/28 Order at 18), for purchases she made after January 12, 2021. The proposed class period, however, extends to January 1, 2023, covering periods Townes has no interest in addressing. This inherent conflict renders class certification improper. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 22 F.3d 52, 60 (2d Cir. 2000). Townes' post-knowledge purchases also preclude injury from earlier purchases, because she *paid the same price* for a beverage with preservatives as for one she thought had none. (Wolfson Dec. Exh. D at 48:9 – 50:3.) Accordingly, she cannot credibly claim to have paid a premium for a beverage she believed had no preservatives.

The conflicts run deeper. Plaintiffs' assert claims for consumers in New York (and California) who purchased *any* of Defendants' ready-to-drink beverages bearing a "No Preservatives" label containing citric acid, *regardless of flavor or size*. (SAC ¶ 2(q).) But, Plaintiffs seemingly abandon claims for consumers who purchased gallons, 16-ounce containers or 12-ounce bottles. (Weiner Dec. Exh. 3.) Hence, the proposed class excludes buyers of the same flavor products with the same label as Products subject to this motion, merely because of size. To further highlight the issue, even the Plaintiffs cannot seem to keep track of what Products are included in the proposed class, as illustrated by their decision to prominently depict on page 3 of their Memo of Law an image of a *12-oz Product* that is not even one of the Products in the proposed class. (*Id*.)

By declining to seek certification for all Products that are the subject the SAC, Townes refuses available remedies, to the prejudice of the class and herself. "[Claim-splitting is generally

prohibited by the doctrine of res judicata . . . ." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 338-340 (S.D.N.Y. 2002). "Plaintiffs must assert all claims arising from a cause of action or lose omitted claims". *In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *4 (S.D.N.Y. Aug. 13, 2020). Pursuing "only some claims arising from the transaction and occurrence at issue," raises "a serious question of adequacy of representation." (*Id.* at *6) (quotation omitted; cleaned up). A class representative is not adequate when she abandons remedies to the detriment of the class and refuses to seek all available remedies for herself. *See Drimmer v. WD-40 Company*, 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007), *aff'd*, 343 F. App'x 219 (9th Cir. 2009); *In Re Allergan PLC Secs. Litig.*; 2020 WL 5796736, at *6 (S.D.N.Y. Sept. 29, 2020). That is precisely the case here.

## III.

## THE NEW YORK GENERAL BUSINESS LAW CLASS SHOULD NOT BE CERTIFIED

To state claims under the GBL, a plaintiff must show consumer-oriented conduct, that is materially misleading and injury caused by the alleged deception. (3/28 Order at 18); *Telesco v. Starbucks Corp.*, 682 F. Supp. 3d 397, 403 (S.D.N.Y. 2023). The objective, reasonable consumer standard requires common evidence resolving each element "in one stroke." *Ault*, 310 F.R.D. at 66. Plaintiffs assume every class member (i) understood the allegedly misleading statement identically, and (ii) was misled to purchase for that reason. Assumptions do not satisfy Rule 23.

### A. Common Issues Do Not Predominate

Predominance fails because: (i) the purported misrepresentation was not uniform, and (ii) the record shows that Plaintiffs and consumers purchase the Products for a host of different reasons.

First, "No Preservatives" lacks a single, objective message capable of class-wide determination. *In re KIND LLC "Healthy & All Nat." Litig.*, 627 F. Supp. 3d 269, 276 (S.D.N.Y. 2022), *aff'd* s*ub nom*, *Bustamante v. KIND, LLC*, 100 F.4th 419 (2d Cir. 2024); *de Lacour v. Colgate-Palmolive Co*., 2024 WL 36820, at *7 (S.D.N.Y. Jan. 3, 2024); *In re ConAgra Foods, Inc*., 302 F.R.D. 537, 578 (C.D. Cal. 2014). Plaintiffs offer no evidence that reasonable consumers uniformly understood "No Preservatives," much less in the manner Plaintiffs allege. For example, the Green Tea with Ginseng and Honey contains honey, an ingredient with recognized preservative properties, yet Plaintiffs do not challenge it. This illustrates that whether an ingredient is a "preservative" depends on individual belief, not a common understanding.

The Second Circuit's decision in *Bustamante* is directly on point. Plaintiffs claimed "All Natural" labeling was deceptive. 100 F. 4th at 424. Defendant moved for summary judgment and to decertify the class because plaintiffs had failed to "present admissible evidence of what a reasonable consumer would expect of KIND products labeled 'All Natural.'" *Id*. Because deception, a required element, is governed by a "reasonable consumer" standard, the court noted that it was incumbent upon plaintiffs to "present admissible evidence establishing how the challenged statement – "All Natural" – tends to mislead reasonable consumers acting reasonably. *Id*. at 426 (citing cases). Plaintiffs relied upon a survey, which the Court found was properly excluded as "biased, leading, and . . . cannot provide the objective standard necessary to answer the key question in this case." *Id*. at 428-29. It found the district court also permissibly rejected the chemist's report because, at most, it supported *his* opinion of what is "natural," but provided no guidance on what a *reasonable consumer* considers natural. *Id*. at 431-32. The deposition testimony of the class representatives further "established[d] how divergent consumers'

expectations can be." *Id.* at 433. Without evidence that a "reasonable consumer" would find the "All Natural" claim deceptive, the Court affirmed decertification. *Id*. at 432.

Here the record is even more barren. Richard Cronin's report provides no basis to conclude that a "reasonable consumer" would find "no preservatives" deceptive because the Product contains citric acid. Like the plaintiffs in *Bustamente*, Townes and Ashour offer no common definition of "No Preservatives" or evidence that reasonable consumers commonly understood citric acid to be a preservative.

Plaintiffs reliance on *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D 374 (S.D.N.Y. 2016), is misplaced. Here, the "product and its labeling and packaging" are *not* "constant and . . . uniform between consumers." (*Id.* at 389.) It differs from Product to Product and the extent to which it might "influence[] a consumer under an objective test" will depend on which Product the consumer purchased. (*Id*.) In *Seekamp v. It's Huge, Inc.*, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012), plaintiff alleged defendant violated the GBL by "misrepresentation[ng] [the] legality" of an anti-theft security discount ("ATSD"). (*Id*. at *10.) Preponderance was easily established through "generalized" proof by merely proving a class member had purchased the ATSD. In *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002), the court *affirmed denial* of class certification, finding individual issues predominated because "each plaintiff must prove that he or she personally received a material misrepresentation, and that his or her reliance on this misrepresentation was the proximate cause of his or her loss." (*Id*. at 1253.) Apart from not involving the GBL, the fraud in *In re Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (3d Cir. 2013), involved a scheme to overbill "cost-plus" customers and was capable of generalized proof: receipt of the inflated invoice. The fraud in *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015), was similarly capable of class-wide proof. *Marchak v. JPMorgan Chase & Co.*, 84

F.Supp.3d 197 (E.D.N.Y. 2015), did not involve GBL claims or a motion for class certification. Finally, neither *Marcus v. AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998), nor *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20 (1995), involved class certification or addressed the predominance requirement for GBL claims under Rule 23(b)(3).

**B. Plaintiffs Cannot Establish Predominance And Commonality Because The Alleged Misrepresentation Varied From Product to Product**

Commonality requires a question capable of a common answer resolving liability for every class member in one stroke. *Ault*, 310 F.R.D. at 66. Although GBL claims use an objective, reasonable consumer standard, the deceptive act must be common across the class. *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 75 (S.D.N.Y. 2006); *Ault*, 310 F.R.D. at 67 (S.D.N.Y. 2015). Plaintiffs must show class-wide exposure; where exposure cannot be established through common proof, predominance is lacking. *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Prass. Litig,* 2015 WL 5730022, at *6; *Fero v. Excellus Health Plan, Inc.,* 502 F. Supp. 3d 724, 735 (W.D.N.Y. 2020); *In re Fyre Festival Litig*., 2020 WL 7043497, at *6 (S.D.N.Y. Dec. 1, 2020); *Kronenberg v. Allstate Ins. Co*., 743 F. Supp. 3d 465 (E.D.N.Y. 2024); *Newman*, 238 F.R.D. at 75; *In re Clorox Consumer Litig*., 301 F.R.D. 436, 446 (N.D. Cal. 2014).

Because the no preservatives statement varied in size, shape, format and placement across Products, commonality is lacking because product-specific inquiries are required for each member's purchases.

### C. Plaintiffs Cannot Establish Through Common Proof That Every Class Member Suffered Injury, Let Alone The Same Injury

Townes must show actual injury and that such injury was caused by the alleged deception and is susceptible to class-wide proof. A "price premium" theory fails without common evidence that every member suffered the same loss. *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36 (S.D.N.Y. 2019); *Haag v. Hyundai Motor Am.*, 330 F.R.D. 127, 131 (W.D.N.Y. 2019); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 511 (S.D.N.Y. 2011); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82 (S.D.N.Y. 2010).

Plaintiffs conflate injury with damages. Under the GBL, deception cannot itself be the injury, *i.e.,* the injury cannot be the price paid to purchase the Product. *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999); *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 415 (S.D.N.Y. 2004). Plaintiffs offer no premium evidence. Without such evidence, Plaintiffs' argument of a class-wide injury necessarily fails. *Colpitts v. Growers,* 2023 WL 2752161, at *4 (S.D.N.Y. Mar. 31, 2023); *Marshall.,* 334 F.R.D. 36. *See also Haag,* 330 F.R.D. 127.

Contrary to their argument, in the absence of proof of injury, Plaintiffs are not entitled to statutory damages. *Kronenberg,* 743 F. Supp.3d at 499 (rejecting argument that "damages model" premised on "statutory damages of $50 per class member" is sufficient substitute for an absent "liability model" proving existence of price premium at class certification stage); *Esposito v. Info. Tech. Corp. of the Tri-States,* 2022 WL 1155917, at *7 (S.D.N.Y. Apr. 19, 2022) ("Even a plaintiff seeking solely statutory damages must establish an actual injury"); *Pagan v. Abbott Lab'ys, Inc.,* 287 F.R.D. 139, 149 (E.D.N.Y. 2012) (denying class certification, noting "[t]he existence of a minimum amount of statutory damages does not assist the Plaintiffs in overcoming the hurdle of affirmatively demonstrating commonality, because, as explained above, the [p]plaintiffs need to first show that the class members have been injured or harmed in the same way.)

AriZona's founder and owner, Don Vultaggio, testified to the seminal importance to him and the company that their Products be the cheapest in the market. He explained: "The major competitors are Coke and Pepsi. . . . Every package I do I have to be price competitive. I have to be below them. I have to." (Wolfson Decl. Exh. F at 68:12-16.) "On a regular basis, our product is more than half less than the Cokes and Liptons on a per ounce basis." (*Id*. 71:16–18.) He testified that AriZona has been "selling a $0.99 can for 30 years" (*id*. 97:24–25), and added for context: "I have held that price since 1992. . . . The Verrazano Bridge in '92 was probably four bucks. . . . Today, it is $18. That is a 450 percent increase. I am still selling for 99 cents." (*Id*. 69:23 –70:4.) The media and social media have lauded AriZona for its *low prices*: *see* https://www.today.com/video/learn-the-sweet-success-story-behind-arizona-s-iced-tea-213712965765 (Today Show); https://www.instagram.com/reel/DcTjp-cCuJ2/ (Yahoo Finance); https://www.instagram.com/reel/DccTI1AhTDB/ (Instagram, 20 million views); Sam Dean, *As inflation soars, How is AriZona iced tea still 99 cents?* (Apr, 12, 2022) How is AriZona Iced Tea still 99 cents as inflation soars? - Los Angeles Times; Talia Kaplan, *AriZona iced tea keeps 99-cent can price despite surging inflation, Co-founder says consumers deserve a break* (Apr. 28, 2022) AriZona iced tea keeps 99-cent can price despite surging inflation; Co-founder says consumers deserve a break | Fox Business; Kendall Bakeer, How is AriZona Iced Tea still cheaper than water? (October 1, 2024).[2]

Not surprisingly, Plaintiffs' price premium theory is unsupported by any evidence. Courts reject such premium theories where the plaintiff testifies that she purchased the product believing

---

[2] *See also* https://x.com/RitchieTorres/status/1954670426451251257 (Rep. Ritchie Torres (D-NY) — August 10, 2025: "Since 1997, AriZona Iced Tea has proudly kept its iconic 99-cent price tag."); https://trcmarketresearch.com/blog/arizona-iced-tea-pricing-strategy-a-price-anchoring-case-study/ (June 1, 2016 – TRC Insights: market-research analysis uses AriZona as a price-anchoring and inflation case study, noting how unusual it is for a consumer packaged-goods price point to remain stable for more than three decades); https://www.businessinsider.com/how-arizona-teas-99-cent-price-tag-is-still-standing-2025-7 (July 2025 - Business Insider: examines how AriZona's 99¢ price has endured and calculates that a Big Can would cost approximately

it to be cheaper than comparable alternatives or admits to paying the same price after knowing the truth. *Kelly v. Beliv LLC*, 2024 WL 1076217, at *10 (S.D.N.Y. Jun. 4, 2026). Dr. Kivetz's surveys also demonstrate that no preservatives has no statistically significant impact on what a consumer is willing to pay for the Products.

### D. Dubé's Proposed Conjoint Analysis Is Not A Substitute For Evidence And Is Fatally Flawed

Plaintiffs had seven years to submit evidence of common injury, including evidence that comparable products without a no preservatives representation sold for less. They submitted none, and instead propose conjoint analysis. Judge Crotty rejected this same approach in *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59. Even assuming *arguendo* Plaintiffs' conjoint analysis could be used to prove a price premium common to all members, it would not identify who purchased the Products during the relevant period or how many Products each purchased. Further, without documentation, the credibility of each members' claim would require thousands of mini-trials.

As Dr. Kivetz explains, the Dubé proposed Conjoint Survey is incapable of establishing class-wide damages (Kivetz Report ¶¶ 82-129.) It omits design details (*id*. ¶¶ 91-97), uses text-based rather than realistic packaging (*id*. ¶¶ 104-109), omits packaging appearance, flavor or product identity, the Nutrition Facts panel, the ingredients list and other label claims (*id*. ¶¶ 116-122), and repeatedly exposes participants to the alleged claim, inviting demand and focalism bias. *Id*. ¶¶ 110-115, 127-128.) It would estimate the same premium regardless of placement, size, or frequency, and would not isolate damages solely attributable to the statement. (*Id*. ¶ 115.) Further, to reliably establish a price premium, a conjoint study must be based on actual market prices,

---

$2.30 if its original price had simply tracked inflation); https://fortune.com/2024/06/27/arizona-iced-tea-price-founder-explains/ (June 27, 2025 – Fortune: revisits AriZona's 99¢ pricing as inflation pushed the cost of everyday goods higher, comparing the philosophy with other famous fixed-price consumer products); https://www.kqed.org/arts/13915543/as-inflation-gets-worse-the-99%C2%A2-iced-tea-persists (June 29, 2022 – KQED: "As Inflation Gets Worse, the 99¢ Iced Tea Persists." The piece treats AriZona's 99¢ price as a conspicuous holdout during a broad consumer-price surge.)

including a comparison of other products' prices when, as here, prices are obviously available. *See Zakaria v. Gerber Prods. Co.,* 755 F. App'x. 623, 624 (9th Cir. 2018) (affirming decertification of class because conjoint analysis failed to reflect market realities, prices for infant formula products, and whether alleged higher price was actually paid).

**IV.**

**PLAINTIFF ASHOUR HAS NOT SATISFIED THE REQUIREMENTS FOR CERTIFICATION OF HIS CLRA AND BREACH OF WARRANTY CLAIMS**

Under the CLRA, Ashour must show a misrepresentation, reliance, and damages caused by it. *Fierro v. Cap. One, N.A*., 656 F.Supp.3d 1121, 1128 (S.D. Cal. 2023). The CLRA specifically requires reliance on the alleged misrepresentation. *Watkins v. MGA Ent., Inc*., 550 F.Supp.3d 815, 833 (N.D. Cal. 2021).

**A. Causation And Reliance Raise Individual Issues For Each Putative Class Member**

Under the CLRA, the alleged misrepresentation must be material to and cause each class member's harm. "[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *In re Vioxx Class* Cases, 180 Cal. App. 4th 116, 129 (2009).

Ashour argues that reliance on the alleged misrepresentation may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to class members. He then argues that because every member was purportedly exposed to the same alleged misrepresentation, materiality (and therefore reliance) can be presumed. This argument fails for several reasons.

To begin with, Plaintiffs' offer no evidence that the alleged misrepresentation materially influenced class purchases. They could have, but decided not to conduct a survey to support this

motion. Further, Ashour testified he bought the Products for numerous different reasons that varied among Products. (Ashour Dep. At 105:16-21; 106:4-13; 118:7-13; 120:5-11.)

Importantly, on summary judgment, the Court dismissed Plaintiff Brown's CLRA claim because she "kept buying AriZona products after learning that they contained citric acid," and, therefore, "cannot establish reliance." (3/28 Order at 15.) The Court did not need to reach the testimony that she purchased the Products for a host of other reasons, including: "I enjoy the taste"; "taste, flavor. I enjoyed it"; "not as sweet as the regular iced teas"; "the value"; "the price"; "convenient"; "wanted to try that flavor" or "try something – a different flavor;" "sugar content"; and "to quench [her thirst.]." (Wolfson Dec. Exh. E, p. 27:15-16; 28:21-24 – 29:7; 32:6-8; 34:25; 87:14; 90:5-6; 92:12-21 – 93:6-16; 94:15-18; 107:14-20.) If she were not a dismissed Plaintiff, Brown would be a class member, even though the alleged misrepresentation was not material to her and she did not rely on it. Brown highlights that Ashour's proposed California class would include not only consumers who bought the Products for reasons having nothing to do with No Preservatives, but also consumers who kept buying them after learning they contained citric acid. The only way to avoid this would be by questioning every member about the reasons for his or her purchases, whether they knew citric acid was a preservative, and whether they continued buying the Products even after they knew this. This illustrates that materiality and reliance cannot be presumed and individual issues predominate.

"If the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takedar*, 674 F.Supp.3d 799, 835-36 (C.D. Cal. 2023) (quoting *In re Vioxx Class Cases*, 180 Cal. App. 4th at 129); *Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 550 (N.D. Cal. 2021); *Jones v. ConAgra*

*Foods, Inc.*, 2014 WL 2702726, at *15 (N.D. Cal. 2014). In the seminal California decision in *In re Vioxx*, the Court affirmed denial of certification because "materiality or reliance is a matter that would vary from consumer to consumer" based upon individual issues for each patient/class member. What was material to one patient/class member was not necessarily material to other patients/class members. 180 Cal. App. 4th at 129. Similarly, in affirming the denial of the proposed CLRA *Mancini* class in *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), the Ninth Circuit held (*id*. at 1024):

> Notable are the myriad reasons that someone who was not misled and intentionally signed up might have chose not to take advantage of the available product by actually printing a coupon or obtaining a rebate for some period. Perhaps, for example, the person had been ill, or distracted by family emergencies, or just did not see anything that he really wanted during that time. Or, perhaps, a person decided after a few months that the premiums were not worth the price of admission. But all of those people would have been swept willy-nilly into the class.

And, in *Gross v. Vilore Foods Co.*, 2022 WL 1063085 (S.D. Cal. Apr. 8, 2022), plaintiffs argued materiality could be presumed because all class members saw labels omitting artificial flavoring. *Id*. at *7. The court rejected that argument, explaining that "[m]ere exposure to a representation does not make it material." *Id.* The Court further noted that although plaintiffs' expert surveyed consumers about the importance of various product attributes, "the survey did not test whether these specific Products' failure to disclose artificial flavoring would have been material to the participants' purchasing decision." *Id*. The court held that "[c]onsumers' general perceptions of juice-based beverage'' attributes cannot serve as common evidence that these particular Products' labels were material to class members' purchasing decisions," because the survey provided "no way of knowing what motivated the few participants" who reacted to the challenged attribute "as opposed to, or in addition to, price, promotions, retail positioning, taste,

texture, or brand recognition." *Id*. (internal citations omitted). Accordingly, the survey "cannot constitute common proof that the alleged misrepresentations made to the entire class ... would be material to a reasonable consumer," and "commonality is not established as to Plaintiffs' CLRA claim." *Id.* at *8.

*Algarin v. Maybelline, LLC*, 300 F.R.D. 444 (S.D. Cal. 2014), is also instructive. There, just as in the instant action, defendant's expert conducted a survey the court found reliable, which established that "purchasers indicated a variety of reasons in selecting the product for purchase," that the challenged duration claim "was not the only motivating factor in making the purchases," and that only a small fraction of purchasers were actually "injured" in the manner alleged. *Id.* at 454. The court held that "whether Maybelline's conduct was false or misleading or likely to deceive is not subject to common proof on a class-wide basis," and that "given the persuasive evidence presented on consumer expectations, the varying factors that influence purchasing decision, and consumer satisfaction, ... Plaintiffs have also failed to demonstrate that the elements of materiality and reliance are subject to common proof." *Id.* at 457. In words that could have been written for this case, the Court stated that because "[e]xpert evidence shows that materiality and reliance varies from consumer to consumer," those elements were "not an issue subject to common proof." *Id*. *See also Orshan v. Apple Inc.*, 2023 WL 3568079, at *12 (N.D. Cal. Mar. 31, 2023); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 581 (E.D. Cal. 2012).

**B. <u>Ashour Has Not Established That Common Issues Predominate</u>**

Packaging differences create individualized exposure questions. *Kosta v. Del Monte Foods*, Inc., 308 F.R.D. 217, 229 (N.D. Cal. 2015) (labeling variations meant purchasers could not be presumed to have encountered the same misrepresentation); *Turcios v. Carma Lab'ys, Inc.*, 296 F.R.D. 638, 646 (C.D. Cal. 2014). This applies where the alleged misrepresentation's prominence

or presentation varies. *Hadley v. Kellogg Sales Co*., 324 F. Supp. 3d 1084, 1099 (N.D. Cal. 2018); *Jones*, 2014 WL 2702726, at *15; *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, 2016 WL 5920345, at *7 (C.D. Cal. June 23, 2016); (Cronin Dep. 56:22-25). For this reason, too, individual issues predominate.

**C. <u>Ashour Has Not Established Typicality/Adequacy</u>**

Ashour purchased only three Products (Ashour Dep. 53: 24- 54:3), so he cannot prove the claims of members with the same evidence that would prove his own claims. *Major v. Ocean Spray Cranberries, Inc*., 2013 WL 2558125, at *1 (N.D. Cal. June 10, 2013) (named plaintiff sought to represent purchasers on an entire product line, but her claims depended on the particular product purchased); *Wiener v. Dannon Co*., 255 F.R.D. 658, 665 (C.D. Cal. 2009) (named plaintiff purchased only one product at issue); *Pierce-Nunes*, 2016 WL 5920345, at *5.

**D. <u>Ashour Cannot Establish Class-Wide Injury or Damages</u>**

When injury depends on the product purchased, price, value received, and whether the representation affected the transaction, individual issues predominate. *Vrugtman v. Its Just Lunch Int'l LLC*, 2023 WL 6369765, at *7 (C.D. Cal. Aug. 25, 2023); *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prods. Liab. Litig*., 2023 WL 6121894, at *129 (D.N.M. Sept. 19, 2023); *Withers v. eHarmony, Inc*., 2010 WL 11520198, at *5 (C.D. Cal. June 2, 2010).

Ashour and class members bought different Products, quantities, sizes and packages, for different reasons and prices. The assumption of a uniform injury, including based upon an as yet performed conjoint analysis that is flawed in numerous respects and that Dubé concedes may show no injury, is insufficient for purposes of certifying a class. *Vizcarra*, 339 F.R.D. at 553 (conjoint model failed to isolate challenged representation, instead measuring a broader product attribute the expert conceded would not test challenged marketing); *Moore v. GlaxoSmithKline Consumer*

*Healthcare Holdings (US) LLC*, 713 F. Supp. 3d 660, 677 (N.D. Cal. 2024) (survey failed to isolate value attributable solely to challenged statement.

Dubé's willingness to pay approach also fails to fit Ashour's remaining claims. He conceded that he would calculate a "retrospective payment … to make people whole" (Dubé Tr. 101:3-11), which is restitution. In *Mier*, 2023 WL 4837851, at *2, the Ninth Circuit explained that willingness to pay measures restitution, and restitution is the return of the excess of what the plaintiff gave over the value received. Actual damages under the CLRA, by contrast, are measured by the difference between the actual value of what was paid and the actual value of what was received. *Colgan v. Leatherman Tool Grp., Inc.* 135 Cal. App. 4th 663, 675 (2006). The Court's 3/28 Order dismissed Ashour's restitution and unjust-enrichment claims, leaving only actual damages under the CLRA and for breach of warranty.

**E. <u>Certification Of Ashour's Cal. Com. Code § 2313 Claim Should Be Denied</u>**

Certification should be denied for Ashour's breach of warranty claim for the same reasons as the CLRA claim. *Gross*, 2022 WL 1063085, at *4; *Bargetto v. Walgreen Co.*, 2024 WL 3493260, at *8 (N.D. Cal. June 14, 2024); *Shin v. Sanyo Foods Corp. of Am.*, 348 F.R.D. 477, 486 (C.D. Cal. 2025); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009).

## CONCLUSION

Plaintiffs' motion for certification should be denied.

Dated: New York, New York
August 31, 2026

Respectfully submitted,
**TARTER KRINSKY & DROGIN LLP**

By: */s/ Howard S. Wolfson*

Howard S. Wolfson
Andrew N. Krinsky
1350 Broadway
New York, New York 10018
(212) 216-1132
hwolfson@tarterkrinsky.com
akrinsky@tarterkrinsky.com

*Attorneys for Defendants, AriZona Beverages USA LLC, Hornell Brewing Co., Inc., Beverage Marketing USA, Inc., AriZona Beverages Holdings LLC, and AriZona Beverages Holdings 2 LLC*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that the foregoing document complies with the word-count limitations in Local Civil Rule 7.1(c). According to the word count feature of Microsoft Word, the motion contains 8,644 words, excluding the exempted parts under Local Civil Rule 7.1(c).

*/s/ Howard Wolfson*
Howard Wolfson